UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., CHARLES PARSONS, VICTORIA PARSONS and JOAN BYER, | CIVIL ACTION NO. |
| *Plaintiffs,* | 3:00 CV 0097 (EBB) |
| v. | |
| TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, ERIC FRIES, GEORGE JAMES, JANE MARSH, THOMAS RISOM, WALTER SEIFERT, SHARON COLVIN and MARILYN OZOLS, | |
| *Defendants.* | FEBRUARY 9, 2007 |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT BY DEFENDANTS FRIES, JAMES, MARSH, RISOM,
SEIFERT, AND COLVIN

The individual defendants, ERIC FRIES, GEORGE JAMES, JANE MARSH,

THOMAS RISOM, WALTER SEIFERT, and SHARON COLVIN, submit the

following memorandum of law in support of their Motion for Summary Judgment

dated February 9, 2007.

## I.    BACKGROUND.

The plaintiffs, South Lyme Property Owners Association, Inc. *"Association"),

Charles Parsons, Victoria Parsons and Joan Byer, brought the instant case to

invalidate certain regulations of the Old Lyme Zoning Commission that limit the

use of the property of the individual plaintiffs and allegedly the properties of the

members of the Association, on the basis that such limitations violate the United

**ORAL ARGUMENT IS REQUESTED**

States Constitution and the Connecticut Constitution. Specifically, the plaintiffs claim that the regulations violate their equal protection rights, procedural due process rights, substantive due process rights, and amount to a takings. The plaintiffs also claim that all defendants have damaged the public trust in the environment in violation of Conn. Gen. Stat. § 22a-16 and § 22a-18. *See* Pls. Amended Complaint, 5/29/2001, Doc. Entry #24.

The original complaint in this case was dated December 29, 1999 and was served upon any defendant no earlier than that date - December 29, 1999. *See* Def. L.R. 56 Stmt, ¶1; **Exhibit A**, Summons & Complaint dated December 29, 1999 (Doc. Entry #1). The complaint was later amended and that is the operative complaint. *See* Doc. Entry #24.

During all times relevant to the Complaint and the Amended Complaint, the individual defendants, Fries, James, Marsh, Risom, Seifert and Colvin, were all regular members or alternate members of the Old Lyme Zoning Commission during the adoption of the challenged regulations. This memorandum of law supports only the motion for summary judgment that pertains to the claimed liability of these individual commission members. The remaining co-defendants, the Town of Old Lyme, the Old Lyme Zoning Commission, and Marilyn Ozols, have or will have submitted a separate motion for summary judgment and memorandum of law in support of same under separate cover.

Essentially, the plaintiffs are seeking money damages from individual members (and some now former members) of the Old Lyme Zoning Commission in

their individual capacities.  At all times relevant to the allegations of the complaint, the individual defendants, Eric Fries, George James, Jane Marsh, Thomas Risom, Walter Seifert and Sharon Colvin, served as members of the Town of Old Lyme Zoning Commission as volunteers and without compensation of any kind. *See* Def. L.R. 56 Stmt, ¶2; **Exhibit B**, p. 2, 6-7, Affidavit of Ann Brown, February 7, 2007. Some or all of the individual defendants, Eric Fries, George James, Jane Marsh, Thomas Risom, Walter Seifert and Sharon Colvin, voted to adopt certain Amendments to the Regulations of the Town of Old Lyme Zoning Commission. Such Amendments to the Regulations were made in 1992 and 1995. *See* Def. L.R. 56 Stmt, ¶3; **Exhibit C1-3**, Minutes of the Old Lyme Zoning Commission. Before voting to adopt the regulations, the individual defendants, Eric Fries, George James, Jane Marsh, Thomas Risom, Walter Seifert and Sharon Colvin, reviewed documents, heard testimony, consulted with counsel and deliberated among each other before voting to adopt the challenged regulations. *See* Def. L.R. 56 Stmt, ¶4; **Exhibit C1-3**, Minutes of the Old Lyme Zoning Commission; **Exhibit D**, Depo. Fries, Vol. 1, p. 34:1-22, 33:21-5, 52:19-21, 69:211-5, 71:1-16, 74:21-5, 75:1-25, 76:1-3; **Exhibit E**, Depo. James, Vol. 2, 38:14-25; **Exhibit F**, Depo. Marsh, Vol. 1, 37:22-25, 38:1-25, 39:1-25, 40:1-14, 42"10-25, 43:1-16l. Without any doubt, the individual defendants, as commissioners, were exercising the time-tested benefits of our representative democracy – the legislative process.

