APPROVED.

## OLD LYME ZONING COMMISSION
## MINUTES OF PUBLIC HEARING
## MONDAY, APRIL 10, 1995

The Old Lyme Zoning Commission held a Public Hearing on Monday, April 10, 1995, at the Lyme-Old Lyme High School. Members present: Eric Fries (Chairman), George James (Vice Chairman), Jane Marsh (Secretary), Thomas Risom, Walter Seifert and Sharon Colvin. Others present were Marilyn Ozols (Zoning Enforcement Officer), Attorney David Royston, Judith R. Brown (Clerk Pro Tem), and about 75 interested citizens.

Public Hearing - To amend the Old Lyme Zoning Regulations to add a new Section 21.2.4 which would establish specific requirements for construction of a year-round use dwelling on a vacant lot or reconstruction of a year-round use dwelling in the R-10 Zone; to add a new Section 21.2.5 which would establish specific requirements for conversion of seasonal use dwellings to year-round use; to renumber existing Section 21.2.4 as 21.2.6; and to amend Section 21.1.1 (Schedule A-1) Permitted Uses in Residence and Rural Distsricts to reflect the new requirements.

Chairman Fries convened the meeting at 6:10 PM and introduced all the members. He appointed Walter Seifert as the voting alternate.

Chairman Fries read into the record the legal notice (Exhibit A) which was published in The Day on March 30, 1995 and April 6, 1995.

Chairman Fries then read into the record the proposed amendments (Exhibit B). He noted the changes made since the last public hearing were: 1) separate sections made for new construction and conversions, 2) the requirement of land was reduced from 20,000 square feet to 10,000 square feet, 3) the established date for conversion was changed from 1966 to January 1, 1992, and 4) a provision was added which indicates that any designation by the Zoning Enforcement Officer is based on zoning only and does not in any way indicate compliance with any other applicable code or regulation such as the Public Health Code, Fire Code or Building Code.

Chairman Fries next read the following list of agencies that the proposed amendments had been referred to: 1) Old Lyme Planning Commission, 2) Connecticut River Estuary Regional Planning Agency, 3) Southeastern Connecticut Council of Governments, 4) Connecticut River Gateway Commission, 5) Department of Environmental Protection, 6) Town Clerk of Lyme, and 7) Town Clerk of East Lyme (Exhibit C).

Chairman Fries next read into the record the following responses from the above mentioned agencies:

1) Old Lyme Planning Commission, letter from Leroy Strohla, Chairman, dated April 10, 1995 indicating that the Planning Commission approved the proposed amendments to the Zoning Regulations at their March 9th meeting as they considered these amendments to be in accordance with the plan of development (Exhibit D).

2) Connecticut River Estuary Regional Planning Agency, letter from Winifred Olson, Planner I, dated March 9, 1995 indicating that the new Sections will serve as a model for other communities and certainly pose no intertown concerns (Exhibit E).

Received for Record 5-17-95 ... at 3 h 10 m p

Received by [signature]

**EXHIBIT C-2**

3) Southeastern Connecticut Council of Governments, Regional Planning Commission, letter from Russell Welles, Chairman of the Reference Committee, dated March 29, 1995 indicating that the committee found no adverse intermunicipal impact (Exhibit F).

4) Connecticut River Gateway Commission, letter from Irwin Wilcox, Chairman, dated March 24, 1995 indicating they found all proposed changes consistent with Gateway objectives and standards and that no issues were raised (Exhibit G).

Chairman Fries indicated that DEP and the Town Clerks of Lyme and East Lyme do not write unless they have a specific concern. It is noted for the record that no comments were received from DEP, the Town Clerk of Lyme or the Town Clerk of East Lyme.

Chairman Fries next asked for public comments requesting that anyone speaking in favor speak first and anyone speaking in opposition speak afterwards. He also asked that all comments be limited to the subject regulation and not other issues.

Richard Sagan, 68 Connecticut Road, President of the Old Lyme Federation of Beaches, asked for clarification of the word "continuously" as used at the top of page 3, second paragraph. Attorney Royston explained that any nonconforming use that had been abandoned would lose its legal privilege for that use. He explained that if a year round use was abandoned, the legal privilege would be lost. He further explained that continuously does not necessitate occupation during the entire period of time but rather that the property continued as a year round use dwelling during the entire period of time. Mr. Sagan also asked for clarification of the 1966 and 1992 dates. Chairman Fries explained the 1992 date is the established date for conversions for the purposes of this amendment and the 1966 date is the effective date of the Housing Ordinance of 1966.

Bill Clark, 55 Connecticut Road, asked to clarify what percentage of the beach community would be effected by this change. Chairman Fries noted this had been researched previously and that the vast majority of lots are not larger than 10,000 square feet. Vice Chairman James noted a survey of the beach community was previously done and there were 393 lots having 10,000 square feet or more and 657 lots having 5,000-10,000 square feet.

Lou Russo, 81 Superior Avenue, Newington, asked if continuous meant one would have to continuously have a furnace. As an example, he asked if someone rents a piece of property for year round use and then that individual moves out for a couple of months, do you lose your right. Chairman Fries responded no, you would not lose your right.

Harold Hunter, 83 Shore Drive, asked if the other R10 Zones in town are also effected by these changes. Chairman Fries responded yes. He also noted that passage of this amendment would in no way change anything that currently exists. In other words, if one has a year round use on a 5,000 square foot lot that has already been certified, this is no way would effect that use. Mr. Hunter also asked if those lots in the R10 Zone at Rogers Lake that meet the R10 requirements would still be useable and buildable. Chairman Fries responded yes.

