UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., CHARLES PARSONS, VICTORIA PARSONS and JOAN BYER,<br><br>*Plaintiffs,*<br><br>v.<br><br>TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, ERIC FRIES, GEORGE JAMES, JANE MARSH, THOMAS RISOM, WALTER SEIFERT, SHARON COLVIN and MARILYN OZOLS,<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>3:00 CV 0097 (EBB)<br><br><br><br><br><br><br><br>FEBRUARY 20, 2007 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY THE TOWN OF OLD LYME AND TOWN OF OLD LYME ZONING COMMISSION AND MARILYN OZOLS

The defendants, TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, and MARILYN OZOLS, submit the following memorandum of law in support of their Motion for Summary Judgment dated February 20, 2007.

## I.    BACKGROUND.

The plaintiffs, South Lyme Property Owners Association, Inc. ("Association"), Charles Parsons, Victoria Parsons and Joan Byer, brought the instant case to invalidate certain regulations of the Old Lyme Zoning Commission that limit the use of the property of the individual plaintiffs and allegedly the properties of the members of the Association, on the basis that such limitations violate the United States Constitution and the Connecticut Constitution. Specifically, the plaintiffs

**ORAL ARGUMENT IS REQUESTED**

claim that the regulations violate their equal protection rights, procedural due process rights, substantive due process rights, and amount to a takings. The plaintiffs also claim that all defendants have damaged the public trust in the environment in violation of Conn. Gen. Stat. § 22a-16 and § 22a-18. *See* Pls. Amended Complaint, 5/29/2001, Doc. Entry #24.

The original complaint in this case was dated December 29, 1999 and was served upon any defendant no earlier than that date - December 29, 1999. *See* Def. L.R. 56 Stmt, ¶1; **Exhibit A**, Summons & Complaint dated December 29, 1999 (Doc. Entry #1). The complaint was later amended and that is the operative complaint. *See* Doc. Entry #24.

This memorandum of law supports only the motion for summary judgment that pertains to the claimed liability of the Town of Old Lyme, the Town of Old Lyme Zoning Commission and Marilyn Ozols, the former Zoning Enforcement Officer. The remaining co-defendants, Fries, James, Marsh, Risom, Seifert and Colvin, all regular members or alternate members of the Old Lyme Zoning Commission, have submitted a separate motion for summary judgment and memorandum of law in support of same under separate cover.

Essentially, the plaintiffs' claims, other than procedural due process, are fatally defective as discussed herein. The only claim in question is whether the government's interest in the determination process – that is, whether other methods are unreasonable, unworkable, and cost prohibitive – is the dispositive inquiry in the present case.

The defendants, TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION and MARILYN OZOLS, now move for summary judgment on all aspects of the plaintiffs' Amended Complaint dated May 29, 2001 (Doc. Entry #24).

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

A district court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). A material issue is a "dispute over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. Thus, "[a] reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

The moving party must demonstrate the absence of any genuine issue of material factual, and that it is entitled to judgment as a matter of law. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *McPherson v. Coombe, supra*, 174 F.3d at 280. "When a motion for summary judgment is made and supported . . .

an adverse party may not rest upon the mere allegations or denials of [its] pleading,
but the adverse party's response, by affidavits or as otherwise provided in [Rule 56],
must set forth specific facts showing that there is a genuine issue for trial."
Fed.R.Civ.P. 56(e); *see Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S.
574, 586-87 (1986).

Nevertheless, the non-moving party may not "rely on mere speculation or
conjecture as to the true nature of the facts to overcome a motion for summary
judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied,
480 U.S. 932 (1987). As "the mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported motion for summary
judgment; the requirement is that there be no genuine issue of material fact."
*Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 247-48. Rather, the party
opposing summary judgment must produce specific facts sufficient to establish that
there is a genuine factual issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317,
322-23 (1986).

If the nonmoving party has failed to make a sufficient showing on an
essential element of his case with respect to which he has the burden of proof at
trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any
material fact,' since a complete failure of proof concerning an essential element of
the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at
322-23. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14,

18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). *See Schacht v. Wisconsin Dep't of Corrs.*, 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events"); *rev'd on other grounds*, 524 U.S. 381 (1998).

> ### B.   THE PLAINTIFF ASSOCIATION LACKS STANDING; ACCORDINGLY, SUMMARY JUDGMENT IS PROPER AS TO ALL CLAIMS BROUGHT BY THE ASSOCIATION IN FAVOR OF THE DEFENDANTS.

In the present case, the plaintiffs include three natural persons and one body corporate – the South Lyme Property Owner's Association, Inc.  The Association, as it has alleged in the complaint, was formed to challenge those portions of the Old Lyme zoning regulations that its members believe are ultra vires acts of the Commission and unconstitutional takings of their property.  It is undisputed that the Association does not own any property in Old Lyme and therefore lacks any standing of its own.  The Association's purpose is to establish third-party standing to vindicate the rights of its members.  In the present case, the Association lacks associational standing to sue and must be dismissed from the case. *See* Def. L.R. Stmt. 2/20/07, ¶¶1-6.

> ### 1.   *The Doctrine of Third-party or "Associational" Standing.*

"Even where an association lacks standing to sue in its own right because it has not itself suffered an injury-in-fact, it will nevertheless have "standing to bring suit on behalf of its members when: (a) its members would otherwise have standing

to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The first part of the test set forth in *Hunt* requires that the association's members would have standing to sue in their own right.  In order to establish individual standing, a plaintiff must show that: "(1) it has suffered an injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  An organization lacks standing to assert claims for relief on behalf of its members where • • •"the relief requested [would] require [ ] the participation of individual members in the lawsuit "*Bano v. Union Carbide Corp.*, 361 F.3d 696, 714-15 (2d Cir.2004); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

2.    *The Association Lacks Third-Party or "Associational" Standing.*

i.    <u>At Least One Member Does Not Have Standing To Sue In Their Own Right On The Procedural Due Process Claims In The Amended Complaint.</u>

The Association advances the same claims as the individual plaintiffs: procedural due process, equal protection, substantive due process and a violation of Conn. Gen. Stat. §§ 22a-16 and 22a-18.  An association need only have one member who could bring suit in their own capacity to satisfy this portion of the standing test. For the due process claims, the Association cannot maintain standing.

