**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., CHARLES PARSONS, VICTORIA PARSONS and JOAN BYER,<br><br>*Plaintiffs,*<br><br>v.<br><br>TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, ERIC FRIES, GEORGE JAMES, JANE MARSH, THOMAS RISOM, WALTER SEIFERT, SHARON COLVIN and MARILYN OZOLS,<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>3:00 CV 0097 (EBB)<br><br><br><br><br><br><br><br><br><br><br><br>FEBRUARY 20, 2007 |

**LOCAL RULE 56 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION AND MARILYN OZOLS**

Pursuant to D.Conn.L.R. 56, the defendants, TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, and MARILYN OZOLS, submit the following statement of material facts not in dispute in support of their Motion for Summary Judgment dated February 20, 2007

1. The plaintiff, South Lyme Property Owner's Association, Inc., was formed to challenge those portions of the Old Lyme zoning regulations that its members believe are illegal acts of the Commission and amount to unconstitutional takings of their property. **Exhibit A**, Pl. Am. Compl., 5/29/2001, p. 2, ¶¶6-7, pp. 11-13, ¶¶41-6, p. 17, ¶2.

2. The plaintiffs, Charles Parsons, Victoria Parsons, and Joan Byer, claim to be landowners in the Town of Old Lyme affected by the Challenged Regulations. **Exhibit A**, Pl. Am. Compl., 5/29/2001, pp. 2-3, ¶¶8-10.

3. The plaintiffs seek money damages for the alleged lost value of their properties as a result of the seasonal use restriction imposed by the Challenged Regulations. **Exhibit A**, Pl. Am. Compl., 5/29/2001, p. 18, ¶¶9-10.

4. The Association has more than 350 members and the real property owned by the members varies in size, cost, value, and length of ownership and the nature and substance of improvements over time, if any. *See* **Exhibit D1**, Depo. C.Parsons, pp. 114-9, 138-42; **Exhibit E**, Depo. Byer, pp. 45-9, 122-9; **Exhibit F**, Depo. Lapila, pp. 54-9, 60-2; **Exhibit G1**, Depo. Gross, pp. 86-8.

5. Some properties owned by members of the Association may have been acquired after the adoption of the Challenged Regulations, others before. *See* **Exhibit D1**, Depo. C.Parsons, pp. 114-9, 138-42; **Exhibit E**, Depo. Byer, pp. 45-9, 122-9; **Exhibit F**, Depo. Lapila, pp. 54-9, 60-2; **Exhibit G1**, Depo. Gross, pp. 86-8.

6. The Challenged Regulations were adopted by the Old Lyme Zoning Commission on April 10, 1995, effective June 5, 1995. *See* **Exhibit J1-3**, Minutes of the Old Lyme Zoning Commission.

7. The plaintiffs, Charles Parsons and Victoria Parsons, received the preliminary notice that their property was likely limited to seasonal use only during the

determination process. *See* **Exhibit D1**, Depo. C.Parsons, pp. 51-75, 122-6; **Exhibit D2**, Depo. V.Parsons, pp. 30-3.

8. Despite receiving the preliminary notice, the plaintiffs, Charles Parsons and Victoria Parsons, did not respond to the Zoning Enforcement Officer. *See* **Exhibit D1**, Depo. C.Parsons, pp. 51-75, 122-6; **Exhibit D2**, Depo. V.Parsons, pp. 30-3.

9. The plaintiffs, Charles Parsons and Victoria Parsons, received the final notice that their property was limited to seasonal use only during the determination process and were informed they had an opportunity to appeal the ZEOs determination. *See* **Exhibit D1**, Depo. C.Parsons, pp. 51-75, 122-6; **Exhibit D2**, Depo. V.Parsons, pp. 30-3.

10. Despite receiving the final notice, the plaintiffs, Charles Parsons and Victoria Parsons, did not respond to the Zoning Enforcement Officer and did not appeal the decision of the Zoning Enforcement Officer to the Old Lyme Zoning Board of Appeals. *See* **Exhibit D1**, Depo. C.Parsons, pp. 51-75, 122-6; **Exhibit D2**, Depo. V.Parsons, pp. 30-3.

11. As of July 2006, Charles Parsons does not own property in Old Lyme. *See* **Exhibit D1**, Depo. C.Parsons, p. 24-5.

12. Despite receiving the preliminary notice, the plaintiff, Joan Byer, did not respond to the Zoning Enforcement Officer. *See* **Exhibit E**, Depo. Byer, pp. 55-76, 81-7.

13. Despite receiving the final notice, the plaintiff, Joan Byer, did not respond to the Zoning Enforcement Officer. *See* **Exhibit E**, Depo. Byer, pp. 55-76, 81-7.

