

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2
     - - - - - - - - - - x
 3   SOUTH LYME,                :
              Plaintiff,        :
 4                              :     CIVIL NO.
         vs.                    :     3:00CV97
 5                              :
     OLD LYME,                  :     April 13, 2000
 6            Defendant.        :
     - - - - - - - - - - x      Volume 2
 7

 8                              Federal Building
                                141 Church Street
 9                              New Haven, Connecticut

10

11        HEARING ON TEMPORARY RESTRAINING ORDER

12

13   B e f o r e:   The Honorable ELLEN BREE BURNS
                    Senior U.S. District Court Judge
14
...

23              FALZARANO COURT REPORTERS
                  117 N. Saddle Ridge
                West Simsbury, CT  06092
24                   860.651.0258
```

Falzarano Court Reporters

EXHIBIT B-2

```
 1  APPEARANCES:

 2      For the Plaintiff:

 3          EISENBERG, ANDERSON, MICHALIK & LYNCH, LLP
            136 West Main Street
 4          P.O. Box 2950
            New Britain, Connecticut 06050-2950
 5          860.229.4855
            By:  KENNETH R. SLATER, JR., ESQ.
 6
        For the Defendant:
 7
            HOWD & LUDORF
 8          65 Wethersfield Avenue
            Hartford, Connecticut 06114-1190
 9          860.249.1361
            By:  THOMAS R. GERARDE, ESQ.
10
                -and-
11
            BRANSE & WILLIS, LLC
12          41-C New London Turnpike
            Glen Lochen East
13          Glastonbury, Connecticut 06033
            860.659.3735
14          By:  ERIC KNAPP, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Hearing commenced:   11:15 a.m.)
 2         THE COURT:  Good morning.
 3         MR. SLATER:  Good morning.
 4         MR. GERARDE:  Good morning, your Honor.
 5         MR. SLATER:  At this time, I would like
 6    to continue with Ms. Ozols.
 7         Before we begin, your Honor, may I
 8    clarify an issue for the record?
 9         THE COURT:  Yes, sir.
10         MR. SLATER:  I indicated yesterday that
11    it's been plaintiff's position that we are
12    endeavoring to avoid litigating all of the
13    issues that are going to be on trial on our
14    case in chief.
15         THE COURT:  Yes.
16         MR. SLATER:  And to that end, as the
17    Court has already seen and will see as we
18    complete our case, much of the focus of both
19    our request for relief in this hearing and the
20    evidence relates to the process of
21    implementing the 1995 regulations that define
22    seasonal regulations.  And it's on that
23    evidence that we will be seeking an order of
24    this Court.
25         THE COURT:  Limited to the process,
```

```
 1   other witness--
 2           THE COURT:  Yes, certainly.
 3           MR. GERARDE:  --who is coming down for a
 4   fee.
 5           THE COURT:  Certainly, absolutely.
 6           MR. GERARDE:  First of all, we need to
 7   reach the agreement, and second of all, I need
 8   to explain the scenario.
 9           MR. SLATER:  I think we have that
10   agreement.  I don't think it's necessary to
11   reach any detailed stipulations in terms of
12   what this evidence might show.  I think the
13   concession that we are not challenging the
14   fact that the regulation was adopted for valid
15   public purposes, I think eliminates the need
16   to go into any further details, subject, of
17   course, that this is only for the purpose of
18   this TRO hearing and that those issues are, of
19   course, part of the case that we will be
20   trying ultimately.
21           MR. GERARDE:  I think the only last
22   concession I need is when counsel says the
23   regulations were adopted for valid public
24   purpose, is that the equivalent of the
25   regulations being rationally related to public
```

```
 1    health, safety, and welfare for the purposes
 2    of this hearing.
 3              MR. SLATER:  For the purposes of the
 4    concession I am making, that is absolutely
 5    true.
 6              THE COURT:  That's a very narrow focus,
 7    then, as I see it.  It is simply whether Ms.
 8    Ozols has followed appropriate procedure in
 9    making her determinations as to whether any
10    particular parcel was a seasonal use or not.
11              MR. GERARDE:  I would agree with that,
12    and I would ask your Honor, I know I kept you
13    waiting, but--
14              THE COURT:  No, no.  Please.  Go do what
15    you have to.
16              MR. GERARDE:  I would like to confer
17    with my client before I agree to narrow the
18    scope.
19              THE COURT:  Okay.
20              MR. GERARDE:  I just need a short time.
21              THE COURT:  We can take a short recess,
22    you can confer, and when you're ready to
23    resume, let me know.
24              MR. GERARDE:  Thank you very much.
25              (Recess:  11:23 to 11:40 a.m.)
```

Falzarano Court Reporters

