```
 1                 UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
 2

 3   - - - - - - - - - - - - - - - - - +
     SOUTH LYME PROPERTY OWNERS,        |
 4   ASSOCIATION, INC.
              Plaintiff                 | CIVIL NO.
 5                                        00-cv-97
     CHARLES PARSONS                    |
 6            Plaintiff
                                        |
 7   VICTORIA PARSONS
              Plaintiff                 |
 8
     JOAN BYER                          |
 9            Plaintiff
                                        |
10         v.
                                        |
11   TOWN OF OLD LYME,
              Defendant                 |April 14, 2000
12   - - - - - - - - - - - - - - - - - +

13

14

15   Before:

16        The Honorable ELLEN BREE BURNS,
          Senior U.S. District Court Judge
17




                FALZARANO COURT REPORTERS
                  117 North Saddle Ridge
                 West Simsbury, CT 06092
                       860.651.0258
```

"COPY" (handwritten)

```
 1    APPEARANCES:

 2         For the Plaintiffs:

 3         Eisenberg, Anderson, Michalik & Lynch
           136 W. Main Street
 4         P.O Box 2950
           New Britain, Conneticut 06050-2950
 5         860.229.4855
               By:  KENNETH R. SLATER, JR., ESQ
 6

 7         For the Defendant:

 8         Howd & Ludorf
           65 Wethersfield Avenue
 9         Hartford, Connecticut 06114-1190
           860.249.1361
10             By:  THOMAS R. GERARDE, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                (Court commenced:  9:30 a.m.)
 2
 3          MR. SLATER:  Your Honor, just as a matter
 4    of housekeeping, yesterday Ms. Ozols testified
 5    as to the property at 49 Hartford Avenue.
 6    Yesterday she was not able to bring the files
 7    with respect to that property, and I have the
 8    preliminary determination, as well as the
 9    letters from the property owner that was
10    referred to during testimony and would offer
11    them as Plaintiff's Exhibit 18.
12          MR. GERARDE:  No objection.
13          THE COURT:  Thank you.
14          THE CLERK:  Plaintiff's Exhibit 18, two
15    letters.
16          THE COURT:  What was the address?
17          MR. SLATER:  49 Hartford Avenue.
18          THE COURT:  Thank you.
19
20          (Plaintiff's Exhibit 18:
21           Marked for identification.)
22
23          MR. GERARDE:  Your Honor, Defendants call
24    Dennis Greci.
25
```

1   rest for a several-month period actually reduces the ability
2   of the systems to renovate nitrogen when used during the
3   remaining months of the year?
4               MR. GERARDE:  Your Honor, I object to the form
5           of the question, would you disagree.  I think
6           it turns it into an affirmative statement.  I
7           object on that basis.
8   BY MR. SLATER:
9       Q    Are you confused by my question?
10      A    Somewhat.
11      Q    Would you agree that allowing the on-site systems
12  to rest for three or more months actually would reduce the
13  ability of those systems to renovate pollutants when used
14  during the remaining months by reducing the biomat?
15      A    To a certain degree, yes.
16      Q    Are you performing studies of whether or not there
17  have been violations of drinking water standards when these
18  systems are utilized during summer months in the town of Old
19  Lyme?
20      A    Yes. We've just begun.  Since 1996, we've been
21  conducting surface water sampling program for the Old Lyme
22  Water Control Authority looking at streamwater quality,
23  upgrading and downgrading of various areas in Old Lyme.  And
24  we've just begun the installation of monitoring wells.  And
25  this summer, we'll be sampling those wells for the first time

1   during the busy period. And we'll compare -- obtain those
2   results and eventually compare those to seasonal changes in
3   groundwater quality. Like I said, we've just begun that, and
4   this summer, we begin the first summer sampling.
5       Q   Have you been retained by the town of Old Lyme to
6   demonstrate that year-round use systems is more likely to
7   cause violations in groundwater standards than seasonal use?
8       A   No. I've not been retained for that task. We've
9   been retained to look at groundwater quality and determine if
10  they have problem areas, and if so, try to determine what the
11  causes are and make recommendations to the Water Pollution
12  Control Authority.
13      Q   But you're just getting under way so you don't have
14  the results of summertime use?
15      A   Correct.
16      Q   You testified that in your view a 10,000 square lot
17  is insufficient to appropriately dilute nitrogen; am I
18  correct?
19      A   On a year-round basis, yes.
20      Q   What size do you believe would be an appropriate
21  size to adequately --
22      A   We've done calculations to determine that, and it
23  varies depending upon the type of soil on the lot. Sandy
24  soils generally can infiltrate more rainfall than soils that
25  are very compact or very steeped and sloping. And we've

```
 1   looked at ranges of typical infiltration rates for
 2   precipitation.  And based upon that analysis and also the
 3   typical volume and strength of wastewater discharge from the
 4   residence, the minimum lot size would vary between 4/10 of an
 5   acre and 6/10 of an acre to protect the groundwater to meet
 6   the drinking water standard for nitrate/nitrogen.
 7       Q    And 4/10 of an acre is how many square feet?
 8       A    About 16,000 square feet.
 9       Q    Would that be on a lower range?  You said it might
10   depend on the soil.  Is that a better soil condition?
11       A    Yes.  The better soil conditions would be the --
12   would be -- the minimum lot size would be about 4/10 of an
13   acre.
14       Q    And it would range to .6?
15       A    Yes.
16       Q    How many square feet is that?
17       A    Roughly, 26,000 square feet.
18            MR. SLATER:  If I may take one moment, your
19       Honor.
20            THE COURT:  Yes.
21   BY MR. SLATER:
22       Q    Do you have opinion of the appropriate lot size for
23   -- how do you define seasonal use?  In your testimony, you
24   indicated between year-round and seasonal.  How do you define
25   seasonal?
```

INDEX

MORNING SESSION

| WITNESS | PAGE |
|---|---|
| DENNIS GRECI | |
| Direct Examination by Mr. Gerarde | 4 |
| Cross-Examination by Mr. Slater | 19 |
| Redirect Examination by Mr. Gerarde | 26 |
| Recross-Examination by Mr. Slater | 30 |
| BRIAN CURTIS | |
| Direct Examination by Mr. Gerarde | 35 |
| Cross-Examination by Mr. Slater | 42 |
| Redirect Examination by Mr. Gerarde | 52 |

PLAINTIFFS' EXHIBITS

| EXHIBIT | IDENTIFICATION | PAGE |
|---|---|---|
| 18 | two letters | 3 |

DEFENDANT'S EXHIBITS

| EXHIBIT | IDENTIFICATION | PAGE |
|---|---|---|
| X | May 1989 report | 14 |
| Y | memo dated April 14, 1999 | 17 |
| Z | letter dated April 11, 2000 | 27 |

57

CERTIFICATE

I hereby certify that the foregoing 56 pages are a complete and accurate computer-aided transcription of my original stenotype notes taken of the case re: SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., ET AL V. TOWN OF OLD LYME, which was held on April 14, 2000.

*Cheryl Roehls*
Cheryl Roehls, Notary Public
Hartford County, State of Connecticut
My commission expires March 31, 2003

Falzarano Court Reporters