UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - -X
SOUTH LYME PROPERTY OWNERS          :
ASSOCIATION, INC., CHARLES AND      :
VICTORIA PARSONS AND JOAN BYER,     :
                Plaintiffs          :
                                    :
VS                                  : 3:00CV97(EBB)
                                    :
TOWN OF OLD LYME, TOWN OF OLD       :
LYME ZONING COMMISSION,             :
ERIC FRIES, GEORGE JAMES,           :
JANE MARSH, THOMAS RISOM,           :
WALTER SEIFERT, SHARON COLVIN AND   :
MARILYN OZOLS,                      :
                Defendants          :
- - - - - - - - - - - - - - - - -X

Deposition of MARILYN OZOLS taken at the
offices of Halloran & Sage, 300 Plaza
Middlesex, Middletown, Connecticut, before
Audra Quinn, RPR, Licensed Shorthand Reporter
#106, and Notary Public, in and for the State
of Connecticut on August 20, 2003, at
9:40 a.m.



DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE                    100 PEARL ST., 14th FL.
MADISON, CT 06443                  HARTFORD, CT 06103-4506
  203 245-9583                       800 839-6867
              EXHIBIT C-1

A P P E A R A N C E S:

ON BEHALF OF THE PLAINTIFFS:

KENNETH R. SLATER, JR., ESQ.
HALLORAN & SAGE
225 Asylum Street
Hartford, Connecticut   06103


ON BEHALF OF THE DEFENDANTS:

JOHN J. RADSHAW, III, ESQ.
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, Connecticut   06114-1190


ON BEHALF OF THE DEFENDANT:

ERIC KNAPP, ESQ.
BRANSE & WILLIS
41-C New London Turnpike
Glastonbury, Connecticut 06033

1                        MARILYN OZOLS,

2    residing at 104 Salt Island Road, Westbrook,

3    Connecticut, having first been duly sworn, deposed and

4    testified as follows:

5    DIRECT EXAMINATION

6    BY MR. SLATER:

7        Q    Good morning.

8        A    Good morning.

9        Q    Have you been deposed before?

10       A    Yes, I have.

11       Q    In what context?

12       A    In the context of my job as a zoning

13   enforcement officer and in the context of a personal

14   injury suit.

15              MR. RADSHAW:   Attorney Slater, we're

16         going to read and sign.

17              MR. SLATER:   Just put on the record as

18         with the other depositions, it would be the

19         standard stipulations plus the reservation of

20         the right to read and sign.

21       Q    If I ask you a question that you don't

22   understand, please ask for a clarification and I'll try

23   to do that.

24              As you may know from participating in other

25   depositions, all our words are being recorded.   So

1   in Old Lyme play with respect to the Zoning Board of

2   Appeals?

3       A     Provided staff service to the Board of Zoning

4   Appeals.

5       Q     Did the zoning enforcement officer of Old

6   Lyme serve roles with any other boards or commissions

7   in the town of Old Lyme?

8       A     To some extent to the Planning Commission on

9   request primarily.

10      Q     I didn't hear that.  What primarily?

11      A     On request.

12      Q     Were there any other staff persons hired by

13  the town of Old Lyme performing zoning enforcement

14  functions during the period of time you were zoning

15  enforcement officer?

16      A     Part time on various occasions, plus

17  clerical, secretarial functions.

18      Q     Did you have a full-time clerical or

19  secretarial person?

20      A     For both planning and zoning and ZBA.

21      Q     Those were all different positions or one

22  person would serve all three?

23      A     One person, yes.

24      Q     Was that person available to you to assist in

25  your clerical efforts associated with zoning

1    enforcement?

2        A    Yes.

3        Q    And who --

4        A    Not for the full time I was in that

5    position.

6        Q    For what period of time were those services

7    not available to you as zoning enforcement officer?

8        A    That function was only added when the

9    position became a full-time position, which was a year

10   or two after I was there.

11       Q    So when you were first hired, the zoning

12   enforcement position became a position in and of

13   itself, but it wasn't a full-time position.  Is that

14   correct?

15       A    No.  It was a full-time position.  It had no

16   clerical assistance.

17       Q    So when you became zoning enforcement officer

18   it was always a full-time position for you?

19       A    Right.

20       Q    But the clerical assistant was only part-time

21   for the first two years?

