1

```
1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF CONNECTICUT

3

4   SOUTH LYME PROPERTY OWNER        :  NO.:  300CV97 (EBB)
    ASSOCIATION, INC., CHARLES
5   AND VICTORIA PARSONS AND
    JOAN BYER                        :
6

7   V.                               :

8   TOWN OF OLD LYME, TOWN OF        :  July 24, 2006
    OLD LYME ZONING COMMISSION
9   ERIC FRIES, GEORGE JAMES,
    JANE MARSH, THOMAS RISOM,
10  WALTER SEIFERT, SHARON
    COLVIN AND MARILYN OZOLS
11

12  DEPOSITION OF:  LAWRENCE LAPILA

13  APPEARANCES:

14  HALLORAN & SAGE, LLP
            Attorneys for the Plaintiff
15          225 Asylum Street
            One Goodwin Square
16          Hartford, CT  06103
            (860) 522-6103
17  BY:  KENNETH R. SLATER, JR., ESQ.

18  HOWD & LUDORF
            Attorneys for the Defendant
19          65 Wethersfield Avenue
            Hartford, CT  06105
20          (860) 249-1361
    BY:  JOHN J. RADSHAW, III, ESQ.
21       MARK E. VILLENEUVE, ESQ.

22

23

24                 Hilary O. Winslow
            Licensed Court Reporter, #00361
25
```

*NIZIANKIEWICZ & MILLER REPORTING SERVICES*
*972 Tolland Street*
*East Hartford, CT  06108*
*(860) 291-9191*

EXHIBIT F-1

1    Deposition of LAWRENCE LAPILA, a witness, taken on

2  behalf of the DEFENDANT, TOWN OF OLD LYME, in the

3  hereinbefore entitled action, pursuant to the Federal Rules

4  of Civil Procedure, before Hilary O. Winslow, duly qualified

5  Notary Public in and for the State of Connecticut and

6  Commonwealth of Massachusetts, held at HOWD & LUDORF, 65

7  Wethersfield Avenue, Hartford, CT  06105, (860) 249-1361,

8  commencing at 10:06 a.m. on Monday, July 24, 2006.

9                    S T I P U L A T I O N S

10    It is hereby stipulated and agreed by and among

11  counsel for the respective parties that all formalities in

12  connection with the taking of this deposition, including

13  time, place, sufficiency of notice, and the authority of the

14  officer before whom it is being taken may be and are hereby

15  waived.

16    It is further stipulated and agreed that

17  objections other than as to form are reserved to the time of

18  trial.

19    It is further stipulated and agreed that the

20  reading and signing of said deposition by the witness is not

21  hereby waived.

22    It is further stipulated that the proof of the

23  qualifications of the Notary Public before whom the

24  deposition is being taken is hereby waived.

25

3

```
 1              I N D E X

 2   WITNESS              DIRECT  CROSS  REDIRECT   RECROSS

 3   LAWRENCE LAPILA        4*

 4

 5

 6   *By Mr. Radshaw
     **By Mr. Slater
 7

 8

 9   Attorney Radshaw retains the exhibits.

10   DEFENDANT'S EXHIBITS                           PAGE

11   Exhibit 1, 4/27/06 Notice of Deposition           4
     Exhibit 2, 5/24/06 Renotice of Deposition         4
12   Exhibit 3, 6/30/06 Renotice of Deposition         4
     Exhibit 4, 7/24/06 Renotice of Deposition         4
13   Exhibit 5, Plaintiff's Objections to Requests for
                Production                             4
14   Exhibit 6, 5/29/01 Plaintiff's First Amended
                Complaint                              4
15   Exhibit 7, 3/30/00 Answers and Objections to
                Defendant's First Set of Interrogatories  4
16   Exhibit 8, 2/18/05 Listing of members of South Lyme
                Property Owners Association            4
17

18

19

20

21

22

23

24

25
```

*NIZIANKIEWICZ & MILLER REPORTING SERVICES*
*972 Tolland Street*
*East Hartford, CT  06108*
*(860) 291-9191*

