UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., CHARLES PARSONS, VICTORIA PARSONS and JOAN BYER,<br><br>*Plaintiffs,*<br><br>v.<br><br>TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, ERIC FRIES, GEORGE JAMES, JANE MARSH, THOMAS RISOM, WALTER SEIFERT, SHARON COLVIN and MARILYN OZOLS,<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>3:00 CV 0097 (EBB)<br><br><br><br><br><br><br><br><br><br>FEBRUARY 20, 2007 |

### AFFIDAVIT OF ANN BROWN

The undersigned, after being duly cautioned and sworn, hereby deposes and says:

1. I am over eighteen (18) years of age.

2. I am the Zoning and Wetlands Enforcement Officer for the Town of Old Lyme.

3. I am familiar with the facts and circumstances of the plaintiffs' Complaint dated December 29, 1999 and Amended Complaint May 29, 2001.

4. I make this affidavit in support of the Motion for Summary Judgment dated February 20, 2007 on behalf of the Town of Old

EXHIBIT H

Lyme, the Town of Old Lyme Zoning Commission and Marilyn Ozols.

5. I have been employed by the Town from January 2, 2002 until the present day as the Zoning and Wetlands Enforcement Officer.

6. I was the Zoning Enforcement Officer for the City of Norwich, CT from 1994 until 2002.

7. I was employed by the Town of Lebanon as the Zoning Enforcement Officer from approximately 1992 until 1994.

8. I am certified as a Zoning Enforcement Official by the Connecticut Association of Zoning Enforcement Officials.

9. From January 2, 2002 until the present day, I have served as the Inland Wetlands Enforcement Officer for the Town of Old Lyme.

10. Since January 2, 2002, I have served as the department head of the Old Lyme Land Use Office ("LUO").

11. As ZEO and department head, my job duties include, but are not limited to the administration of the department, supervision of administrative staff, budgeting, advising other town agencies and organizations on land use issues, advise and address planning issues raised by town officials and citizen/developer

applications, evaluate zoning compliance permits, advise town officials and citizen/developers of zoning permit requirements, counsel persons on the zoning process, evaluate applications for zoning variances, zoning compliance applications, address and administer flood zone determinations and Coastal Area Management Regulations, and investigate and evaluate zoning and wetlands complaints, taking enforcement action as necessary.

12. The LUO has 3 employees, myself, and two land use administrators: Kim Groves and Sue Bartlett

13. Ms. Groves was employed by the LUO on a part time basis since 1991 and has been employed full time since 1995. As a full time employee, she is limited to 30 hours per week.

14. Ms. Barlett has been employed by the LUO on a part time basis since 1999, and has been employed full time since 2003. As a full time employee, she is limited to 30 hours per week.

15. In my capacity as ZEO and IWEO, I work full time, 30 hours per week.

16. Ms. Groves and Ms. Bartlett are paid per meeting a flat fee to attend certain meetings to take the minutes of certain commission and board meetings.

17. The LUO provides staffing and support for the following Old Lyme boards, commissions and agencies: the Planning Commission, the Zoning Commission, the Inland Wetlands and Watercourses Commission ("IWWC"), the Conservation Commission, the Open Space Committee of the Conservation Commission, Historic District Commission, the Water Pollution Control Authority ("WPCA"), and the Zoning Board of Appeals ("ZBA").

18. The Planning Commission, the Zoning Commission, the IWWC, the ZBA and the WPCA all meet at least one per month, and rarely meet more than twice per month.

19. Based on the current work load, the LUO needs at least one additional full-time employee to meet the standards of the department not considering any additional responsibilities such as a registration system to amortize the nonconforming use of seasonal use properties in Old Lyme.

20. The ZBA is comprised of 8 members, 5 elected and 3 alternates appointed by the Board of Selectmen as defined by statute.

21. From 1995 to the present, the ZBA has addressed approximately 3-6 cases per month.

22. The ZBA lacks the resources to hear more than 3-6 cases per month.

23. From 1995 to present, the LUO has processed an average of 400-500 zoning permit applications per year but the average has been increasing over time.

