APPROVED.

## OLD LYME ZONING COMMISSION
## MINUTES OF REGULAR MEETING
## MONDAY, JULY 10, 1995

The Old Lyme Zoning Commission held its regular meeting on Monday, July 10, 1995, at the auditorium of Memorial Town Hall. Members present: Eric Fries (Chairman), Jane Marsh (Secretary), and Walter Seifert. Sharon Colvin arrived at 8:00 PM. Others present were Marilyn Ozols (Zoning Enforcement Officer), Judith R. Brown (Clerk) and Anthony Hendriks.

*1. Convene meeting; announcement of voting alternates.*

Chairman Fries called the meeting to order at 7:55 PM and introduced the members, all of whom would be voting.

*2a) CAM Application, 27 Caulkins Road, Map 48, Lot 53, Single Family House.*

Anthony Hendriks explained he had provided the Zoning Commission with revisions regarding items brought up at the last meeting. He noted the owner had entered into a contract to buy all of the adjoining property. He indicated all activity has been pulled back above elevation 4 and it had been shown that water would not be diverted from the subject property on to the neighbors property. Mr. Hendriks further explained the only thing holding up this application was the interpretation by the Office of Long Island Sound that the tidal wetland line is at elevation 5 which would inundate the entire property. He noted that most of the property is at elevation 5 or 6. Mr. Henriks indicated he had written letters to the Office of Long Island Sound requesting the State to define extreme high water. He explained they (the State) have arbitrarily chosen the one year frequency storm as the extreme high water but the State Statutes do not define the extreme high water line as the one year frequency storm.

Mr. Hendriks explained he took the spring tides from the Corp of Engineers study and used that as the mean spring high water line and added one foot as shown on the plans.

Mr. Hendriks was asked if there was any existing fill on the property. He replied he didn't think so but he couldn't be sure of that fact.

Mr. Hendriks further explained they are basically waiting another 30 days for a response and, if necessary, will then withdraw the application and work things out. In the meantime, they are trying to get a definition of extreme high water line. The main disagreement between the applicant and DEP is that DEP had picked the one year frequency storm and added one foot and Mr. Hendriks picked the spring tides which is slightly above the mean high water line. Mr. Hendriks indicated he would be contacting Sidney Holbrook, Commissioner of DEP, within the next week to see if he could get some answers.

Mr. Hendriks further explained what is happening is that this would be a taking if he was forced to abide by the current DEP interpretation. These lots had been created and it was his opinion this lot could support a small home and leaching system.

EXHIBIT J-3

*Old Lyme Zoning Commission*
*July 10, 1995*
*Page 2*

It had enough high ground and could conform to the Public Health Code. It demonstrated good soil and septic capability.

Chairman Fries asked Mr. Hendriks which flood zone this property was in. Mr. Hendriks replied it looks and demonstrates to be in the A Zone, however, the flood map shows it in the V Zone so it is being treated as though it was in the V Zone.

Mr. Hendriks indicated he would keep the Commission advised of any further information from DEP.

*2b) T. Anastasiou, 264 Shore Road, Map 87, Lot 4, Special Exception, Liquor Establishment, request to extend submittal time.*

Chairman Fries read a letter from Gary D. Smith, Professional Engineer, dated July 10, 1995 on behalf of Mr. Anastasiou formally requesting an extension of time for submission of a completed application without a duplicate application fee. Motion was made by Ms. Marsh to grant Mr. Anastasiou's request for a one month extension until the August meeting for submitting a completed application without a duplicate application fee, seconded by Ms. Colvin, and unanimously approved.

*3a) Proposed amendments to Zoning Regulations re: golf courses, funeral homes, exceptions to nonconforming use/lot regulations, building size in commercial zones.*

There was discussion regarding nonconforming uses and whether these structures could be altered. There was also discussion as to whether this should pertain to both commercial and residential or just residential. Ms. Marsh was concerned about commercial businesses generating more traffic and not being required to provide additional parking. Chairman Fries indicated that with the new regulation nothing could be done to change the business to increase the level of permitted occupancy or use. It was decided to bring this to public hearing in August and in the meantime Ms. Ozols could review these concerns with Attorney Royston.

