Exhibit A
(pgs 21-29)

--- F.Supp.2d ----    Page 21
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

[27] Neither party addresses the significance, or non-significance, of Turan's remark in juxtaposition with the relevant case law. In the Court's view, Turan's comment, standing alone, is insufficient to raise an inference of discrimination because there is no nexus between his remark and any of the alleged adverse acts. *See Tomassi v. Insignia Fin. Group, Inc.*, ---F.3d ----, No. 05-6219-CV, 478 F.3d 111, 2007 WL 495314, at *4 (2d Cir. Feb.16, 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."). Plaintiff fails to explain how Turan's alleged desire to prevent the hospital's patient base from becoming "black" can logically be tied to any of the alleged adverse actions and no connection is apparent from the Court's review of the record. Simply put, a juror could not infer that Plaintiff was transferred based on his race from Turan's remark alone. Moreover, Turan's alleged comments were made two years before Plaintiff was allegedly forced to retire. *See Richardson v. N.Y.S. Dep't of Correctional Serv.*, 180 F.3d 426, 447 (2d Cir.1999) (noting that two years is too long a time to support an inference of a causal connection), *abrogated on different grounds, Burlington Northern and Santa Fe Ry Co. v. White*, ---U.S. ----, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *see also Tomassi*, 478 F.3d 111, 2007 WL 495314, at *4 ("[T]he closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be."). Accordingly, on this record, the Court finds that Turan's comments are indeed stray and insufficient to show that the circumstances surrounding his transfers give rise to an inference of race discrimination. Plaintiff's claims of discrimination pursuant to Title VII are therefore dismissed.

### III. *There are Genuine Issue of Material Fact as to Plaintiff's Retaliation Claims*

*13 Defendants argue that Plaintiff's retaliation claims should be dismissed because Plaintiff cannot establish a prima facie case of retaliation. Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir.2006) (citing 42 U.S.C. § 2000e-3(a)). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir.2003).

[28] "In order to present a prima facie case of retaliation under Title VII ..., a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII ..., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.' " *Kessler*, 461 F.3d at 205-206 (quoting *Cifra v. G.E. Co*, 252 F.3d 205, 216 (2d Cir.2001)). Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the employee to demonstrate pretext. *Slattery v. Swiss Reins. Am Corp*, 248 F.3d 87, 94-95 (2d Cir.2001).

Here, Defendants contend that Plaintiff cannot satisfy any element of a prima facie case of retaliation. Because the Court disagrees with Defendants and finds that a reasonable view of the record does support each element of Plaintiff's prima facie case, Defendants' motion for summary judgment on this ground is denied.

#### A. *Protected Activity*

[29] In order for Plaintiff to have been involved in a protected activity, Plaintiff must have had "a good faith, reasonable belief that the underlying employment practice was unlawful" under Title VII. *Galdieri-Ambrosini v. National Realty & Dev. Corp*, 136 F.3d 276, 292 (2d Cir.1998). Defendants argue that because raising issues of alleged workplace discrimination was part of Plaintiff's job, Plaintiff's assertions, as a matter of law, cannot constitute protected activity. Specifically, Defendants refer to the November

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                Page 22

--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

2002 Board meeting where Plaintiff complained that "racism was rampant." Because raising these concerns was one of Plaintiff's duties, Defendants contend that they may not form the basis for a Title VII retaliation suit.

In support of their argument, Defendants rely on *Garcetti v. Ceballos,*-U.S.-, --- U.S. ----, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), where the Supreme Court held in the context of a First Amendment retaliation claim: "[W]hen public employees make statements *pursuant to their official duties,* the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 261 (emphasis added). Defendants also cite cases holding that in order to engage in a statutorily protected activity under the Fair Labor Standards Act, the employee must "step outside of his or her role of representing the company and file an action adverse to the employer." *See, e.g., Claudio-Gotay v. Becton Dickinson Caribe, Ltd,* 375 F.3d 99, 102 (1st Cir.2004) (citation and internal quotation marks omitted).

