UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SOUTH LYME PROPERTY OWNERS ASSOCIATION, INC., CHARLES AND VICTORIA PARSONS AND JOAN BYER, Plaintiffs | : | CIVIL ACTION NO. 3:00CV97 (EBB) |
| VS. | : | |
| TOWN OF OLD LYME, TOWN OF OLD LYME ZONING COMMISSION, ERIC FRIES, GEORGE JAMES, JANE MARSH, THOMAS RISOM, WALTER SEIFERT, SHARON COLVIN AND MARILYN OZOLS, Defendants | : | MAY 1, 2007 |

**MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS' FEBRUARY 20, 2007 MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 7, the Plaintiffs, South Lyme Property Owners Association, Inc., Charles Parsons, Victoria Parsons and Joan Byer (collectively, the "Plaintiffs"), hereby respectfully submit this Memorandum in Opposition to Defendants', Town of Old Lyme, Town of Old Lyme Planning and Zoning Commission and Marilyn Ozols (collectively, the "Defendants"), February 20, 2007 Motion for Summary Judgment. In further support of their Opposition, the Plaintiffs also respectfully submit the accompanying Local Rule 56(a)(2) Statement.

The Plaintiffs own property located in the residential beach communities in Old Lyme. Old Lyme's zoning regulations have always recognized that the properties may be lawfully used for residential purposes. It is undisputed that some properties in the beach communities are used year-round, but most are used seasonally as rental properties for summer vacation homes.

Historically, the Town has battled with property owners in the beach communities to limit year round use.

Despite the fact that road maintenance and municipal infrastructures such as roads are necessary to serve the beach communities on year-round basis to serve existing year-round residents of the beach communities, the Town of Old Lyme has long sought to avoid establishment of year-round residency in the beach communities. The effort began in earnest in the 1980s, prior to the adoption of any regulation or municipal committees related to the abatement of pollution to Long Island Sound or the adequacy of septic systems. After Connecticut courts ruled in several cases that owners of these residential properties could not be barred under the existing zoning regulations from year-round use based simply on lot size, in 1995 the Town enacted and subsequently enforced zoning regulations which illegally seek to limit the Plaintiffs use of their properties to five months a year or, at least, effect a regulatory taking of substantial property rights.

The record indicates a genuine issue of material fact exists as to whether the regulations are rationally related to a legitimate government purpose and whether, in fact, they were adopted for improper purposes. The regulations arbitrarily and unreasonably burden a class of property owners in a manner that is not related to any legitimate police power and violates the equal protection clause. As more fully set forth below, the motion for summary judgment should be denied because the Association has standing, exhaustion of administrative remedies was futile, and the claims are ripe. Finally, Connecticut case law suggests that Plaintiffs are entitled to declaratory relief under the Connecticut Environmental Protection Act. The factual issues cannot be resolved on summary judgment therefore the Defendants' motion should be denied.

## I. COUNTERSTATEMENT OF FACTS AND PROCEDURAL OVERVIEW

The Plaintiffs, an association of several hundred Old Lyme property owners and three individually named property owners, commenced this action in response to efforts of the Town of Old Lyme ("Town"), the Town of Old Lyme Zoning Commission (the "Commission"), and certain Town officials to prohibit the use of hundreds of residential properties in a particular zoning district during several months of the year. The complaint, filed in the Connecticut Superior Court and later removed by the Defendants to the United States District Court, seeks declaratory and injunctive relief regarding certain zoning regulations of the Town and actions by Town officials that that the plaintiffs allege violate both state and federal law. *See* Plaintiffs' First Amended Complaint (May 29, 2001) ("Am. Compl."), Claim for Relief, pp. 17-18. Specifically, the Plaintiffs allege that the zoning regulations and associated limitations of the use of their property violate the United States and the Connecticut Constitutions, including violations of equal protection rights, procedural due process rights, substantive due process rights, and constitute a taking without just compensation. *Id.* at pp. 1-14. The Plaintiffs also allege that the regulations are not valid under Connecticut land use law.

