used by persons who are not natives to the Town, it did suggest at the hearings on the motion for a preliminary injunction that the motivation of the Commission was environmental protection. Pl's 56(a) (2) Statement II.4.

In fact, no evidence regarding environmental protection was actually considered by the Commission prior to adoption of the challenged regulations. *Id.* at II.1.

The Defendants produced a multitude of documents that it purports demonstrates that the classification relates to environmental protection. In fact, none of those documents were presented to the Commission or considered prior to adoption of the classification. *Id* at II.1, 6.

Disclosed experts will testify that not one of the documents produced provide a scintilla of support for the proposition that barring use of property in the beach communities during winter months advances goals of environmental protection. *Id.* Courts must be wary of granting summary judgment when experts present conflicting reports. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002).

On the other hand, the Plaintiffs will present evidence that the Challenged Regulations were the culmination of a decade's long effort of the Town and its municipal officials to discourage or prohibit the "beach people" from becoming domiciled in the town. Those efforts predated the formation of the agencies in Old Lyme charged with considering the adequacy of residential wastewater treatment and possible pollution to Long Island Sound. *Id.* at II.2. The Challenged Regulations were adopted on the heals of several unsuccessful zoning enforcement actions attempting to bar off-season use strictly based on the size of the existing building lots containing residential structures. *Arcata v. Zoning Bd. of Appeals of Town of Old Lyme*, 1993 WL 394500 (Hurley, J., Sept. 21, 1993) (Exh. B); *Habicht v. Zoning Bd. of Appeals of Town of Old Lyme*, 1993 WL 284791 (Austin, J., July 22, 1993) (Exh. C); and *French v. Zoning Bd. of*

*Appeals of Town of Old Lyme*, 1993 WL 284789 (Austin, J., July 22, 1993);(Exh. D). When the town learned that it couldn't simply prohibit property owners to "convert" properties that hadn't previously been used during winter months, it proceeded towards adopting the Challenged Regulations for reasons unrelated to environmental protection.

The Plaintiffs will also present evidence demonstrating that the classification itself is arbitrary and serves no legitimate governmental interest vested in the Commission.

This situation is easily distinguished from cases where the court held there was no dispute that legislation was related to the legitimate state interest of environmental protection. For example, in *New York State Trawlers Ass'n*, the Second Circuit recognized that there was no doubt that the protection of the lobster fishery in Long Island Sound was a legitimate state interest, therefore a state law prohibiting trawlers from catching lobsters did not violate the Trawlers rights under the Equal Protection Clause. *New York State Trawlers Ass'n*, 16 F.3d at 1306. In making this determination, the court considered the following facts: a) the legislature was presented with supportive scientific studies, b) the law's sponsors had attended an information meeting on the impacts of trawling to the lobster population, c) the proposed bill clearly stated the purpose to reduce lobster mortality, and d) the sponsors drafted a memorandum articulating the purpose of protecting the lobster population. *Id.* at 1310.

These facts indicating that there was a legitimate state interest stand in stark contrast to the record in this case which shows there is not such a purpose. Pl's 56(a)(2) Statement II.2-5. No evidence supports the classification established by the challenge regulations that bar the year-round use of properties that are fully in compliance with the health code and where no evidence suggests that barring use of property from November to April serves a legitimate government interest.

Drawing all inferences and resolving all disputes in favor of Plaintiffs where reasonable, there is evidence that the local Commission had improper motives for enacting the Challenged Regulations. The claim should survive summary judgment to allow the plaintiffs the opportunity to demonstrate at trial that the local action was motivated by animus. *Harlan*, 273 F.3d at 500.

