



Not Reported in A.2d    Page 1

Not Reported in A.2d, 1992 WL 175075 (Conn.Super.), 7 Conn. L. Rptr. 749
**(Cite as: Not Reported in A.2d)**

▷
Dan Beard, Inc. v. Orange Town Plan & Zoning Com'n
Conn.Super.,1992.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut, Judicial District of Ansonia-Milford, at Milford.
DAN BEARD, INC.
v.
ORANGE TOWN PLAN & ZONING COMMISSION, et al.
No. CV92 03 87 50S.

July 16, 1992.

*MEMORANDUM OF DECISION ON*

*MOTION TO STRIKE*

McGRATH, Judge.
*1 The plaintiff, Dan Beard, Inc., filed a five count "Appeal" from decisions of the Town Plan and Zoning Commission of the Town of Orange ("Commission") denying the plaintiff's Temporary Special Use Application for Earth Materials Removal and Filling, Coastal Area Management Site Plan Application and Application for Soil Erosion and Sediment Control Plan. The first four counts of the plaintiff's "Appeal" contain allegations that the Commission acted illegally, arbitrarily, capriciously or in abuse of its discretion in denying the plaintiff's various applications (First and Second Counts), that several Commission members improperly failed to recuse or disqualify themselves from considering the plaintiff's second Application for Earth Materials Removal and Filling (Third Count), and that the Commission's actions constituted a taking of property for public use without just compensation (Fourth Count). In the fifth count of the plaintiff's "Appeal", the plaintiff claims that the defendant Town of Orange, through the Commission, by the actions alleged by the plaintiff in the first four counts of its "Appeal", deprived the plaintiff of rights secured by the United States Constitution in violation of 42 U.S.C. § 1983. In paragraphs five and six of its prayer for relief, the plaintiff seeks damages pursuant to 42 U.S.C. § 1983 and costs and attorney's fees pursuant to 42 U.S.C. § 1988.

On March 5, 1992, the Commission filed a motion to strike the fifth count of the plaintiff's "Appeal" and paragraphs five and six of its prayer for relief, accompanied by a memorandum of law, on the ground that the cause of action seeking money damages for an alleges violation of 42 U.S.C. § 1983 is not properly included in an administrative appeal. On March 24, 1992, the plaintiff filed a memorandum of law in opposition to the Commission's motion to strike.

A motion to strike is the proper vehicle for contesting "the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts." Practice Book § 152(4). An administrative appeal "shall be considered to be a civil action and, except as otherwise required by this section or the rules of the superior court, pleadings may be filed, amended or corrected, and parties may be summoned, substituted or otherwise joined, as provided by the general statutes." General Statutes § 8-8(p); see also Practice Book § 256. Although "[a]dministrative appeals are not subject to the pretrial rules", Practice Book § 257(e), in certain circumstances a motion to strike in an administrative appeal may be appropriate. See *Cardoza v. Zoning Commission,* 211 Conn. 78, 82 N. 5, 557 A.2d 545 (1989) (motion to strike is appropriate motion to attack plaintiff's failure to allege the fact and date of publication in complaint). It is submitted that a claim that an administrative appeal has been misjoined with another cause of action is also a proper situation in which to utilize a pretrial motion to strike.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                          Page 2
Not Reported in A.2d, 1992 WL 175075 (Conn.Super.), 7 Conn. L. Rptr. 749
**(Cite as: Not Reported in A.2d)**

*2 It should be noted that the plaintiff's complaint is entitled "Appeal" and follows both the timetable for service and filing as well as the format of an appeal brought pursuant to General Statutes § 8-8. (See Writ, Citation, Appeal and Recognizance). See General Statutes § 8-8(b), (e), (h); Practice Book From 204.8.