Based on the challenged regulations themselves and Connecticut law, the defendants, Fries, James, Marsh, Risom, Seifert and Colvin, the individual

members of the Town of Old Lyme Zoning Commission, had no role in any appeal
from the application of the challenged regulations to individual properties in Old
Lyme. *See* Def. L.R. 56 Stmt, ¶5; **Exhibit B**, p. 2, 8, Affidavit of Ann Brown,
February 7, 2007. At the time the individual defendants voted for the regulations or
the amendments to the regulations, they were acting in their official capacity as
Commissioners of the Old Lyme Zoning Commission. *See* Def. L.R. 56 Stmt, ¶6;
**Exhibit C1-3**, Minutes of the Old Lyme Zoning Commission.

The individual defendants now move for summary judgment as to all claims
against them as alleged in the plaintiffs' Amended Complaint dated May 29, 2001.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

A district court may grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.
56(c). A genuine issue is one that "may reasonably be resolved in favor of either
party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *McPherson v.
Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). A material issue is a "dispute over facts
that might affect the outcome of the suit under the governing law." *Anderson v.
Liberty Lobby, Inc., supra*, 477 U.S. at 248. Thus, "[a] reasonably disputed, legally
essential issue is both genuine and material and must be resolved at trial." *Graham
v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

The moving party must demonstrate the absence of any genuine issue of material factual, and that it is entitled to judgment as a matter of law. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *McPherson v. Coombe*, *supra*, 174 F.3d at 280.  "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986).

Nevertheless, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). As "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 247-48. Rather, the party opposing summary judgment must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). *See Schacht v. Wisconsin Dep't of Corrs.*, 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events"); *rev'd on other grounds*, 524 U.S. 381 (1998).

### B.     THE STATUTE OF LIMITATIONS IS A COMPLETE BAR TO THE PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST FRIES, JAMES, MARSH, RISOM, SEIFERT, AND COLVIN IN THEIR INDIVIDUAL CAPACITIES.

The plaintiffs claim that the amendments to the Old Lyme Zoning Regulations are unlawful, unconstitutional and injurious to their property rights. These amendments occurred in 1992 and 1995. *See* Def. Local Rule 56 Statement, ¶1. The statute of limitations is a complete bar to their claims against the individual members of the Old Lyme Zoning Commission – Fries, James, Marsh, Risom, Seifert and Colvin. It is undisputed that this lawsuit was not commenced any earlier than December 29, 1999 – the date of the summons on the original writ.

*See* Def. Local Rule 56 Statement, ¶1. Accordingly, the plaintiffs may not maintain a claim for money damages against Fries, James, Marsh, Risom, Seifert and Colvin for any role they may have played in this case.

As the plaintiffs' federal constitutional claims are enforced through 42 U.S. § 1983, it is well-established that federal law determines the applicable statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-80 (1985) (length of limitation period and related questions of tolling and application are also governed by state law). Conn. Gen. Stat. § 52-577 "is applicable to all tort actions other than those excepted therefrom by § 52-584 or other sections." *Lambert v. Stovell*, 205 Conn. 1, 4, 529 A.2d 710 (1987). *See Orticelli v. Powers*, 197 Conn. 9, 16, 495 A.2d 1023 (1985) (holding section 52-577 is also the operative statute of limitation for 42 U.S.C. § 1983 claims.); *Lounsbury v. Jeffries*, 25 F.3d, 131, 134 (C.A.2 1994). Thus, section 52-577 is the applicable statute of limitation for any possible federal constitutional claim that may be fairly inferred from the plaintiffs' amended complaint.

The amendments in question were passed by the Commission in April 1995, effective June 5, 1995. *See* Def. Local Rule 56 Statement, ¶8. This lawsuit was commenced no earlier than December 29, 1999, the date it was signed by the plaintiffs' counsel. *See* Def. Local Rule 56 Statement, ¶1. Accordingly, there can be no liability as to the individual members of the Old Lyme Zoning Commission – Fries, James, Marsh, Risom, Seifert and Colvin, as the lawsuit is untimely for a claim of money damages. Accordingly, summary judgment must be granted in their

favor on all federal claims in the plaintiff's Amended Complaint dated May 29, 2001.

### C. THE PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST FRIES, JAMES, MARSH, RISOM, SEIFERT, AND COLVIN IN THEIR INDIVIDUAL CAPACITIES ARE BARRED BY THE DOCTRINE OF ABSOLUTE, LEGISLATIVE IMMUNITY.

Even if not barred by the statute of limitations, it is undisputed that all of the actions of the individual members of the Old Lyme Zoning Commission – Fries, James, Marsh, Risom, Seifert and Colvin – were taken in the context of the legislative process of the Old Lyme Zoning Commission. For that reason, all of their actions, deliberations and votes about which the plaintiffs' complain have violated their constitutional rights are protected by the doctrine of absolute, legislative immunity.