Harold A. Olson, 58 Corsino Avenue, also asked for clarification regarding the 1966 date. Chairman Fries noted the Housing Ordinance went into effect in 1966 and that if your house was built even before 1966, for a conversion to take place it would have to comply with the 1966 Housing Ordinance.

Old Lyme Zoning Commission
April 10, 1995 - Public Hearing Minutes
Page 3

Marguerite Hoyle, Point O Woods Beach, asked where one could get a copy of the town ordinances. First Selectman Jim Rice indicated anyone could get copies of town ordinances from Michelle in the Selectmen's Office.

Lou Russo spoke again and asked how many R10 Zones there were in Old Lyme. Chairman Fries responded south of Route 156 and in the Rogers Lake area. Mr. Russo indicated his property would be limited to a certain thing by these new rules which he wasn't limited to when he bought the property. Chairman Fries reiterated these regulations stipulate what is required to build a new year round dwelling and to convert an existing seasonal dwelling to a year round structure. He further noted this ordinance in no way represents the taking of people's property rights but it does have certain requirements for what can take place in the R10 Zone.

Ed Schmidt, 47 Portland Avenue, indicated he had contacted an out-of-state beach and asked them what they did in regards to zoning and nonconforming lots. York Beach, Maine, sent him a copy of their regulations which he briefly reviewed and gave a copy to Chairman Fries. He noted nothing has been done to protect the nonconforming lots in this regulation. In order to do anything, one must go to the Zoning Board of Appeals which is expensive. Chairman Fries indicated this is being handled elsewhere in the regulations and some changes would be proposed so that everything doesn't have to go to ZBA.

Eugene Gallo, 18 Pond Road, had a question regarding grandfathering. He noted his property has been in his family for 86 years. It is nonconforming and he can't do whatever he wants to on it. He would like to live there year round but he is limited to seasonal. What makes it conforming? This is not fair.

Larrye DeBear, 17 Clifton Road, indicated we are dealing with comments that have to do with nonconforming lots and with people who have lived or whose families have lived on their properties for a long period of time and now feel something is being taken away from them. And nothing is being done to help them. With regard to Section 21.2.5(b), Mr. DeBear noted there is no protection for the homeowner and there are no conditions as to when the Zoning Enforcement Officer has reason to make such determination. He noted a lot of people would probably feel better if there were some conditions under which the ZEO made such determinations. In addition, people who have year round homes would have some assurance it would continue as a year round home. Attorney Royston noted one of the purposes of that section was to eliminate the problem regarding the assessor's cards. He further explained the purpose of this section was to 1) have a definite procedure in place whereby a determination could be made by the ZEO, and 2) if a house is designated as a seasonal use dwelling, the owner of that property would be notified by mail and advised that if they dispute that designation, they do have a right of appeal. Attorney Royston further explained the reason for using the words 'time to time' is because it would be impossible for the ZEO to make all those determinations at the same time. Mr. DeBear again noted there should be very strict rules governing under what conditions the ZEO can make those changes. Attorney Royston noted that determination is addressed in part by the regulation itself and in part by the requirements of the law. Mr. DeBear suggested the homeowner be given the opportunity to discuss this with the ZEO before a final determination is made. Chairman Fries noted the Commission will be talking about advance notice to the homeowner and that this procedure will not be arbitrary.

Bertram Ibelle, 34 Billow Road, indicated he bought his property in the early '80's and it has been continuously occupied for well over 20 years. It is less than 10,000 square feet, more than 5,000 square feet and it has it's own well. He noted he didn't know where he stands

Old Lyme Zoning Commission
April 10, 1995 - Public Hearing Minutes
Page 4

with this and will the Commission be telling him he cannot live in his own home? He also objected to the timing of this meeting indicating they were told last fall that no meeting of this importance would take place when the summer residents were not available. Chairman Fries noted he would think that if the property has been occupied year round for the last 20 years then it would be designated as a year round use but Mr. Ibelle would have to check with the ZEO. Regarding the issue of the timing of this meeting, Chairman Fries noted this was discussed with Dick Sagan, President of the Federation of Beaches, and this was the time that was chosen. He reiterated that a conscious effort was made with the Federation of Beaches to do the right thing in holding this meeting.

Dick Sagan, President of the Federation of Beaches, spoke again. He noted the Commission wanted to hold the meeting in March and he advised them against it.

Ed Schmidt spoke again noting that he hoped nonconforming doesn't mean that those homeowners are not welcome. Chairman Fries reiterated that was not the case and that anyone can be nonconforming to the Zoning Regulations anywhere in the town.

Tom Stanton, Center Beach Avenue, thanked everyone for coming and wanted to know if the town notified all the taxpayers. Chairman Fries responded no as it was not a requirement to notify all the taxpayers. He did indicate, however, that the requirement for public notice in the newspaper was fulfilled and the Commission worked through Dick Sagan of the Federation of Beaches. Chairman Fries reiterated the Commission complied with all statutory notification requirements.

Barbara Schmidt, 47 Portland Avenue, asked if the Commission could revisit the regulation for the existing properties since a sample has been received from an out-of-state community. Chairman Fries noted all comments and concerns expressed here will be discussed before any decision is made. Ms. Schmidt also asked if another public hearing could be held later in the season when more homeowners might be present.

As no one else wished to speak either in favor or in opposition, Chairman Fries closed the public hearing at 7:45 PM. He thanked everyone for coming and expressing their concerns and comments.

Respectfully submitted,

Judith R. Brown, Clerk Pro Tem