Generally, exhaustion of administrative remedies "should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of the State of Fl.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, when the claim is based upon the procedural due process clause of the fourteenth amendment, the rule is different. The rights which form the basis of a procedural due process claim are not "independent statutory rights accorded by Congress." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Supreme Court explained the reason that exhaustion of administrative remedies is required in procedural due process claims, even though it is not required in other claims brought pursuant to § 1983, as follows:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has

occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (internal citations omitted).

For the procedural due process claims, there is no evidence of exhaustion, an express requirement of any procedural due process claim.  Although many members of the Association received preliminary determination letters and final determination letters, no one has exhausted the administrative appeal process. Not one member challenged the process in the present case after receiving a preliminary determination and a final determination under the "challenged regulations" by completing the administrative process through appeals in the Connecticut Superior Court to judgment.  Because no one member of the Association has exhausted administrative appeal rights, the Association lacks standing to bring a procedural due process claim.  Accordingly, the Association lacks standing and must be dismissed.

      **ii.**     **The Federal Claims Asserted By The Association And The Relief Requested Requires The Participation Of Individual Members In The Lawsuit Thereby Eliminating Associational Standing**

An organization lacks standing to assert claims for relief on behalf of its members where "the relief requested [would] require [ ] the participation of individual members in the lawsuit." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714-15 (2d Cir.2004), *See also, Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45

L.Ed.2d 343 (1975). In *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d

Cir.1993), the court upheld a ruling that an association of landlords lacked standing

to bring an "as-applied" Takings Clause challenge to a rent-control law on behalf of

its members because the Court "would have to engage in an ad hoc factual inquiry

for each landlord who alleges that he has suffered a taking," including

"determin[ing] the landlord's particular return based on a host of individualized

financial data, and • • • investigat[ing] the reasons for any failure to obtain an

adequate return." An organization seeking to recover damages on behalf of its

members lacks standing because whatever injury may have been suffered is

peculiar to the individual member concerned, and both the fact and extent of injury

would require individualized proof.' *Bano v. Union Carbide Corp., supra* 361 F.3d

714 *citing Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir.1993). "It is

generally accepted that associational standing is precluded where the organization

seeks to obtain damages on behalf of its members. *Juvenile Matters Trial Lawyers

Ass'n v. Judicial Dept*, 363 F.Supp.2d 239D.Conn. 2005.

   Here, it is undisputed that the plaintiffs seek money damages for the alleged

lost value of their properties as a result of the seasonal use restriction.  There is

evidence that the properties owned by the Association's members vary in size, cost,

value, and length of ownership.  Some properties may have been acquired after the

amendments, others before.  There is no evidence that all of the members own

property in Old Lyme. With respect to proof of establishing a non-conforming use,

the proof will differ on a per person basis as many if not all have no evidence of an

alleged off-season use prior to 1995. Moreover, questions of damages will require individualized proof particularly as there are different improvements, terms of ownership, and all the other such factors, including rental income and the like. *See* Def. L.R. Stmt. 2/20/07, ¶¶1-6.

Accordingly, the Association lacks associational standing to prosecute the federal claims and it should, therefore, be dismissed from this case.

### C. ALL CLAIMS BY CHARLES PARSONS MUST BE DISMISSED BECAUSE HE DOES NOT OWN ANY REAL PROPERTY IN THE TOWN OLD LYME AND THEREFORE LACKS STANDING; ACCORDINGLY, SUMMARY JUDGMENT IS PROPER AS TO ALL FEDERAL CLAIMS BY CHARLES PARSONS IN FAVOR OF THE DEFENDANTS.

Property rights are at issue in this case. The individual plaintiffs must have standing, one way or another. Charles Parsons does not have standing as he lacks a property interest in any real property in Old Lyme. At his deposition on July 2006, Charles Parsons testified that he had transferred back and forth the real property at 11 Brookside Drive, Old Lyme, CT to his wife and co-plaintiff, Victoria Parsons, in the late 1990s and early 2000s for business reasons. Notably, Charles Parsons verified the plaintiffs' original complaint when it was filed in state court prior to removal. In that complaint, Parsons averred that he owned property in Old Lyme. By his own sworn testimony in July 2006, he testified that he no longer owns that property. *See* Def. L.R. Stmt. 2/20/07, ¶11. He does not now have an ownership interest in 11 Brookside Drive or any other real property in Old Lyme, CT. While he owned the property with his wife and co-plaintiff, Victoria Parsons, he is not an owner of record at this time. Absent ownership, Charles Parsons does not have an

injury-in-fact that qualifies him for standing to complaint to this court. Accordingly, all of Charles Parsons' claims must be dismissed because he lacks standing and a property interest in this case.

>    **D.    BECAUSE PLAINTIFFS CHARLES PARSONS, VICTORIA PARSONS, AND JOAN BYER HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES, SUMMARY JUDGMENT IS PROPER AS TO THEIR PROCEDURAL DUE PROCESS CLAIMS IN FAVOR OF THE DEFENDANTS.**

Before addressing substantive due process/taking claim, the defendants argue that the individual plaintiffs' procedural due process claim is without merit as they have failed to exhaust their administrative remedies.  In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of " 'an opportunity ⋯ granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis added) (citations omitted).  Charles Parsons, Victoria Parsons and Joan Byer could have sought meaningful review of the Old Lyme ZBA decisions within the state judicial system, but they chose instead to commence the present action. "The availability of such recourse, as a matter of law, precludes finding that the defendants' conduct violated plaintiffs' rights to procedural due process under the fourteenth amendment." On the facts of this case, this Court cannot disagree. *See Cohen v. City of Philadelphia*, 736 F.2d 81, 85-86 (3d Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *Creative Env'ts. Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); *see also Parratt v.*

*Taylor*, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1916-17, 68 L.Ed.2d 420 (1981) (deprivations of property attributable to unauthorized conduct of state officials do not violate due process clause if state law provides adequate post-deprivation remedy). See also, *Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Here, the individual plaintiffs could have availed themselves of a state forum to review the constitutionality of the defendants' actions, but chose not to do so. *See* Def. L.R. Stmt. 2/20/07, ¶¶7-16. Hence, this Court must conclude that the individual plaintiffs' procedural due process claims are without merit. It is undisputed that neither the Parsons nor Byer commenced an action in superior court to appeal the adverse decision of the Old Lyme ZBA concerning their seasonal use restriction. The Parsons, surprisingly, never even appealed to the Old Lyme ZBA. On that record, their procedural due process claims fail as a matter of law. Our Connecticut state law zoning appeal process is not futile. Therefore, the procedural due process claims alleged by the individual plaintiffs must be dismissed.