14. After the final notice, the plaintiffs, Joan Byer, appealed the decision of the Zoning Enforcement Officer to the Old Lyme Zoning Board of Appeals. *See* **Exhibit E**, Depo. Byer, pp. 55-76, 81-7.

15. After a hearing and after the opportunity to present evidence, the Old Lyme Zoning Board of Appeals affirmed the decision of the Zoning Enforcement Officer concerning the determination that Byer's property was restricted to seasonal use only. *See* **Exhibit E**, Depo. Byer, pp. 55-76, 81-7.

16. Following the decision of the ZBA, the plaintiff, Joan Byer, did not file an appeal with the Connecticut Superior Court. *See* **Exhibit E**, Depo. Byer, p. pp. 55-76, 81-7.

17. In 1990, the Town adopted a master plan that included a policy for slow growth, preservation of the character of Town, sewer avoidance. *See* **Exhibit B1,** TRO Hearing, 4/12/2000, pp. 78-91, 101-2; **Exhibit I**, pp.1-4, 5-6, 9, 11-2,

18. In that Master Plan, the Town created a WPCA and developed, in conjunction with CT DEP, a septic system inspection program, and ground water monitoring. *See* **Exhibit B1,** TRO Hearing, 4/12/2000, pp. 78-91, 101-2; **Exhibit I**, pp.1-4, 5-6, 9, 11-2,

19. In connection with that Master Plan, the Zoning Commission adopted regulations codifying existing seasonal use restrictions and included, in order

        to reduce density in the beach areas, conversion regulations. *See* **Exhibit B1,** TRO Hearing, 4/12/2000, pp. 55-62, 78-91, 101-2; **Exhibit I**, pp.1-4, 5-6, 9, 11-2

20. Aside from the recognized cost for the installation of sewers costing millions of dollars, the Town, its residents could suffer in the construction process the environmental impact to remove old septic systems as hazard to environment in construction of sewers. *See* **Exhibit G1**, Depo. Gross, p. 86-8.

21. The Challenged Regulations, the sewer Avoidance Committee, the establishment of the WPCA, the septic system pump-out and inspection program, and ground water monitoring were all measured and coordinated responses by Old Lyme to concerns that municipalities and their citizens on the Connecticut Shoreline may be facing some pollution in Long Island Sound. *See* **Exhibit B1,** TRO Hearing, 4/12/2000, pp. 55-62, 78-91, 101-2; **Exhibit C3**, Depo. Roberts, pp. 19-43, 60-5; **Exhibit I**, pp.1-4, 5-6, 9, 11-2

22. The interests underlying the Challenged Regulations are the legitimate expression of lawful public health and safety concerns held by the Town and the Commission. *See* Mem. Dec. 03/07/02, p. 13 (Doc. Entry #44); Mem. Dec. 07/27/01, p. 26 (Doc. Entry #21); Exhibit B2, TRO Hearing, 4/13/2000, p. 9.

23. The season use determination process is tailored to the resources made available by the Town and its taxpayers to the LUO. *See* **Exhibit H**, Affidavit of Ann Brown, ¶¶11-19; **Exhibit C1,** pp. 22-4; **Exhibit C2**, pp. 46-53.

24. The Town estimates more 1500 lots could be impacted by the amortization effects of the Challenged Regulations. *See* **Exhibit H**, Affidavit of Ann Brown, ¶30.

25. Some municipalities have used registration systems to amortize nonconforming uses. A registration process would set a date by which any landowner who believes they have a valid, non-conforming use in the year-round use of their property in Old Lyme in the R10 district would have to "register" that use with the Town in a specific manner and by a certain date. Failure to register would result in the extermination of such nonconforming use without any appeal. *See* **Exhibit H**, Affidavit of Ann Brown, ¶26.

26. At the time of registration, each landowner would provide identifying information for data collection purposes and provide all evidence they have supporting their claim. *See* **Exhibit H**, Affidavit of Ann Brown, ¶27.

27. Once the ZEO receives the registration, Connecticut law requires the ZEO to act on the registration within a reasonable time period, usually 30 days, finding the registrant has a valid nonconforming use entitling the registrant to year-round use of their property or denying the registration, finding that insufficient evidence exists for the recognition of the non-conforming use. *See* **Exhibit H**, Affidavit of Ann Brown, ¶28.