```
 1  determinations for so far?
 2       A    On the alphabetical basis, I'm somewhere in
 3  the C's.  There are a lot of beach streets beginning
 4  with A, B, and C in Old Lyme.
 5       Q    During the course of the next several months,
 6  what are your plans in terms of proceeding with
 7  seasonal determinations?
 8       A    The same thing:  To undertake the process in
 9  three--we are triggered by three different things:
10  continuing review alphabetically by street, or when any
11  property owner comes in and requests a determination,
12  or when it is triggered by some specific type of other
13  application or representation in the office.
14       Q    Approximately, do you have a sense of how many
15  properties are subject to--you say from testimony
16  yesterday, you were starting with the R10 zone; is that
17  correct?
18       A    That's correct.
19       Q    Do you have a sense of how many properties are
20  located in the R10 zone?
21       A    My understanding is it is probably well over a
22  thousand.
23       Q    How many seasonal determinations would you
24  hope to issue over the course of the next six months?
25            MR. GERARDE:  Your Honor, I object
```

```
 1              unless it's limited.  There are three sources
 2              of seasonal determinations.  Perhaps you could
 3              refine the question.
 4   BY MR. SLATER:
 5       Q      I will limit it to the alphabetical street
 6   based determinations, not the other two.
 7       A      I would expect that probably--it's difficult
 8   to predict because the review alphabetically by street
 9   is based on the workload at the time in the office.
10   People do a lot of construction this time of year, so
11   frequently the process slows.  But I would expect that,
12   depending on the length of the street, I should be able
13   to get through one, maybe two streets a month.  But
14   then you have to remember, too, that there are two
15   aspects to this review.
16       Q      The preliminary and the final?
17       A      Right.
18       Q      Approximately how many--how many properties
19   would be on each of these streets?  I understand
20   streets differ, but approximately.
21       A      There are--I don't recall which streets are
22   next, to remember their length.  I have done streets as
23   short as two houses and streets with over a hundred
24   houses.
25       Q      So it would be as many as a hundred or two
```

```
 1   hundred preliminary determinations in a month, subject,
 2   of course, to the availability of your staff and
 3   yourself with other workload; is that fair to say?
 4              MR. GERARDE:  Your Honor, I object.
 5         Question calls for speculation as to what
 6         could be.  The earlier question was what do
 7         you expect, and it's a different question.
 8              MR. SLATER:  I'm trying to get a sense
 9         of how many of these seasonal determinations
10         are likely to occur over the next six-month
11         period, and based on the witness's testimony,
12         I believe there is no way the witness will be
13         able to say precisely, but considering that
14         caveat, it is still an appropriate question.
15   BY THE COURT:
16       Q    Can you give us an approximate number?
17       A    Probably a few hundred.
18   BY MR. SLATER:
19       Q    And your protocol that you use for issuing
20   these determinations would not include inspecting these
21   properties or interviewing the property owners as to
22   whether or not they used the property prior to January
23   1, 1992; is that correct?
24       A    An inspection would not do me any good because
25   I cannot see in the year 2000 what was happening on the
```

1    property prior to January of 1992.  And an interview
2    with the property owners does occur when the property
3    owner calls me, when the property owner comes in and
4    talks to me about a permit, when the property owner
5    requests a determination.
6        Q    But in terms of your issuing the preliminary
7    determinations, your protocol looks at looking at the
8    assessor's records, health determinations found in a
9    stamp placed on the assessor's records, and other
10   public records that may be relevant; is that correct?
11   It does not include--it does not include interviewing--
12       A    Does not include--
13       Q    --does not include--
14       A    Does not include initiating a review with the
15   property owner based on an alphabetical review of the
16   streets.
17       Q    You mentioned three different ways in which
18   properties could come before you in terms of the
19   seasonal determination.  Have you issued a preliminary
20   determination of property known as 49 Hartford Avenue?
21       A    I've issued a preliminary, yes.
22       Q    And what--which one of the three reasons for
23   coming before you did 49 Hartford Avenue appear for the
24   reason for you issuing a preliminary determination?
25       A    The preliminary review was concurrent with an