22       A    No.  Was part-time for another commission.

23   Had no function with zoning.

24       Q    No function with zoning and then a couple of

25   years after --

1    A    At some point in there.  I really don't

2  recall.

3    Q    But it seemed like it was a matter of some

4  years after it became available to the Zoning

5  Commission and zoning enforcement officer?

6    A    I believe I said a year or two.

7    Q    And who served in that clerical position

8  during your tenure as zoning enforcement officer?

9    A    Kim Groves.

10    Q    For the entire time?

11    A    Yes.

12    Q    Is she still employed by the town of Old

13  Lyme?

14    A    Yes.

15    Q    And when exactly did you leave the position

16  of zoning enforcement officer in the town of Old Lyme?

17    A    I resigned the position in September of 2000.

18  For the next year, for periods of time they hired me on

19  a consulting basis to perform some of the zoning

20  enforcement function.

21    Q    Why did you resign?

22    A    Because I accepted a position in Madison.

23    Q    You continued to serve -- do you currently

24  serve in any capacity for the town of Old Lyme?

25    A    No.

1      A    I don't know.

2      Q    The property cards that are referred in this

3  document having occurred in 1988 by Frank Kneen, those

4  property cards are, in fact, the assessor's cards, are

5  they not?

6      A    That's right.

7      Q    What is your understanding of a policy reason

8  for attempting to designate or limit certain properties

9  to seasonal use only?

10          MR. RADSHAW:  Object to the form of the

11          question.

12          You can answer.

13     A    By whom?

14  BY MR. SLATER:

15     Q    The town of Old Lyme.

16     A    Can you ask the question again?  I think I'm

17  confused as to what I'm answering.

18     Q    Do you know what policy reasons were the

19  basis of the town of Old Lyme attempting to designate

20  and limit the use of certain properties in the town of

21  Old Lyme to seasonal use only?

22     A    I don't believe there was one unilateral town

23  of Old Lyme policy action, and I don't want to speak

24  for Frank Kneen.  I wasn't there when he did that and

25  that would be part of an Old Lyme designation or limit.

1    The zoning regulation was separate and distinct from

2    anything that he did.  The policy had to do with the

3    zoning principles of public health, welfare and safety,

4    including the density of development, the character of

5    the seasonal neighborhoods and the number of zoning

6    issues.

7        Q    What was your understanding of the policy --

8    sorry, the public health and safety concerns that the

9    Zoning Commission was attempting to address in adopting

10   the 1995 regulations that were discussed and approved

11   in the minutes that have been described as SC-8?

12       A    The public health and safety issues related

13   to the density of development on small lots, the narrow

14   streets, the lack for emergency services, narrow

15   streets as far as emergency services, lack of parking,

16   more intensive use of the areas, which included not

17   only available area for septic systems but increased

18   runoff, higher water consumption, use of chemicals, et

19   cetera, on lawns and in households, year-round the much

20   more intense use in densely developed areas on lots

21   that were below the lot size required by zoning.

22       Q    Were these areas primarily the beach

23   communities located south of Route 156 in Old Lyme?

24       A    And in the Rogers Lake area.

25       Q    As part of your responsibility of zoning

1    enforcement officer, would you frequently drive through

2    the communities of Old Lyme and try to be generally

3    familiar with the use and occupancy of the properties

4    in the town of Old Lyme?

5        A    Yes.

6        Q    How would you describe the rate of occupancy

7    of properties that have already been developed in those

8    beach communities and in Rogers Lake during the summer

9    months?

10       A    In the summer months they were generally

11   fully occupied and crowded.

12       Q    How would you describe the use of these

13   properties or these areas in general terms during

14   winter months?

15       A    In winter months only some of the dwellings

16   were occupied.  There were much fewer people in the

17   area.

18       Q    How would use of existing dwellings during an

19   additional month or months of the year increase runoff

20   as you've described is one of the concerns of the

21   Zoning Commission?

22               MR. RADSHAW:  Object to the form of the

23           question.

24               You can answer.

25       A    There are more people in the area.  There are

1   more cars in the area.  There's the increase in just

2   the amount of pollutants from people, garbage, cars

3   that get into the surface area that is then washed off

4   the property in any rain event.