4

```
 1              (Defendant's Exhibit Nos. 1 through 8,
 2          marked for identification.)
 3
 4          LAWRENCE LAPILA, called as a witness by the
 5   Defendant, having first been duly sworn by the Notary, was
 6   examined and testified on his oath as follows:
 7
 8          DIRECT EXAMINATION BY MR. RADSHAW:
 9
10      Q.   Mr. Lapila, would you please state your name and
11   your residential address for the record, please.
12      A.   Sure.  It's Lawrence Lapila -- I go by Larry --
13   192 Watch Hill in Berlin, Connecticut.
14      Q.   Okay.  And you understand we're here today for
15   the deposition of the most knowledgeable person of South
16   Lyme Property Owners Association; is that correct?
17      A.   Yes, sir.
18      Q.   And you know who I am.  I represent the Town of
19   Old Lyme, the Old Lyme Zoning Commission, Eric Fries, George
20   James, Jane Marsh, Thomas Risom, Walter Seifert, Sharon
21   Colvin, and Marilyn Ozols.  Do you know that?
22      A.   Yes, sir.
23      Q.   Okay.  Have you ever had you deposition taken
24   before?
25      A.   Yes.
```

1    organization, and I was one of the founding members.

2         Q.   How long have you been treasurer of the

3    organization?

4         A.   I can't even remember when we started this --

5    from the inception.

6         Q.   Okay.  All right.  I'm going to show you a

7    document that's been marked as Defendants Exhibit 1.  It's a

8    Notice of Deposition dated April 27th, 2006.  Could you tell

9    me if you've seen that document before?

10        A.   I don't recall.  I don't believe so.

11        Q.   Okay.  Sitting here today, as an officer of the

12   South Lyme Property Owners Association, were you aware that

13   the defendants had noticed the deposition of the most

14   knowledgeable person of the association for Wednesday

15   May 31, 2006?

16        A.   I don't recall.

17        Q.   Okay.  So you don't know one way or another?

18        A.   No, sir.

19        Q.   Okay.  And you're not aware whether or not --

20   okay.  I'll withdraw that.

21             I'm going to show you a document that's been

22   marked as Defendant's Exhibit 2.  It's a Renotice of

23   Deposition.  It's dated May 24th, 2006, and it seeks to take

24   the deposition of the most knowledgeable person of the South

25   Lyme Property Owners Association for Tuesday, June 20th,

9

1   2006.  Have you seen that document before?

2        A.   No, sir.

3        Q.   Okay.  Prior to me, of course, reading briefly

4   the contents of the document to you, were you aware prior to

5   that time whether the defendant sought to take the

6   deposition of the most knowledgeable person of the South

7   Lyme Property Owners Association on Tuesday, June 20th,

8   2006?

9        A.   No, sir.

10       Q.   Okay.  I'm going to show you a document that's

11  been marked as Defendant's Exhibit 3.  It's dated June 30th,

12  2006, and it's a Renotice of Deposition of the most

13  knowledgeable person of the South Lyme Property

14  Owners Association for deposition by the defendants on

15  Thursday, July 20th, 2006.  Have you seen that document

16  before today?

17       A.   No, sir.

18       Q.   Okay.  Before I related to you briefly the

19  contents of Defendant's Exhibit 3, were you aware that the

20  defendants wanted to take the deposition of the most

21  knowledgeable person of the South Lyme Property Owners

22  Association on Thursday, July 20th?

23       A.   No, sir.

24       Q.   Okay.  Now, today is Monday, July 24th.  Correct?

25       A.   Yes, sir.

1        Q.    Okay.  When is it that you were designated the

2    most knowledgeable person by the South Lyme Property Owners

3    Association to sit for today's deposition?

4        A.    I believe it was sometime in May or June that I

5    communicated with our attorney, Ken Slater, that they did

6    need to take a deposition and that it would be me.  And we

7    started comparing calendars and trying to pick dates.

8        Q.    Okay.  I'm going to show you a document that's

9    been marked Defendant's Exhibit 4.  It's a Renotice of

10   Deposition to take the deposition of the South Lyme Property

11   Owners Association on Monday, July 24th, and it has an

12   attached -- tell me if you've seen that document before.

13       A.    No, I have not.

14       Q.    Okay.  Now, I'm going to show you a document

15   marked as Defendant's Exhibit 5.  It says, "Objection to

16   Requests for Production."  And have you brought any

17   documents with you here today?