24. The LUO also processes wetlands permits and the number of applications processed averages about 60 per year.

25. In an earlier decision in this case, the court observed that plaintiff suggested a registration system may be an alternative to the current seasonal determination process.

26. A possible registration process could set a date by which any landowner who believes he has a valid, non-conforming year-round use of their property in Old Lyme in the R10 district would have to "register" that use with the Town in a specific manner and by a certain date. Failure to register would result in the extermination of such nonconforming use without any appeal.

27. At the time of registration, each landowner would provide identifying information for data collection purposes and provide all evidence he has supporting his claim.

28. Once the ZEO receives the registration, Connecticut law would require the ZEO to act on the registration within a reasonable time period, usually 30 days, finding either the registrant has a valid nonconforming use entitling the registrant to year-round use of his property or denying the registration, finding that insufficient evidence exists for the recognition of the non-conforming use.

29. Before making any determination, the ZEO would be required to conduct some investigation herself, including but not limited to the examination of existing Town records, confirmation of evidence submitted by the registrant or interview of witnesses listed or of the registrant. Some record or evidence confirmation may require releases to satisfy privacy laws, such as educational records, telephone and utility records, for the ZEO's investigation and determination process.

30. In connection with the present litigation, I have reviewed maps of Old Lyme, and with knowledge of soils, topographical features, the member list of the association, nature of the neighborhood, I estimate that at least 1500 lots are potentially affected by the Challenged Regulations.

31. If the Town employed a registration system, I expect that all or nearly all impacted property owners would apply to register

their properties as non-conforming uses in order to avoid application of the Challenged Regulations.

32. It is my estimation that it would require between 3 to 5 hours to evaluate each application for a registered non-conforming use, considering data collection, evaluation, processing, evidence confirmation/evaluation with existing municipal records and interaction/communication with registering property owner.

33. My estimation of time to process each registration application does not fully estimate the time necessary to satisfy various privacy laws and regulations preventing confirmation of evidence presented by applicants and the ministerial process of making all the telephone calls and writing all the letters to confirm the applicants evidence even with proper releases to bypass privacy laws and regulations of business and other agencies.

34. It is my estimation that at least 30% of the potential 1500 registering applications would appeal the ZEO's decision and that number, 500 appeals, is more than 8 times larger than usual annual number of appeals to the ZBA on an annual basis.

35. Based on the capacity of the ZBA to hear and decide cases and the statutory framework requiring the ZBA to act in a certain period of time, the ZBA could not get all the appeals heard and

decided within the requirements of Connecticut law using a registration system.

36. It is my opinion that there is no other reasonable way to administer the seasonal use regulations with the resources available to the LUO other than a street by street when time permits, or when property owners specifically ask for a determination, or when an owner applies for permit of some sort in the ordinary course of zoning business.

37. Even if the LUO hired more individual to process applications during the registration process, the bottleneck of appeals at the ZBA cannot be reduced as the composition of the ZBA and the time limitations are set by statute.

38. Connecticut law requires the ZBA to hear the appeal and render a decision within a strict time period.

39. It is unreasonable to expect ZBA members to volunteer the time necessary to adjudicate several hundred appeals in one year if the registration system were adopted.

40. Each appeal would have to be defended by the ZBA's counsel.

41. Based on the time limitations, the resource limitations, the economic limitations, the volunteer limitations and the limitations imposed by Connecticut law that cannot be altered

by agreement, the Town, the Zoning Commission and the ZEO have determined that a registration process is too much of a financial and resource burden on the municipality to expect this level of process within a set period of time which is limited by Connecticut law.

42. The original plan and the plan as amended during the present litigation which had street by street determinations left to the ZEO when time permitted and appeals, as they occurred, would be handled in the ordinary course of business. This strikes a balance between the rights of the property owners, the resources of the Town, the ZBA, the LUO, and the overall ability to properly process, evaluate, appeal and defend such determinations.

_____
ANN BROWN

STATE OF CONNECTICUT    :

                                :    ss:    Old Lyme

COUNTY OF NEW LONDON    :

Subscribed and sworn to before me this 20th day of February, 2007.

_____
Notary Public/Commissioner
of the Superior Court