There was discussion regarding the proposed golf course regulation. A couple of minor typographical errors were corrected. It was noted this was an intensive use of the land due to the clearing, grading, installation of sprinkler systems, reseeding and use of pesticides and fertilizers. It was noted the Planning Commission should have maximum discretion for controlling this kind of project and it could ask for an impact study if it thought one was necessary. It was suggested this regulation should also reference Sections 41.4.6 and 34 of the Zoning Regulations. It was also suggested the word aquifer be added to the water resources section and that information on the existing natural habitats and species identification be required in order to evaluate potential impact. Ms. Ozols would incorporate these suggestions and bring this back to the Commission one more time for review before bringing it to public hearing in September.

There was discussion regarding permitted uses in commercial and industrial zones and whether there should be specific criteria. Is 10,000 square feet maximum

building size the right figure? Attorney Royston had suggested that figure be changed to 40,000 or 50,000 or that anything bigger than 10,000 square feet would have to be in the light industrial zone. It was decided to go to public hearing with the 10,000 square feet.

There was discussion about changing the date of the August meeting. Motion was made by Ms. Marsh to reschedule the August meeting by cancelling the August 14th meeting and holding a special meeting on August 28, 1995 at 7:00 PM to conduct such business as may be necessary, seconded by Mr. Seifert, and unanimously approved. All of the proposed regulations would be brought up at the August 28th public hearing except the golf courses.

### 4. Zoning Enforcement Officer Report.

The policy for seasonal use dwellings was reviewed. Motion was made by Ms. Marsh to adopt the following policy for the designation of seasonal use dwellings: 1) The Zoning Enforcement Officer shall notify the current owner of record by regular mail of the intent to file a Seasonal Use Designation on the Old Lyme Land Records. This notice shall be sent to the mailing address supplied to the Town by the property owner or to any correction to that address which may be available. 2) Said notice shall include information describing the basis for the determination and shall offer the property owner 60 days to provide documentation to the contrary. 3) At least sixty (60) days following the date of the Notice of Intent, the Zoning Enforcement Officer shall file a Notice of Seasonal Use Designation on the Land Records. 4) Simultaneous with said filing, the Zoning Enforcement Officer shall send notice by certified mail to the property owner. Said notice shall inform the property owner of his right to appeal the decision to the Zoning Board of Appeals along with notice that any such appeal must be filed within thirty (30) days. This motion was seconded by Mr. Seifert, and unanimously approved.

Ms. Ozols noted Attorney Royston is currently working on drafting the Notice of Intent which should be available shortlly.

Ms. Ozols indicated there was nothing further on her report.

### 5. Approval of Minutes: June 12, 1995 Regular Meeting/Public Hearing.

Motion was made by Ms. Marsh to approve the June 12, 1995 Regular Meeting Minutes and Public Hearing Minutes as written, seconded by Mr. Seifert, and unanimously approved.

### 6. Miscellaneous/Adjourn.

There being no further business the meeting was adjourned at 10:00 PM.

Respectfully submitted,

Judith R. Brown
Judith R. Brown, Clerk

**THE DAY, THURSDAY, JUNE 30, 1994**

674

**Town of Old Lyme**
**Zoning Commission**
**Notice of Decision**

The Old Lyme Zoning Commission, having held a public hearing on April 11, 1994, voted at its regular meeting of June 13, 1994, to deny without prejudice the following two proposed changes of zoning district classification: (1) an area designated as C-30 to RU-40, shown on the present Zoning Map as two strips 400 ft. wide on either side of Four Mile River Road and Route 156, at their intersection continuing to the intersection with Mile Creek Road; and, (2) an area designated as C-30 to RU-40 shown on the present Zoning Map as a 400 ft. strip to the north of Rte. 156 and the area bounded by the railroad on the south just after the severe curve at Point O'Woods continuing to the point where Rte. 156 crosses the railroad. The Commission voted to approve effective July 29, 1994, change of zoning district classification of an area designated as C-10 (Commercial-10) to R-10 (Residential-10) at the intersection of Brighton Road and Old Shore Road.

Dated at Old Lyme, Connecticut this 28th day of June, 1994.
Eric V. Fries, Chairman
Old Lyme Zoning Commission

Received for Record 7-13-95 at 10 h 15 m A m.

Recorded by _____
Town Clerk

Brought in by
W. Oasts for
filing in minutes
records