*14 Defendants further cite two cases under Title VII. In *EEOC v. HBE Corp.,* 135 F.3d 543, 554 (8th Cir.1998), the Eighth Circuit found that the employee had produced sufficient evidence to establish that he engaged in a protected activity where he "refused to implement a discriminatory company policy [thereby] plac[ing] him outside the normal managerial role which is to further company policy." Similarly, in *Vidal v. Ramallo Bros. Printing, Inc.,* 380 F.Supp.2d 60, 62 (D.P.R.2005), the court noted that protected activity under Title VII "is limited to activity that is adverse to the company, or outside the employee's normal employment role; this would include the filing of a complaint, but not reporting suspected discrimination to a supervisor."

[30] Plaintiff claims that his actions are distinguishable from the above-cited cases because he went beyond reporting *employee* complaints of discrimination; he also voiced opposition against Defendants' acts of racial discrimination against him *personally.* In support of this claim, Plaintiff points to "several occasions from 2003 through 2004" (Pl.'s Mem. at 15), where Plaintiff allegedly complained that he was being discriminated against because he was African-American. In the Court's view, most, if not all, of the instances upon which Plaintiff relies do not advert to discrimination against him personally because of his race. Rather, they complain in one fashion or another of Defendants' discrimination against employees in general. The Court need not reach this issue, however, because it finds that there is ample other evidence which, though not related to discrimination against Plaintiff personally, could support the conclusion that Plaintiff's actions went beyond his official duties.

For example, there is evidence to suggest that Defendants believed that Plaintiff's presentation at the November 2002 Board meeting was inappropriate and outside his role as Director of the Office of Diversity. Mostow, Defendants' Dean of Academic Affairs, testified at his deposition that at the Board meeting, Plaintiff "made certain allegations about African-American employees not being given adequate opportunities for advancement, and indicated that he felt that that was a direct result of racist activities in the management of the Medical Center." (Mostow Dep. at 23.) Mostow noted that Plaintiff did not "speak formally" ; rather "[h]e spoke at the portion of the meeting which was open to the general public to make any kind of comments they liked. He did not make a presentation about his work activities." (Mostow Dep. at 22-23.) Mostow felt that Plaintiff "should have made those feelings known to the persons that he reported to prior to making them at a public meeting." *(Id* at 25.) Similarly, with regard to the Board meeting, Turan testified that "if [Plaintiff] had credible allegations it would [have] be[en] better to [have] investigated without exposing it publicly...." (Turan Dep. at 94.)

*15 In addition, there is also evidence that Plaintiff not only raised employee complaints of discrimination but that he complained that Defendants were not fulfilling their duties under Title VII in properly investigating these complaints. Such actions could clearly be viewed as being "adverse" to Defendants and outside of Plaintiff's normal role. *See HBE Corp.,* 135 F.3d at 554.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)  
(Cite as: --- F.Supp.2d ----)

Page 23

Accordingly, the Court finds that the record supports a finding that Plaintiff engaged in a protected activity under Title VII.

### B. *Adverse Action*

[31] The Court has already found, *see* discussion *supra*, that Plaintiff suffered adverse employment actions insofar as his discrimination claims were concerned. Subsequent to the parties' briefing on this motion, the Supreme Court altered the standard previously used by the Second Circuit in defining an adverse employment action in retaliation claims. Under that earlier standard, as noted above, examples of adverse employment actions included only those which were deemed "materially adverse" alterations to the terms of employment, such as termination, demotion via a reduced wage, salary or job title, or a material loss of benefits. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir.2006). In *Burlington Northern*, however, the Supreme Court held that "the anti-retaliation provision" of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment." 126 S.Ct. at 2412-13. Instead, the Court held that "actionable retaliation" was that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citations and internal quotation marks omitted); *id.* (noting that anti-retaliation provision prohibits " employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers") (citation and internal quotation marks omitted).

[32] Here, having already determined that Plaintiff suffered adverse employment actions in the context of his discrimination claims, the Court easily finds that Plaintiff satisfies this element of his retaliation claims. A factfinder might well conclude that the transfers and alleged concomitant adverse consequences-if proven true-would be sufficient to dissuade a reasonable worker from voicing alleged Title VII violations committed by Defendants. Accordingly, the Court finds that Plaintiff has established this element of his prima facie case.