Although the principle relief sought is declaratory and injunctive in nature, the Plaintiffs seek damages pursuant to 42 U.S.C. § 1983 for the violation of the Plaintiffs' civil constitutional rights. *Id.* at Count II, pp. 13-14; Claim for Relief, pp. 17-18. Finally, the Plaintiffs allege a violation of the Connecticut Environmental Protection Act, Conn. Gen. Stat. §§ 22a-14 *et seq.*, claiming that the Town's failure to implement a system to collect and treat wastewater in the densely populated areas of the beach communities along Long Island Sound has caused unreasonable pollution to the environment that should be remedied by an order to implement such a system. *Id.* at Count III, pp. 14-16.

The only governmental purpose for the regulations asserted by the Defendants, which was made during the hearing on the Plaintiffs' motion for the temporary injunction granted by this court, is environmental protection. The Plaintiffs intend to present evidence at trial to demonstrate:

(1) The Commission, in fact, did not receive or consider any evidence regarding environmental protection prior to its adoption of the contested regulations (the "Challenged Regulations");

(2) The Town has engaged in a decades long effort to bar year round use of properties in the beach communities unrelated to concerns of environmental protection;

(3) The Town vehemently denies that there is an environmental pollution problem in the communities as long as a proper septic pumpout program is implemented;

(4) Despite denying that a pollution problem exists when occupancy of the beach communities is at or near full capacity during summer months, the Town attempts to shield its real motives by suggesting that restricting use of those same residences during the winter months of the year is somehow rationally related to environmental protection;

(5) As confirmed by expert testimony, environmental study or report commissioned or received by the Town or its officials before or after the regulations were adopted finds any correlation between barring use of residences during winter months and environmental protection;

(6) As confirmed by expert testimony, studies available at and since the time of the adoption of the regulations demonstrate that restricting use of septic systems for a prolonged period during winter months will likely reduce the effectiveness of septic systems;

(7) Evidence that the Town and its officials were motivated to restrict year round use in

order to prevent the purchase or rental of the relatively small homes in the effected zoned by lower income persons or families which would require governmental services such as education and infrastructure maintenance and would adversely impact the "character" of the Town; and,

(8) No legitimate matter of public, health and safety is served by barring additional persons to reside in beach communities in the winter where other persons already legally reside on a year-round basis and where the existing residential structures are fully occupied during a substantial portion of the year.

## II. LAW AND ARGUMENT

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 95 (2d Cir. 1998). On a motion for summary judgment, a district court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993). The initial burden of demonstrating the absence of a disputed issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This Court must then determine "whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

While the moving party is not required to negate the cause of action or defense set forth, the moving party must demonstrate the absence of an essential element of the non-moving party's case. *Celotex Corp.* 477 U.S. at 325. When identifying which facts are material to

establishing the essential element being challenged, the Court should consider if the fact would legitimately affect the outcome of the case. *Anderson*, 477 at 248. In determining whether a genuine issue of material fact exists the Court must decide whether there is sufficient evidence to sustain a verdict for the non-moving party. *Id.* at 249. In this regard, the Court must review the evidence in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences against the moving party, assessing its sufficiency according to the evidentiary burdens imposed by the controlling substantive law. *Id.* at 255.

**B. The Association Has Standing to Prosecute the Claims in this Matter**

The Defendants argue that the Plaintiff, South Lyme Property Owners Association, Inc. ("Association") lacks standing and asks the Court to grant summary judgment to dispose of all claims brought by the Association. Def. Memo. at p. 5. Specifically, Defendants maintain that the Association lacks associational standing to sue since: (i) no member has standing to sue on the procedural due process claims; and (ii) the federal claims asserted by the Association and the relief requested requires the participation of individual members in the lawsuit. *Id.* at pp. 5-10. As explained below, summary judgment on those grounds should be denied.