A reasonable fact finder may conclude that the Challenged Regulations are arbitrary, unreasonable, and without a rational relation to a legitimate state interest. This case is similar to *United States Department of Agriculture v. Moreno*, in which the Supreme Court held the law denying food stamps to households containing unrelated members was not rationally related to a legitimate state interest. 413 U.S. 528, 538 (1973). The legislative history indicated that the law's purpose was to prevent hippies from participating in the food stamp program. The law was irrational and the Court held "a bare [legislative] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Id.* at 534; *see also City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 448-50 (1985) (zoning ordinance requiring special use permit for homes for the mentally retarded is not rationally related to legitimate interest and therefore violated the equal protection clause).

Just as in *Moreno*, the regulatory classification (households in the R-10 zone versus households in other zones regardless of the existence of a code compliant septic system) is irrelevant to the purpose of protecting the environment. *See id.* (noting that the statutory classification of households containing one or more unrelated persons was not relevant to the purpose of the Food Stamp Act); *Smith v. Cahoon*, 283 U.S. 553, 567 (1931) (holding that a distinction between different classes of carriers in a regulation requiring a permit was not related to the purpose of the act therefore the act violated the equal protection clause). There is no basis for limiting the use of properties located in the R-10 zone as opposed to other zones in order to

protect the environment. Distinguishing owners in the R-10 zone from other town residents is not related to any legitimate municipal purpose. The inhabitants of the R-10 zone are politically unpopular and this is little more than an improper attempt to limit their property rights.

### G. Plaintiffs Substantive Due Process Challenges are Facial and Ripened the Moment the Challenged Regulations Were Enacted.

Defendants misapply the *Williamson County* ripeness requirements for as-applied challenges to Plaintiffs assertion of a facial takings claim. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Recently, the United States Supreme Court distinguished "as-applied" takings claims and "facial" takings claims. *San Remo Hotel v. San Francisco*, 545 U.S. 323, 340 (2005). In *San Remo Hotel*, the petitioner's challenge to a local zoning ordinance on the ground that the ordinance was unconstitutional on its face, was "ripe the instant [the ordinance] was enacted." *Id.* at 330-31. Alternatively, the *Williamson County* requirements apply to an as-applied takings claim which must ripen in state court before it could be heard by the federal court. *Id.* at 338.

Facial challenges are ripe upon enactment because they "do[ ] not depend on the extent to which [landowners] are deprived of the economic use of their particular pieces of property or the extent to which these[ ] petitioners are compensated," *Yee v. City of Escondido*, 503 at 534; *see also Keystone Bituminous Coal Assoc. v. DeBenedictis*, 480 U.S. 470, 495 (1987); *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980) *overruled in part, Lingle v. Chevron U.S.A., Inc.* 544 U.S. 528 (2005).

In this case the Plaintiffs assert that the Town's promulgation, passage, adoption, enforcement, and effect of the Challenged Regulations deprives the Plaintiffs of all use of their property for a substantial period of time each year. *See* Amended Complaint dated May 29, 2001, Count I, ¶ 41; Count II ¶ 50. This amounts to a claim that the Challenged Regulations are

unconstitutional on their face and therefore is ripe for review. *See Dolls, Inc. v. City of Coralville*, 425 F. Supp. 2d 958, 994 (S.D. Iowa 2006) (holding that the facial takings claim was ripe); *Cedarwood Land Planning v. Schodack*, 954 F. Supp. 513, 526 (N.D.N.Y. 1997)(denying motion for summary judgment because facial takings claim was ripe); *Mainville v. Zoning Cmmn' of Meriden*, 2006 WL 829536, No. CV980265281S at *5 (Taylor, J., March 14, 2006) (Exh. E)(holding that a zoning amendment titled Ridgetop Protection Zone Change Petition was not in accordance with the comprehensive plan of the city and was granted without valid reason were facial challenges and therefore were ripe).

The Plaintiffs other substantive due process claim that the Challenged Regulations bear no substantial relationship to the police power equates to another facial challenge. *See* Amended Complaint ¶ 40. In *Yee*, the plaintiffs alleged that the ordinance amounted to a taking no matter how it was applied. *Yee*, 503 U.S. at 534. Therefore, in this case the allegation does not depend on the extent to which the Plaintiffs are deprived of economic use and it is ripe for review.