In a zoning appeal taken pursuant to General Statutes § 8-8, the trial court reviews the record before the board or commission to determine whether it has acted fairly or with proper motives or upon valid reasons. *Spero v. Zoning Board of Appeals,* 217 Conn. 435, 586 A.2d 590 (1991). An appeal to the court from the decision of a board or commission does not require or permit the court, by trial de novo, to substitute its findings and conclusions for the decision of the board or commission. *Wil-Nor Corporation v. Zoning Board of Appeals,* 146 Conn. 27, 30, 147 A.2d 197 (1958).

The court, after a hearing, "may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from." General Statutes § 8-8(l); see *Totino v Zoning Board of Appeals, supra.* Administrative relief cannot encompass a monetary award. *Cummings v. Tripp,* 204 Conn. 67, 80, 527 A.2d 230 (1987); see *Costanzo v. Hamden,* 18 Conn.App. 254, 260, 557 A.2d 1279 (1989). It is clear that the plaintiff's § 1983 claim is outside both the scope of review and the relief which can be provided by the court in a zoning appeal.

Appeals from decisions of zoning boards and commissions are also different from ordinary civil actions in that they "shall be privileged cases and shall be heard as soon as is practicable unless cause is shown to the contrary." General Statutes § 8-8(m); see Practice Book § 257(f). Administrative appeals are placed on a separate trial list. Practice Book § 254. Zoning appeals, because they are confined to the record, follow the course of pleading provided in Practice Book § 257(a), not that of appeals enumerated in Practice Book § 257(d), which "shall, subsequent to the filing of the appeal, follow the same course of pleading as that filed in ordinary civil actions." See Practice Book § 257(a), (d).

Because the plaintiff has filed this action as an appeal pursuant to General Statutes § 8-8, this action is a privileged case subject to the court of pleading delineated in Practice Book § 257(a), not that in Practice Book § 257(d), because a zoning appeal is not one of the appeals listed in Practice Book § 257(d)(1)-(4), nor is it an appeal in which the parties are "entitled to a trial de novo" pursuant to Practice Book § 257(d)(5). See General Statutes § 8-8(i), (k), (l); *Wil-Nor Corporation v. Zoning Board of Appeals, supra.* It is noted that Practice Book § 257(d)(5) in no way provides any authority for plaintiff's apparent contention that, because the plaintiff has chosen to add a § 1983 claim to its zoning appeal, its appeal somehow becomes an appeal in which the plaintiff is "entitled" to a trial de novo on that claim.

*3 Practice Book § 133 provides as follows:
In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies; but, if several causes of action are united in the same complaint, they shall all be brought to recover, either (1) upon contract, express or implied, or (2) for injuries, with or without force, to person and property, or either, including a conversion of property to the defendant's use, or (3) for injuries to character, or (4) upon claims to recover real property, with or without damages for the withholding thereof, and the rents and profits of the same, or (5) upon claims to recover personal property specifically, with or without damages for the withholding thereof, or (6) claims arising by virtue of a contract or by operation of law in favor of or against a party in some representative or fiduciary capacity, or (7) upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action. The several causes of action so united shall all belong to one of these classes, and, except in an action for the foreclosure of a mortgage or lien, shall affect all the parties to the action, and not require different places of trial, and shall be separately stated; and, in any case in which several causes of action are joined in the same complaint, or as matter of counterclaim or setoff in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 3
Not Reported in A.2d, 1992 WL 175075 (Conn.Super.), 7 Conn. L. Rptr. 749
**(Cite as: Not Reported in A.2d)**

separate trial of any such cause of action or may direct that any one or more of them be deleted from the complaint or answer. (See Gen.Stat., §§ 52-97 and annotations.)

The plaintiff argues that the court should consider the expansive definition of the term "transaction" used in Practice Book § 133(7). However, it is noted that no matter how expansively "transaction" is defined, Practice Book § 133(7) provides that if several causes of action are united in the same complaint, "they shall all be brought to recover .... (7) upon claims, *whether in contract or tort or both,* arising out of the same transaction....." (Emphasis added). It is clear that while the plaintiff's § 1983 claim may fall within this class and may, as the plaintiff asserts, arise out of the same transaction as its appeal, the plaintiff's zoning appeal cannot be characterized as a claim in contract or tort which would fall into this class of claims which may be joined in the same complaint. It is noted that zoning appeals are not included in any of the classes listed in Practice Book § 133 to which "[t]he several causes of action so united shall belong."