The doctrine of legislative immunity is well-rooted in history. In 1951, the United States Supreme Court first held that state legislators are immune from personal liability for their legislative acts. *See Tenney v. Brandhove*, 341 U.S. 367, 370, 377 (1951). In 1992, the Court of Appeals for the Second Circuit concluded that the *Tenney* rationale was applicable to local legislators, and held, in *dicta*, that city council members are entitled to absolute legislative immunity. *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73 (2d Cir. 1992). Six years later, the United States Supreme Court clarified any uncertainty among the Circuits about whether the doctrine of legislative immunity applied to all local elected officials. In *Bogan v. Scott-Harris,* 523 U.S. 44 (1998), the Supreme Court specifically held that local

officials are absolutely immune from suit under § 1983 for all their actions taken in the sphere of legislative activity. *Id*. "Regardless of the level of government the exercise of legislative discretion should not be inhibited by judicial interference or distorted by fear of personal liability." *Bogan*, 523 U.S. at 52, *citing Spallone v. United States*, 493 U.S. 265, 279 (1990).[1]

"Whether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the officials performing it." *Bogan*, 523 U.S. at 54, *citing Tenney*, 341 U.S. at 370, 377. In *Tenney*, the plaintiff, a candidate for Mayor of San Francisco, alleged that a California legislative committee falsely labeled him a "Red," and requested local authorities to prosecute him for subversive "un-American" activity. The plaintiff further asserted that the committee's hearings were held for "no legislative purpose," but rather were designed to "intimidate and silence [the] plaintiff and prevent him from effectively exercising his constitutional rights of free speech." *Tenney*, 341 U.S. at 370-71. The United States Supreme Court found that the legislators' activities were "within the legislative sphere" and dismissed the plaintiff's claim on the basis of legislative immunity. *Tenney*, 341 U.S. at 379. The Court explained that "[t]he claim of unworthy purpose does not destroy the privilege of [legislative immunity]." *Tenney*, 341 U.S. at 377.

The *Bogan* case also addressed claims of improper motive. *Bogan* involved a claim by the former director of Fall River's (Massachusetts) social service department. The plaintiff alleged that her job had been eliminated in retaliation for

---

[1] *Bogan* and *Tenney* each provide an excellent historical and common-law perspective on the

the exercise of her First Amendment rights.  In reversing both the District Court and Court of Appeals, the Supreme Court held that: (1) the act of dissolving a funded position is legislative in nature; (2) the Court could not consider the subjective intent of the legislators in passing on the defense of legislative immunity; and 3) the council members were absolutely immune. *See Bogan*, 523 U.S. at 972-973.

The holding in *Bogan* compels the entry of summary judgment in favor of the individual defendants, Fries, James, Marsh, Rison, Seifert and Colvin, in their individual capacities in the present case.  "Stripped of all considerations of intent and motive," the vote to amend the regulations constitutes an act of policy-making which shields the individual members from personal liability. *Bogan*, 523 U.S. at 55. Indeed, the Court has already concluded that the Challenged Regulations are supported by legitimate public health and safety concerns. *See* Def. Local Rule 56 Statement, ¶8.

In this case, the 1995 Amendments to the Regulations of the Old Lyme Zoning Commission were undertaken at duly noticed and authorized meetings of that Commission. *See* Def. Local Rule 56 Statement, ¶3. The members heard testimony, reviewed documents and deliberated over the reasons for the Amendments to the Regulations of the Old Lyme Zoning Commission. *See* Def. Local Rule 56 Statement, ¶4. Like other legislative bodies, they made choices about zoning issues, public health, safety and welfare. Irrespective of their intent, the

---

doctrine of absolute legislative immunity.

Amendments to the Regulations and the Regulations themselves have town-wide application and are quintessential expressions of policy and judgment by municipal officials, rationally related to the purpose of the Old Lyme Zoning Commission.

Based on the doctrine of absolute legislative immunity, the Court must conclude that plaintiffs' 42 U.S.C. § 1983 claims in the Amended Complaint dated May 29, 2001 fail against the individual Commission members as a matter of law as they are protected by legislative immunity.[2]

### D.   THE PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST FRIES, JAMES, MARSH, RISOM, SEIFERT, AND COLVIN IN THEIR INDIVIDUAL CAPACITIES ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

To the extent not protected by legislative immunity, the individual defendants are protected from liability from any claims that their actions violated the plaintiffs' constitutional rights as alleged in the Amended Complaint dated May 29, 2001.