### E.   NEITHER THE CHALLENGED REGULATIONS NOR THE POLICY ADOPTED FOR ENFORCEMENT OFFEND CONSTITUTIONAL REQUIREMENTS OF PROCEDURAL DUE PROCESS.

Familiarity is assumed with the court's prior decisions in this case concerning the plaintiffs' application for a temporary restraining order and with the defendants' efforts to dissolve that injunction. A fair reading of those decisions indicates that the balancing test between the first two elements has tipped, in the estimation of the court, in favor of the plaintiffs.  The Court, however, observed on several occasions that it did not have sufficient evidence to fully evaluate the Matthews test, considering the government's interest in the process. In that instance, the court observed that a registration system could be less intrusive but had no evidence that such a system was any more or any less burdensome upon the government's interest.  The undisputed evidence demonstrates that a hypothetical registration system is too much of a financial and resource burden on the Old Lyme LUO and express provisions of Connecticut state law exacerbate that burden and any orderly process of appeals is impossible based on said law. *See* Conn. Gen. Stat. § 8-7d(a); *See* Def. L.R. Stmt. 2/20/07, ¶¶17-41.

The *Matthews* test is familiar; the factors assessed are three: (1) the private interest effected by the challenged action; (2) the risk of erroneous deprivation of that interest through the challenged procedure and the total value of the alternative safeguards; and (3) the governments interest in avoiding a burden that the alternative procedure would entail. *Matthews v Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 903 (1976).

Taking the first prong together, for the purposes of this motion, the defendants do not disagree that the plaintiffs had a significant private property interest in the use of their homes and that a five-month period of deprivation per year would be serious. seasonal use limitations are appropriate and constitutional in the State of Connecticut. The defendants maintain they have corrected the risk of erroneous deprivation; when the second factor is applied to the new determination process, the balance tips in favor of the defendants. The new determination process raises the procedure well above the minimum standards necessary. The preliminary determination letter admits the limits inherent in the municipal records reviewed by the ZEO and encourages cooperation from the property owner. The summary or checklist of standards is not an exclusion, but details the best evidence, and the appeal rights once a final determination is reached. The final determination letter, in addition to emphasizing that the Zoning Enforcement Officer has examined all of the evidence, lists what evidence was considered. In the last memorandum decision on these issues, the court observed that the plaintiffs' suggestion that a registration system may achieve the same goal as the determination process with less intrusive means. As discussed herein, the government's interest and burdens for this alternative process are substantial and tilt the *Matthews* test in favor of the defendants.

It is undisputed that the interests underlying the Challenged Regulations are the legitimate expression of lawful public health and safety concerns held by the Town and the Commission. *See* Mem. Dec. 03/07/02, p. 13 (Doc. Entry #44); Mem.

Dec. 07/27/01, p. 26 (Doc. Entry #21). In Old Lyme, the season use determination process is tailored to the resources made available by the Town and its taxpayers. Some municipalities have used registration systems to amortize nonconforming uses. A registration process would set a date by which any landowner who believes they have a valid, non-conforming use in the year-round use of their property in Old Lyme in the R10 district would have to "register" that use with the Town in a specific manner and by a certain date. Failure to register would result in the extermination of such nonconforming use without any appeal. At the time of registration, each landowner would provide identifying information for data collection purposes and provide all evidence they have supporting their claim. Once the ZEO receives the registration, Connecticut law requires the ZEO to act on the registration within a reasonable time period, usually 30 days, finding the registrant has a valid nonconforming use entitling the registrant to year-round use of their property or denying the registration, finding that insufficient evidence exists for the recognition of the non-conforming use. Before making any determination, the ZEO would be required to conduct some investigation herself, including but on limited to the examination of existing Town records, confirmation of evidence submitted by the registrant or interview of witnesses listed or of the registrant. Some record or evidence confirmation may require releases to satisfy privacy laws for the ZEO's investigation and determination process.

Given the interests of the landowner, the efforts of the Association and publicity, the Town estimates that at least 30% of the owners of the affected lots

will appeal any adverse decision to them under the Challenged Regulations. With the involvement of the present litigation and the disclosed number of the members of the Association (400), the Town submits that a more likely number of appeals would be more than 500. Given the amount of work required to collect the data, confirm evidence through telephone calls or letters, and simply review the applications, the time resources is unreasonable given the limited resources of the ZEO and the Old Lyme Land Use Office. *See* Def. L.R. Stmt. 2/20/07, ¶¶17-41.

The Town estimates that it would take 3-5 hours of work per application. Even if the ZEO could complete the review of all registration applications in a reasonable period of time, ZBA would have to hear all of the appeals within the limitations provided by Conn. Gen. Stat. § 8-7d. The Town estimates more 1500 lots could be impacted by the amortization effects of the Challenged Regulations. At this time, the ZBA is equipped to handle 3-6 cases per month on regular zoning issues and therefore has the capacity to handle 36-72 appeals per year. The size and composition of the ZBA is defined by statute and cannot be increased by any effort of the Town, the Commission, the ZEO or the ZBA. As volunteers, many of whom have full-time jobs and families, the ZBA could not be reasonable expected to hear all the anticipated appeals. The Town has determined that the cost in volunteer time from the ZBA members is unreasonable and unwarranted and would result in no one ever aspiring to the offices of Commissioner or Board member if they had to adjudicate several hundred appeals in one year. Each appeal would have to be defended by the ZBA's counsel. Based on the time limitations, the resource

limitations, the economic limitations, the volunteer limitations and the limitations imposed by Connecticut law that cannot be altered by agreement, the Town, the Zoning Commission and the ZEO have determined that a registration process is too much of a financial and resource burden on the municipality to expect this level of process within a set period of time which is limited by Connecticut law. The original plan and the plan as amended during the present litigation which had a street by street determination left the process to the ZEO when time permitted, or when requested by an owner, or when an owner sought a permit, and appeals, as they occurred, would be handled in the ordinary course of business. Doing more than suggested by the ZEO with respect to review of municipal records is reasonable insofar as legal limitations in the nature of privacy laws and time and manpower limitations prevent research into other sources.