28. Before making any determination, the ZEO would be required to conduct some investigation herself, including but on limited to the examination of existing Town records, confirmation of evidence submitted by the registrant or interview of witnesses listed or of the registrant. Some record or evidence

confirmation may require releases to satisfy privacy laws for the ZEO's investigation and determination process. *See* **Exhibit H**, Affidavit of Ann Brown, ¶29

29. Given the interests of the landowner, the efforts of the Association and publicity, the Town estimates that at least 30% of the owners of the affected lots will appeal any adverse decision to them under the Challenged Regulations. *See* **Exhibit H**, Affidavit of Ann Brown, ¶34

30. Given the amount of work required to collect the data, confirm evidence through telephone calls or letters, and simply review the applications is unreasonable given the limited resources of the ZEO and the Old Lyme Land Use Office. *See* **Exhibit H**, Affidavit of Ann Brown, ¶

31. The Town estimates that it would take 3-5 hours of work per application. *See* **Exhibit H**, Affidavit of Ann Brown, ¶¶32-33.

32. Even if the ZEO could complete the review of all registration applications in a reasonable period of time, ZBA could not hear all of the appeals within the limitations provided by Conn. Gen. Stat. § 8-7d. *See* **Exhibit H**, Affidavit of Ann Brown, ¶20-23, 35, 37-42; Conn. Gen. Stat. § 8-7d.

33. At this time, the ZBA is equipped to handle 3-6 cases per month on regular zoning issues and therefore has the capacity to handle 36-72 appeals per year. *See* **Exhibit H**, Affidavit of Ann Brown, ¶21.

34. The size and composition of the ZBA is defined by statute and cannot be increased by any effort of the Town, the Commission, the ZEO or the ZBA. *See* **Exhibit H**, Affidavit of Ann Brown, ¶20.

35. As volunteers, many of whom have full-time jobs and families, the ZBA could not be reasonable expected to hear all the anticipated appeals. *See* **Exhibit H**, Affidavit of Ann Brown, ¶¶41, 42.

36. The Town has determined that the cost in volunteer time from the ZBA members is unreasonable and unwarranted and would result in no one ever aspiring to the offices of Commissioner or Board member if they had to adjudicate several hundred appeals in one year. *See* **Exhibit H**, Affidavit of Ann Brown, ¶¶37-42.

37. Each appeal would have to be defended by the ZBA's counsel. *See* **Exhibit H**, Affidavit of Ann Brown, ¶40.

38. Based on the time limitations, the resource limitations, the economic limitations, the volunteer limitations and the limitations imposed by Connecticut law that cannot be altered by agreement, the Town, the Zoning Commission and the ZEO have determined that a registration process is too much of a financial and resource burden on the municipality to expect this level of process within a set period of time which is limited by Connecticut law. *See* **Exhibit H**, Affidavit of Ann Brown, ¶41.

39. The original plan and the plan as amended during the present litigation which had a street by street determination left the process to the ZEO when time

permitted, or when requested by an owner, or when an owner sought a permit, and appeals, as they occurred, would be handled in the ordinary course of business. *See* **Exhibit H**, Affidavit of Ann Brown, ¶42; **Exhibit B2**, pp. 33-5.

40. Doing more than suggested by the ZEO with respect to review of municipal records is reasonable insofar as legal limitations in the nature of privacy laws and time and manpower limitations prevent research into other sources. *See* **Exhibit H**, Affidavit of Ann Brown, ¶¶27, 29-33.

41. Before voting to adopt the regulations, the Old Lyme Zoning Commission, reviewed documents, heard testimony, consulted with counsel and deliberated among each other before voting to adopt the challenged regulations. *See* **Exhibit J1-3,** Minutes of the Old Lyme Zoning Commission; **Exhibit C_,** Depo. Fries, Vol. 1, p. 34:1-22, 33:21-5, 52:19-21, 69:211-5, 71:1-16, 74:21-5, 75:1-25, 76:1-3; **Exhibit C_**, Depo. James, Vol. 2, 38:14-25; **Exhibit C_**, Depo. Marsh, Vol. 1, 37:22-25, 38:1-25, 39:1-25, 40:1-14, 42"10-25, 43:1-16l.

> THE DEFENDANTS,
> TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, and MARILYN OZOLS
>
> /s/John J. Radshaw
> John J. Radshaw, III, ct19882
> HOWD & LUDORF, LLC
> 65 Wethersfield Avenue
> Hartford, CT  06114
> (860) 249-1361
> (860) 249-7665 (f)

# **C E R T I F I C A T I O N**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 20th day of February 2007.

| | |
|---|---|
| Kenneth R. Slater, Jr., Esquire | Eric D. Knapp, Esquire |
| HALLORAN & SAGE, LLP | BRANSE, WILLIS & KNAPP, LLC |
| One Goodwin Square | 148 Eastern Blvd., Suite 301 |
| 225 Asylum Street | Glastonbury, CT  06033-2038 |
| Hartford, CT  06103-4303 | |

      /s/John J. Radshaw
      John J. Radshaw, III