```
 1  application for work on the property.
 2      Q    Which preliminary--I'm sorry.  What work was
 3  being requested at the property?
 4      A    I believe it was some renovation work.  I
 5  don't recall specifically.  It had to do with, I think,
 6  roofing and siding and maybe windows.  I don't recall
 7  how much interior, but I believe there were--there was
 8  some renovation involved.  It was not simply a siding
 9  and roofing.  49 Hartford Avenue is also a property
10  that includes multiple uses.
11      Q    Is that document that I just showed you your
12  preliminary determination with respect to 49?
13      A    Yes, it is.
14      Q    Do you recall receiving any correspondence
15  from the property owner after the preliminary
16  designation was issued?
17      A    I believe I did.
18      Q    Do you recall the nature of that
19  correspondence?
20      A    I believe it was correspondence indicating
21  that I should have information previously submitted, I
22  think like in 1989, in my file that had been reviewed
23  previously, that the problem with that is when I
24  started this job, there were a few zoning files, but no
25  street files.  So there was no "my file" to refer to.
```

```
 1              weighing various questions and deciding
 2              whether to issue a temporary restraining
 3              order, including harm to the plaintiffs, but
 4              in valuing that, harm to the defendants is
 5              also a relevant issue.
 6                      THE COURT:  Balance of the hardships is
 7              what you're talking about.
 8                      MR. SLATER:  Exactly.
 9                      THE COURT:  I'll overrule the objection.
10      A       Where were we in the question?
11 BY MR. SLATER:
12      Q       Can you identify from your perspective any
13 harm if you are asked or ordered to refrain from
14 issuing seasonal determinations on a street-by-street,
15 that one element of the three that you identified
16 earlier, until this case is tried on the merits?
17      A       Okay.  But we are just now talking about the
18 street-by-street and not the on-request or on-
19 application or some other reason?
20      Q       That is correct.
21      A       I think from my perspective, by stopping the
22 process, you are--one, you're lengthening the time that
23 it will take to do it, but there are health, safety,
24 and welfare issues that were the basis for the adoption
25 of the regulation.  So if we stop the process, then all
```

```
 1  of those things that the commission considered when
 2  they enacted the regulation are affected by it.
 3      Q    How?
 4      A    How what?
 5      Q    You just said that they would be affected by
 6  it.  How would they be affected?
 7      A    If the regulation was enacted to protect
 8  health, safety, and welfare, which I believe it was and
 9  which the commission believed it was, then not being
10  able to do what the regulation says would be negating
11  any of the concerns that they expressed.  I mean any of
12  those health, safety, welfare issues that are protected
13  by this regulation would then not be as well protected
14  when I couldn't enforce the regulation or I couldn't do
15  what the regulation told me to do.
16      Q    Under the other--the other two ways in which
17  you would reach seasonal determinations, that would
18  include under the 1995 regulations the property owner
19  sought to convert, didn't argue with you, had never
20  used the property on a year-round basis, but sought to
21  convert to year-round, they would have to go through
22  the process through your office, correct?
23      A    That's correct.
24      Q    That's separate and apart from your going on a
25  street-by-street and issuing seasonal determinations,
```

```
 1                    CERTIFICATE

 2

 3      I hereby certify that the foregoing 187 pages are a

 4   complete and accurate computer-aided transcription of

 5   my stenotype notes taken of the hearing in the Matter

 6   of SOUTH LYME vs. OLD LYME, Civil No. 3:00CV97, held

 7   before the Hon. Ellen Bree Burns, Senior U.S. District

 8   Judge, at the Federal Building, 141 Church Street, New

 9   Haven, Connecticut, on April 13, 1999.

10

11

12
                        _____
13                      James A. Scally, RPR, LSR #80
                        Official Reporter
14
```

```
 1                              INDEX
     WITNESS                                                  PAGE
 2
     Marilyn M. Ozols
 3
         Continued Direct Examination by Mr. Slater            12
 4       Cross-Examination by Mr. Gerarde                      60
         Redirect Examination by Mr. Slater                   106
 5

 6   Marilyn Swaney

 7       Direct Examination by Mr. Slater                     125
         Cross-Examination by Mr. Gerarde                     136
 8       Redirect Examination by Mr. Slater                   138

 9
     Lawrence Lapila
10
         Direct Examination by Mr. Slater                     142
11       Cross-Examination by Mr. Gerarde                     161
         Redirect Examination by Mr. Slater                   172
12       Recross-Examination by Mr. Gerarde                   173
13
14
15
16
17
18
19
20
21
22
23
24
25
```