5   BY MR. SLATER:

6       Q    So it's the existence of cars being parked in

7   parking areas in these areas that is the -- would

8   result in an increase in runoff?

9       A    That was one of the things that I mentioned.

10      Q    And what else?

11      A    The garbage, just the number of the activity

12  in the area.  You have more tendency for lawn care

13  fertilization, for running water more, for using more

14  water, for using more cleaning products, throw out

15  things all year, letting them sit outside.  There are

16  any number of -- just the increase in number of people

17  doing things and leaving things around increases the

18  amount of potential for pollutants to be carried off in

19  the rainwater.

20      Q    Is there a pollution problem in these areas

21  during the high occupancy time of the summer months?

22      A    I can't speak to that.

23      Q    Why not?

24      A    Because that's not something that I've

25  studied or made any determination on.

1      Q     Did the Zoning Commission reach a
2  determination that there's a pollution problem in these
3  densely developed areas of Old Lyme during the summer
4  months when occupancy is high?
5                MR. RADSHAW:  Object to the form of the
6           question.
7      A     I don't believe so.
8  BY MR. SLATER:
9      Q     Do you know how they could conclude that
10  using these same properties during additional months of
11  the year would create a pollution problem if they had
12  no evidence that one exists when these properties are
13  used at a high rate of occupancy?
14                MR. RADSHAW:  Object to the form of the
15           question.
16                You can answer.
17      A     I don't think I mentioned at any point a
18  pollution problem.  I believe that's your phrase.
19                What I mentioned was that there was a greater
20  probability of pollutants in runoff, et cetera, from a
21  more intensive use.
22      Q     Are you familiar with any beach communities
23  in Connecticut that are not restricted by local zoning
24  for seasonal use?
25      A     Can you rephrase that question?

1     Q    Sure.  Are you familiar with any beach

2  communities along the Long Island Sound in Connecticut

3  where the zoning regulations impose no limitations on

4  the duration in which those properties can be used?

5     A    Yes.

6     Q    Where are some of those communities that

7  you're familiar with?

8     A    The ones that I'm familiar with are Westbrook

9  and Madison.

10     Q    How does the occupancy of properties in those

11  areas differ between summer months and winter months,

12  if you know?

13     A    There are seasonal use dwellings in both of

14  those communities that are not occupied in the winter

15  months.

16     Q    Is it fair to say that the occupancy in those

17  areas is much higher in the summer months than it is in

18  the winter?

19     A    Yes.

20     Q    Are those the only two areas you're familiar

21  in Connecticut that the beach properties are not

22  subject to zoning restriction against off season use?

23     A    Those are the only I'm familiar with the

24  zoning regulations.

25                MR. SLATER:  Let's go off the record.

1          (THEREUPON, THERE WAS A DISCUSSION

2               OFF THE RECORD.)

3          (THEREUPON THE DEPOSITION WAS

4               SUSPENDED AT 11:50 A.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      J U R A T

 2            I have read the foregoing 60 pages and hereby

 3            acknowledge the same to be a true and correct

 4            record of the testimony.

 5

 6

 7

 8                          _____

 9                          MARILYN OZOLS

10

11   Subscribed and sworn to

12   _____.

13   Before me this _____ day of

14   _____,2003.

15

16

17

18

19   _____

20   Notary Public

21   My Commission Expires:

22

23

24

25
```

```
 1
 2                    C E R T I F I C A T E
 3
 4        I hereby certify that I am a Notary Public, in and
 5    for the state of Connecticut, duly commissioned and
 6    qualified to administer oaths.
 7        I further certify that the deponent named in the
 8    foregoing deposition was by me duly sworn, and
 9    thereupon testified as appears in the foregoing
10    deposition; that said deposition was taken by me
11    stenographically in the presence of counsel and reduced
12    to typewriting under my direction, and the foregoing is
13    a true and accurate transcript of the testimony.
14        I further certify that I am neither of counsel nor
15    attorney to either of the parties to said suit, nor am
16    I an employee of either party to said suit, nor of
17    either counsel in said suit, nor am I interested in the
18    outcome of said cause.
19        Witness my hand and seal as Notary Public this
20    ____4th____ day of ___September___, 2003.
21
22                              _____
23                              Audra Quinn, RPR, LSR
                                Notary Public
24    My commission expires:  7/31/2006
      LSR No. 106
25
```