18       A.    No, sir.

19       Q.    Okay.

20            MR. RADSHAW:  And just for the benefit of

21            the record -- and Attorney Slater, you can

22            correct me if I don't accurately characterize

23            this, but the objection to the Requests for

24            Production in Defendant's Exhibit 5 objects to

25            the defendant's request for all documents

1   Out Program that's been administrated by the Town of Old
2   Lyme?
3        A.   Yes.
4        Q.   Have you made any repairs to the septic system as
5   a result of any inspections that were taken in connection
6   with the Pump Out Program?
7        A.   No.
8        Q.   Okay.  What kind of electric service do you have
9   there?  How many amps?
10       A.   I don't know.
11       Q.   Okay.  You don't know whether it's 60 or a
12   hundred or 200-amp service?
13       A.   I believe it's 200, since we have central air.
14       Q.   Okay.  And do you know when the electricity was
15   upgraded to 200 amps?
16       A.   Probably in the early '90s.
17       Q.   Okay.  It's your recollection that a building
18   permit was applied for as -- withdraw that.
19            It's your understanding that a building permit
20   was applied for for that upgrade; is that correct?
21       A.   Yes, sir.  The property was originally
22   a two-family house with two meters, and we removed that
23   nonconforming use and put in one meter when we upgraded the
24   service.
25       Q.   Approximately when was it changed from

43

1    the two-family to a one-family use?

2        A.    Late '80s, early '90s.

3        Q.    Water service, what kind of water service do you

4    have on the property?

5        A.    We have our own well.

6        Q.    Okay.  Do you have -- withdraw that question.

7              Are you aware if that property's been designated

8    seasonal by the Town of Old Lyme?

9        A.    Yes, it was.

10       Q.    And do you know when that determination has been

11   made?

12       A.    Just prior to this suit being filed.

13       Q.    When it was determined seasonal, did you take any

14   steps to challenge that determination?

15       A.    Yes, sir.  I filed an appeal with the Zoning

16   Board of Appeals.

17       Q.    Okay.  Did you provide any written documentation

18   other than the notice of the appeal to the ZBA on this

19   issue?

20       A.    Yes, sir.

21       Q.    That's all documentation that you have in a file

22   somewhere?

23       A.    I believe so.

24       Q.    Okay.  Do you remember when that appeal was

25   taken?

44

1        A.    Again, it was just prior to this organization

2    being formed and the suit.

3        Q.    Okay.  Did you ever go before the ZBA?

4        A.    Yes, sir.

5        Q.    Okay.  And are you aware if the ZBA took any

6    action on your appeal?

7        A.    Yes, they denied it.

8        Q.    And did you take any action after the denial of

9    your appeal by the ZBA?

10       A.    Yes, we formed the South Lyme Properties

11   Association.

12       Q.    But you didn't take an appeal to the Connecticut

13   Superior Court on the denial of that appeal.  Correct?

14       A.    No, sir.

15       Q.    All right.  Have you ever filed a permit to

16   convert the dwelling at 20 Swan from seasonal use to

17   year-round use?

18       A.    No, sir.

19       Q.    Are you aware whether, since the time you've

20   owned the property, whether any soil testing or analysis has

21   been performed on that property?

22       A.    Am I aware?

23       Q.    Yes.

24       A.    Yes, I'm aware.

25       Q.    And have there been any soil testing or analysis

54

1   you know a lot of people that live down there.  Correct?

2       A.   Yes.

3       Q.   A lifetime that you have been done there.  Right?

4       A.   Yes.

5       Q.   Okay.  Of the 408 names that are on Exhibit 8,

6   you would agree with me that it is likely that these pieces

7   of property were purchased at all different times; is that

8   correct?

9       A.   Yes.

10      Q.   I mean that the association doesn't have any

11  record of when each of the individual alleged owners listed

12  in the name category, when they actually purchased the piece

13  of property they've listed in their Old Lyme address; is

14  that right?

15      A.   Yes.

16      Q.   It's certainly possible that some of these have

17  been in the families for decades like your property, or they

18  could have been purchased more recently.  Correct?

19      A.   That's a fair statement.

20      Q.   Okay.  And that comports with your personal

21  experience in that area; is that right?

22      A.   Yes.

23      Q.   I mean, there's a lot of families that have had

24  properties and their houses through a couple of generations.

25  Others are newcomers who have purchased more recently and

55

1    anyone in between?

2        A.   Yes, sir.

3        Q.   With regard to the size of these lots, a lot of

4    these lots are all different sizes; is that correct?

5        A.   Yes.

6        Q.   There are some larger lots, and there are some

7    smaller lots?

8        A.   Most of the lots are about the same, but there

9    are some bigger and some smaller.

10       Q.   Okay.  When you say most lots are about the same,

11   how big is "about the same"?

12       A.   I think generally most of the streets are 50 or

13   60 by 80 or so.

14       Q.   Have you personally undertaken any study of any

15   of the records that might corroborate your, you know,

16   general sense that most of the properties are 60 by 80 feet?

17       A.   No, sir.

18       Q.   Okay.  That's just kind of based on your general

19   experience in the area; is that right?