### C. *Causal Connection*

[33] The final element of Plaintiff's prima facie case of retaliation is that a causal connection exists between the protected activity and the adverse action.[FN5] Defendants' arguments on this element, raised for the first time in their reply memorandum, pertain to Plaintiff's January 2003 letter to the NYSDHR. Essentially, Defendants argue that Plaintiff cannot establish that any of the alleged adverse actions were the result of his January 2003 letter because most of these acts occurred *before* the letter was sent. The Court's findings concerning protected activity, however, are not reliant on this letter; rather, the Court has already found that Plaintiff's actions at the November 2002 Board meeting constitute protected activity for purposes of establishing a prima facie case of retaliation. Because the adverse actions allegedly began to occur within weeks of this meeting, the Court finds that a rational factfinder could infer a causal connection between the alleged adverse actions suffered by Plaintiff and the protected activity. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that temporal proximity alone may suffice to establish causation where proximity "very close"); *Kessler*, 461 F.3d 210 (finding causation where alleged "retaliatory animus followed closely on the heels of his protected activity").

### D. *Defendants' Legitimate, Non-Discriminatory Reasons for the Adverse Actions*

*16 Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. As noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

[34] Here, with regard to Plaintiff's transfers, Defendants allege that: (1) in late 2002, Kampe was hired to become the new Vice-President of Human Resources and Turan "made a decision" to have the Office of Diversity report to Kampe; (2) the Office was thereafter transferred to the Office of the General Counsel because the issues being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---- Page 24

--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

investigated by the Office involved legal matters; (3) the Office was later transferred to the Dean of Academic Affairs because the Office was performing more educational training; and (4) Plaintiff's office was physically moved closer to Mostow so that Plaintiff would be in close proximity with Mostow, as were all employees who reported directly to Mostow. *(See* Defs.' Mem. at 14; *see also* Defs.' Local Rule 56.1 Stmt. ¶¶ 17, 23, 27, 29 (citing relevant portions of deposition testimony).) With respect to physically separating Plaintiff from his staff, Mostow testified that he wanted Plaintiff's office to be near his so they could meet whenever they needed to. *(See* Mostow Dep. at 63.) He moved Plaintiff's support staff to another building which had been newly renovated because he "felt it [was] important that all of the staff that reported to me in training activities should be located in one building..... [I]f the opportunity arose that they had down time, they could share in the activities of the other members and vice versa, if needed." *(Id.* at 63-64.)

Based on the above, the Court finds that Defendants have articulated legitimate, non-discriminatory reasons for Plaintiff's transfers. Although the Court is underwhelmed by counsel's proffered reason for Turan's decision to transfer the Office of Diversity to Human Resources, i.e., Turan "made a decision", a review of Turan's deposition testimony reveals that in making this transfer, Turan was hoping to " enhance" the Office's role. (Turan Dep. at 66.) More specifically, Turan testified that because employee complaints were typically directed to Human Resources, he believed that having the Office of Diversity report to Human Resources would assist the Office in being "more effective." *(Id.)* Given the proffered reasons for the transfers, viz., in the exercise of Defendants' judgment, they believed the transfers to be both efficient and more beneficial for all involved, the Court finds that Defendants have satisfied their burden. *See Dister,* 859 F.2d at 1116 ("A business decision need not be good or even wise. It simply has to be nondiscriminatory ....") (citation and internal quotations marks omitted).

E. *Pretext*

[35] Once an employer has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and that the employer was motivated at least in part by unlawful retaliation.

*17 In an attempt to demonstrate that Defendants' proffered reasons are merely a pretext for unlawful retaliation, Plaintiff points to the following evidence: (1) Popper testified that after the Board meeting, Turan expressed "unhappiness" that Plaintiff made those statements at the Board meeting instead of addressing them "through management channels" and that Turan believed Plaintiff's comments were "inappropriate" *(see* Popper Dep. at 18); Turan testified, however, that although he would have preferred had Plaintiff spoke to him first prior to engaging the Board, he " didn't have a problem with [Plaintiff] doing it the way he did it." (Turan Dep. at 94.) Either way, Turan did not speak to Plaintiff regarding his comments after the Board meeting. *(See* Turan Dep. at 45-46); (2) Mostow testified that Plaintiff should not have addressed the Board in the manner in which he did without first relaying such concerns to the persons that he reported to (Mostow Dep. at 25); (3) Mostow testified that the number of investigations performed by the Office of Diversity was so "insignificant" that it was "incredulous" that Plaintiff considered his job a "work activity"; yet Mostow felt it was necessary to move Plaintiff's office next to his and in the process, separate Plaintiff from his staff, so that he was easily accessible to Plaintiff should Plaintiff need him. (Mostow Dep. at 63, 78-79.) Moreover, Defendants concede that Plaintiff had brought over 300 instances of unfair treatment to Defendants' attention. (Defs.' Local Rule 56.1 Stmt. ¶ 14); and (4) despite Mostow's claim that the Office of Diversity actually investigated just a small number of complaints, Mostow later testified that he was unaware as to how many complaints of discrimination against Defendants were filed with the EEOC or the NYSDHR and that he never requested or was aware of such information. (Mostow Dep. at 80-81.) This is so despite the fact that one of the Office's primary functions was to attempt to resolve employee complaints in-house so