**1. The Doctrine of Associational Standing**

Under the doctrine of associational standing an organization may sue to redress its members' injuries without showing an injury to the organization itself where: (i) its members would otherwise have standing to sue in their own right; (ii) the interests of the organization seeks to protect are germane to the organization's purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[1] *United*

[1] Note that the Defendants only argue the first and third prongs of the test for associational standing. There is no question that the interests the Association seeks to protect in this lawsuit are "germane to the organization's purpose," *Hunt*, 432 U.S. at 343. Accordingly, the Plaintiffs do not address this element.

*Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996); *New York State Club Ass'n, Inc. v. City of New York*; 487 U.S. 1 (1988); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977). Associational standing requires that at least some members would have standing to sue in their own right. *Fed. for American Immigration Reform, Inc. v. Reno*, 93 F.3d 897 (D.C. Cir. 1996), *cert. denied*, 521 U.S. 1119 (1997); *Nat'l Wildlife Fed. v. Norton*, 386 F.Supp.2d 553 (D. Vt. 2005) (requirement satisfied if any one of the members satisfies the Article III standing requirements). The requirement that the members would otherwise have standing to sue in their own right ensures the presence of a case or controversy and is constitutional in nature. *Fraternal Order of Police v. United States*, 152 F.3d 998 (D.C. Cir. 1998), *reh'g granted*, 159 F.3d 1362 (D.C. Cir. 1998), and *on reh'g*, 173 F.3d 898 (D.C. Cir. 1999).

The requirement that the individual members participate pertains to situations where it is necessary to establish "individualized proof" by litigants not before the court in order' to support the cause of action. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993). While an association may have standing to seek a declaration, injunction, or some other form of prospective relief on behalf of its members, it does not enjoy standing to seek damages for monetary injuries particular to individual members if the fact and extent of injury will require individualized proof. *Warth v. Seldin*, 422 U.S. 490 (1975).

The United States Supreme Court has ruled that the *Hunt* test's third prong is prudential – not constitutional – in nature: "[h]ence the third prong of the associational standing test is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *Brown*, 517 U.S. at 557. For that reason, the *Brown* court state that "once an association has satisfied *Hunt's* first and second

prongs assuring adversarial rigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." Id. at 556. Thus, that prong is best seen as focusing on matters of administrative convenience and efficient, not an element of as or controversy within the meaning of the Constitution. *Id.* at 557.

**2. The Association Maintains Third-Party or Associational Standing Since at Least One of its Members Would Have Standing to Sue in Their Own Right on the Procedural Due Process Claims in the Amended Complaint**

With respect to the procedural due process claims, the Defendants argue that the Association cannot maintain standing under the first prong of the test for associational standing on the ground that no member of the Association has standing to sue. Def. Memo. at p. 7. Specifically, Defendants contend that although exhaustion of administrative remedies generally is not required to bring an action under 42 U.S.C. § 1983, Plaintiff members must exhaust their administrative remedies where a claim is based upon the procedural due process clause of the Fourteenth Amendment. *Id.* at pp. 7-8. The claim is based on a fundamental misunderstanding of the nature of the claims made, the relief sought by the Plaintiffs, and the lack of administrative remedies available under Connecticut law to assert those claims.

Before turning to the fact that no adequate administrative remedy exists for Plaintiffs' claims, it is important to note that the exhaustion doctrine is far more flexible than the Defendants suggest. The United States Supreme Court has stated that "[w]hen federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974). Although the Second Circuit Court of Appeals has interpreted this language as dictum in *Plano v. Baker*, 504 F.2d 595, 597 (2d Cir. 1974), it nonetheless recognizes that there is "ample

breathing room under our holdings for allowing civil rights actions to proceed without requiring 'a wooden application of the exhaustion doctrine.'" *Id.* (quoting *Eisen v. Eastman*, 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied*, 400 U.S. 841 (1970)); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987) ("[e]xhaustion is not an inflexible rule."). The Second Circuit does not require exhaustion of state administrative remedies where their pursuit would be futile, *Goetz v. Ansell*, 477 F.2d 636 (2d Cir. 1973); or inadequate, *Ray v. Fritz*, 468 F.2d 586 (2d Cir. 1972) (*per curiam*). The Second Circuit recognizes that there are benefits from a sensible application of the exhaustion doctrine. *Plano*, 504 F.2d at 596 (citing *Eisen*, 421 F.2d at 567, n. 11).