For those reasons, the Court has subject matter jurisdiction over the substantive due process claim in this case.

### H. Summary Judgment Should not be Granted as to Marilyn Ozols on the Grounds of Qualified Immunity.

The Plaintiffs intend to prove at trial that members of the commission were not motivated by legitimate public health and safety concerns, but where instead, steadfastly resisting the use of properties, which they believe were perfectly suitable for full-time occupancy during summer months, in the winter resulting in residency by persons in a lower socioeconomic status. Pl's 56(a)(2) Statement II.2-5.

Defendants' cite a line of cases related to whether police officers, prison guards, and judicial officials should have known that their actions with respect to conduct towards prisoners,

litigations and suspected criminal defendants were unlawful. Defendants cite these cases to suggest that, as a matter of law, the individual Defendants in this case had insufficient knowledge of the unconstitutionality of their actions to be liable for their actions. *Soucier v. Katz*, 533 U.S. 194 (2001). (claim of excessive force by political demonstrator arrested by military police officer); *Hope*, 536 U.S. at 730 (claim involving correctional officers handcuffing a prisoner to a hitching post for punishment for noncompliance with directives); *United States v. Lenier*, 520 U.S. 259 (1997) (alleging rape physical assault by a chancery court judge upon litigants in divorce proceedings).

The court in those cases grappled with the legal standard to be applied to determine whether the defendant was on proper notice of the unlawful conduct such that he or she was being charged with violation of civil rights under § 1983. These cases have not been applied in the context of charges that public officials adopted land use regulations and policies based on improper motives.

Although it is questionable whether these cases are relevant to the case at hand, the *Hope* decision makes clear that the determination is a factual one in that "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity with the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

A disputed question of fact exists as to whether members of the commission knew or should have known that the adoption of a policy prohibiting a property owner from testifying to the existence of a constitutionally protected property rights is unlawful. A disputed question of fact also exists as to whether members knew or should have known that the adoption of

- 26 -

regulations and policies to further a long-standing effort to bar a class of property owners from established residences in the community for reasons unrelated to public health or safety is unlawful. Pl's 56(a)(2) Statement II.2. If that improper motive is established, it follows that the members knew or should have known that their actions were unconstitutional.

The Defendants fail to bear the burden of demonstrating that no material disputed fact exists regarding those issues. For example, it cites portions of the master plan adopted by the Commission in its capacity as a planning commission related future development goals for the Town. (Defendants' Exhibit I, pages 1-4, 5-6, 9, 11-12); Conn. Gen. Stat. § 8-26. As set forth in that document, it is prepared as a general guide for future development in the community provides no specific evidence justifying the Challenged Regulations. The Defendants present no evidence regarding the Commissioners motivation in adopting these policies to further a longstanding effort to bar year round use of properties in the beach communities for reasons unrelated to environmental protection.

The only evidence referenced in Defendants' Rule 56 Statement is:

(1) facts that members owning property less than 10,000 sq. ft. in size and not used on a year round basis prior to 1992, and therefore disqualified for year round use under the plain language of the Challenged Regulations, did not undertake the futile attempt to challenge the factual determination by the ZEO that the property failed to qualify under the Challenged Regulations. Defendants' Statement ¶¶ 2-16;

(2) assertions that the master plan, adopted as a planning guide under the planning rather than the zoning sections of the general statutes, contains general references to matters within the police powers of the Commission including development of raw land on lots sufficiently sized to avoid the need for a sewer (sewer avoidance), which plan is wholly unrelated to the use of existing residential homes impacted by the Challenged Regulations and whether the Challenged Regulations are valid. Defendants' Statement ¶¶ 17-19;