It is clear that an adjudication of the plaintiff's § 1983 claim and an award of the monetary relief requested pursuant to that claim are outside both the court's scope of review and its authority to grant relief in an appeal from decisions of a planning and zoning commission brought pursuant to General Statutes § 8-8. It is therefore found that the fifth count of the plaintiff's "Appeal" is misjoined with the four counts pertaining to the plaintiff's appeal from the Commission's decisions. Accordingly, it is found that the Commission's motion to strike the fifth count and paragraph five and six of the plaintiff's prayer for relief, in which the plaintiff seeks monetary relief, should be granted and is granted.

Conn.Super.,1992.
Dan Beard, Inc. v. Orange Town Plan & Zoning Com'n
Not Reported in A.2d, 1992 WL 175075 (Conn.Super.), 7 Conn. L. Rptr. 749

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

Not Reported in A.2d                                                                                          Page 1

Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
**(Cite as: Not Reported in A.2d)**

C
Arcata v. Zoning Bd. of Appeals of Town of Old Lyme
Conn.Super.,1993.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut, Judicial District of New London.
Angelo ARCATA and Lucy Arcata
v.
ZONING BOARD OF APPEALS OF THE TOWN OF OLD LYME.
No. 521893.

Sept. 21, 1993.

MEMORANDUM OF DECISION
HURLEY, Judge.
*1 The plaintiffs are Angelo and Lucy Arcata (hereinafter the "Arcatas"). The defendant is the Zoning Board of Appeals of the Town of Old Lyme (hereinafter "ZBA").

The Arcatas are the owners of real property in Old Lyme, Connecticut known as 56 Columbus Avenue. The property is 8276 square feet in area. (Return of record [ROR], ex. a). One dwelling house is situated on the property. (ROR, ex. a). It is served by seasonal public water and electric heat; there is no private well on the property. (ROR, ex. e). In 1991, the Arcatas installed a private septic system on the property. (ROR, ex. f). The property is in an R-10 zone which requires a 10,000 square feet minimum lot area. (ROR, ex. a). Single family dwellings are permitted uses in the zone. (ROR, ex. g). The Arcatas' lot is nonconforming as to size. (ROR, ex. x). However, the dwelling was built in 1951, prior to the adoption of zoning regulations in Old Lyme in 1958. (ROR, ex. e). Therefore, the lot is a pre-existing nonconforming lot and the dwelling house is a pre-existing nonconforming structure.

On November 7, 1991, the Zoning Enforcement Officer of the Town of Old Lyme (hereinafter "ZEO") denied the Arcatas for permission to use their house year round. (ROR, ex. a). The ZEO states in the letter of denial:
This office cannot grant [the Arcata] request ... for a letter approving the use of their property at 56 Columbus Avenue, Old Lyme, in the period from November 15 to April 1. The property is limited to seasonal use under Articles I.C.57, I.C.58, and I.E.1.3 of the Zoning Regulations of the Town of Old Lyme.
Town records show that an application by [the Arcatas] for a variance to allow the year-round use of the property was denied by the ZBA effective November 22, 1988 and was not appealed.

(ROR, ex. a).

On November 22, 1991, the Arcatas appealed the ZEO's decision to the ZBA pursuant to General Statutes § 8-7. (ROR, ex. a). On January 21 and 28, 1991, the ZBA held hearings on the appeal of the ZEO's decision. Extensive evidence as to the history of the ownership and use of the property, including correspondence, documents, records and photographs, were presented by both parties at the hearings. (ROR, exs. b, p).

On February 4, 1992, the ZBA denied the Arcatas' appeal and upheld the ZEO's decision. (ROR, ex. s). Notice of the ZBA's decision was issued to the plaintiff in a letter dated February 14, 1992. (ROR, ex. s). In the letter, the ZBA stated that its decision was made on the basis that "sufficient evidence was not presented to cause the board to overrule [the ZEO's] decision and there was insufficient evidence shown in order for the house to be grandfathered prior to 1957." (ROR, ex. i).