### 1.   *The Doctrine of Qualified Immunity.*

It is well-established that the defendant would be shielded by qualified immunity as long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if its "contours [are] sufficiently clear that a reasonable official would understand that what he is

---

[2] This of course does not leave plaintiff without a remedy if in fact constitutional rights were violated. "[D]eterrents to legislative abuse may be greater at the local level," since municipalities

doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987); *see also Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003) ("clearly established" means that "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful'") (*quoting Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)). Ultimately, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir.1999).

It is more than just a defense; the doctrine of qualified immunity is an immunity from suit. *Locurto v. Safir,* 264 F.3d at 163. (emphasis added.). "[T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law"); *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took").

Qualified immunity is analyzed as follows:

---

may be held liable for constitutional violations. *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), *citing Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

> Our analysis of a qualified immunity claim consists of a three step inquiry. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999). First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the [defendants], he or she must demonstrate that defendants' actions were not objectively reasonable. *X-Men*, 196 F.3d at 66. This three step inquiry should typically be done in sequential order. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842, n. 5 (1998).

*Harhay v. Town of Ellington, et al.*, 323 F.3d 206, 211 (2d Cir. 2003).

This statement of the law succinctly captures just the sort of step-by-step, orderly methodology mandated by twenty years of Supreme Court precedent. Furthermore, the Court of Appeals recognized that the failure to establish any one step of the analysis grants qualified immunity to the defendant in question. *Harhay v. Town of Ellington, et al.*, 323 F.3d 206, 211-2 (2d Cir. 2003). Therefore, before applying the qualified immunity standard, the Court must ask whether there was a constitutional violation in the first instance. *See Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999).

2.    *The Commissioners Did Not Violate Clearly Established Constitutional Rights.*

While the individual defendants maintain they have no liability on the basis of legislative immunity, they also are protected by qualified immunity as it was not clearly established that as members of the Old Lyme Zoning Commission, it was unlawful for them adopt these regulations at duly noticed and authorized meetings of that Commission. *See* Def. Local Rule 56 Statement, ¶¶3-4. In the absence of

- 13 -

clearly established rights to the contrary, the plaintiffs' claims against the individual commissioners must fail. Moreover, this court has recognized that the underlying public health and safety concerns expressed by the Commissioners in the Challenged Regulations are legitimate and lawful. *See* Def. Local Rule 56 Statement, ¶8. According to the Second Circuit, "a zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 50 (2d Cir.2001) (*citing Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996)) (internal quotations omitted); *Bloom v. Zoning Bd. of Appeals of City of Norwalk*, 233 Conn. 198, 206-07, 658 A.2d 559 (1995) ("Courts are not to substitute their judgment for that of the [local boards] ··· and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised").

> 3.    *The Commissioners' Actions Were Objectively Reasonable.*

In this case, the individual defendants, appointed to the Old Lyme Zoning Commission, took legislative steps to deal with important issues of public health, safety, welfare and land use in the Town of Old Lyme.  In connection with the adoption of the Challenged Regulations, the members heard testimony, reviewed documents and deliberated over the reasons for the Amendments to the Regulations of the Old Lyme Zoning Commission.  *See* Def. Local Rule 56 Statement, ¶¶3-4. Like other legislative bodies, they made choices about zoning issues, lot size, public health, safety and welfare. Irrespective of their intent, the Amendments to the Regulations and the Regulations themselves have town-wide application and are

quintessential expressions of policy and judgment by municipal officials, rationally related to the purpose of the Old Lyme Zoning Commission. If these actions were not objectively reasonable, no person will ever aspire to public office if any citizen, through the courts, can second guess their honest, deliberative decisions of policy concerning public health, safety, welfare and land use and have that public official exposed to money damages.

Accordingly, the court should grant summary judgment in favor of the individual defendants on the plaintiffs' Amended Complaint dated May 29, 2001 on all federal claims.

### E. THE PLAINTIFFS' CLAIMS AGAINST FRIES, JAMES, MARSH, RISOM, SEIFERT, AND COLVIN IN THEIR OFFICIAL CAPACITIES ARE DUPLICATIVE OF THEIR CLAIMS AGAINST THE COMMISSION.

The plaintiff's claims against the individual members of the Old Lyme Zoning Commission in their official capacity are considered duplicative of naming the Old Lyme Zoning Commission and improper. Claims against public officials in their official capacity are considered to be claims against the municipality itself. As the Supreme Court held in *Brandon v. Holt*, 469 U.S. 464, 472, 105 S.Ct. 873, 878 (1985), "'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent'" (*quoting Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 (1978)).

In other words, "[i]t is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099

(1985). Thus, if the claim against the municipal entity fails, the claim against the individual employee or board member in their official capacity fails as a matter of law. As set forth in a separate motion for summary judgment and accompanying memorandum of law, the remaining defendants, including the Town of Old Lyme and the Town of Old Lyme Zoning Commission, maintain that no constitutional violation occurred.