Accordingly, the government's interest in the existing system as reflected by the burdens and costs of a possible registration system tips the *Matthews* test in favor of the Town and the Commission. *See* Def. L.R. Stmt. 2/20/07, ¶¶17-41. Therefore, summary judgment is appropriate in favor on the merits of the plaintiffs' due process claims.

### F. THE CHALLENGED REGULATIONS DO NOT OFFEND CONSTITUTIONAL REQUIREMENTS OF EQUAL PROTECTION.

The plaintiffs' claimed violation of equal protection is unsupported by law. The classification in question does not burden any enumerated fundamental rights nor does it impact any suspect classes. The classification in question does not

burden any rights considered to be fundamental. The classification pertains to all property owners in the R-10 zone with nonconforming lots. Because the Challenged Regulations are rationally related to public health, safety and welfare – the court has held as much – no valid equal protection claim can be made. Accordingly, summery judgment is appropriate.

### G.    THE CHALLENGED REGULATIONS DO NOT OFFEND CONSTITUTIONAL REQUIREMENTS OF SUBSTANTIVE DUE PROCESS.

As a matter of law, the plaintiffs' substantive due process claims are unripe for federal review under the two-pronged ripeness test the United States Supreme Court set out in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).  In *Williamson County*, the Supreme Court held that a Fifth Amendment takings claim was not ripe until the plaintiff had satisfied two requirements.   First, the plaintiff has to obtain a final decision regarding the application of the zoning ordinance to the property in question from the government entity charged with implementing the regulations. *Williamson County*, 473 U.S. at 186, 105 S.Ct. 3108 (the "finality requirement"). Second, the plaintiff has to utilize the state's "reasonable, certain, and adequate" procedures for obtaining just compensation.  *Id.* at 194, 105 S.Ct. 3108; *see also* Southview Associates, Ltd. v. Bongartz, 980 F.2d 84, 95 (2d Cir.1992) (the "exhaustion" requirement). Neither the individual plaintiffs nor the Association can satisfy either prong of the *Williamson County* test.

As to the first requirement of the *Williamson County* ripeness test, the Parsons have not obtained a final agency decision from the Old Lyme Zoning Board

of Appeals. **CITE** Connecticut law charges zoning boards of appeal with the authority to render final decisions as to the application of local zoning law to particular properties. *See Port Clinton Assocs. v. Bd. of Selectmen*, 217 Conn. 588, 606-07, 587 A.2d 126 (1991) ("[I]n many instances, a final decision by the initial decisionmaker really means a decision by the zoning board of appeals.") (citation omitted).   In addition, *Williamson County's* final decision prong does not require a takings plaintiff to resort to "clearly remedial" procedures, or those that merely serve to review the agency's decisions. *Williamson County*, 473 U.S. at 193, 105 S.Ct. 3108; *see also Murphy v. New Milford Zoning Commission*, 402 F.3d 342, 349 (2d Cir.2005); *Cumberland Farms, Inc. v. Groton*, 247 Conn. 196, 204-05, 719 A.2d 465 (1998). Connecticut law is clear that administrative appeals to the Superior Court are purely remedial and, thus, not required before an agency decision is final. *Groton*, 247 Conn. at 205, 719 A.2d 465. Therefore, the Court must conclude that the Parsons have not satisfied *Williamson County's* final agency decision prong.

While Byer received an arguable final determination, it is undisputed that she did not challenge the decision in state court and seek just compensation in that forum. She and the other unidentified members of the Association[1] have not, however, fulfilled *Williamson County's* second requirement, because their claims have not ripened through resort to Connecticut's process for obtaining just compensation. Though *Williamson County* generally requires that a federal takings claimant pursue reasonable, certain, and adequate provisions for securing

compensation, 473 U.S. at 194, 105 S.Ct. 3108, the Second Circuit has subsequently held that a plaintiff must pursue a state court remedy "even where it 'remains unsure and undeveloped.' " *Villager Pond, Inc. v. Darien*, 56 F.3d 375, 380 (2d Cir.1995) *(quoting Southview Assocs.*, 980 F.2d at 99). Connecticut's Constitution provides that "[t]he property of no person shall be taken for public use, without just compensation therefor."   Conn. Const.  Art. I, §  11. Given this provision, the Second Circuit requires the plaintiffs to first test their claims for just compensation under the state constitution in state court. *See id.* ("[A]lthough no Connecticut case has been cited wherein compensation was provided for a taking like the one alleged here, Villager Pond is still required to look to the state for compensation before its takings claim will lie.") *See San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 125 S.Ct. 2491, 2507-10, 162 L.Ed.2d 315 (2005) (*Rehnquist, J.* concurring) (finding no fault with *Williamson County* ripeness requirement even if it serves to prevent most Fifth Amendment takings claims from reaching federal court).  The process for review of any takings claim would have occurred in their lawsuit appealing an adverse decision of the Old Lyme Zoning Board of Appeals and making an application for just compensation. It is undisputed that the plaintiffs have not taken these steps.

Accordingly, the defendants are entitled to summary judgment in their favor on all substantive due process claims in the Amended Complaint dated May 29, 2001.

---

[1] Of course, it remains that individualized proof would be necessary to establish issues of takings, just compensation and the like. Accordingly, the Association would lack standing to

### H. THE PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST ZEO OZOLS IN HER INDIVIDUAL CAPACITY ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

The plaintiffs complain that Zoning Enforcement Officer Marylin Ozols violated their rights in the process by which determinations were made whether the affected properties were seasonal use or not. The litany of complaints, while extensive, does not impose liability on ZEO Ozols as she is protected by qualified immunity. ZEO Ozols was following a validly adopted process, informed by a policy adopted by the Commission, with what resources she had and with what records were available.

#### 1. *The Doctrine of Qualified Immunity.*

It is well-established that the defendant would be shielded by qualified immunity as long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if its "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987); *see also Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003) ("clearly established" means that "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful'") (*quoting Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)). Ultimately, "[t]he

---

prosecute such a claim. *See, supra.*

question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir.1999).

It is more than just a defense; **the doctrine of qualified immunity is an immunity from suit**. *Locurto v. Safir*, 264 F.3d at 163. (emphasis added.). "[T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law"); *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took").

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court reiterated the need for a careful examination of the particular constitutional right alleged to have been violated when considering the defense of qualified immunity. Not only should the right itself be identified with a higher degree of specificity, the precise contours of **the application of that more specific right to the facts at hand must be made by the district court reviewing a defense of qualified immunity**. *Saucier v. Katz*, 533 U.S. 194 (2001) (emphasis added). The *Saucier v. Katz* Court reiterated the admonition from *Anderson v. Creighton* that:

> [t]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Saucier v. Katz*, 533 U.S. at 202.