20       A.   And personal observation.

21       Q.   Okay.  How about the dwellings, you would agree

22   with me that the dwellings vary in size --

23       A.   Absolutely.

24       Q.   -- is that correct?  Some are a little small,

25   slightly larger than a shack.  Others are nearly full-sized

56

1  homes; is that right?

2            MR. SLATER:  Objection as to form.

3            THE WITNESS:  I don't know what you mean by

4        and full-size home, but they do vary in size.

5    Q.   (By Mr. Radshaw) And the same with the number of

6  toilets in each dwelling, some dwellings -- you don't know

7  one way or the another whether some dwellings have

8  one or two toilets or four or five?

9    A.   I have no knowledge.

10   Q.   Okay.  And that includes there's a couple of

11 properties that have multi dwellings on the same piece of

12 property; is that right?

13   A.   There are some, yes.

14   Q.   And sewage disposal systems, you would agree with

15 me that of the properties of the members, some of them have

16 septic systems; is that right?

17   A.   I believe they all have septic systems.  There's

18 no sewage treatment in town.

19   Q.   Let me ask you -- listen to my question.  I'm

20 going to -- okay.  When I talk about a septic system, I want

21 you to think of that as a septic system where a leaching

22 field is buried in the ground.  That would be one method of

23 disposing of household waste.

24            The second one I want you to think of is a septic

25 tank that it goes into a solid tank, and that it is pumped

57

1   out and emptied by a truck where it does not -- assuming the

2   tank is solid, it does not go out into the ground to be

3   treated by the ground.

4        The third would be sewer system where sewers

5   connect to a pipe and then are transmitted to some off-site

6   treatment facility.

7        And then the fourth would essentially be a

8   straight pipe into the ground or into Long Island Sound.  Do

9   you understand my description so far?

10       A.   Yes.

11       Q.   Okay.  So now I want to ask you some questions

12  concerning your knowledge both as a representative of the

13  association and your personal knowledge and experience as

14  someone who's lived down in that area and enjoyed it, as you

15  said, since you were a child.  You would agree with me that

16  some of the members on Exhibit A have septic systems where

17  the household wastes from the toilets and the drains goes

18  into the leaching field and is treated as it passes through

19  there; is that correct?

20       A.   Well, first of all, I don't totally agree with

21  your initial definition because even, in your terms, a

22  septic system with a leaching field still has to be

23  periodically pumped out.

24       Q.   But I'm not -- I don't want to get hung up on

25  that point.  What I want to cover is -- I want the relevant

 1    distinction to be, yes, a septic system does need to get
 2    pumped out, but some part of the effluent does go out into a
 3    leaching field as opposed to a septic tank where nothing
 4    goes out into the ground, assuming the tank is complete.  Do
 5    you understand difference?
 6         A.    I understand your definitions.
 7         Q.    What I want to differentiate is what is commonly
 8    understood as a septic system that has a leaching field, a
 9    septic tank where nothing leaches out, and a sewer system to
10    an off-site treatment facility, and then a straight pipe
11    polluting into the ground or into Long Island Sound or into
12    a creek.
13               MR. SLATER:  Objection as to form.
14               MR. RADSHAW:  I haven't asked any questions.
15         Q.    (By Mr. Radshaw) So taking those things, do you
16    understand, like, the four categories?
17         A.    Under your definitions.
18         Q.    And that's all I can ask.  Now, you would agree
19    with me that some of the 408 members have what is commonly
20    understood as a septic system that may require a periodic
21    pump out where effluent goes out into a leaching field; is
22    that right?
23         A.    Based on your definition, yes, I am.
24         Q.    And it's certainly possible that other members of
25    the association have septic tanks; is that correct?

59

```
 1        A.    Under your definition, yes.
 2        Q.    I mean -- and are you aware of anyone that has
 3   their waste pass through pipes to some off-site treatment
 4   facility?
 5        A.    There are no public sewer systems in the town of
 6   Old Lyme.
 7        Q.    Okay.  Are you aware of anyone who just has a
 8   straight pipe into the sand or into Long Island Sound or
 9   into a creek?
10        A.    No, sir.
11        Q.    Okay.  Is it possible that might exist?
12        A.    I don't believe so.
13        Q.    All right.  Now, would you agree with me that
14   some of the members have code compliant septic systems that
15   comply with the Connecticut State Public Health Code; is
16   that right?
17        A.    I would assume so.
18        Q.    Okay.  Is it -- would you also agree with me that
19   some of the members of the association may have septic
20   systems that have leaching fields that are not code
21   compliant with the Connecticut Public Health Department?
22        A.    I'm not an expert on sewage.
23        Q.    You don't know one way or another?
24        A.    It's possible.
25        Q.    Okay.  Now, let's talk about water service.  Of
```

1    the members of the association, you would agree with me that

2    some of them may have year-round water available to them; is

3    that right?