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                       Page 25
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

that they did not reach the agency level.

Construing the evidence in the light most favorable to Plaintiff, the Court finds that there is a sufficient basis for a trier of fact to doubt Defendants' proffered evidence and ultimately find that the reasons offered by Defendants were pretextual. Given the strong temporal correlation between Plaintiff's complaints at the Board meeting and the alleged adverse actions, the evidence that Defendants were upset over Plaintiff's comments at the Board meeting, and Mostow's proffered reasons for transferring Plaintiff and his staff juxtaposed against his testimony regarding how insignificant Plaintiff's job was and his lack of knowledge about the number of cases Plaintiff's Office had handled, the Court finds that a reasonable juror could conclude that Defendants retaliated against Plaintiff based on his complaints pertaining to Defendants' alleged discrimination. *Cf. Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir.1998) (holding that a strong temporal connection between the plaintiff complaint along with other circumstantial evidence is sufficient to raise an issue with respect to pretext), *abrogated in part on other grounds, Nat'l R.R. Passenger Corp v Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Accordingly, Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claims is denied.

### IV. Defendants' Motion to Dismiss Plaintiff's Claims Under Sections 1981 and 1983

#### A. Plaintiff's Section 1981 and 1983 Claims are Dismissed With Respect to his Claims of Race Discrimination; Plaintiff's Section 1983/Fourteenth Amendment Claims are Dismissed

*18 [36] Because the Court has already dismissed Plaintiff's Title VII claims to the extent they are based on race discrimination, his claims under Sections 1981 and 1983 which are based on this theory of recovery must fail as well. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("*McDonnell Douglas* framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983"); *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir.2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 ... and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.") (citations omitted)

[37] In addition, to the extent Plaintiff's Section 1983 claim is predicated on a violation of the Due Process Clause of the Fourteenth Amendment, his claim is dismissed as there is no evidence that he was deprived of a property [FN6] or liberty interest. [FN7] *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.1998) ("To state a Section 1983 claim [premised upon a due process violation], a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process."). However, Plaintiff's Section 1981 and 1983 claims do survive to the extent they are based on Plaintiff's claims of retaliation, assuming that they are not barred by res judicata and/or collateral estoppel, which is discussed below.

#### B. Whether Plaintiff's Section 1981 and 1983 Claims are Barred by Res Judicata and/or Collateral Estoppel

On March 4, 2003, Plaintiff filed a complaint with the NYSDHR against NUMC alleging race discrimination and unlawful retaliation. After an investigation, on February 11, 2004, the NYSDHR issued a Determination and Order After Investigation dismissing the Complaint, finding "no probable cause." Plaintiff was represented by present counsel during the entirety of the proceeding. *(See* Reply Aff. Ex. 1.) Plaintiff did not seek review of this determination in state court.

By Memorandum and Order dated January 23,

--- F.Supp.2d ----                                                                                          Page 26

--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

2006, this Court held that, based on the NYSDHR's finding of no probable cause, Plaintiff's claims under Sections 1981 and 1983 were barred on the basis of res judicata and/or collateral estoppel against defendant NUMC only. Because neither party had addressed the fact that Plaintiff's NYSDHR complaint was asserted against defendant NUMC only, while Plaintiff's Section 1981 and 1983 claims were asserted against all defendants, the Court's holding was limited to NUMC.