If applicable to the claims in this case, the first inquiry is whether adequate administrative remedies existed to raise the claims asserted by the Association or its members. "[U]nless the [administrative] procedures involved provide a practical avenue for an aggrieved party to contest an administrative decision, it is not necessary for that party to exhaust its procedures." *Plano*, 504 F.2d at 598 (holding that plaintiff was not required to exhaust state administrative remedies by appealing to New York Commissioner of Education since state remedy was inadequate). The *Plano* court further stated:

> [s]ince under Section 1983 an individual seeks to preserve or vindicate federally guaranteed rights, a strong national interest in protecting those rights makes it incumbent upon the federal courts to avoid erecting barriers to prosecution of such lawsuits in federal tribunals. Thus, absent a clear showing that the state administrative procedures afford a realistic alternative for an aggrieved litigant, the exhaustion doctrine should not be implemented.

*Id.*

The administrative procedure of an appeal to the zoning board of appeals and administrative appeal to a Connecticut Superior Court regarding a decision as to whether any particular property qualified for year-round use under the Challenged Regulations is inadequate

to raise a facial challenge to the constitutional adequacy of the regulations themselves or the general policy prohibiting the presentation of important classes of evidence that this court has already ruled fails to pass constitutional muster. Appealing the Zoning Enforcement Officer's decision on the merits of a factual determination on a preexisting year round use to the Zoning Board of Appeals does not provide a vehicle to assert the claims raised in this action.

The Plaintiffs' amended complaint seeks declaratory and injunctive relief to halt the systematic procedure in which the municipal officials terminated constitutionally protected private rights. They are not appealing any individual administrative decision regarding a particular property. Am. Comp. ¶ 46 and Prayer for Relief ¶¶ 3, 5 and 6. Local land use agencies have no power to grant injunctive relief, declare regulations or regulatory procedures unconstitutional, or grant monetary relief. *Plano*, 504 F.2d at 599 (citing *Ray v. Fritz*, 468 F.2d 586 (2d Cir. 1972) (*per curiam*) (held that exhaustion of state administrative remedies in § 1983 actions is not required where the administrator is not empowered to grant the relief sought)); *Cummings v. Tripp*, 204 Conn. 67, 80 (1987) (administrative relief cannot encompass a monetary award); *Beizer v. Dep't of Labor*, 56 Conn. App. 347 (2000) (Connecticut Superior Court does not have the authority to grant an injunction in an appeal under Conn. Gen. Stat. § 4-183); *Fisher v. Bd. of Zoning Appeals*, 142 Conn. 275, 278 (1955) (prayers for injunctive relief and declaratory judgment are not proper in an administrative appeal); *Costanzo v. Hamden*, 18 Conn. App. 254, 260 (1989); *Robert A. Fuller, 9A Conn. Prac., Land Use Law & Prac.* § 35:1 (3d ed. 2006) (citing cases). Where other requests are made in an administrative appeal from a decision of a local land use body, the case is properly treated as a land use appeal only and the other requests for relief are ignored or denied. *Fuller, supra*, § 35:1 (citing *Rosnick v. Planning and Zoning Comm'n*, 172 Conn. 306, 308 (1977)). Similarly, while civil rights claims can be and

frequently are joined to complaints containing other causes of action, they cannot be joined to an administrative appeal. *See Fuller*, *supra*, §§ 35:1, 43:3; *Dan Beard, Inc. v. Orange Town Plan and Zoning Comm'n*, 1992 WL 175075 (Conn. Super. Ct., July 16, 1992) (McGrath, J.) (Exh. A)(a § 1983 action for damages cannot be part of an appeal). The state administrative remedies would have been and remain both futile and inadequate.