(3) statements by counsel regarding speculation as to the cost and possible ancillary impact to remove septic systems when no fact demonstrates the cost of systems, the amount of the cost that will be borne directly by persons benefited by the system under state law assessment procedures; and whether the septic systems would be physical

- 27 -

removed if wastewater treatment is provided to properties have non-code compliant systems, and if so, whether that would result in environmental impacts. Defendants' Statement ¶ 20;

(4) general statements regarding pollution to Long Island sound without any evidence establishing a rational bases to prohibit the use of properties served by fully-code compliant septic systems from year-round use or evidence tying a rational relationship between barring use of properties during winter months and environmental protection. Defendants' Statement ¶¶ 21-22;

(5) general statements, which are largely conjecture and opinion, regarding the time and resources associated with a seasonal use determining process and address in any way the constitutionality of a policy prohibiting persons having a constitutionally protected property right in a nonconforming use from presenting witnesses and testimony at hearings to demonstrate the existence of that right. Defendants' Statement ¶¶ 23-40;

(6) a general reference to the existence of a public hearing and deliberative process in adopting the regulations which is, in fact devoid of any evidence or any discussion regarding the relationship between barring the use of existing residential property owners having fully code-compliant septic systems from use of the property during winter months or any rational connection between barring off-season use and any legitimate public health and safety purpose embodied in the zoning enabling act. Defendants' Statement ¶ 41.

By failing to present any evidence addressed to the specific issues raised in this case, the Defendants fail to sustain their burden on summary judgment.

### 1. Defendant Ozol's Conduct was Not Objectively Reasonable

The Defendants makes much of the fact that the land use office in Old Lyme had limited resources. That is not disputed. However, as discussed above and as determined by the Court in granting temporary relief despite the existence of procedures that would involve fewer resources such as a registration system, Ozols and members of the Commission establish a policy intended to minimize the ability of persons to establish their constitutionally protected right to a nonconforming use. The Plaintiffs intend to prove that the Ozols joined with the Commission in that effort to deprive Plaintiffs' constitutional rights.

The defendant, Marilynn Ozols, seeks summary judgment resolving in her favor the

procedural due process claim that was adjudicated in the hearings on the motion for temporary injunction. She does not in any way address that central issue of the procedural process claim, opting instead to rely on a faulty premise that other procedural mechanisms for decision would be to burdensome. As determined by the court in issuing the temporary injunction, the plaintiffs and their members were deprived due process of law when the 1995 policy was established and administered.

> An objectively reasonable person would have known the impropriety of a policy that:
>
> (1) A determination of whether property was actually used prior to 1992 would be determined exclusively upon a review of public records that, except in rare cases, could not answer whether a property was, in fact, used during winter months prior to 1992;
>
> (2) If the determination was challenged, testimonial evidence from witness who could establish the facts necessary to demonstrate an existing constitutionally protected property right was specifically prohibited, and,
>
> (3) If the determination was challenged, the only authorized proof of actual year round use was through documents from years several years before the adoption of the Challenged Regulations that may not have been saved by homeowners such as heating bills.
>
> No case on that precise question is necessary to give her fair notice of the impropriety of

her actions. *Hope*, 536 U.S. at 739-40. Summary judgment should be denied and the case should proceed to trial.

### I. Defendants Are Entitled to Punitive and Exemplary Damages Against the Individual Defendants in Their Personal Capacity

Defendants argue that the Court must dismiss the Plaintiffs' claim of punitive and exemplary damages against the Town, the Commission and the individual defendants in their official capacity because no such damages may lie against a municipality, its agencies, or its employees sued in their official capacity for violations of federal or state law. Def. Memo. at p. 28. Plaintiffs may nonetheless seek punitive damages from the individual Defendants in their personal capacity.