The Arcatas filed an appeal from the ZBA's decision to the Superior Court dated February 28, 1992. The appeal was timely commenced by service of process on the ZBA on February 25,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2

Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
**(Cite as: Not Reported in A.2d)**

1992. In the appeal complaint, the Arcatas allege that the ZBA acted illegally, arbitrarily and in abuse of discretion in that:

*2 (1) The ZBA failed to recognize that the hearing before it was de novo.
(2) The ZBA failed to recognize that the burden of proof in the appeal was on the ZEO not the Arcatas.
(3) The ZBA failed to consider evidence before it.
(4) The decision of the board is in contravention of General Statutes § 8-2.
(5) The board misapplied the law in the evidence before it.
(6) By forbidding the use and occupance of the premises in a year round basis, the board unconstitutionally took the Arcatas' premises.
(7) The actual use of the premises as a year-round residential property is not prevented by the applicable regulations.
(8) The decision was unequitable in that the town had previously granted approval for the Arcatas to renovate their property for year round use at great expense and to install a year round septic system also at great expense.

On November 10, 1992, the Arcatas filed a brief in support of her appeal. The plaintiff briefed two issues:
(1) Whether the Arcatas had established prior to the adoption of zoning within the town sufficient year-round use to invoke the protection given to nonconforming uses by General Statutes § 8-2 and Section E-1 of the Zoning Regulations.
(2) Whether based on the Zoning Regulations used in support of the ZEO, the ZBA can prohibit the actual use of the premises as a year-round residential property.

On January 20, 1993, the ZBA filed a brief in opposition to the Arcatas' appeal. In it, the ZBA argues that it properly denied the Arcatas' appeal because the Arcatas failed to establish sufficient evidence of year round use to invoke the protection given to nonconforming uses. The ZBA next argues that the expansion of the seasonal use to year-round is an expansion of a nonconforming use prohibited by the Regulations.

On July 7, 1993, a hearing was held before Judge D. Michael Hurley. At the hearing, the Arcatas presented a deed and oral testimony establishing that they are the current owners of the subject property. The court found aggrievement pursuant to General Statutes § 8-8.

DISCUSSION

The plaintiff bears the burden of proof to demonstrate that the board acted improperly. *Adolphson v. Zoning Board of Appeals*, 205 Conn. 703, 707, 535 A.2d 799 (1988).

Generally, it is the function of a zoning board or commission to decide "within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Citations omitted).

*Schwartz v. Planning & Zoning Commission*, 208 Conn. 146, 152, 543 A.2d 1339 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." *Spero v. Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991).

*3 The Superior Court is not bound by the ZBA's interpretation of ordinances. See *Melody v. Zoning Board of Appeals*, 158 Conn. 516, 518, 264 A.2d 572 (1969).

I. Whether the ZBA acted illegally, arbitrarily or in abuse of its discretion in upholding ZEO's decision to deny permission to the Arcatas to use their property year round.

*A. Applicable Law.*

Preliminarily, it is noted that the "current rule in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                Page 3

Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
**(Cite as: Not Reported in A.2d)**

this state is that the validity of a planning and zoning commission's action is to be determined by reference to the zoning laws in effect at the time the challenged action was taken." *Michel v. Planning and Zoning Commission,* 28 Conn.App. 314, 318 n. 2, 612 A.2d 728 (1992), cert. denied 223 Conn. 923, 614 A.2d 822 (1992); See General Statutes § 8-2h(a).[FN1]

> FN1. The ZBA argues that General Statutes § 8-2h is not applicable to the instant case because the plaintiffs are not appealing from the denial of an "application." The ZBA asserts that, therefore, the applicable regulations are those in effect at the time the court reviews the ZBA's decision citing *Johnson v. ZBA,* 2 Conn.App. 24, 475 A.2d 339 (1984). However, *Johnson* was overruled by the legislature when it enacted General Statutes § 8-2h. *Michel v. Planning and Zoning Commission,* 28 Conn.App. 314, 318 n. 2, 612 A.2d 728 (1992), cert. denied 223 Conn. 923, 614 A.2d 822 (1992).