Accordingly, the court should grant summary judgment in favor of the individual defendants in their official capacities on the plaintiffs' Amended Complaint dated May 29, 2001 on the federal claims.

### F.     WITH THE DISMISSAL OF ALL FEDERAL CLAIMS, THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS.

In addition and the alternative, the individual defendants submit that this Court, after having dismissed the plaintiffs' federal claims against the individual defendants, should decline to exercise supplemental jurisdiction over the pendant state law claims against them. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (C.A.2 1995) (same).  Accordingly, the Court should decline to extend its supplemental jurisdiction over the pendant state law claims against the individual defendants in the plaintiffs' Amended Complaint dated May 29, 2001 and dismiss said claims.

G.  **THE FACTS OF THIS CASE FAIL TO ESTABLISH A CAUSE OF ACTION UNDER THE CONSTITUTION OF THE STATE OF CONNECTICUT AGAINST THE INDIVIDUAL DEFENDANT COMMISSIONERS FRIES, JAMES, MARSH, RISOM, SEIFERT AND COLVIN.**

Despite their recitation of these claims in their complaint, the plaintiffs' these claims have no foundation in law and should be rejected. It cannot be much clearer: Article first, § 10, does not create new substantive rights. *Binette v. Sabo*, 244 Conn. 23, 30-31, 710 A.2d 688 (1998). There is no private right of action against the defendants in this regard. The same analysis should be applied to the plaintiffs' claims under Article First, Sections 8 and 20.

The Connecticut Supreme Court has been reluctant to create private causes of action for money damages under the Connecticut Constitution. *See generally, ATC Partnership v. Town of Windham*, 251 Conn. 597 (1999) (declining to recognize a cause of action for alleged violation of substantive due process rights under article first §8); *Kelly Property Development, Inc. v. Lebanon*, 226 Conn. 314 (1993) (same). To date, such a cause of action has been created in only one specific set of circumstance with respect to article first, §§ 7 & 9 of the state constitution.

The Connecticut Supreme Court has, under a given set of facts, recognized a private cause of action for money damages under article first, §§ 7 & 9 of the Connecticut Constitution for an unreasonable search and seizure and unlawful arrest by municipal police officers. *Binette v. Sabo*, 244 Conn. 23, 49-50 (1998). However, the *Binette* Court made clear that such a remedy is not available in every case which alleges state constitutional violations. The Court stated, "our decision to

recognize a ... remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. The Court held that "whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." *Id.* at 48.

The facts in *Binette* which led to the Court's willingness to recognize a cause of action for money damages under article first, §§ 7 & 9, are not present in this case. In *Binette*, the defendants, a municipal police chief and one of his officers, allegedly entered the plaintiffs' home without permission or a warrant. *Id.* at 26. The police chief allegedly threatened the wife with arrest and imprisonment and pushed her into a wall and over a table. *Id.* Then outside the home, the chief allegedly slammed the husband's head repeatedly against a car, and the other officer then struck the husband in the head and kicked him while he was on the ground experiencing an epileptic seizure. *Id.*

In *Peters ex rel. Estate of Peters v. Town of Greenwich*, 2001 WL 51671 (Conn.Super.) (Conn.Super.,2001), the plaintiff alleged a violation of the deceased's due process rights under article first, § 8 of the state constitution. In refusing to create a new cause of action under § 8, the court in *Peters* relied on the Connecticut Supreme Court's reasoning in *ATC Partnership v. Town of Windham, supra*, 251 Conn. 612-617; *Kelly Property Development, Inc. v. Lebanon, supra*, 226 Conn. 338-39 and *Binette v. Sabo, supra*, 244 Conn. 47-50, and the court's rationale in *Bazzano v. City of Hartford, supra*. The court in *Peters* was also influenced by the United

States Supreme Court's cautious response to suggestions that *Bivens*-type remedies be extended into new contexts. *Peters ex rel. Estate of Peters v. Town of Greenwich*, 2001 WL 51671 (Conn.Super.) (Conn.Super.,2001), *supra*. In finding that the plaintiff had not alleged facts sufficient to state a claim upon which relief could be granted, the court noted the availability of both common law and statutory remedies with which the plaintiff could seek redress. *Id*. Additionally, the court stated it "will not overstep its bounds, legislate and create a new cause of action under Article First, § 8, of the Connecticut constitution, thereby traversing the separation of powers doctrine. The weight of authority runs contrary to such a step." *Id.*

The same analysis should be applied in this case. Here, the individual defendants, volunteers and members of the Old Lyme Zoning Commission, voted to amend regulations governing zoning in the Town of Old Lyme. *See* Def. Local Rule 56 Statement, ¶¶3-4. While the plaintiffs claim that the regulations themselves are violative of their property rights, the Connecticut Constitution is not a remedy in search of a wrong.