Since the decision in *Saucier v. Katz*, the Supreme Court decided *Hope v. Pelzer*, 536 U.S. 730 (2002), providing additional guidance to litigants and courts examining the issues within and part of the defense of qualified immunity. In *Hope v. Pelzer,* 536 U.S. 730 (2002), the Supreme Court denied qualified immunity to three correctional officers who had handcuffed a prisoner to a "hitching post" as punishment for non-compliance with various orders and rules. The Supreme Court's decision reversed the Court of Appeals for the Eleventh Circuit which had affirmed the district court's grant of summary judgment based on qualified immunity to the three correction officers in question.

The Supreme Court in *Hope* rejected the Eleventh Circuit's rule that the test for the existence of a clearly established right that would allow a public official to understand the potential wrongfulness of his conduct should be evaluated in light of federal law that was "pre-existing, obvious and mandatory." *See Hope*, 536 U.S. at 734. While the Eleventh Circuit had agreed that the conduct itself was violative of the Eighth Amendment, the panel held the corrections officers were not on notice that such conduct was unlawful. The Eleventh Circuit held that prior cases should be "materially similar." Finding none, the Eleventh Circuit affirmed the district court's decision granting qualified immunity to the corrections officers.

In reversing the Court of Appeals for the Eleventh Circuit, the Supreme Court rejected the gloss placed on the *Saucier v. Katz* analysis for qualified immunity by that Circuit that there must be reported cases that are "materially similar" before a violation is found. In so holding, the Supreme Court adopted the

"fair warning" standard found in *United States v. Lanier*, 520 U.S. 259 (1997) as an additional methodology to evaluate the second prong of the qualified immunity analysis.

In *Lanier*, the Supreme Court began its analysis with the understanding that in the situation of qualified immunity, "it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court reasoned that officers sued in a civil action for damages under 42 U.S.C. § 1983 should have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242. In reviewing Section 242, the Court observed that it makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution. The *Lanier* Court held that the defendant was entitled to "fair warning" that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under Section 1983.

In *Lanier*, the Eleventh Circuit had assumed (and held) that a criminal defendant should be held to a "substantially" higher standard of notice for the purposes of Section 242. In *Lanier*, the Supreme Court rejected this approach, and reasoned:

> This is not to say, of course, that the single warning standard points to a single level of specificity sufficient in every instance. In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

*Hope*, 536 U.S. at 739-40 (internal citations omitted).

In sum, the Supreme Court in *Hope* rejected the "materially similar" gloss placed on a qualified immunity analysis as well as the notion that the absence of a reported case on point equates to a holding that qualified immunity applied in a given situation. In so holding, the Supreme Court emphasized the need for the detailed, searching and thorough analysis each and every time the defense based on the doctrine of qualified immunity is raised. The decision in *Hope v. Pelzer* is, in one sense, a continuation of the Supreme Court's admonition that the most important part of any qualified immunity decision is the examination of the constitutional right at issue and "the precise contours of the application of that more specific right to the facts at hand must be made." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In rejecting the "materially similar" standard espoused by the Eleventh Circuit, the Court has done nothing more than demand a high standard – not in pleading or proof – but in the continued, searching, and thorough, step-by-step examination of the defense of qualified immunity in the manner long-established by clear and unequivocal precedent.

In *Hope*, the Court held that the corrections officers were on notice that their conduct was clearly unlawful. Not long after the decision in *Hope,* the Second Circuit stated:

> Our analysis of a qualified immunity claim consists of a three step inquiry. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999). First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the [defendants], he or she must demonstrate that defendants' actions were not objectively reasonable. *X-Men*, 196 F.3d at 66. This three step inquiry should typically be done in sequential order. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842, n. 5 (1998).

*Harhay v. Town of Ellington, et al.*, 323 F.3d 206, 211 (2d Cir. 2003).

This statement of the law succinctly captures just the sort of step-by-step, orderly methodology mandated by twenty years of Supreme Court precedent. Furthermore, this Court recognized that the failure to establish any one step of the analysis grants qualified immunity to the defendant in question.

> Defendants may benefit from qualified immunity if plaintiff is unable to establish any of these three steps. *See X-Men*, 196 F.3d at 65-66 ("These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third."). Thus, if there is no deprivation of a constitutional right alleged by [the plaintiff] (the first step), there is no need for the court to decide if the right was clearly established at the time the [defendants] acted (the second step). *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

*Harhay v. Town of Ellington, et al.*, 323 F.3d 206, 211-2 (2d Cir. 2003).

Therefore, before applying the qualified immunity standard, the Court must ask whether there was a constitutional violation in the first instance. *See Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999).

2.     *The Claimed Violations Complained Of By The Plaintiffs Do Not Arise From Clearly Established Constitutional Rights.*

Looking at ZEO Ozol's conduct, it cannot be said that she has violated anyone's clearly established rights. There cannot be any serious claim that ZEO Ozols violated anyone's substantive due process or equal protection rights in her method of applying the Commission's policy to conduct seasonal use determinations. To the extent that the plaintiffs' claim that ZEO Ozols violated their procedural due process rights, there is no established case law that would have given ZEO Ozols fair warning that her actions were unlawful. Indeed, she did the best with what she had and that was with fewer resources than are available today. *See* Def. L.R. Stmt. ¶¶17-41. To impose personal liability on ZEO Ozols is entirely inconsistent with the doctrine of qualified immunity.

3.     *ZEO Ozols's Conduct In The Preliminary/Final Seasonal Determination Process Was Objectively Reasonable.*

The Old Lyme LUO has more resources today than were available to ZEO Ozols in 1999 and 2000. Even with these resources, the Old Lyme LUO cannot implement the seasonal use determination process in any other manner than on a street-by-street basis when time permits or when an owner seeks a determination. With respect to the established time required to conduct a basic investigation, it is wholly objectively reasonable for ZEO Ozols to have relied on the records existing in

Town Hall. Privacy laws, cooperation and work limitations compel the conclusion that ZEO Ozols struck a balance between the rights of the property owner, resources in the Town and the ability to conduct investigations, determinations and appeals. *See* Def. L.R. Stmt. 2/20/07, ¶¶17-41. Accordingly, summary judgment is appropriate in favor of ZEO Ozols as she is protected by qualified immunity.