4        A.    Yes, sir.

5        Q.    Okay.  You'd also agree with me that some of them

6    do not have year-round water available to them?

7        A.    I believe that the water company shuts the water

8    off at the street on certain properties.

9        Q.    Okay.  So there's a group of members that may

10   have year-round water, and there are a group of members that

11   only have water part of the year?

12       A.    There could be three scenarios.  You could have

13   city water year round, city water that gets shut off on you,

14   and you could have a well.

15       Q.    And all three categories are within the

16   properties owned by the members of the association?

17       A.    Yes, sir.

18       Q.    Okay.  And of the properties owned by members of

19   the association, some of those properties have been

20   designated as seasonal, is that right, by the Town of Old

21   Lyme?

22       A.    Yes, sir.

23       Q.    Okay.  And there are others that have been -- let

24   me withdraw that.

25           Are there any members of the association that

1   have properties on your list that have properties that have

2   been designated year-round as your property on 19 Old Colony

3   has?

4        A.    I believe so, yes.

5        Q.    Okay.  And there are properties that have neither

6   been designated seasonal officially or as year-round within

7   the membership; is that right?

8        A.    That is correct.

9        Q.    And to the extent that property owners had their

10  properties designated seasonal within the membership of the

11  association, you would agree with me that some have taken

12  appeals, and some haven't; is that right?

13       A.    I believe so, yes.

14       Q.    When I say "appeals," that's to the Zoning Board

15  of Appeals.  Correct?

16       A.    Yes, sir.

17       Q.    And you would also agree with me that some have

18  taken appeals to the ZBA, some of them have commenced

19  actions in the Superior Court; is that correct?

20       A.    Yes, sir.

21       Q.    And others have not, like you?

22       A.    Correct.

23       Q.    Now, also concerning the members list in Exhibit

24  8, in your general knowledge and experience in the beach

25  area of Old Lyme, you would agree with me that some of the

1    properties that are owned by your members have been the

2    subject of improvements like improvements you have

3    completed; is that right?

4        A.    Yes, sir.

5        Q.    The stuff you notice, there are places that are

6    painted, that have new roofs, that have cosmetic

7    improvements.  Correct?

8        A.    Absolutely.

9        Q.    There are also ones that you can -- you know, may

10   not be as visible, but you can hear the ding of central air

11   conditioning units; is that right?

12              MR. SLATER:  Objection as to form.

13              THE WITNESS:  Some people have central air,

14         if that's your question.

15       Q.    (By Mr. Radshaw) But you've seen -- you yourself

16   have observed improvements from the time -- to the

17   properties in that area from the '70s when you first started

18   going there or earlier to the present day?

19       A.    Yes.

20       Q.    And would it be fair to say that, although I

21   can't ask you to point to specific members, that some of the

22   properties have been improved a lot; some of them have been

23   improved a little; and some have been improved not at all?

24       A.    Sure.

25       Q.    Okay.  And there's -- withdraw that.

80

1          questions of the witness at this time.

2                 (Deposition was concluded at 12:35 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
## CERTIFICATE

2          I, Hilary O. Winslow, License #00361, a Notary

3    Public for the State of Connecticut and Commonwealth of

4    Massachusetts, do hereby certify that the deposition of

5    LAWRENCE LAPILA was taken before me pursuant to Federal

6    Rules of Civil Procedure, at the HOWD & LUDORF, 65

7    Wethersfield Avenue, Hartford, CT  06105, (860) 249-1361,

8    commencing at 10:06 a.m. on Monday, July 24, 2006.

9          I further certify that the witness was first sworn

10   by me to tell the truth, the whole truth, and nothing but

11   the truth, and was examined by counsel, and his testimony

12   was stenographically reported by me and subsequently

13   transcribed as hereinbefore appears.

14         I further certify that I am not related to the

15   parties hereto or their counsel, and that I am not in any

16   way interested in the events of said cause.

17         Witness my hand this 16th day of August, 2006.

18

19

20                    Hilary O. Winslow, LSR, Notary

21

22

23   My Commission expires:      My Commission expires:
     February 28, 2007 (In MA)   February 28, 2011 (In CT)

24

25

NIZIANKIEWICZ & MILLER REPORTING SERVICES
972 Tolland Street
East Hartford, CT  06108
(860) 291-9191