Essentially, the Court found that the NYSDHR proceeding afforded Plaintiff a full and fair opportunity to litigate his claims.[FN8] In doing so, the Court rejected Plaintiff's argument that preclusion should not apply because the NYSDHR made its determination based solely upon documentation provided by both parties and did not conduct a hearing:

*19 [T]he Court finds that Plaintiff has not met his burden of establishing that he did not have a full and fair opportunity to litigate the issue of NUMC's alleged discrimination and retaliation before the NYSDHR. Although Plaintiff was not afforded a hearing before the NYSDHR, he has not explained how a hearing would have altered the outcome, or what facts could have been brought out that may have changed the result. Additionally, although the NYSDHR investigation may not have afforded Plaintiff the full panoply of procedures that are available to litigants in a civil action, the New York Court of Appeals has made clear that this fact alone is insufficient to make collateral estoppel inapplicable. See *Jeffreys v. Griffin*, 1 N.Y.3d 34, 42, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003) (finding that disciplinary hearings were " ' quasi-judicial' in the general sense required for application of the doctrine of collateral estoppel .... notwithstanding the differences between these proceedings and a civil trial.").

(Jan. 23, 2006 Mem. and Order at 19.)

Defendants now argue that Plaintiff's Section 1981 and 1983 claims should be barred against all defendants because they are in privity with NUMC. Defendants base this contention on the facts that: (1) NUMC is not a legal entity; rather it is a medical center owned, operated and controlled by NCHCC; and (2) the individual defendants are officers of NCHCC.

[38][39] "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Co. v. Empresa Naviera, Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir.1995). Government officials sued in their official capacities are generally considered to be in privity with the government entity that they serve. See *Waldman v. Village of Kiryas Joel*, 39 F.Supp.2d 370, 382 (S.D.N.Y.1999), aff'd, 207 F.3d 105 (2d Cir.2000); *Peros v. Castano*, No. CV-01-4457, 2002 WL 603042, at *2 (E.D.N.Y. Mar.22, 2002); see also *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450, 2005 WL 121746, at *8 (S.D.N.Y. Jan.21, 2005) (finding hospital employees and affiliate in privity with hospital for res judicata purposes), Report and Recommendation Adopted by, No. 03 CIV. 6450LAK, 2005 WL 954916 (S.D.N.Y. Apr.26, 2005). A government official sued in his or her personal capacity, however, is not considered in privity with the government. See *Peros*, 2002 WL 603042, at *3; see also 13 C. Wright & A. Miller, Federal Practice and Procedure § 4458 (2007) (" The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity. Thus a judgment against a government does not bind its officials in subsequent litigation that asserts a personal liability against the officials.").

Here, NCHCC has a sufficiently close relationship with NUMC to be considered in privity with it. See, e.g., *Alpert's Newspaper Delivery, Inc. v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989) (privity may be found where a party not named in previous litigation nonetheless controlled and financed the defense of the suit). In addition, Popper, Turan, Mostow, and Kampe-in their official capacities-are also in privity with NUMC for res judicata purposes. Thus, given this Court's prior holding that Plaintiff's Section 1981 and 1983 claims are barred against NUMC, and the Court's present finding that NCHCC and Popper, Turan, Mostow, and Kampe

--- F.Supp.2d ----                                                                                                                   Page 27
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

in their official capacities are in privity with NUMC, it would appear that Plaintiff's Section 1981 and 1983 claims should be barred against these additional defendants as well. This does not end the Court's analysis, however, as Plaintiff has presented multiple arguments as to why res judicata should not apply to these other defendants.

*20 [40] First, Plaintiff argues that res judicata and/or collateral estoppel cannot be used to *shield* the additional defendants from liability; rather, it may only be used as a *sword*, or offensively. This argument has no merit as courts have long acknowledged the use of defensive collateral estoppel by a defendant who was not a party to the previous litigation.[FN9] *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (the doctrine of mutuality, which provided that only parties to prior judgment could be bound by it, no longer applies to the defensive use of collateral estoppel).