At the time the Plaintiffs instituted the instant lawsuit, they were foreclosed from raising a constitutional claim and joining a declaratory judgment action in an administrative appeal from the local administrative decision. *See, e.g.*, *Ciofoletti v. Ridgefield*, 209 Conn. 544 (1989), *appeal after remand*, 220 Conn. 362 (1991); *Bierman v. Westport*, 185 Conn. 135 (1981). Although the court has since liberalized that doctrine to allow a litigant to request a court to grant plenary declaratory relief in some administrative appeals, a civil action filed in the Superior Court to challenge a regulation, as this case was, remains an appropriate remedy under state law. *See Stafford Higgins Industries, Inc. v. Norwalk*, 245 Conn. 551 (1998) (in an appeal from a municipal property tax assessment, the Connecticut Supreme Court abandoned the outright prohibition against general **plenary judicial declaratory relief** on the validity of legislation in an administrative appeal); *Rudy's Limousine Serv., Inc. v. Dep't of Transp.*, 78 Conn. App. 80, 86-88 (2003) (a separate civil action remains an appropriate remedy to challenge land use regulation on constitutional grounds following *Stafford Higgins*).

Finally, an administrative remedy is and was inadequate because the constitutional issues raised in this case, particularly procedural due process and Fourteenth Amendment takings, lie within the expertise of courts, not the expertise of local land use agencies. *See Plano*, 504 F.2d at 599 (administrative remedy inadequate where First Amendment constitutional issues lie within the expertise of courts, not the expertise of administrators). The legal issues raised in

Plaintiffs' challenge can be considered only by a court. No administrative agency would or could rule on the questions presented in this case.

For the foregoing reasons, members of the Association have standing to commence the civil action seeking declaratory, injunctive and monetary damage relief regarding a facial attack on the 1995 regulations and procedures adopted by municipal officials that are applicable to all seasonal use determinations. *See id.* (plaintiff not required to exhaust state administrative because constitutional issues presented were within expertise of the courts and because the Commissioner had no power to award damages).

**3. The Federal Claims Asserted by the Association and the Relief Requested Does Not Require the Participation of Individual Members in the Lawsuit**

Defendants ask this Court to enter judgment dismissing all of the claims of the Association on the ground that the requested relief requires the participation of individual members. Def. Memo. at pp. 8-10. Defendants contend that whatever injury the Association's members may have suffered is peculiar to the individual concerned, and both the fact and extent of the injury will require individualized proof. *Id.* The Defendants again misconstrue the nature of the remedies in an effort to deny the Association of its claims for declaratory, injunctive, and prospective relief arising from a facial challenge to the regulations and policies adopted and employed by the Town and its agencies and officials.

If a plaintiff claiming associational standing can ensure that "the remedy, if granted, will inure to the benefit of those members of the association actually injured," the association will be permitted to invoke the remedial powers of the court on behalf of its members. *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 288 (1986) (quoting *Warth v. Seldin*, 422 U.S. at 515). Whether an association has standing for is

members "depends in substantial measure on the nature of the relief sought." *Hunt*, 432 U.S. at 343. If it "can be reasonably supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515; *Camel Hair & Cashmere Institute, Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986) ("actions of for declaratory, injunctive and other forms of prospective relief have generally been held particularly suited to group representation."); *see also United Steelworkers of Am. v. University of Ala.*, 599 F.2d 56, 59 (5th Cir. 1979) (recognizing Union's standing to seek declaratory and injunctive relief, but not money damages where damages are not common to entire membership nor shared by all in equal share).