While a municipality is generally immune from punitive damages in actions under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258-68 (1981), that immunity does not extend to a municipal official sued in his individual capacity. *Smith v. Wade*, 461 U.S. 30, 54-56 (1983); *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006); *City of West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 160 (1992). The liability of officials for any type of damages depends upon whether the action is brought against them in their individual or official capacity. Where, as here, officials are sued in their individual or personal capacity, they are subject to personal liability for actions taken under color of state law.[3] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Consequently, and as a matter of law, the Plaintiffs may seek punitive or exemplary damages from the individual Defendants in their personal capacity.[4]

As discussed throughout, the Plaintiffs intend to demonstrate that the motivation for the Challenged Regulations and the policy prohibiting crucial evidence for the seasonal use policy was maliciously driven to bar a group of persons from establishing residency in Old Lyme. If established, punitive and exemplary damages may be appropriate. Those facts and that remedy should be considered after trial.

### J.    Supplemental Jurisdiction is Appropriate

For the reasons set forth herein, the motion for summary judgment on the Plaintiffs'

---

[3] Defendants do not argue that Plaintiffs may not seek punitive damages from the individual Defendants in their personal (as opposed to official) capacity. *See* Def. Memo. at p. 28.

[4] The United States Supreme Court has stated that if a plaintiff obtains a judgment against a municipal officer in an action against the officer or employee in either an official or personal capacity while performing municipal functions, the municipality is responsible for attorneys' fees. *Owen v. City of Independence*, 445 U.S. 622 (1980), *rehearing denied*, 446 U.S. 993 (1980) (official acting in official capacity; *Graham*, 473 U.S. 159 (1985), *on remand*, 791 F.2d 932 (6th Cir. 1986) (employee acting in personal capacity). Similarly, the Connecticut Supreme Court has determined that a municipality may have the obligation to reimburse municipal officials for judgments against them in civil rights actions, including attorneys' fees, under Conn. Gen. Stat. §§ 7-101a and 7-465. *See Hartford Ins Co.*, 221 Conn. 149 (recognizing this proposition but holding that city did not have a legal obligation to indemnify police officers for punitive damage judgment entered against them in detainee civil rights case).

federal claims should be denied. As a result, the Court has supplemental jurisdiction of the State claims.

    **K.**    **The Plaintiffs' Conn. Gen. Stat. §§ 22a-16 and 22a-18 Claims are Proper and Should Not be Dismissed**

          **1.**    **The Plaintiffs' Conn. Gen. Stat. §§ 22a-16 and 22a-18 Claims State Claims Upon Which Relief May be Granted**

Defendants argue that Plaintiffs' claims based on §§ 22a-16 and 22a-18 of the Connecticut General Statutes are "transparently based on" the decisions in *Keeney v. Old Saybrook*, 237 Conn. 135 (1996). Def. Memo. at p. 29.

At the outset, Defendants' attempt to move for summary judgment is more appropriately characterized as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) must be decided solely on the facts alleged, *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d. Cir. 1985), which facts alleged in the complaint must be taken as true. *See* Fed. R. Civ. P. 12(b)(6). Motions to dismiss should be granted only where no set of facts consistent with the allegations could be proven entitling plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiffs will prevail, but whether they should be afforded the opportunity to offer evidence to prove their claims. *Id.* Here, the multiple allegations in Plaintiffs' Amended Complaint sufficiently demonstrate that the Challenged Regulations fail to protect the public trust in the water and other natural resources of the State of Connecticut, including Long Island Sound, from unreasonable impairment or destruction caused by pollution. *See* Am. Comp. at Count III, ¶¶ 53-62, pp. 14-16.

The Defendants are incorrect in suggesting that the Town's inaction is not the cause of unreasonable pollution. *See Kenney*, Connecticut Environmental Protection Act, Conn. Gen. Stat. §§ 22a-14 *et seq.* ("CEPA"); *Keeney*, 237 Conn. at 135.