The ZBA argues that the Arcatas' proposed year-round use of the property is an enlargement or extension of both a nonconforming use and a nonconforming lot specifically prohibited by the Zoning Regulations of the Town of Old Lyme (hereinafter "Regulations").

The Arcatas argue that the Regulations do not prohibit year round residential use of seasonal property. The Arcatas further argue that where the zoning regulations do not explicitly prohibit the year-round use of a seasonal property, such use is not an extension or an expansion of a pre-existing nonconforming use. The Arcatas rely on the following cases to support their argument: *Petruzzi v. Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243 (1979); *Seaside Properties v. Zoning Board of Appeals,* 14 Conn.App. 638, 542 A.2d 746 (1988); and *Menillo v. Zoning Board of Appeals of the Town of Trumbull,* 6 CSCR 913 (September 20, 1991, Dean, J.).

*Petruzzi, Seaside* and *Menillo,* cited by the Arcatas, address the alteration of a permitted use housed in a nonconforming structure or on a nonconforming lot where the alteration relates to the use of the property, not to the nonconforming dimensional standards. Also common to these cases is that there was nothing in the applicable zoning regulations which prohibited a change from one permitted use to another on a lot or in a structure that was nonconforming as to the dimensional standards. In *Petruzzi,* supra, the issue before the Supreme Court was whether the ZEO could deny a building permit for the conversion of a permitted use (a church) to another permitted use (a residential dwelling) housed in a structure that did not meet setback, frontage and area requirements.
The applicable zoning regulations did not prohibit a change from one permitted use to another permitted use with respect to a building or lot having a condition of nonconformity. Id., 481. The trial court had upheld the ZEO on the ground that such a conversion violated a zoning regulation which provides that one nonconforming use may not be substituted for another. Id. On appeal, the Supreme Court held that because the zoning regulations did not prohibit the conversion from one permitted use to another, the trial court could not cite to the regulations to support the ZBA's decision. Id., 482. The Supreme Court found the lack of such a prohibition significant because it indicates that a distinction exists between a nonconforming building or structure and a nonconforming use of the land. Id., 481 n. 2. The Supreme Court went on to find that the applicable zoning regulations and General Statutes § 8-2 in fact protect pre-existing nonconforming lots from restrictive zoning. Id., 483. The Supreme Court concluded that absent a specific zoning regulation prohibiting the conversion of a permitted use to another permitted use, the ZEO could not deny the plaintiff's permit for such a conversion. Id., 484.

*4 The holding in *Petruzzi* was extended in *Seaside* to a case where the applicable zoning regulations did not distinguish between seasonal and year round use. The property in question consisted of three separate lots on which three cottages were situated. *Seaside,* supra, 639. The use of the property for single family dwellings was permitted. However,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:00-cv-00097-EBB   Document 122-3   Filed 05/02/2007   Page 9 of 11

Not Reported in A.2d                                                                                                    Page 4
Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
(Cite as: Not Reported in A.2d)

the zoning regulations rendered the cottages nonconforming as far as lot size and frontage. Id. The town ZEO issued a cease and desist order (hereinafter "CDO") based on a violation of a zoning regulation which provided that:
No nonconforming use of land, buildings and other structures shall be changed to another unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use.