Accordingly, summary judgment as a matter of law should be granted in favor of the individual defendants as to the plaintiffs' Amended Complaint dated May 29, 2001 alleging violations of the Connecticut Constitution.

H.     THE PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS
       AGAINST FRIES, JAMES, MARSH, RISOM, SEIFERT, AND
       COLVIN ARE BARRED BY THE DOCTRINE OF ABSOLUTE,
       LEGISLATIVE IMMUNITY.

If this Court recognizes a private right of action for money damages under

the Connecticut Constitution, a conclusion the defendants expressly reject, this

Court must recognize a corresponding doctrine of immunity to balance such an

expansion of a private right of action against governmental entities.  These

immunities must include absolute, legislative immunity as well as qualified

immunity, borrowed conceptually from federal precedent. With the recognition of

these complementary immunities, the plaintiffs' state constitutional claims fail for

the same reasons, as discussed above. Therefore, the individual defendants in their

individual capacities are entitled to summary judgment as they are protected by

absolute legislative and qualified immunity as discussed above.

I.     ALL STATE LAW CLAIMS AGAINST FRIES, JAMES,
       MARSH, RISOM, SEIFERT AND COLVIN ARE BARRED BY
       THE DOCTRINE OF GOVERNMENTAL IMMUNITY AS
       DEFINED BY CONN. GEN. STAT. §52-557N AND THE
       COMMON LAW.

       1.     *The Doctrine of Governmental Immunity.*

"[A] municipality is immune from liability for [negligence] unless the

legislature has enacted a statute abrogating that immunity."  *Pane v. Danbury*, 267

Conn. 669, 677, 841 A.2d 684 (2004).  Conn. Gen. Stat. §52-557n(a)(2) removes

municipal liability for "negligent acts or omissions which require the exercise of

judgment or discretion".  Also, "[w]hile [a] municipality itself was generally immune

from liability for its tortious acts at common law ... its employees faced the same personal tort liability as private individuals ... [A] municipal employee ... has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (internal quotation marks omitted). *Doe v. Board of Education*, 76 Conn.App. 296, 300, 819 A.2d 289 (2003). Therefore, barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion. *Elliot v. Waterbury*, 245 Conn. 385, 411, 715 A.2d 27 (1998).

"The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Martel v. Metropolitan Dist. Com'n*, 275 Conn. 38, 881, A.2d 195 (2005). "[T]he determination as to whether governmental immunity may successfully be invoked by a municipality turns not on the plaintiff's theory of negligence but rather, on the character of the act or omission complained of in the complaint." *Segreto v. Bristol*, 71 Conn. App. 844, 854, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A2d 1132 (2002). "[T]he determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder." (citations omitted; internal quotation marks omitted.) *Lombard v. Edward J. Peters, Jr., P.C*, 749 A.2d 630, 634, 252 Conn. 623, 628+

(2000). It is question of law if the nature of the acts complained of is "apparent from the complaint". *Evon v. Andrews*, 211 Conn. 501, 505-7, 559 A.2d 1131 (1989).

> **2.** **Because Fries, James, Marsh, Risom, Seifert And Colvin Were Volunteers, All Claims Against Them Are Barred By Conn. Gen. Stat. §52-557n(c).**

In addition to the reasons set forth above, the individual defendants are further entitled to governmental immunity pursuant to Conn. Gen. Stat. § 52-557n(c). That section states in pertinent part:

> Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury occurring on or after October 1, 1992, resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities on such board, commission, committee or agency if such person was acting in good faith, and within the scope of such person's official functions and duties.

There is no dispute that Fries, James, and Colvin were unpaid volunteers in their service as elected members of the Old Lyme Zoning Commission. *See* Def. Local Rule 56 Statement, ¶2. Accordingly, since no issue of material fact exists to dispute the unpaid, voluntary nature of each Commissioner's position with the Town, they are further entitled to immunity from plaintiff's state law claims pursuant to C.G.S. § 52-557n(c).

3.    ***All Claims Against Fries, James, Marsh, Risom, Seifert And Colvin Concerning The Decisions To Adopt/Amend Regulations, And All The Choices With Respect To Zoning Are Discretionary, Governmental Decisions That Are Protected By Governmental Immunity And No Exceptions Are Applicable.***

There are three recognized exceptions to the doctrine of municipal immunity: (1) where the circumstances make it apparent to the public officer or employee that his failure to act would be likely to subject an identifiable person to imminent harm (the so-called "identifiable person / imminent harm exception); (2) where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. *Elliott v. City of Waterbury*, 245 Conn. 385, 422, 715 A.2d 27 (1998); *Purzycki v. Town of Fairfield*, 244 Conn. 101, 108, 708 A.2d 937 (1998); *Evon v. Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). The plaintiffs cannot avail themselves to any of the aforementioned exceptions to the doctrine of municipal immunity.