I.    **THE COURT MUST DISMISS THE PLAINTIFFS' CLAIM OF PUNITIVE AND EXEMPLARY DAMAGES AGAINST THE TOWN, THE COMMISSION, THE INDIVIDUAL DEFENDANTS THEIR OFFICIAL CAPACITY.**

In the prayer for relief of the plaintiffs' Amended Complaint dated May 29, 2001, the plaintiffs request punitive damages against all defendants. *See* **Exhibit A**, p. 18. The plaintiffs' request for punitive damages must be dismissed. As a matter of law, it is well established that no punitive damages claim may lie against a municipality or one of its agencies for violations of federal or state law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *City of West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 164, 602 A.2d 988, 995 (Conn.,1992). The same applies to municipal employees sued in their official capacity. Accordingly, the plaintiffs' claims for an award of punitive damages from the municipal defendants and any individual defendant in their official capacity must be dismissed.

### K. HAVING DISMISSED ALL OF THE FEDERAL CLAIMS, THE DISTRICT COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS.

In addition and the alternative, the defendants submit that this Court, after having dismissed the plaintiffs' federal claims, should decline to exercise supplemental jurisdiction over the pendant state law claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (C.A.2 1995) (same). Accordingly, the Court should decline to extend its supplemental jurisdiction over the pendant state law claims in the plaintiffs' Amended Complaint dated May 29, 2001 and dismiss said claims.

### L. THE PLAINTIFFS' CONN. GEN. STAT. §§ 22A-16 AND 22A-18 CLAIMS SHOULD BE DISMISSED.

#### 1. *The Plaintiffs' Claims Based On Conn. Gen. Stat. §§ 22a-16 And 22a-18 Fail To State Claims Upon Which Relief May Be Granted.*

The plaintiffs' claims based on Conn. Gen. Stat. §§ 22a-16 and 22a-18 are transparently based on the decisions in *Keeney v Old Saybrook*, 237 Conn. 135, 676 A.2d 795 (1996). In *Keeney*, the Connecticut DEP sued the Town of Old Saybrook for intentionally failing to take any steps whatsoever to address CT DEP's orders of remediation that pollution might exist in Long Island Sound as a result of the Town of Old Saybrook's failure to act. Notably, the court in *Keeney* held that negligent failure to abate was not a valid cause of action as such choices would be a discretionary function protected by immunity. Only when the conduct of the municipality was an intentional, positive act of doing nothing would liability accrue

to the municipality on a theory of nuisance. The record in *Keeney* is replete with evidence that Old Saybrook did nothing in the face of continuing requests for compliance, recordkeeping, testing and the like. The court properly held Old Saybrook liable. Importantly, the court found that Old Saybrook had failed to comply with CT DEP orders requiring specific actions.

It cannot be said that the actions of Old Lyme are any resemblance to the inaction and willful disregard of Old Saybrook. While sharing the shoreline of Connecticut, the approach of Old Lyme was measured compliance. The Town of Old Lyme adopted master plan on these issues and more, created a WPCA, adopted modified zoning regulations (the Challenged Regulations), developed a septic system inspection/monitoring/pump out program, and enacted comprehensive groundwater monitoring.  Throughout these efforts, CT DEP has never said that Old Lyme was not meeting the reasonable requirements of public health, safety and welfare. Indeed, Old Lyme has taken a measured approach and CT DEP has not taken any official action that resembles the action taken against Old Saybrook.

      2.     *Additionally, Plaintiffs' Claims Based On Conn. Gen.*
             *Stat. 22a-14/18 are Barred by the Doctrine of*
             *Governmental immunity*

        i.     <u>The Doctrine of Governmental Immunity</u>.

"[A] municipality is immune from liability for [negligence] unless the legislature has enacted a statute abrogating that immunity." *Pane v. Danbury*, 267 Conn. 669, 677, 841 A.2d 684 (2004).  Conn. Gen. Stat. §52-557n(a)(2) removes municipal liability for "negligent acts or omissions which require the exercise of judgment or discretion".  Also, "[w]hile [a] municipality itself was generally immune

from liability for its tortious acts at common law ... its employees faced the same personal tort liability as private individuals ... [A] municipal employee ... has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (internal quotation marks omitted). *Doe v. Board of Education*, 76 Conn.App. 296, 300, 819 A.2d 289 (2003). Therefore, barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion. *Elliot v. Waterbury*, 245 Conn. 385, 411, 715 A.2d 27 (1998).

"The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Martel v. Metropolitan Dist. Com'n*, 275 Conn. 38, 881, A.2d 195 (2005). "[T]he determination as to whether governmental immunity may successfully be invoked by a municipality turns not on the plaintiff's theory of negligence but rather, on the character of the act or omission complained of in the complaint." *Segreto v. Bristol*, 71 Conn. App. 844, 854, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A2d 1132 (2002). "[T]he determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder." (citations omitted; internal quotation marks omitted.) *Lombard v. Edward J. Peters, Jr., P.C*, 749 A.2d 630, 634, 252 Conn. 623, 628+

(2000). It is question of law if the nature of the acts complained of is "apparent from the complaint". *Evon v. Andrews*, 211 Conn. 501, 505-7, 559 A.2d 1131 (1989).

There are three recognized exceptions to the doctrine of municipal immunity: (1) where the circumstances make it apparent to the public officer or employee that his failure to act would be likely to subject an identifiable person to imminent harm (the so-called "identifiable person / imminent harm exception); (2) where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. *Elliott v. City of Waterbury*, 245 Conn. 385, 422, 715 A.2d 27 (1998); *Purzycki v. Town of Fairfield*, 244 Conn. 101, 108, 708 A.2d 937 (1998); *Evon v. Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). The plaintiffs cannot avail themselves to any of the aforementioned exceptions to the doctrine of municipal immunity.