Plaintiff's next argument is not so easily disposed of. Essentially, Plaintiff asserts that res judicata should not bar his Section 1981 and 1983 claims against the newly named defendants because: (1) his federal suit involves additional incidents of retaliation which postdate his hearing at the NYSDHR; and (2) he has adduced new facts through discovery, which were not available in the state proceeding, to support his claims.[FN10]

Plaintiff's first contention, concerning additional incidents of retaliation, pertains to the "identity of claims" element of collateral estoppel. *See Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 289 (2d Cir.2000). Plaintiff's second contention, concerning newly obtained facts, goes to the "full and fair opportunity" element. *See Locurto v. Giuliani*, 447 F.3d 159, 171 (2d Cir.2006). These are distinct inquiries from the privity element, which is at issue herein, which only looks to whether the newly added defendants were sufficiently close to NUMC so as to justify preclusion. In fact, this Court has already ruled on these two elements in its January 23, 2006 Memorandum and Order regarding Defendants' motion to dismiss Plaintiff's Section 1981 and 1983 claims. In that Order, the Court noted that Plaintiff did not dispute that there was identity of issue between the NYSDRH proceeding and the present action (Jan. 23, 2006 Mem. and Order at 11), as Plaintiff made no mention of any additional incidents of retaliation. In addition, the Court found that Plaintiff did have a full and fair opportunity to litigate his claims before the NYSDHR, noting that Plaintiff had "not explained how a hearing would have altered the outcome [of the NYSDHR proceeding], or what facts could have been brought out that may have changed the result." (*Id.* at 19.) Because "Plaintiff failed to make these arguments initially when this Court dismissed all Section 1981 and 1983 claims against NUMC" (Defs.' Reply at 9), Defendants argue that Plaintiff is now precluded from raising them at this juncture, when the sole issue before the Court is whether the additional defendants are in privity with NUMC, the only defendant named in the NYSDHR proceeding.

[41][42] Presumably, Defendants are attempting to invoke the law of the case doctrine. This "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am World Airways, Inc.*, 97 F.3d 1, 7 (2d Cir.1996) (citations and internal quotation marks omitted). However, "[t]he doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Id.* (citation and internal quotation marks omitted). A district court may reconsider its own decision if the law has since changed, new evidence becomes available, to correct an error, or if a "manifest injustice would otherwise ensue." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir.2005).

*21 [43] Here, the NYSDHR dismissed Plaintiff's claims, in part, because it found no evidence which demonstrated that Plaintiff's alleged opposition to discriminatory practices was a factor in the reorganization of the Office of Diversity or his alleged demotion. (Jan. 23, 2006 Mem. and Order at 13.) Through discovery, however, Plaintiff has since elicited deposition testimony from several of the individual defendants reflecting their

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                          Page 28
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

displeasure over Plaintiff's public remarks at the Board meeting. It is undisputed that Plaintiff was not afforded a hearing at the NYSDHR, nor was he able to engage in discovery. Had the NYSDHR had the deposition testimony outlined above, it may have reached a different conclusion. At the very least, such testimony is clearly relevant to Plaintiff's claims. *See Locurto v. Giuliani*, 447 F.3d 159, 171 (2d Cir.2006) (refusing to give preclusive effect to agency finding where plaintiffs "were denied adequate discovery into the defendants' motivation for firing them"; "Where, as here, a Government employee claims to have been fired for an unconstitutional reason, discovery into the reason he was fired is, to say the least, relevant.").

Moreover, with regard to Plaintiff's claim of additional incidents of retaliation which post-date the NYSDHR proceeding, to the extent these incidents did not arise out of "the same transaction or connected series of transactions" raised before the NYSDHR, *Monahan*, 214 F.3d at 289 (citations and internal quotation marks omitted) (emphasis omitted), i.e., Plaintiff's comments at the Board meeting, they would not be barred by res judicata. For example, Plaintiff's claims of retaliation stemming from the filing of the NYSDHR complaint itself would not be precluded.