The Amended Complaint includes a general prayer for relief setting out multiple remedies arising from the various claims being made by the Association and the three individual Plaintiffs. The prayer for relief in the civil action filed in the Connecticut Superior Court does not, and is not required to specifically reference which Plaintiff would be entitled to which relief under which count. The Association will not present evidence regarding specific monetary damages of its members and will not request the Court to make a determination of monetary damages for each of its members. Instead, the Association will seek declaratory and injunctive relief regarding the constitutionality of the Challenged Regulations and final declaratory and injunctive relief regarding the policy at issue in this Court's ruling on the motion for a preliminary injunction regarding factual determinations as the existing of a legal year-round use. It will also seek declaratory relief as to whether the Challenged Regulation's prohibition of any use of Plaintiffs' properties for five months of the year effect a compensable regulatory taking of private property. While the Association will seek a general determination regarding the regulatory takings question, it will not seek individualized damages specific to any particular

property impacted by the Challenged Regulations. All of the relief sought by the Association will inure to the benefit of its members.

The Association has fulfilled the criteria set forth in *Hunt* and has associational standing to press its members' claims for declaratory and injunctive relief. *See supra*, §§ B.1-B2.

The Defendants' reliance on *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) is misplaced. In *Rent Stabilization*, an association sought declaratory and injunctive relief from New York City's rent stabilization scheme contending that it violated the takings clause of the Fifth Amendment because it did not allow a landlord to earn a "just and reasonable return" on his property. There, the Second Circuit discussed the *Hunt* criteria in the context of an as-applied takings claim. Noting that *Hunt* mandates "*neither the claim asserted* nor the relief requested" require the participation of the individual members (emphasis in *Rent Stabilization*), the Second Circuit concluded that because a takings claim commonly mandates an essentially *ad hoc*, factual inquiry, associational standing could not be granted to an association of 25,000 building owners because the law would necessarily affect each owner differently. *Id.* at 597 (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979)).

The relief requested by the Association does not require an *ad hoc* determination of an as-applied takings claim but, instead, seeks a ruling from the Court that denial of all use of residential property for five months of the year is a compensable taking. If that declaratory relief is granted, individual property owners could resolve the question of individual compensation through agreements with the Town or a subsequent proceeding.

### C. Plaintiff Charles Parsons Has Standing to Maintain Claims in this Action

Defendants argue that Plaintiff Charles Parsons does not have standing because he lacks a property interest in any real property in Old Lyme. Def. Memo. at pp. 10-11. Specifically, defendants contend that Plaintiff Parsons, while verifying ownership of property in the Town at

the filing of the original complaint, lost standing to continue as a Plaintiff after conveying the property to his wife. *Id.* Defendants have not provided any authority that supports this proposition and the caselaw reveals otherwise.

Defendants' argument is inconsistent with takings jurisprudence that focuses on the claimant's property interest at the time the taking occurred, rather than on the time at which the claim itself is brought. The important question is who holds the property interest at the time the claim accrues. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001) (contrasting an eminent domain case, in which "any award goes to the owner at the time of the taking, and the right to compensation is not passed to a subsequent purchaser" with a regulatory taking, in which a claim "does not mature until ripeness requirements have been satisfied" and stating that regulatory takings claims may be maintained or transferred if the claim has ripened); *United States Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263 (2d Cir. 1984) (the owner of an interest in property at the time of the alleged taking has standing to assert that the taking has occurred); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142 (1st Cir. 2002) (a divestiture of title through a foreclosure action would not undermine a plaintiff's § 1983 takings claim under the Fifth Amendment for damages occurred while he owned the property); *Haldeman v. Freeman*, 558 F.Supp. 514 (D.C.D.C. 1983) (plaintiff must show an interest in property taken to be entitled to compensation for any loss; only the owner at the time of the taking may seek compensation); *Thompson v. Tualatin Hills Park and Recreation Dist.*, 496 F.Supp. 530 (D. Or. 1980) (plaintiff was not barred from bringing an inverse condemnation action on the ground that he sold the subject property prior to filing lawsuit and, therefore, had no property interest to convey if he obtained judgment). Here, it is undisputed that Plaintiff Parsons was the record owner of property within the Town during years in which he was denied use of his property for several

months of the year. Therefore, Mr. Parsons has standing to seek relief regarding that deprivation.