- 31 -

In *Keeney*, the Connecticut Supreme Court ruled that "a municipality may violate [Conn. Gen. Stat. §§ 22a-427 and 22a-14 *et seq*.], which incorporate common law nuisance principles, without affirmatively causing pollution if the municipality has intentionally failed to abate a public nuisance."[5] 237 Conn. at 160. In explaining this rule, the *Keeney* court set out the elements of a public nuisance and defined "intentional." The Court determined that "[a] public nuisance exists if: (1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the condition or conduct complained of interferes with a right common to the general public." *Id.* at 162-63. The *Keeney* court then stated:

> An interference with the public right, is intentional if the [town] ... knows that it is resulting or is substantially certain to result from [its] conduct .... It is the knowledge that the actor has at the time [the actor] acts or fails to act that determines whether the invasion resulting from [its] conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that [its] conduct involves a serious risk or likelihood of causing the invasion. [The actor] must either act for the purpose of causing it or *know that it is resulting or is substantially certain to result from [the actor's] conduct* .... If the invasion results from continuing or recurrent conduct, the first invasion resulting from the actor's conduct may be either intentional or unintentional; but *[if] the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional*.

(Citations and internal quotation marks omitted; emphasis added.) *Id.* at 163-64. The Court held, "in light of the strong public policy manifested by the environmental protection statutes ... a municipality may be liable for a public nuisance that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance." *Id.* at 166. In short, *Keeney* holds that a municipality may be liable for a public nuisance that it created by its failure to act.

---

5 In other words, a town may violate CEPA by failing to build a pollution control facility.

The State of Connecticut recognizes that water pollution is a public nuisance. *See* Conn. Gen. Stat. § 22a-422 ("It is found and declared that the pollution of waters of the state is ... a public nuisance ...."). Here, the Plaintiffs alleged that Defendants engaged in conduct that would result in unreasonable pollution, impairment and destruction of the public trust in natural resources of the State of Connecticut, including the waters of Long Island Sound. *See* Amended Complaint at Count III, ¶¶ 53-62, pp. 14-16. In Count III, the plaintiffs contend that the Defendant Town, by virtue of the 1995 regulations and through the Town's prolonged and deliberate failure to abate the public nuisance, has intentionally violated Conn. Gen. Stat. §§ 22a-16 and 22a-18. *Id.* As discussed below, the Plaintiffs proffer sufficient facts to support a claim against the defendant Town.

### 2. The Doctrine of Governmental Immunity is Inapplicable to Plaintiffs' Conn. Gen. Stat. §§ 22a-16 and 22a-18 Claims

Defendants' exhaustively argues that Plaintiffs' claims based on §§ 22a-16 and 22a-18 of the Connecticut General Statutes are barred by the doctrine of governmental immunity. Def. Memo. at pp. 30-38. Defendants are mistaken.

The Connecticut Supreme Court in *Keeney* analyzed the development of the rule of municipal immunity in the context of nuisance claims. There, the Court noted that:

> The rule limiting municipal liability for nuisance created through mere nonfeasance has its origins in principles of municipal immunity. Noting that municipalities are not liable, under the common law, for mere negligence in the performance of governmental functions and duties, we concluded, in *Hoffman v. Bristol*, 113 Conn. 386, 389, 155 A. 499 (1931), that a municipality may be liable for a nuisance it creates through its negligent misfeasance or nonfeasance even if that misfeasance or nonfeasance also constitutes negligence from which the municipality would be immune.

*Kenney*, 237 Conn. at 164-65. The *Kenney* court then observed that the cases that have relied on