Id. The trial court sustained the plaintiff's appeal from the ZBA's decision to uphold the CDO. Id. In affirming the trial court's decision, the Appellate Court held:In the present case, the change was only in the nature of the permitted use of a nonconforming building; as in *Petruzzi*, no nonconforming use of the land is involved. As in *Petruzzi*, furthermore, there is nothing in Fairfield's regulations "which prohibits a change from one permitted use [of a building] to another permitted use, with respect to a building lot having a condition of legal nonconformity." Id., 481. Indeed, 2.5.3 of the Fairfield regulations specifically permits a "nonconforming use of land, buildings and other structures [to] be changed to another use [if] such new use ... is a conforming use. ".... [A]s in *Petruzzi*, the nonconforming building here was not changed in any way; only the use of the building has been altered from one permitted use to another permitted use.... Under these circumstances, we conclude that *Petruzzi* controls, and that 2.5.3 of the Fairfield zoning regulations does not prohibit a change from seasonal to year round use of the plaintiff's houses.

Id., 640

The holdings in *Petruzzi* and *Seaside* were extended in *Menillo v. Zoning Board of Appeals of the Town of Trumbull*, 6 CSCR 913 (September 20, 1991, Dean, J.). In that case, the ZEO issued a CDO that ordered the property owner to discontinue nonseasonal use of her cabin. Id. The ZEO's order stated that the plaintiff was in violation of the Trumbull Zoning Regulations because:
The subject property is a pre-existing nonconforming use established as a summer cabin only. It is now being used or has recently been used and/or occupied by you and others during months other than June, July, August and September. Your use and occupancy are in violation of Article I, Section 4 of the Trumbull Zoning Regulations.

Id. Article I, § 4 of the Trumbull Zoning Regulations stated:Any building, structure or use legally existing on the effective date of these regulations, or any amendment thereto, which does not comply with any of said regulations or amendments, may be continued, SUBJECT, HOWEVER, to the following conditions and restrictions:

*5 The use or occupancy of a nonconforming building or structure, used or occupied during a particular season only, or for part of a year only, at times or periods other than said particular season or part of a year is an enlargement of and/or increase to the use or occupancy of the nonconforming building or structure.

Id. Unlike *Petruzzi* and *Seaside*, in *Menillo*, the town had a specific prohibition against the extension of seasonal occupancy to either year round or off-season occupancy. Despite the inclusion of such a prohibition, the court found that:The record is devoid of any statute or regulation designating the subject area, either directly or implicitly by the imposition of an applicable standard, a seasonally-restricted zone. The ZBA merely considered anecdotal evidence ... as well as the Pinewood Lake Association Bylaws.... Neither the anecdotal evidence nor the bylaws indicate any legal restriction of extraseasonal use.

Id., 916. In sustaining the plaintiff's appeal and, therefore, overturning the CDO, the court concluded that:Absent any legal definition of " seasonal use," Article I, 4-J provides no legal standard for determining what constitutes such a use. There is no regulation designating the plaintiff property as being in a zone restricted to seasonal use .... The ZBA's position would indeed violate Conn.Gen.Stat. § 8-2. Therefore, the use sought is a permitted use....

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 5
Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
(Cite as: Not Reported in A.2d)

Id., 916.

The facts before the court in the instant case are analogous to the *Petruzzi*, *Seaside*, and *Menillo* line of cases and, therefore, the law of those cases applies.FN2

> FN2. Those cases holding that a change from the seasonal use of a structure to its year-round use is prohibited by applicable local zoning regulations; see *Cummings v. Tripp*, 204 Conn. 67, 527 A.2d 1230 (1987); *Weyls v. Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971); *Beerwort v. Zoning Board of Appeals*, 144 Conn. 731, 137 A.2d 756 (1958); are not inconsistent with the decision we reach in this case. Those cases are distinguishable from the present case because each involved a nonconforming use of land, while this case involves a permitted use of land with respect to a building or lot having a condition of nonconformity. *Petruzzi v. Zoning Board of Appeals*, supra, recognizes that this distinction is genuine. *Seaside*, supra, 641.

B. *The Nature of the Arcatas' Nonconformity*

It is not disputed that the Arcatas have a nonconforming structure. However, the ZBA argues that the Arcatas' use of the property is nonconforming as well. The ZBA asserts that the Arcatas' interpretation of the Regulations fails to take into consideration Article III, A.9.1 which states that:
A parcel of land having less than that the minimum lot area required under these regulations shall not be required to conform to such minimum lot area requirements and any permitted building may be erected or placed, and any permitted use may be made, thereon if: (a) Such parcel of land has an area greater or equal to 90% of the minimum lot area required under these regulations, provided such parcel of land is 18,000 sq. ft. or larger.....