After a brief consideration of the second and third exceptions, they may be summarily rejected. The plaintiffs have not pleaded the identity of a statute that specifically provides for a cause of action against either the employees for failure to enforce a certain law.  In fact, no specific statute provides for such an action.  They may claim that Conn. Gen. Stat. §§  22a-16 or 22a-18 abrogate immunity. This conception is erroneous. It is well-established that few statutes abrogate the general rule of municipal immunity. Those statutes abrogating immunity include Conn. Gen. Stat. §§ 7-101a, 7-308, 7-465, and 13a-149. "The state legislature possesses the

authority to abrogate any governmental immunity that the common law gives to municipalities." *Ryszkiewicz v. New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984). A municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. *Williams v. New Haven, supra*, 243 Conn. 766-67. "Statutes that abrogate or modify governmental immunity are to be strictly construed . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." *Rawling v. New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988). "The court is to go no faster and no further than the legislature has gone. . . . A legislative intention not expressed in some appropriate manner has no legal existence." *Edmundson v. Rivera*, 169 Conn. 630, 633, 363 A.2d 1031 (1975).

Nothing in section 52-557n mentions any exception to the rule of municipal immunity that would allow liability for injuries through §§ 22a-16 or 22a-18. In *Tryon v North Branford*, the court rejected a claim that section 22-357, the so-called dog bite statute, trumped the general principle of municipal immunity. While section 22-357 imposed strict liability for dog bites, such strict liability did not extend to municipalities or their agents. "The legislature's intent is derived `not in what it meant to say, but in what it did say." *Tryon v. North Branford*, 58 Conn. App. 702 (2000) *citing Daily v. New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986) and *Lynn v. Haybuster Mfg., Inc.,* 226 Conn. 282, 290, 627 A.2d

1288 (1993).  The *Tryon* court observed that "[i[n the absence of explicit language in § 52-557n modifying the common law rule of governmental immunity for claims of strict liability pursuant to § 22-357, the statute should not be so construed." Likewise, the plaintiffs have not pleaded that the individual defendants acted with malice, wantonness or with intent to injure.   Accordingly, the second and third exceptions do not apply.

The first exception identified, the so-called "identifiable person/imminent harm" exception, is similarly inapplicable. The case law interpreting the exception uniformly holds that the exception applies to imminent harm to persons, not property. *See Evon v. Andrews*, 211 Conn. 501, 508, 559 A.2d 1131, 1135 (1989) (granting governmental immunity to municipal officials because plaintiffs' decedents were not subject to imminent harm based on the defendants' alleged failure to prevent a fire in which the decedents died); *see also Purzycki v. Town of Fairfield*, 244 Conn. 101, 708 A.2d 937 (1998) (finding imminent harm existed because the danger was foreseeable in a case involving a schoolchild who was injured en route to recess in an unsupervised area); *Shore v. Town of Stonington*, 187 Conn. 147, 444 A.2d 1379 (1982) (refusing to apply the "identifiable person/imminent harm" exception to a case involving a police officer's failure to arrest an allegedly intoxicated person during a traffic stop when the person later collided with another car, the driver of which later died from injuries sustained during the collision); *Sestito v. Groton*, 178 Conn. 520, 423 A.2d 165 (1979) (finding that a trial court erred in directing a verdict in favor of the police officer/defendant

in a case in which the police officer did not intervene in a bar-related brawl until he heard gunshots, even though he was on-duty and observed the argument from its beginning).  Indeed, the defendants have not found any case where the Connecticut Supreme Court has applied or indicated its willingness to extend this exception to imminent harm to property – real or personal. *See Kendrick v. Town of Winchester*, 11 F.Supp.2d 212 (D.Conn.1998).

Even if the exception did apply, application of the criteria mandates a ruling in favor of the defendants. In its discussion of the identifiable person/imminent harm exception, the Supreme Court in *Burns v. Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), set forth criteria to evaluate whether that exception was applicable. Among others, the *Burns* court considered the immanency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the ability to identify the particular victim. The *Burns* court also recognized criteria used by other courts in considering similar exceptions to their respective doctrines of governmental immunity. The *Burns* court reviewed favorably criteria that considered "whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts, whether the relationship was of a voluntary nature, the seriousness of the injury threatened, the duration of the threat of injury, and whether the persons at risk had the opportunity to protect themselves from harm." *Burns v. Board of Education,* 228 Conn. 640, 638 A.2d 1 (1994) (citations omitted).