After a brief consideration of the second and third exceptions, they may be summarily rejected. The plaintiffs have not pleaded the identity of a statute that specifically provides for a cause of action against either the employees for failure to enforce a certain law.  In fact, no specific statute provides for such an action.  They may claim that Conn. Gen. Stat. §§  22a-16 or 22a-18 abrogates immunity. This conception is erroneous. It is well-established that few statutes abrogate the general rule of municipal immunity. Those statutes abrogating immunity include Conn. Gen. Stat. §§ 7-101a, 7-308, 7-465, and 13a-149. "The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to

municipalities." *Ryszkiewicz v. New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984). A municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. *Williams v. New Haven, supra*, 243 Conn. 766-67. "Statutes that abrogate or modify governmental immunity are to be strictly construed . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." *Rawling v. New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988). "The court is to go no faster and no further than the legislature has gone. . . . A legislative intention not expressed in some appropriate manner has no legal existence." *Edmundson v. Rivera*, 169 Conn. 630, 633, 363 A.2d 1031 (1975).

Nothing in section 52-557n mentions any exception to the rule of municipal immunity that would allow liability for injuries through §§ 22a-16 or 22a-18. In *Tryon v North Branford*, the court rejected a claim that section 22-357, the so-called dog bite statute, trumped the general principle of municipal immunity. While section 22-357 imposed strict liability for dog bites, such strict liability did not extend to municipalities or their agents. "The legislature's intent is derived `not in what it meant to say, but in what it did say." *Tryon v. North Branford*, 58 Conn. App. 702 (2000) *citing Daily v. New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986) and *Lynn v. Haybuster Mfg., Inc.,* 226 Conn. 282, 290, 627 A.2d 1288 (1993). The *Tryon* court observed that "[i[n the absence of explicit language in

§ 52-557n modifying the common law rule of governmental immunity for claims of strict liability pursuant to § 22-357, the statute should not be so construed." Likewise, the plaintiffs have not pleaded that the Town acted with malice, wantonness or with intent to injure.   Accordingly, the second and third exceptions do not apply.

The first exception identified, the so-called "identifiable person/imminent harm" exception, is similarly inapplicable. The case law interpreting the exception uniformly holds that the exception applies to imminent harm to persons, not property. *See Evon v. Andrews*, 211 Conn. 501, 508, 559 A.2d 1131, 1135 (1989) (granting governmental immunity to municipal officials because plaintiffs' decedents were not subject to imminent harm based on the defendants' alleged failure to prevent a fire in which the decedents died); *see also Purzycki v. Town of Fairfield*, 244 Conn. 101, 708 A.2d 937 (1998) (finding imminent harm existed because the danger was foreseeable in a case involving a schoolchild who was injured en route to recess in an unsupervised area); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982) (refusing to apply the "identifiable person/imminent harm" exception to a case involving a police officer's failure to arrest an allegedly intoxicated person during a traffic stop when the person later collided with another car, the driver of which later died from injuries sustained during the collision); *Sestito v. Groton*, 178 Conn. 520, 423 A.2d 165 (1979) (finding that a trial court erred in directing a verdict in favor of the police officer/defendant in a case in which the police officer did not intervene in a bar-related brawl until he

heard gunshots, even though he was on-duty and observed the argument from its beginning). Indeed, the defendants have not found any case where the Connecticut Supreme Court has applied or indicated its willingness to extend this exception to imminent harm to property – real or personal. *See Kendrick v. Town of Winchester*, 11 F.Supp.2d 212 (D.Conn.1998).

Even if the exception did apply, application of the criteria mandates a ruling in favor of the defendants. In its discussion of the identifiable person/imminent harm exception, the Supreme Court in *Burns v. Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), set forth criteria to evaluate whether that exception was applicable. Among others, the *Burns* court considered the immanency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the ability to identify the particular victim. The *Burns* court also recognized criteria used by other courts in considering similar exceptions to their respective doctrines of governmental immunity. The *Burns* court reviewed favorably criteria that considered "whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts, whether the relationship was of a voluntary nature, the seriousness of the injury threatened, the duration of the threat of injury, and whether the persons at risk had the opportunity to protect themselves from harm." *Burns v. Board of Education,* 228 Conn. 640, 638 A.2d 1 (1994) (citations omitted).

Under the specific facts in that case, the court in *Burns* found that the identifiable person/imminent harm exception applied where the accident could not

have occurred at any time in the future, that the danger was limited to the duration of the temporary icy condition in a particular area of the campus, and defendant school superintendent owed "special duty" to minor schoolchild. *Burns v. Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994). The present case is not like Burns at all.  The plaintiff here does not have the "immediacy" of harm characteristic of the claims made in *Sestito v. Groton*, 178 Conn. 520, 528, 423 A.2d 165 (1979), where the court recognized the identifiable person/imminent harm exception applicable where a police officer passively watched a drunken brawl until someone was shot. The Supreme Court has construed the identifiable person at imminent harm exception "to apply not only to identifiable individuals but also to narrowly defined classes of foreseeable victims."  *Purzycki v. Fairfield*, 244 Conn. 101, 108 (1998). The "identifiable person at imminent harm" exception involves a three-part inquiry that requires all parts to be satisfied in order for the exception to apply. "Demonstration of less than all of these criteria is insufficient." *Doe v. Petersen*, 279 Conn. 607, *620, 903 A.2d 191, **200 (Conn.,2006).

In *Evon v. Andrews, supra*, 211 Conn. 501, the plaintiffs' decedents died from a fire in a multi-family dwelling.  *Id.* at 502.  The plaintiffs claimed that even though the duties owed their decedents were discretionary, the decedents were "a group that was discrete, readily identifiable, and subject to imminent harm" *Id.* at 507, and therefore, the identifiable victim at imminent harm exception to governmental immunity applied to save their negligence claim.  The Supreme Court

did not agree. *Id*. In refusing to expand the scope of the identifiable victim at

imminent harm exception to the facts in *Evon*, the Court stated at 211 Conn. at 508:

> The risk of fire implicates a wide range of factors that can occur, if at
> all, at some unspecified time in the future. The class of possible
> victims of an unspecified fire that may occur at some unspecified time
> in the future is by no means a group of "identifiable persons" within
> the meaning of Shore v. Stonington. Furthermore, the plaintiffs'
> decedents were not subject to imminent harm … the fire could have
> occurred at any future time or not at all. We cannot accept the
> proposition that the plaintiffs' decedents in this case were readily
> identifiable victims subject to imminent harm. [T]he adoption of a rule
> of liability where some kind of harm may happen to someone would
> cramp the exercise of official discretion beyond the limits desirable in
> our society.

The test is conjunctive; "[T]he core requirements of the "imminent harm"

exception are analyzed conjunctively. To prevail, [a plaintiff] must demonstrate that

[he/she] was an identifiable person and was subject to imminent harm and that a

public officer's conduct subjected her to that harm, despite the apparent likelihood

of harm . . . "Demonstration of less than all of these criteria is insufficient." *Doe v.