Although the Court recognizes that Plaintiffs should have raised these issues in the first instance, viz. in response to Defendants' motion to dismiss, Defendants have not indicated how they are prejudiced by the surfacing of this belated information. That factor, together with this Court's new knowledge that Plaintiff may not have been afforded a full and fair opportunity to litigate his claims at the NYSDHR, constrain the Court to find that Plaintiff's claims against NCHCC and the individual defendants are not barred by res judicata and/or collateral estoppel. Were the result otherwise, given Plaintiff's inability to conduct discovery at the NYSDHR hearing, a "manifest injustice would otherwise ensue." *Stichting Ter Behartiging*, 407 F.3d at 44. Accordingly, Defendants' motion for summary judgment on Plaintiff's Section 1981 and 1983 claims against NCHCC, Popper, Turan, Mostow, and Kampe is denied.[FN11]

*V. Plaintiff's Punitive Damages Claim is Dismissed*

[44] Defendants' final argument is that Plaintiff's request for punitive damages should be dismissed, because NCHCC, as a public benefit corporation, and its agents, are immune from punitive damages. *(See* Defs.' Mem. at 18-19.) Plaintiff has failed to respond to this argument, and it appears that Defendants are correct insofar as NCHCC is concerned. *See Everson v. N.Y.C. Transit Auth.*, 216 F.Supp.2d 71, 81 (E.D.N.Y.2002) and cases cited therein (public benefit corporation exempt from punitive damages); *see also Munafo v. Metropolitan Transp. Auth.*, No. 98 CV-4572, 00-CV-0134, 2003 WL 21799913, at *22 (E.D.N.Y. Jan. 22, 2003). Accordingly, Plaintiff's claim for punitive damages is therefore dismissed as against NCHCC and NUMC.[FN12]

*22 [45] In a Section 1983 action against individual defendants, however, punitive damages may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Thus, to the extent the individual defendants are sued in their individual capacities, the Court declines to dismiss Plaintiff's punitive damages claim. *See New Winsdor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir.2006) ("Although a municipality itself is immune from a claim for punitive damages, that immunity does not extend to a municipal official sued in his individual capacity.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Defendants' motion is GRANTED to the extent that: (1) Plaintiff's Title VII claims and his claims pursuant to Sections 1981 and 1983 which are based on race discrimination are dismissed; (2) Plaintiff's Section 1983 claim for a violation of the Due Process Clause of the Fourteenth Amendment is dismissed; and (3) Plaintiff's claim for punitive damages is dismissed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                                  Page 29

--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

as against NCHCC, NUMC, and Popper, Turan, Mostow, and Kampe in their official capacities. Defendants' motion is DENIED to the extent Defendants sought dismissal of: (1) Plaintiff's Title VII retaliation claims; and (2) Plaintiff's Section 1981 and 1983 claims against NCHCC, Popper, Turan, Mostow, and Kampe based on res judicata and/or collateral estoppel.

**SO ORDERED.**

FN1. By Stipulation of Discontinuance So Ordered on April 27, 2005, the County of Nassau was dismissed from this action.

FN2. Whethers was an NUMC employee who worked under Plaintiff in the Office of Diversity.

FN3. Although Plaintiff identified Delasanta as the source at his deposition, neither side had proffered any direct statement by him.

FN4. Defendants only address these allegations as they pertain to the protected activity element of Plaintiff's prima facie case of retaliation, *see discussion infra*

FN5. Although Defendants make the general claim that Plaintiff cannot meet any element of his prima facie case, they do not specifically dispute the notice element, viz. that they were aware that Plaintiff engaged in a protected activity. Accordingly, the Court will not address this element.

FN6. In order to demonstrate an interest protectable under the Constitution, a person must have a " 'legitimate claim of entitlement to it.' " *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002) (quoting *Board of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Here, there is no evidence that Plaintiff was anything other than an at-will employee. *See Segal v. City of N.Y.,* 459 F.3d 207, 216 (2d Cir.2006).

FN7. There is no evidence which would support a "stigma-plus" claim sufficient to demonstrate a deprivation of a liberty interest. *See Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir.2004)

FN8. Plaintiff did not dispute that there was identity of issue between the NYSDRH proceeding and the present action.

FN9. "[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane,* 439 U.S at 326 n. 4.

FN10. Insofar as Plaintiff's arguments pertain to his discrimination claims, which have already been dismissed, the Court will not address them.

FN11. Because Plaintiff has not asked the Court to revisit its holding with respect to NUMC, the Court does not address Plaintiff's claims in this regard.

FN12. Municipalities are not liable for punitive damages. *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

E.D.N.Y.,2007.
Johnson v. County of Nassau
--- F.Supp.2d ----, 2007 WL 805779 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.