**D. Plaintiffs Charles Parsons, Victoria Parsons, and Joan Byer Need Not Exhaust Administrative Remedies Where Such Remedies are Futile or Inadequate**

Defendants argue that the procedural due process claims of the individual Plaintiffs are without merit because those Plaintiffs failed to exhaust their administrative remedies. For the reasons set out in § B.2. above, no available administrative remedies would afford these Plaintiffs the declaratory, injunctive and monetary damage relief regarding a facial challenge to the 1995 regulations and the policies established under those regulations. Significantly, the Defendants fail to cite a single Connecticut case to support the suggestion that any of the relief requested is available in an administrative appeal to the Zoning Board of Appeals arising from the application of the regulations to an individual Plaintiff's property.

**E. The Policy Employed to Determine the Existence of Lawful Nonconforming Use Offends Procedural Due Process**

Defendants devote much of their Rule 56(a)(1) Statement and all of their argument or procedural due process discussing whether an alternative procedure to the existing street-by-street determinations of seasonal or year-round use is too onerous. The Defendants do not address the essential failures of the existing procedure. The primary failures, as already determined by the Court, are:

(1) determinations are based on review of public records that are irrelevant to whether a property was actually used during winter months prior to adoption of the Challenged Regulations; and,

(2) presentation of affidavits or testimonial evidence to rebut the determination based on those existing public records alone is prohibited.

For the same reasons set forth in the Court's memorandum granting Plaintiffs' motion for

temporary injunction, Plaintiffs' procedural due process claims cannot be denied by summary judgment. *See Court's October 10, 2000 Ruling on Plaintiff's Motion for Preliminary Injunction.* This Court ruled, based upon evidence already presented to the Court, that the Defendants improperly based their determination on "records which essentially have nothing to do with an owner's actual use of her property" and the failure to allow affidavits or sworn testimony "denies owners a meaningful opportunity to be heard prior to the final determination, and further increases the risk of error." *Id.* at 22 and 25. This Court ruled that the risk of an erroneous determination is "glaring." *Id.* at 24. The Defendants' in their motion do not address these key elements of the Plaintiffs' procedural due process argument and are, therefore, not entitled to summary judgment.

The Plaintiffs are compelled to respond to the Defendants' attempt to justify its previously policy on the subjective analysis that a registration process will be overly burdensome and unworkable for the Town and, therefore, the procedure employed by the Town satisfies the requirements of the *Matthews v. Eldridge*, 424 U.S. 319 (1976). Aside from a failure in logic, the Defendants' entire analysis is based on a gross misunderstanding of Connecticut law.

The Plaintiffs advocate a registration system where property owners would be required to register if they believed that use of their property was legally nonconforming year-round use in existence prior to the adoption of regulations in 1995, or 1992 if the "back dated" language of the Challenged Regulations is lawful. The ZEO would be free to review the registrations at her leisure and make a determination at any time that any particular registration of a nonconforming use is erroneous. The registration system could impose a reasonable timeframe for ZEO review of registrations or could omit a timetable altogether. The ZEO is not forced to undertake an analysis of each registered property in thirty (30) days. If an owner is aggrieved by a

determination by the ZEO that the registration is improper, he or she could appeal that decision to the Zoning Board of Appeals ("ZBA").

The current ZEO, Ann Brown, suggests in her affidavit that she would be required to conduct an individual analysis of every person registering for nonconforming use within 30 days of the registration which would then result in hundreds of simultaneous appeals to the ZBA. It is that erroneous supposition that the Defendants' entire procedural due process claim rests.

The only deadlines imposed by Connecticut law regarding a zoning enforcement matter is the deadline that a property owner must appeal a formal decision made by the ZEO and the deadlines imposed upon the ZBA if such an appeal is filed. Conn. Gen. Stat. §§ 8-7 and 8-7d. No statutory deadline is imposed as to the time the ZEO must or could issue an enforcement decision regarding the propriety of any nonconforming use registration. The ZEO can take as much time as he or she wishes to review the registrations and can manage her time reviewing the registrations and manage her determinations so that a reasonable number of potential appeals are filed at any given time.