the *Hoffman* decision "arose in the context of claims of municipal liability for nuisance created negligently through the unintentional conduct of the municipality." *Id.* at 165. More importantly, the language of these cases "[speak] expansively of municipal immunity in the absence of some positive act of the municipality. Despite this sweeping language, [the Connecticut Supreme Court has] never held that a municipality is not liable for an intentional nuisance created through its failure to abate pollution." *Id.* It concluded "that a municipality may be liable for a public nuisance that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance." *Id.* at 166. Sections 22a-16 and 22a-18 of the Connecticut General Statutes fall within the rubric of "environmental protection statutes." Thus, a town's immunity is abrogated by §§ 22a-16 and 22a-18 when the town has created a nuisance through the prolonged and deliberate failure to act to alleviate such nuisance. *See Thetreault v. Wolford*, 2003 WL 22962157 *3-*4 (Foley, T., Dec. 1, 2003) (Exh. F) (rejecting town's argument that it is protected from suit under § 22a-16 by the doctrine of governmental immunity and holding that municipal immunity abrogated by § 22a-16 where municipality creates a nuisance through a deliberate failure to act to alleviate that nuisance).

The undisputed Plaintiffs' experts' opinion demonstrate that wastes cannot be adequately treated without a municipal solution and the failure of the Town to take action is causing unreasonable pollution to Long Island Sound. Plaintiffs' 56(a)(2) Statement ____. The failure of the Town to implement a plan to construct a sewerage system servicing certain areas within the Town have resulted in unreasonable pollution, impairment and destruction of natural resources of the State including waters of Long Island Sound, and is a breach of the public trust in the waters and natural resources of the State under CEPA. In fact, the only actions taken by the Town relates to "sewer avoidance" which is a deliberate effort to avoid the only solution that

would avoid ongoing pollution.6 These facts, if proven, support a claim under CEPA. Under those facts, the doctrine of governmental immunity provides no defense to Plaintiffs' §§ 22a-16 and 22a-18 claims.

Finally, Defendants' argument may also be dismissed based on statutory interpretation. The rules of statutory interpretation provide that "statutory provisions should not be read so as to render them meaningless, unnecessary or superfluous." *State v. Russo*, 259 Conn. 436, 455 (2002). Section 22a-16 specifically provides "for declaratory and equitable relief against the state, any political subdivision thereof ... or other legal entity." Conn. Gen. Stat. § 22a-16. The plain language of § 22a-16 clearly abolishes the Town's governmental immunity. Any other construction of the statute would render the express relief available against a municipality meaningless.

Plaintiffs are unaware of any reported Connecticut cases that have permitted a governmental immunity defense to a CEPA claim. Instead, defendants generally rely on governmental immunity defenses when countering non-CEPA claims, i.e., common law nuisance, trespass, negligence, etc. *See, e.g., Collins v. Olin Corp.*, 418 F.Supp.2d 34 (2006) (negligence, gross negligence, reckless misconduct); *Bonilla v. New Haven*, 2004 WL 2829017 (Amendola, J Nov. 2, 2004) (negligence and common-law negligence) (Exh. G). On the other hand, Connecticut courts provide standing to plaintiffs under § 22a-16 and recognize it as an exception to the imposition of the doctrine of sovereign/governmental immunity. *See, e.g., Herasimovic v. Wallingford*, 2005 WL 2082933, *3 (Thompson, J., Aug. 8, 2005) Exh. H (defendant town conceding that its governmental immunity defense does not bar the plaintiffs'

---

6 The Defendants point to the sewer pump out program as evidence that it has not deliberately caused pollution. Pump outs reduce "breakouts" of raw septage from substandard systems but do not alter the effectiveness of the system.

claim for declaratory judgment under § 22a-16); *Giuliano v. State Dept. of Transp.*, 2004 WL 335191 *3 (Wagner, JTR., Feb. 4, 2004) Exh. I .(where defendant State moved to dismiss action claiming sovereign immunity and lack of standing by plaintiffs, court finding that legislature provided the plaintiffs with standing to bring action against state agencies under § 22a-16, thereby creating an exception to sovereign immunity); *Wolford, supra*, * 3-*4 (rejecting town's argument that it is protected from suit under § 22a-16 by the doctrine of governmental immunity); *Animal Rights Front v. Rocque*, 1998 WL 203403, at *2 (O'Neill, J., April 16, 1998) (Exh. J). (recognizing exception to sovereign immunity); *Ward v. New Canaan*, 1998 WL 83161, at *6 (Dandrea, J., Feb. 19, 1998) (Exh. K) (finding that the clear language and obvious intent of CEPA is to allow a direct right of action to the Superior Court and rejecting the defense of governmental immunity); *MacKenzie v. O'Neill*, 1990 WL 269483, at *5, June 13, 1990 (Exh. L) (the doctrine of sovereign immunity does not protect against violations of the Connecticut Environmental Policy Act). Consequently, the doctrine of governmental immunity is inapplicable to Plaintiffs' §§ 22a-16 and 22a-18 claims.