The ZBA argues that since the Arcatas' lot is less than 90% of the minimum 10,000 square foot lot required in the R-10 district and less than 18,000 square feet, the use of the lot for a single family dwelling, while normally a permitted use, is prohibited by the Zoning Regulations. The ZBA argues, therefore, that the controlling law on the facts of the instant case is set forth in the following cases: *Giramonti v. Old Lyme*, Superior Court, judicial district of New London at Norwich, Docket No. 091665 (July 30, 1990, Austin, J.); *Beerwort v. Zoning Board of Appeals*, 144 Conn. 731, 137 A.2d 756 (1958); *Weyls v. Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971); and *Cummings v. Tripp*, 204 Conn. 67, 527 A.2d 230 (1987). The ZBA argues that these cases stand for the proposition that the expansion of a pre-existing nonconforming seasonal dwelling to year-round use is an extension of a nonconforming use in violation of the Zoning Regulations.

*6 The Arcatas are using their property for residential purposes. The court finds that this is a permitted use. The ZBA's argument that Article III, A.9.1 renders the Arcatas use nonconforming is in error. This section of the regulations applies to nonconforming parcels on which no structures have been built.

The nonconforming aspect of the property relates merely to the lot size which is substantially below the minimum requirements. This nonconformity relates to the physical dimension of the property, but not to the use of the property. In turn, the nonconformities existed prior to the adoption of zoning regulations in Old Lyme and, therefore, they are legal as "pre-existing nonconformities" pursuant to the applicable Zoning Regulations.

C. *Old Lyme's Regulations Regarding Seasonal Use*.

The ZEO based his decision on Articles I.C.57, I.C.58, and I.C.1.3 of the Regulations stating that the property was limited to seasonal use.

The Zoning Regulations in effect at the time of the Arcatas' request, which were cited by the ZEO, read as follows:
ARTICLE I SECTION C DEFINITIONS C.57
*Seasonal Dwellings:* A dwelling unit, designed,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                           Page 6
Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102
**(Cite as: Not Reported in A.2d)**

used, or intended to be used for seasonal use.
C.58 *Seasonal Use*: The use of a structure for dwelling purposes between April 1 and November 15, only.
ARTICLE I SECTION E NONCONFORMING BUILDINGS AND USES E.1.3 No nonconforming use shall be extended or expanded.

The ZBA argues that all of the sections in the Regulations must be read as a whole to be given their proper effect. Specifically, the ZBA argues that the definitions of "seasonal dwelling" and " seasonal use" set forth at Article I, C.57 and C.58 must be considered together with the prohibition of expanding nonconforming uses in Article III, E.1.3. Also, the ZBA urges this court's consideration of both Regulations Article I, B.1 which provides that " no land or building shall be used .... except in conformity with these regulations" and the general prohibitions in the Regulations regarding the health, safety and welfare of the public. Finally, the ZBA argues that the ZEO's interpretation of the Regulations, as confirmed by the ZBA, should be given deference because this interpretation is reasonable and within the ZBA's discretion.

There are no prohibitions in the Regulations applicable to the appeal which prohibit year-round use of residential dwellings. The Regulations do include definitions of seasonal use, set forth above, without restricting such uses. The court finds that as the above analysis of *Petruzzi, Seaside* and *Menillo* concludes, the Regulations do not provide the authority for the ZEO to restrict the Arcatas year-round use of their property.

The court hereby sustains the Arcatas' appeal from the ZBA's decision on the ground that the ZBA's decision was contrary to law.

Conn.Super.,1993.
Arcata v. Zoning Bd. of Appeals of Town of Old Lyme
Not Reported in A.2d, 1993 WL 394500 (Conn.Super.), 10 Conn. L. Rptr. 102

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.