Under the specific facts in that case, the court in *Burns* found that the identifiable person/imminent harm exception applied where the accident could not have occurred at any time in the future, that the danger was limited to the duration of the temporary icy condition in a particular area of the campus, and defendant school superintendent owed "special duty" to minor schoolchild. *Burns v. Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994). The present case is not like Burns at all. The plaintiff here does not have the "immediacy" of harm characteristic of the claims made in *Sestito v. Groton*, 178 Conn. 520, 528, 423 A.2d 165 (1979), where the court recognized the identifiable person/imminent harm exception applicable where a police officer passively watched a drunken brawl until someone was shot. The Supreme Court has construed the identifiable person at imminent harm exception "to apply not only to identifiable individuals but also to narrowly defined classes of foreseeable victims." *Purzycki v. Fairfield*, 244 Conn. 101, 108 (1998). The "identifiable person at imminent harm" exception involves a three-part inquiry that requires all parts to be satisfied in order for the exception to apply. "Demonstration of less than all of these criteria is insufficient." *Doe v. Petersen*, 279 Conn. 607, *620, 903 A.2d 191, **200 (Conn.,2006).

In *Evon v. Andrews, supra*, 211 Conn. 501, the plaintiffs' decedents died from a fire in a multi-family dwelling. *Id.* at 502. The plaintiffs claimed that even though the duties owed their decedents were discretionary, the decedents were "a group that was discrete, readily identifiable, and subject to imminent harm" *Id.* at 507, and therefore, the identifiable victim at imminent harm exception to

governmental immunity applied to save their negligence claim.  The Supreme Court

did not agree.  *Id.*  In refusing to expand the scope of the identifiable victim at

imminent harm exception to the facts in *Evon*, the Court stated at 211 Conn. at 508:

> The risk of fire implicates a wide range of factors that can occur, if at
> all, at some unspecified time in the future.  The class of possible
> victims of an unspecified fire that may occur at some unspecified time
> in the future is by no means a group of "identifiable persons" within
> the meaning of Shore v. Stonington.  Furthermore, the plaintiffs'
> decedents were not subject to imminent harm … the fire could have
> occurred at any future time or not at all.  We cannot accept the
> proposition that the plaintiffs' decedents in this case were readily
> identifiable victims subject to imminent harm.  [T]he adoption of a rule
> of liability where some kind of harm may happen to someone would
> cramp the exercise of official discretion beyond the limits desirable in
> our society.

The test is conjunctive; "[T]he core requirements of the "imminent harm"

exception are analyzed conjunctively. To prevail, [a plaintiff] must demonstrate that

[he/she] was an identifiable person and was subject to imminent harm and that a

public officer's conduct subjected her to that harm, despite the apparent likelihood

of harm . . . "Demonstration of less than all of these criteria is insufficient." *Doe v.

Petersen*, 279 Conn. 607, *620, 903 A.2d 191, **200 (Conn.,2006).

In the present case, the plaintiffs claim harm in the form of a failure of the

individual defendants to adopt plans to build a secondary treatment facility for

wastewater.  Aside from the obvious – what role or duty would the individual

members of the Old Lyme Zoning Commission have in this process, what is the

harm? Who will be harmed? When will the harm occur? In the future?  Is this class

of persons readily identifiable to the individual members of the Old Lyme Zoning

Commission? Common sense answers each of these questions – even if the harm

were as the plaintiffs claim, it is not limited in time, scope or to a readily

ascertainable class

Therefore, the individual defendants in their individual capacities are

entitled to summary judgment as they are protected by governmental immunity as

to the plaintiffs' state law claims.

## III.    <u>CONCLUSION.</u>

WHEREFORE, the individual defendants, ERIC FRIES, GEORGE JAMES,

JANE MARSH, THOMAS RISOM, WALTER SEIFERT, and SHARON COLVIN

pray that their Motion for Summary Judgment dated February 9, 2007 is granted in

all respects.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
ERIC FRIES, GEORGE JAMES,
JANE MARSH, THOMAS RISOM,
WALTER SEIFERT, and SHARON
COLVIN.

<u>/s/ John J. Radshaw, III</u>
John J. Radshaw, III, ct19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (f)

## <u>C E R T I F I C A T I O N</u>

     This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 9th day of February 2007.

Kenneth R. Slater, Jr., Esquire       Eric D. Knapp, Esquire
HALLORAN & SAGE, LLP       BRANSE, WILLIS & KNAPP, LLC
One Goodwin Square       148 Eastern Blvd., Suite 301
225 Asylum Street       Glastonbury, CT  06033
Hartford, CT  06103-4303


<u>/s/ John J. Radshaw, III</u>
John J. Radshaw, III