Petersen*, 279 Conn. 607, *620, 903 A.2d 191, **200 (Conn.,2006).

In the present case, the plaintiffs claim harm in the form of a failure of the

Town and the Commission to adopt plans to build a secondary treatment facility for

wastewater. What is the harm? Who will be harmed? When will the harm occur? In

the future? Is this class of persons readily identifiable to the Town? Common sense

answers each of these questions – even if the harm were as the plaintiffs claim, it is

not limited in time, scope or to a readily ascertainable class

Therefore, the Town, the Commission and ZEO Ozols are entitled to summary judgment as they are protected by governmental immunity as to the plaintiffs' state law claims.

3.    *No Reasonable And Prudent Alternative Exists To The Seasonal Use Restrictions And Determination Process In The Town Of Old Lyme.*

To the extent that the plaintiff's claims under Conn. Gen. Stat. § 22a-16 overcome the hurdle of governmental immunity, the defendants' actions are protected by Conn. Gen. Stat. § 22a-17 ("(a) [it is an] affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative to the defendant's conduct and that such conduct is consistent with the reasonable requirements of the public health, safety and welfare"). Allowing defendants to prove by affirmative defense that there is no feasible and prudent alternative to defendant's conduct refers to an alternative which is economically reasonable in light of social benefits derived from the activity, and although costs may be considered in deciding what is "prudent," mere showing of expense will not mean that an alternative is imprudent. *Manchester Environmental Coalition v. Stockton*, 441 A.2d 68, 184 Conn. 51 (1981). In the present case, sewer systems and a structural secondary wastewater treatment facility is financially imprudent. The system in place: septic inspection, pump-outs, groundwater monitoring and the Challenged Regulations, all work together to achieve the goals of the Town's Master Plan.

The plaintiffs in this case call for installation of a sewer system to their properties in lieu of the zoning restrictions to abate the pollution problem the

plaintiff's actions are creating. This is not a feasible or prudent alternative. It would cost tens millions of dollars to install a sewer system to these properties. It would also be exceptionally time consuming and it would require digging up roads and private properties. The environmental impact would be staggering. This would cause traffic and other nuisances to the general public. The only benefit derived from this monumental undertaking would be that those few property owners would be able to use their property for the full year instead of the limited duration specified in the zoning ordinance. The entire tax base of Old Lyme would suffer a cost for the few. This is a private benefit, not a social one. The plaintiff's claims under C.G.S.A § 22a-16 fail because there is no feasible or reasonably prudent alternative to the defendant's conduct. Therefore, the defendant's motion for summary judgment should be granted as to those claims.

### 4. *The Challenged Regulations And The Town Master Plan Are Consistent With Reasonable Requirements of Public Health, Safety And Welfare.*

Moreover, the Town's Master Plan demonstrates that the conduct complained of is consistent with the reasonable requirements of the public health, safety and welfare. Conn. Gen. Stat. § 22a-17 "Zoning legislation has been upheld with substantial uniformity as a legitimate subject for the exercise of the police power when it has a rational relation to the public health, safety, welfare and prosperity of the community and is not in plain violation of constitutional provision, or is not such an unreasonable exercise of this power as to become arbitrary, destructive or confiscatory." *State v. Hillman*, 110 Conn. 92, 100, 147 A. 294 (1929); *Bartlett v. Zoning Commission*, 161 Conn. 24, 30-31, 282 A.2d 907 (1971). Zoning regulations,

so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights. *Chevron Oil Co. v. Zoning Board of Appeals*, 170 Conn. 146, 151, 365 A.2d 387 (1976); *Poneleit v. Dudas,* 141 Conn. 413, 417-18, 106 A.2d 479 (1954). "The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions.   *State v. Hillman* 110 Conn. 92 105, 147 A. 294]."  *State v. Gordon*, 143 Conn. 698, 703, 125 A.2d 477 (1956). "Whether the times and conditions require legislative regulation, as well as the degree of that regulation, is exclusively a matter for the judgment of the legislative body • • • • Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. *Carroll v. Schwartz*, 127 Conn. 126, 130, 14 A.2d 754 [1940]*; State v. Miller,* 126 Conn. 373, 377, 12 A.2d 192 [1940]." *State v. Gordon, supra; see also Connecticut Theatrical Corporation v. New Britain*, 147 Conn. 546, 553, 163 A.2d 548 (1960). "Every intendment is to be made in favor of the validity of [an] ordinance and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." *Connecticut Theatrical Corporation v. New Britain, supra; Aaron v. Conservation Commission*, 183 Conn. 532, 537, 441 A.2d 30 (1981); *Riley v. Board of Police Commissioners*, 147 Conn. 113, 117, 157 A.2d 590 (1960). "[T]he court presumes validity and sustains the legislation unless it clearly violates constitutional principles • • • • If there is a reasonable ground for upholding it, courts assume that the legislative body intended to place it upon that ground and was not motivated by

some improper purpose • • • • This is especially true where the apparent intent of the enactment is to serve some phase of the public welfare." *State v. Gordon, supra.*

In the present case, the Town and the Commission acted reasonably and properly to establish regulations, in connection with coordinated efforts by other agencies and departments, to address the concerns of the CT DEP expressed before 1990. The Town Master Plan recognizes these efforts in a comprehensive, least intrusive means, correlated to the resources of Old Lyme and its government.

III.    **CONCLUSION.**

WHEREFORE, the defendants, TOWN OF OLD LYME, the TOWN OF OLD LYME ZONING COMMISSION, and MARILYN OZOLS, pray that their Motion for Summary Judgment dated February 20, 2007 is granted in all respects.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
TOWN OF OLD LYME, TOWN OF
OLD LYME ZONING COMMISSION,
and MARILYN OZOLS

/s/John J. Radshaw
John J. Radshaw, III, ct19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (f)

## **C E R T I F I C A T I O N**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 20th day of February 2007.

Kenneth R. Slater, Jr., Esquire
HALLORAN & SAGE, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103-4303

Eric D. Knapp, Esquire
BRANSE, WILLIS & KNAPP, LLC
148 Eastern Blvd., Suite 301
Glastonbury, CT  06033-2038


/s/John J. Radshaw
John J. Radshaw, III