By opting for a registration program, the workload of the Town would actually be reduced because only those persons actually claiming a nonconforming use would need to be examined by the ZEO. Not all persons in the beach communities claim that they are entitled to nonconforming use status. In fact, none of the individual plaintiffs in this litigation claim that they actually used property on a year-round basis prior to 1992. For that reason, the number of properties that would be subject to zoning enforcement review will certainly be lower under a registration system than under the current system where the ZEO considers, albeit in a flawed manner, literally every property in the zone.

Defendants' request that the Court ratify its constitutionally deficient policy by way of

summary judgment should be denied.

**F. There is a Genuine Issue of Material Fact Whether the Challenged Regulations are Arbitrary, Unreasonable and with No Rational Relationship to a Legitimate Government Interest.**

Defendants argue that the Plaintiffs' equal protection claim is unsupported by law. Def. Memo. at pp. 17-18. Defendants provide no authority for this premise and do not support their claim with any facts indicating that the Challenged Regulations are rationally related to a legitimate government interest. Therefore, the motion for summary judgment should be denied and the Plaintiffs permitted to present evidence at trial to afford the Court the factual record upon which to consider if the challenged regulations are rationally related to a legitimate state interest within the jurisdiction of the Commission.

The purpose of the equal protection clause it to ensure that every person is protected from intentional and arbitrary discrimination by a local government. *See Sunday Lake Iron, Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918). It is well established that in order for a plaintiff to successfully claim a regulation violated the equal protection clause, he or she must show that the regulation in question was clearly arbitrary, unreasonable and without a rational relation to a legitimate state interest. *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309 (2d Cir. 1994). A "[d]efendant to such a claim, however, is entitled to summary judgment if he or she can show that there exists no factual dispute on the basis of which a reasonable factfinder could conclude that the challenged legislation was clearly arbitrary and unreasonable." *Id.* If there is a "factual dispute that would lead a reasonable factfinder to conclude that the . . . [regulation is] not rationally related to a legitimate state interest" then the motion must fail. *Id.*

To survive summary judgment a plaintiff must "show either that there was no rational basis for the unequal treatment received . . . or that the [Town's regulation] was motivated by

animus." *Harlan Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001). To determine whether there is a legitimate reason for the regulation the court will consider the evidence presented at the public hearing and in the Commission's written decision. *Id.*

In this case, the Plaintiffs will present evidence that the Commission had no record upon which to adopt a classification that property owners in certain sections of the town of Old Lyme located in a residential zone and having a fully health code-compliant septic system should be prohibited from using their homes during certain months of the year while those in other parts of the town, including those having substandard septic systems, are free to use their properties throughout the year. Pl's 56(a) (2) Statement II.1, 4. There is a question of material fact regarding both the motivation for the regulations and whether it serves and legitimate state goal. *Id.* at II.4-5.

In their memorandum of law, the Defendants merely state that the Regulations are rationally related to public health, safety and welfare, but provide no factual support for this conclusion. The Defendants don't even articulate what the legitimate state interest is.[2] The Defendants have the burden of establishing absence of a genuine issue as to any material fact and the material it lodges must be viewed in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (U.S.. 1970). The Defendants are obligated to present some evidence to support their motion.

Although the Commission in its motions cites no public interest served by that classification that discriminates against owners of property that are predominantly owned and

---

2 The Defendants suggest that this court has held that the Regulations are rationally related to public health, safety and welfare but in fact the previous holding was limited to whether the Regulations violated the Plaintiffs procedural due process rights. Def. Memo. at p. 18. Although the Court recognized that zoning regulations generated in the public's interest this Court did not evaluate whether the Regulations were rationally related to a legitimate state interest. Ruling on Plaintiffs' Motion for Preliminary Injunction, at p. 26.