Finally, Defendants' reliance on Conn. Gen. Stat. § 52-557n for the proposition that Plaintiffs' claims under §§ 22a-16 and 22a-18 are barred by governmental immunity is without merit. Section 52-557n limits liability of municipalities and its employees, officers and agents, as well as member of local boards and commissions, to injuries arising out of tort actions. Conn. Gen. Stat. § 52-557n. Significantly, that section applies to persons seeking monetary relief. *See* Conn. Gen. Stat. § 52-557n(a) (stating a municipality "shall be liable for *damages* to person or property ...") (Emphasis added.); § 52-557n(b) (stating a municipality "shall not be liable for *damages* to person or property .....") (Emphasis added.). It does not apply to those persons seeking injunctive or equitable relief. It is for this simple reason that at least one court

has determined that "even if General Statutes §§ 52-557n(b)(7) and 52-557n(b)(8) bar the plaintiff's claim for damages, injunctive relief may nevertheless be available, which the plaintiff seeks here." *Iovino v. Norwich*, 1994 WL 112203, at *1 n.1 (Teller, J., Mar. 25, 1994) (Exh. M).

Here, Plaintiffs seek only injunctive and declaratory relief pursuant to §§ 22a-16 and 22a-18. To the extent that the declaratory relief seeks a determination that the Defendants' activities amount to a takings, the Plaintiffs seek only attorneys' fees, which may be awarded to the prevailing party. Inasmuch as the Plaintiffs seek equitable relief under §§ 22a-16 and 22a-18, coupled with the fact that Connecticut courts recognize the inapplicability of governmental immunity to such claims, this Court must reject Defendants' arguments dismissing Plaintiffs' CEPA claims.

### L. Plaintiffs' Assert No Substantive Due Process Claim Against Marilyn Ozols

The Plaintiffs do not assert that Marilyn Ozols' conduct constituted a violation of substantive due process rights. Those claims relate to the adoption of the Challenged Regulations for which Marilyn Ozols took no part. It is Ms. Ozol's implementation of a policy in which she would refuse to consider testimony demonstrating that a person actually resided in a property prior to 1992 when consider whether a legal nonconforming use preexisting 1992.

## III. CONCLUSION

For all the foregoing reasons, the Defendants', the Town of Old Lyme, the Town of Old Lyme Zoning Commission and Marilyn Ozol's, February 20, 2007 Motion for Summary Judgment should be denied.

> THE PLAINTIFFS,
> SOUTH LYME PROPERTY OWNERS
> ASSOCIATION, INC., CHARLES AND
> VICTORIA PARSONS AND JOAN BYER
>
> By _____
> Kenneth R. Slater, Jr. of
> HALLORAN & SAGE LLP
> Federal Bar #ct 09451
> One Goodwin Square
> 225 Asylum Street
> Hartford, CT 06103
> (860) 522-6103

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 1st day of May 2007, I hereby mailed a copy of the foregoing to:

John J. Radshaw, III, Esq.
Thomas R. Gerarde, Esq.
David S. Monastersky, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114


Eric Knapp, Esq.
Mark K. Branse, Esq.
Branse & Willis LLC
41-C New London Turnpike
Glastonbury, CT  06033

_____
Kenneth R. Slater, Jr.