

Westlaw.

Not Reported in A.2d                                                                                                Page 1

Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
(Cite as: Not Reported in A.2d)

C
Habicht v. Zoning Bd. of Appeals of Town of Old Lyme
Conn.Super.,1993.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
   Superior Court of Connecticut, Judicial District of New London, at Norwich.
William H. HABICHT, et al
v.
ZONING BOARD OF APPEALS OF THE TOWN OF OLD LYME, et al.
No. 10 05 36.

July 22, 1993.

MEMORANDUM OF DECISION
AUSTIN, Judge.
*1 The plaintiffs are William H. Habicht and Janice B. Habicht (hereinafter "plaintiffs"). The defendants are the Zoning Board of Appeals of the Town of Old Lyme (hereinafter "ZBA") and the Zoning Enforcement Officer of the Town of Old Lyme (hereinafter "ZEO").

The plaintiffs are the owners of real property in Old Lyme, Connecticut. The property is approximately 12,972 square feet in area.[FN1] (Return of Record [ROR], Exh. 16.) Two dwelling houses and a garage presently exist on the property. One dwelling house is approximately 1,000 square feet in area and is referred to as 49-1 Seaside Lane. (ROR, Exh. 12, p. 9.) The other dwelling house is approximately 412 square feet in area and is referred to as 49 Seaside Lane. (ROR, Exh. 58.)
On August 6, 1991, the ZEO issued a cease and desist order (hereinafter "CDO") against the plaintiffs. (ROR, Exh. 18.) The ZEO states in the CDO that the plaintiffs are in violation of Article I, E.1.3 of the Zoning Regulations of the Town of Old Lyme (hereinafter "Zoning Regulations"), with respect to the plaintiffs' year-round use of both of the dwelling houses.[FN2] (ROR, Exh. 18.) The "nature of the violation" as noted on the CDO is "extension/expansion of non-conforming use; year-round use of seasonal cottages." (ROR, Exh. 18.)

   FN1. There are references in the return of record to the lot area being 9,287 square feet. (ROR, Exh. 3.)

   FN2. While the CDO was directed at the use of 49 and 49-1 Seaside Lane and the ZBA found that both dwelling houses were being used in violation of the zoning regulations, the plaintiffs are only appealing the decision as it affects the larger dwelling house at 49-1 Seaside Avenue. (ROR, Exh. 12, pp. 1-2.)

On September 5, 1991, the plaintiffs appealed the CDO to the ZBA. (ROR, Exh. 16.) On November 19, 1991, and continued onto November 25, 1991, the ZBA held a hearing on the appeal of the CDO. (ROR, Exh. 12.) Extensive evidence as to the history of the ownership and use of the property, including correspondence, documents, records and photographs, was presented by both parties at the hearings. (ROR, Exhs. 25-28.)

On January 30, 1992, the ZBA denied the plaintiffs appeal and upheld the CDO. (ROR, Exh. 2.) Notice of the ZBA's decision was published on February 4, 1992. (ROR, Exh. 1.) On February 19, 1992, this appeal was timely commenced by service of process on the ZEO and the ZBA, the latter served through the Town Clerk of the Town of Old Lyme.

On July 13, 1992, the plaintiffs filed a brief in support of their appeal. The plaintiffs briefed the following issues:
(1) Does the record reasonably support the action of the defendant ZBA?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 2
Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

(2) Is a conversion of a seasonal dwelling to year-round use prohibited by the Zoning Regulations under the provisions of Article I, E.1.3?

As to the first issue, the plaintiffs first argue that the ZBA did not state upon the record the reasons for its decision as required pursuant to General Statutes § 8-7. The plaintiffs next argue that a review of the record before the ZBA shows that the main dwelling house has been used year-round since prior to the adoption of the Zoning Regulations in 1957. Therefore, the plaintiffs argue, the present use is a legally existing nonconforming use. The plaintiffs cite to several items from the record to support their argument including:
(1) testimony from the appeal hearing before the ZBA as to the use of the property;
*2 (2) an assessor's card from 1950 describing the dwellings on the property;
(3) conveyance documents tracing the history of ownership of the property;
(4) a marriage certificate from 1952 which lists the owners of the subject property as residents of Old Lyme; and
(5) correspondence from various individuals regarding the use of the property prior to 1957.

The plaintiffs also cite to the testimony of the ZEO at the ZBA hearing wherein the ZEO states:[A]nd my feeling now, frankly, is that 49-1 may well be grandfathered
....

(ROR, Exh. 12, p. 3.)

The plaintiffs next argue that the ZBA did not consider and/or rejected probative evidence presented by the plaintiffs at the public hearing. The plaintiffs cite to the ZBA members' discussion and comments about evidence and testimony presented at the hearings in support of their argument.

Finally, the plaintiffs argue that the ZBA mischaracterized the issue before it as whether the owner of the subject property during the period prior to 1957 was a resident of Old Lyme. Rather, the plaintiffs argue that the issue before the ZBA was whether the property was used year-round prior to 1957.

As to the issue of whether the conversion of a seasonal dwelling to year-round use is prohibited by the Zoning Regulations under the provisions of Article I, E.1.3, the plaintiffs cite to several Connecticut cases. The plaintiffs rely on the following three cases to support the proposition that where the zoning regulations do not explicitly prohibit the year-round use of a seasonal property, such use is not an extension or an expansion of a preexisting nonconforming use: *Petruzzi v. Zoning Board of Appeals*, 176 Conn. 479, 408 A.2d 243 (1979); *Seaside Properties v. Zoning Board of Appeals*, 14 Conn.App. 638, 542 A.2d 746 (1988); and *Menillo v. Zoning Board of Appeals of the Town of Trumbull*, 6 CSCR 913 (September 20, 1991, Dean, J.). The plaintiffs then argue that the Old Lyme Zoning Regulations do not prohibit the use of their property for year-round residential occupancy. The plaintiffs base their argument on three grounds:
(1) The Zoning Regulations list single-family dwellings (in the plural) as a permitted use in the R-10 zone and therefore, the plaintiffs are simply using their premises for a use permitted under the Zoning Regulations.
(2) The relevant section of the Zoning Regulations, in effect at the time the CDO was issued, merely defines seasonal use.[FN3] There is no section in the Zoning Regulations which specifically prohibits or even refers to the conversion of a seasonal dwelling to year-round use.

   FN3. Zoning Regulations Article I, C.57 defines "seasonal dwelling" as a "dwelling unit, designed, used or intended to be used for seasonal use." Zoning regulations Article I, C.58 defines "seasonal use" as " the use of a structure for dwelling purposes between April 1 and November 15, only."

(3) The use of the premises in the winter months by the plaintiff is not an extension or expansion of a non-conforming use, but merely an intensification of a use already permitted by the regulations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d   Page 3

Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
(Cite as: Not Reported in A.2d)

On December 12, 1992, the ZBA filed a brief in opposition to the plaintiffs' appeal. The ZBA raises two issues in the brief. First, the ZBA argues that the record of its proceedings on the CDO reasonably supports its decision that the year-round use of 49-1 Seaside Lane is an extension/expansion of a nonconforming use. The ZBA characterized the issue that was before it as whether, as a matter of fact, 49-1 Seaside Lane was a year-round dwelling on or before January 2, 1957, the date of the adoption of the Zoning Regulations. The ZBA then summarizes the evidence on the record that it argues supports its findings that the property in question had not been established as a year-round use prior to the adoption of the Zoning Regulations. The evidence cited by the defendant included:

*3 (1) oral testimony by neighbors of the subject property;
(2) a grand list and other documents and records showing the owner of property in 1957 to be a resident of Hartford;
(3) assessment cards which show that prior to January 2, 1957, the structure had no heat.

The ZBA concludes that notwithstanding the plaintiffs' evidence to the contrary, there is sufficient evidence on the record to reasonably support its decision and its decision should be upheld on appeal.

The ZBA next addresses the issue of whether the conversion of a seasonal dwelling to year-round use is prohibited by the Zoning Regulations Article 1, E.1.3. The ZBA first argues that the property has three structures on it and therefore, the present use is nonconforming. The ZBA then distinguishes the three cases which the plaintiff cited in support of its position (*Petruzzi, Seaside* and *Menillo* ) because those cases are based on significantly different factual predicates:
(1) *Petruzzi* involved the conversion of a nonconforming use to a conforming use;
(2) *Seaside* involved the conversion of property with a nonconforming lot size and setbacks but not use; and
(3) *Menillo* involved the conversion of a conforming use (Menillo).

The ZBA argues that the controlling law on the facts of the instant case is set forth in the following cases: *Giramonti v. Old Lyme*, Superior Court, Judicial District of New London at Norwich, Docket No. 09 16 65 (July 30, 1990, Austin, J.); *Beerwort v. Zoning Board of Appeals*, 144 Conn. 731, 137 A.2d 756 (1958); *Weyls v. Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971); and *Cummings v. Tripp*, 204 Conn. 67, 527 A.2d 230 (1987). The defendant argues that these cases stand for the proposition that the expansion of a preexisting nonconforming seasonal dwelling to year-round use is an illegal extension of a nonconforming use.

On June 4, 1993, a hearing was held before this jurist. At the hearing, evidence in the form of a deed was presented showing the plaintiffs are the owners of the property subject to the ZBA's decision. The Court found aggrievement pursuant to General Statutes § 8-8.

## DISCUSSION

The plaintiff bears the burden of proof to demonstrate that the board acted improperly. *Adolphson v. Zoning Board of Appeals*, 205 Conn. 703, 707, 535 A.2d 799 (1988).

Generally, it is the function of a zoning board or commission to decide "within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (citations omitted.)

*Schwartz v. Planning & Zoning Commission*, 208 Conn. 146, 152, 543, A.2d 1339 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." *Spero v. Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991).

*4 The Superior Court is not bound by the ZBA's

Not Reported in A.2d                                                                                                                    Page 4

Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
(Cite as: Not Reported in A.2d)

interpretation of ordinances. See *Melody v. Zoning Board of Appeals*, 158 Conn. 516, 518, 264 A.2d 572 (1969).

I. Whether the ZBA acted illegally, arbitrarily or in abuse of its discretion in upholding the CDO issued by the ZEO.

A. *Applicable Law*

The plaintiff argues that where the zoning regulations do not explicitly prohibit the year-round use of a seasonal property, such use is not an extension or an expansion of a preexisting nonconforming use. The plaintiffs rely on the following cases to support their argument: *Petruzzi v. Zoning Board of Appeals*, 176 Conn. 479, 408 A.2d 243 (1979); *Seaside Properties v. Zoning Board of Appeals*, 14 Conn.App. 638, 542 A.2d 746 (1988); and *Menillo v. Zoning Board of Appeals of the Town of Trumbull*, 6 CSCR 913 (September 20, 1991, Dean, J.).

*Petruzzi*, *Seaside* and *Menillo* address the alteration of a permitted use housed in a nonconforming structure or on a nonconforming lot where the alteration relates to the use of the property, not to the nonconforming dimensional standards. Also common to these cases is that there was nothing in the applicable zoning regulations which prohibited a change from one permitted use to another on a lot or in a structure that was nonconforming as to dimensional standards. In *Petruzzi*, supra, the issue before the Supreme Court was whether the ZEO could deny a building permit for the conversion of a permitted use (a church) to another permitted use (a residential dwelling) housed in a structure that did not meet setback, frontage and area requirements. The applicable zoning regulations did not prohibit a change from one permitted use to another permitted use with respect to a building or lot having a condition of nonconformity. Id., 481. The trial court had upheld the ZEO on the ground that such a conversion violated a zoning regulation which provides that one nonconforming use may not be substituted for another. Id. On appeal, the Supreme Court held that because the zoning regulations did not prohibit the conversion from one permitted use to another, the trial court could not cite to the regulations to support the ZBA's decision. Id., 482. The Supreme Court found the lack of such a prohibition significant because it indicates that a distinction exists between a nonconforming building or structure and a nonconforming use of the land. Id., 481 n. 2. The Supreme Court went on to find that the applicable zoning regulations and General Statutes § 8-2 in fact protect preexisting nonconforming lots from restrictive zoning. Id., 483. The Supreme Court concluded that absent a specific zoning regulation prohibiting the conversion of a permitted use to another permitted use, the ZEO could not deny the plaintiff's permit for such a conversion. Id., 484.

The holding in *Petruzzi* was extended in *Seaside* to a case where the applicable zoning regulations did not distinguish between seasonal and year-round use. The property in question consisted of three separate lots on which three cottages were situated. *Seaside*, supra, 639. The use of the property for single-family dwellings was permitted. However, the zoning regulations rendered the cottages nonconforming as far as lot size and frontage. Id. The town ZEO issued a CDO based on a violation of a zoning regulation which provided that:

*5 No nonconforming use of land, buildings and other structures shall be changed to another unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use.

Id. The trial court sustained the plaintiff's appeal from the ZBA's decision to uphold the CDO. Id. In affirming the trial court's decision, the Appellate Court held:In the present case, the change was only in the nature of the permitted use of a nonconforming building; as in *Petruzzi*, no nonconforming use of the land is involved. As in *Petruzzi*, furthermore, there is nothing in Fairfield's regulations "which prohibits a change from one permitted use [of a building] to another permitted use, with respect to a building or lot having a condition of legal nonconformity." Id., 481. Indeed, 2.5.3 of the Fairfield regulations specifically permits a "nonconforming use of land, buildings and other structures [to] be changed to another use [if] such new use ... is a conforming use.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 5
Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
(Cite as: Not Reported in A.2d)

" .... [A]s in *Petruzzi*, the non-conforming building here was not changed in any way; only the use of the building has been altered from one permitted use to another permitted use.... Under these circumstances, we conclude that *Petruzzi* controls, and that 2.5.3 of the Fairfield zoning regulations does not prohibit a change from seasonal to year-round use of the plaintiff's houses.

Id., 640.

The holdings in *Petruzzi* and *Seaside* were extended in *Menillo v. Zoning Board of Appeals of the Town of Trumbull*, 6 CSCR 913 (September 20, 1991, Dean, J.). In that case, the ZEO issued a CDO that ordered the property owner to discontinue nonseasonal use of her cabin. Id. The ZEO's order stated that the plaintiff was in violation of the Trumbull Zoning Regulations because:
The subject property is a pre-existing nonconforming use established as a summer cabin only. It is now being used or has recently been used and/or occupied by you and others during months other than June, July, August and September. Your use and occupancy are in violation of Article I, Section 4 of the Trumbull Zoning Regulations.

Id. Article I, § 4 of the Trumbull Zoning Regulations stated:Any building, structure or use legally existing on the effective date of these regulations, or any amendment thereto, which does not comply with any of said regulations or amendments, may be continued, SUBJECT, HOWEVER, to the following conditions and restrictions:

The use or occupancy of a non-conforming building or structure, used or occupied during a particular season only, or for part of a year only, at times or periods other than said particular season or part of a year is an enlargement of and/or increase to the use or occupancy of the non-conforming building or structure.

Id. Unlike *Petruzzi* and *Seaside*, in *Menillo*, the town had a specific prohibition against the extension of seasonal occupancy to either year-round or off-season occupancy. Despite the inclusion of such a prohibition, the court found that:
*6 The record is devoid of any statute or regulation designating the subject area, either directly or implicitly by the imposition of an applicable standard, a seasonally-restricted zone. The ZBA merely considered anecdotal evidence .... as well as the Pinewood Lake Association Bylaws.... Neither the anecdotal evidence nor the bylaws indicate any legal restriction of extraseasonal use.

Id., 916. In sustaining the plaintiff's appeal and therefore overturning the CDO, the court concluded that:Absent any legal definition of "seasonal use," Article I, 4-J provides no legal standard for determining what constitutes such a use. There is no regulation designating the plaintiff property as being in a zone restricted to seasonal use.... The ZBA's position would indeed violate Conn.Gen.Stat. 8-2. Therefore, the use sought is a permitted use....

Id.

The facts before the Court in the instant case are analogous to the *Petruzzi*, *Seaside* and *Menillo* line of cases and therefore the law of those cases applies.[FN4]

> FN4. It is noted that:
> Those cases holding that a change from the seasonal use of a structure to its year-round use is prohibited by applicable local zoning regulations; see *Cummings v. Tripp*, 204 Conn. 67, 527 A.2d 1230 (1987); *Weyls v. Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971); *Beerwort v. Zoning Board of Appeals*, 144 Conn. 731,, 137 A.2d 756 (1958); are not inconsistent with the decision we reach in this case. Those cases are distinguishable from the present case because each involved a nonconforming use of land, while this case involves a permitted use of land with respect to a building or lot having a condition of nonconformity. *Petruzzi v. Zoning Board of Appeals*,

Not Reported in A.2d                                                                                                                Page 6

Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
(Cite as: Not Reported in A.2d)

supra, recognizes that this distinction is genuine.
*Seaside*, supra, 641.

### B. *The Nature of the Plaintiffs' Nonconformity*

The plaintiffs are using their land for residential purposes; either the plaintiffs or their guests or lessees occupy the dwelling houses. Each house is a single-dwelling unit. (Zoning Regulations Article I, C.8 defines "Dwelling, one family" as "a detached building for or occupied by one family.")
In turn, single-family dwellings are permitted uses in the R-10 zone. This is not a case such as *Giramonti*, supra, where the court found that three dwelling units were housed in two residential structures all on one lot. The instant case is sufficiently distinguishable because there are two dwelling units in two single-family residential houses on one lot. This use is a permitted use in the R-10 zone.

The nonconforming aspect of the property relates to existence of two detached single-family dwelling houses on one lot which is sufficient in area for only one dwelling house. This nonconformity relates to the physical dimension of the property, but not to the use of the property. In turn, this nonconformity existed prior to adoption of the Zoning Regulations and therefore it is a preexisting nonconformity protected by the Zoning Regulations.

### C. *The Grounds for the CDO*

The next consideration for the Court is the basis of the ZEO's CDO and the ZBA's subsequent decision to uphold the CDO. In other words, on what violations of the Zoning Regulations did the ZEO base its CDO? The ZEO states in the CDO that the plaintiffs are in violation of Zoning Regulations Article I, E.1.3 with respect to the plaintiffs' year-round use of both of the dwelling houses. This section provides:
Any nonconforming use of a building or land may be continued and any building so existing which was designed, arranged or intended for or devoted to a nonconforming use, may be reconstructed and structurally altered, and the nonconforming use therein changed subject to the following regulations:
*7 E.1.3 No nonconforming use shall be extended or expanded.

The "nature of the violation" as noted on the CDO is the "extension/expansion of non-conforming use; year-round use of seasonal cottages." (ROR, Exh. 18.) The ZBA upheld the CDO without stating the reasons for its decision.[FN5] The ZEO's CDO targets the year-round *use* of the property, rather than any addition or alteration to the existing structure, as being an expansion of a nonconformity. This conclusion is supported by the record in a letter from the town assistant ZEO to Attorney Jane Marsh dated February 22, 1990. In the letter, the ZEO states:

> FN5. The ZBA is not required to state a specific reason for its decision. See *Gagnon v. Inland Wetlands and Watercourses Commission of Bristol*, 213 Conn. 604, 611, 569 A.2d 1094 (1990).

You are correct in stating that the property conforms with the area requirements in its Zoning District. If one of the dwellings were to be used as the principal residence and the other as a "guest house" for casual use only by family members or non-paying guests, full-time, year-round use of the principal residence would be deemed compatible with the Zoning Regulations. The zoning problem arises, however, where one or both dwellings is used for rental purposes, apparently the case here. (ROR, Exh. 21.)

The issue before the ZBA was whether the temporal extension of a permitted use is an expansion of a nonconformity in violation of the Zoning Regulations. In turn, the issue before the Court is whether the ZBA's decision to uphold the ZEO's CDO is contrary to law.

### D. *Do the Applicable Zoning regulations Support the CDO?*

The general prohibition against the extension or expansion of nonconforming uses cannot support

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 7
Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

the CDO. *Petruzzi,* supra; *Seaside,* supra; *Menillo,* supra. Furthermore, there are no prohibitions in the Zoning Regulations applicable to the appeal against the year-round use of seasonal dwellings. The Zoning Regulations include definitions of seasonal use without restricting such uses. As the analysis above concludes, the CDO cannot be enforced based on the violation cited. Therefore, the plaintiffs' appeal from the ZBA's decision is sustained as the ZBA's decision was contrary to law.

It is noted that the above conclusion does not render the Town of Old Lyme helpless to enforce its Zoning Regulations. The current Zoning Regulations Article I, 8.7 provides:
The following provisions and limitations shall apply to a nonconforming use of land, building or other structure:
8.7.1 Enlargement: No nonconforming use of land shall be enlarged, extended or altered and no building or other structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity. This prohibition specifically includes the occupancy of a seasonal use beyond the period of April 1 to November 15 and the winterization, refurbishment or remodeling of a seasonal dwelling to accommodate other than seasonal use.

Further, where a valid health, safety or welfare concern exists regarding the occupancy of dwellings year-round, such concerns can be addressed, for example, through the town building and health codes.

Conn.Super.,1993.
Habicht v. Zoning Bd. of Appeals of Town of Old Lyme
Not Reported in A.2d, 1993 WL 284791 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in A.2d

Page 1

Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
(Cite as: Not Reported in A.2d)

C
French v. Zoning Bd. of Appeals of Town of Old Lyme
Conn.Super.,1993.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut, Judicial District of New London, at Norwich.
Barbara R. FRENCH
v.
ZONING BOARD OF APPEALS of the TOWN OF OLD LYME, et al.
No. 92-0101389.

July 22, 1993.

MEMORANDUM OF DECISION
AUSTIN, Judge.
*1 The plaintiff is Barbara French (hereinafter "French"). The defendants are the Zoning Board of Appeals of the Town of Old Lyme (hereinafter "ZBA") and the Zoning Enforcement Officer of the Town of Old Lyme (hereinafter "ZEO").

French is the owner of real property in Old Lyme, Connecticut, known as 11 Bellaire Road. The property is 3,951 square feet in area. (Return of record [ROR], Exh. a.) One dwelling house is situated on the property. (ROR, Exh. e.) The dwelling house is approximately 1,320 square feet in area. (ROR, Exh. e.) It is served by seasonal public water and electric heat; there is no private well on the property. (ROR, Exhs. e, s.) The plaintiff installed two water holding tanks in the garage attached to the house to provide the house with water during the "off-season." (ROR, Exh. b, p. 10.) The property is in an R-10 zone which requires a 10,000 square foot minimum lot area. (ROR, Exh. x.) Single-family dwellings are permitted uses in the zone. (ROR, Exh. x.) French's lot is nonconforming as to lot size and the dwelling house is nonconforming as to yard requirements and building coverage. (ROR, Exh. x.) However, it was built in 1948, prior to the adoption of zoning regulations in Old Lyme in 1958. (ROR, Exh. b, p. 2.) Therefore, the lot is a preexisting nonconforming lot and the dwelling house is a preexisting nonconforming structure.

On December 19, 1991, the ZEO issued a cease and desist order (hereinafter "CDO") against the plaintiff. (ROR, Exh. c.) The ZEO states in the CDO that:
Recent inspections in the neighborhood of your cottage at 11 Bellaire Road reveal that the cottage is now being occupied, in violation of the seasonal use limitation, and that the attached garage has been converted to other use, apparently to house a water holding tank.... Your conversion of the dwelling to year-round use would constitute an illegal extension/expansion of a nonconforming use, in violation of Article I, Section E.1.3 of the Zoning Regulations. You are therefore ordered to cease any year-round use of the premises, to limit its occupancy to the season defined under Article I, C.57 and 58 of the Zoning Regulations....

(ROR, Exh. c.)

On January 16, 1992, the plaintiff appealed the CDO to the ZBA pursuant to General Statutes § 8-7. (ROR, Exh. d.) On March 17, 1992, the ZBA held a hearing on the appeal of the CDO. Extensive evidence as to the history of the ownership and use of the property, including correspondence, documents, records and photographs, were presented by both parties at the hearings. (ROR, Exhs. d, e, k, i.)

On May 19, 1992, the ZBA denied the plaintiff's appeal and upheld the CDO. (ROR, Exh. u.) Notice of the ZBA's decision was issued to the plaintiff in a letter dated May 28, 1992. (ROR, Exh. v.) In the letter, the ZBA stated that its decision was made on the basis that the plaintiff's use was nonconforming according to the Zoning

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 2
Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
**(Cite as: Not Reported in A.2d)**

Regulations of Old Lyme (hereinafter "Zoning Regulations") and in violation of the Zoning Regulations, including Article III, A.9.1. (ROR, Exh. v.) Notice of the decision was published on June 2, 1992. (ROR, Exh. w.)

*2 The plaintiff filed an appeal from the ZBA's decision to the Superior Court dated June 15, 1992. The appeal was timely commenced by service of process on the defendants on June 17, 1992. In the appeal complaint, French alleges that the defendants acted illegally, arbitrarily and in abuse of discretion in that:
(1) The Zoning Regulations do not prohibit the use of the plaintiff's house between November and April;
(2) The defendants have misconstrued the Zoning Regulations to provide such a prohibition; and
(3) The defendant's actions are contrary to applicable case law.

On December 31, 1992, the plaintiff filed a brief in support of her appeal. The plaintiff briefed one issue.
Did the ZEO and the ZBA correctly interpret the Zoning Regulations with reference to the plaintiff's property by concluding that her use of said property as her personal residence during the winter months (i.e., November to April) was an illegal nonconforming use prohibited by the Zoning Regulations?

The plaintiff first notes that the issue before the Court is a narrow one. Specifically, the plaintiff argues that while the CDO makes reference to the installation of electric heat and the water holding tank, all of the parties agree that any violation of the building or health codes of the Town are not relevant to this appeal.[FN1] Instead, this appeal is based on whether the Town properly interpreted its Zoning Regulations in reference to the plaintiff's use of the property.

> FN1. In a memorandum to the ZBA, the ZBA's attorney states that "the fact that there may be violations of the Building or Health Codes is not within your purview..." (ROR, Exh. j.)

The plaintiff argues that the dwelling house has had electric heat since 1951; (ROR, Exh. e); and that installation of a water holding tank in the garage did not automatically convert the dwelling house to a year-round structure. The plaintiff argues that the Town's appraisal of her property supports that contention.

The plaintiff next argues that the use of a seasonal dwelling year-round is not prohibited by the Zoning Regulations and therefore such a use is not an extension of a nonconforming use in violation of the Zoning Regulations.[FN2] The plaintiff cites to several Connecticut cases on the issue. The plaintiff relies on three of these cases to support the proposition that where the zoning regulations do not explicitly prohibit the year-round use of seasonal property, such use is not an extension or an expansion of a preexisting nonconforming use: *Petruzzi v. Zoning Board of Appeals*, 176 Conn. 479, 408 A.2d 243 (1979); *Seaside Properties v. Zoning Board of Appeals*, 14 Conn.App. 638, 542 A.2d 746 (1988); and *Menillo v. Zoning Board of Appeals of the Town of Trumbull*, 6 CSCR 913 (September 20, 1991, Dean, J.). The plaintiff then argues that the Old Lyme Zoning Regulations do not prohibit the use of their property for year-round residential occupancy. The plaintiff bases her argument on three grounds:

> FN2. The parties have agreed that the Zoning Regulations applicable to the appeal are the regulations in effect prior to January 1, 1992. (ROR, Exh. b, p. 1.) On January 1, 1992, new regulations were adopted. The new regulations include an explicit prohibition of the conversion of seasonal structures to year-round structures.

(1) The Zoning Regulations list single-family dwellings as a permitted use in the R-10 zone and therefore, the plaintiff is simply using her premises in a manner permitted under the Zoning Regulations.
*3 (2) The relevant section of the Zoning Regulations, in effect at the time the CDO was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                  Page 3

Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
(Cite as: Not Reported in A.2d)

issued, merely defines seasonal use.[FN3] There is no section in the Zoning regulations which specifically prohibits or even refers to the conversion of a seasonal dwelling to year-round use.

> FN3. Zoning Regulations Article I, C.57 defines "seasonal dwelling" as a "dwelling unit, designed, used or intended to be used for seasonal use." Zoning Regulations Article I, C.58 defines "seasonal use" as " the use of a structure for dwelling purposes between April 1 and November 15, only."

(3) The use of the premises in the winter months by the plaintiff is not an extension or expansion of a non-conforming use, but merely an intensification of a use already permitted by the regulations. The improvement made to the structure, namely the installation of a water holding tank, was merely an enhancement of the structure, and does not signify a change in its use.

On February 8, 1993, the ZBA filed a brief in opposition to the plaintiff's appeal. In it, the ZBA argues that all of the sections in the Zoning Regulations must be read as a whole to be given their proper effect. Specifically, the ZBA argues that the definitions of "seasonal dwelling" and " seasonal use" set forth at Article I, C.57 and C.58 must be considered together with the prohibition of expanding nonconforming uses in Article III, E.1.3. Also, the ZBA urges this Court's consideration of both Zoning Regulations Article I, B.1 which provides that "no land or building shall be used .... except in conformity with these regulations" and the general prohibitions in the Zoning Regulations regarding the health, safety and welfare of the public. Finally, the ZBA argues that the ZEO's interpretation of the Zoning Regulations, as confirmed by the ZBA, should be given deference because this interpretation is reasonable and within the ZBA's discretion.

The ZBA also argues that the plaintiff's interpretation of the Zoning Regulations fails to take into consideration Article III, A.9.1 which states that:

A parcel of land having less than the minimum lot area required under these regulations shall not be required to conform to such minimum lot area requirements and any permitted building may be erected or placed, and any permitted use may be made, thereon if: (a) such parcel of land has an area greater or equal to 90 percent of the minimum lot area required under these regulations, provided such parcel of land is 18,000 sq. ft. or larger....

The ZBA argues that since the plaintiff's lot is less than 90 percent of the minimum 10,000 square foot lot required in the R-10 district and less than 18,000 square feet, the use of the lot for a single-family dwelling, while normally a permitted use, is prohibited by the Zoning Regulations. The ZBA argues therefore that the controlling law on the facts of the instant case is set forth in the following cases: *Giramonti v. Old Lyme,* Superior Court, Judicial District of New London at Norwich, Docket No. 09 16 65 (July 30, 1990, Austin, J.); *Beerwort v. Zoning Board of Appeals,* 144 Conn. 731, 137 A.2d 756 (1958); *Weyls v. Zoning Board of Appeals,* 161 Conn. 516, 290 A.2d 350 (1971); and *Cummings v. Tripp,* 204 Conn. 67, 527 A.2d 230 (1987). The ZBA argues that these cases stand for the proposition that the expansion of a preexisting nonconforming seasonal dwelling to year-round use is an extension of a nonconforming use in violation of the Zoning Regulations.[FN4]

> FN4. It is noted that the plaintiff distinguishes *Giramonti* on the ground that in *Giramonti,* the subject property was being used for a nonconforming *use.* Specifically, the court found that three dwelling units were housed in two residential structures all on one lot. Therefore, the court held that the occupation of the dwelling units year round was an extension of the existing nonconforming use. The instant case, the plaintiff argues, is sufficiently distinguishable because the plaintiff is using the property for a permitted use, namely a single-family dwelling (which contains one dwelling unit) on a single lot, albeit a nonconforming lot as to size.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff is correct in distinguishing *Giramonti* on this ground.

*4 On June 9, 1993, a hearing was held before this jurist. At the hearing, the plaintiff presented a deed and oral testimony establishing that she is the current owner of the subject property. The Court found aggrievement pursuant to General Statutes § 8-8.

## DISCUSSION

The plaintiff bears the burden of proof to demonstrate that the board acted improperly. *Adolphson v. Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988).
Generally, it is the function of a zoning board or commission to decide "within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (citations omitted.)

*Schwartz v. Planning & Zoning Commission,* 208 Conn. 146, 152, 543, A.2d 1339 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." *Spero v. Zoning Board of Appeals,* 217 Conn. 435, 440, 586 A.2d 590 (1991).

The Superior Court is not bound by the ZBA's interpretation of ordinances. See *Melody v. Zoning Board of Appeals,* 158 Conn. 516, 518, 264 A.2d 572 (1969).

I. Whether the ZBA acted illegally, arbitrarily or in abuse of its discretion in upholding the CDO issued by the ZEO.

### A. *Applicable Law*

The plaintiff argues that where the zoning regulations do not explicitly prohibit the year-round use of a seasonal property, such use is not an extension or an expansion of a preexisting nonconforming use. The plaintiff relies on the following cases to support its argument: *Petruzzi v Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243 (1979); *Seaside Properties v Zoning Board of Appeals,* 14 Conn.App. 638, 542 A.2d 746 (1988); and *Menillo v. Zoning Board of Appeals of the Town of Trumbull,* 6 CSCR 913 (September 20, 1991, Dean, J.).

*Petruzzi, Seaside* and *Menillo* address the alteration of a permitted use housed in a nonconforming structure or on a nonconforming lot where the alteration relates to the use of the property, not to the nonconforming dimensional standards. Also common to these cases is that there was nothing in the applicable zoning regulations which prohibited a change from one permitted use to another on a lot or in a structure that was nonconforming as to the dimensional standards. In *Petruzzi,* supra, the issue before the Supreme Court was whether the ZEO could deny a building permit for the conversion of a permitted use (a church) to another permitted use (a residential dwelling) housed in a structure that did not meet setback, frontage and area requirements.
The applicable zoning regulations did not prohibit a change from one permitted use to another permitted use with respect to a building or lot having a condition of nonconformity. Id., 481. The trial court had upheld the ZEO on the ground that such a conversion violated a zoning regulation which provides that one nonconforming use may not be substituted for another. Id. On appeal, the Supreme Court held that because the zoning regulations did not prohibit the conversion from one permitted use to another, the trial court could not cite to the regulations to support the ZBA's decision. Id., 482. The Supreme Court found the lack of such a prohibition significant because it indicates that a distinction exists between a nonconforming building or structure and a nonconforming use of the land. Id., 481 n. 2. The Supreme Court went on to find that the applicable zoning regulations and General Statutes § 8-2 in fact protect preexisting nonconforming lots from restrictive zoning. Id., 483. The Supreme Court concluded that absent a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
**(Cite as: Not Reported in A.2d)**

specific zoning regulation prohibiting the conversion of a permitted use to another permitted use, the ZEO could not deny the plaintiff's permit for such a conversion. Id., 484.

*5 The holding in *Petruzzi* was extended in *Seaside* to a case where the applicable zoning regulations did not distinguish between seasonal and year-round use. The property in question consisted of three separate lots on which three cottages were situated. *Seaside,* supra, 639. The use of the property for single-family dwellings was permitted. However, the zoning regulations rendered the cottages nonconforming as far as lot size and frontage. Id. The town ZEO issued a CDO based on a violation of a zoning regulation which provided that:
No nonconforming use of land, buildings and other structures shall be changed to another unless such new use is substantially the same in nature and purpose as to original nonconforming use or is a conforming use.

Id. The trial court sustained the plaintiff's appeal from the ZBA's decision to uphold the CDO. Id. In affirming the trial court's decision, the Appellate Court held:In the present case, the change was only in the nature of the permitted use of a nonconforming building; as in *Petruzzi,* no nonconforming use of the land is involved. As in *Petruzzi,* furthermore, there is nothing in Fairfield's regulations "which prohibits a change from one permitted use [of a building] to another permitted use, with respect to a building or lot having a condition of legal nonconformity." Id., 481.
Indeed, 2.5.3 of the Fairfield regulations specifically permits a "nonconforming use of land, buildings and other structures [to] be changed to another use [if] such new use ... is a conforming use." .... [A]s in *Petruzzi,* the non-conforming building here was not changed in any way; only the use of the building has been altered from one permitted use to another permitted use.... Under these circumstances, we conclude that *Petruzzi* controls, and that 2.5.3 of the Fairfield zoning regulations does not prohibit a change from seasonal to year-round use of the plaintiff's houses.

Id., 640.

The holdings in *Petruzzi* and *Seaside* were extended in *Menillo v. Zoning Board of Appeals of the Town of Trumbull,* 6 CSCR 913 (September 20, 1991, Dean, J.). In that case, the ZEO issued a CDO that ordered the property owner to discontinue nonseasonal use of her cabin. Id. The ZEO's order stated that the plaintiff was in violation of the Trumbull Zoning Regulations because:
The subject property is a pre-existing nonconforming use established as a summer cabin only. It is now being used or has recently been used and/or occupied by you and others during months other than June, July, August and September. Your use and occupancy are in violation of Article I, Section 4 of the Trumbull Zoning Regulations.

Id. Article I, § 4 of the Trumbull Zoning Regulations stated:Any building, structure or use legally existing on the effective date of these regulations, or any amendment thereto, which does not comply with any of said regulations or amendments, may be continued, SUBJECT, HOWEVER, to the following conditions and restrictions:

*6 The use or occupancy of a non-conforming building or structure, used or occupied during a particular season only, or for part of a year only, at times or periods other than said particular season or part of a year is an enlargement of and/or increase to the use or occupancy of the non-conforming building or structure.

Id. Unlike *Petruzzi* and *Seaside,* in *Menillo,* the town had a specific prohibition against the extension of seasonal occupancy to either year-round or off-season occupancy. Despite the inclusion of such a prohibition, the court found that:The record is devoid of any statute or regulation designating the subject area, either directly or implicitly by the imposition of an applicable standard, a seasonally-restricted zone.
The ZBA merely considered anecdotal evidence .... as well as the Pinewood Lake Association Bylaws....
  Neither the anecdotal evidence nor the bylaws indicate any legal restriction of extraseasonal use.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
(Cite as: Not Reported in A.2d)

Page 6

Id., 916. In sustaining the plaintiff's appeal and therefore overturning the CDO, the court concluded that:Absent any legal definition of "seasonal use," Article I, 4-J provides no legal standard for determining what constitutes such a use. There is no regulation designating the plaintiff property as being in a zone restricted to seasonal use.... The ZBA's position would indeed violate Conn.Gen.Stat. 8-2. Therefore, the use sought is a permitted use....

Id., 916.

The facts before the Court in the instant case are analogous to the *Petruzzi, Seaside* and *Menillo* line of cases and therefore the law of those cases applies. [FN5]

> FN5. It is noted that:
> Those cases holding that a change from the seasonal use of a structure to its year-round use is prohibited by applicable local zoning regulations; see *Cummings v. Tripp,* 204 Conn. 67, 527 A.2d 1230 (1987); *Weyls v. Zoning Board of Appeals,* 161 Conn. 516, 290 A.2d 350 (1971); *Beerwort v. Zoning Board of Appeals,* 144 Conn. 731, 137 A.2d 756 (1958); are not inconsistent with the decision we reach in this case. Those cases are distinguishable from the present case because each involved a nonconforming use of land, while this case involves a permitted use of land with respect to a building or lot having a condition of nonconformity. *Petruzzi v. Zoning Board of Appeals,* supra, recognizes that this distinction is genuine.
> *Seaside,* supra, 641.

### B. *The Nature of the Plaintiff's Nonconformity*

The plaintiff is using her land for residential purposes; she is living in the house. This use is a permitted use in the R-10 zone. The ZBA's argument that Article III, A.9.1 renders the plaintiff's use nonconforming is in error. This section of the Zoning Regulations applies to nonconforming parcels on which no structures have been built.

The nonconforming aspect of the property relates merely to the lot size which is substantially below the minimum requirements. This nonconformity relates to the physical dimension of the property, but not to the use of the property. In turn, the nonconformities existed prior to zoning regulations were adopted in Old Lyme and therefore they are legal as "preexisting nonconformities" pursuant to the applicable Zoning Regulations.

### C. *The Grounds for the CDO*

The next consideration for the Court is the nature of the ZEO's CDO and the ZBA's subsequent sustaining of the CDO. In other words, on what violations of the Zoning Regulations did the ZEO base its CDO? The ZEO states in the CDO that:
Recent inspections in the neighborhood of your cottage at 11 Bellaire Road reveal that the cottage is now being occupied, in violation of the seasonal use limitation, and that the attached garage has been converted to other use, apparently to house a water holding tank..... Your conversion of the dwelling to year-round use would constitute an illegal extension/expansion of a nonconforming use, in violation of Article 1, Section E.1.3 of the Zoning Regulations. You are therefore ordered to cease any year-round use of the premises, to limit its occupancy to the season defined under Article I, C.57 and 58 of the Zoning Regulations....

*7 (ROR, Exh. c.) The ZBA upheld the ZEO on the basis that the plaintiff's use was nonconforming according to the Zoning Regulations and in violation of Zoning Regulations Article III, A.9.1. (ROR, Exh. v.)

The ZEO's CDO targets the *use* of the property, rather than any addition to the existing structure, as being an expansion of a nonconformity. The issue before the ZBA was whether the temporal extension of a permitted use is an expansion of a nonconformity in violation of the Zoning Regulations. In turn, the issue before the Court is whether the ZBA's decision to sustain the ZEO's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                              Page 7
Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452
**(Cite as: Not Reported in A.2d)**

CDO is contrary to law.

### D. *Do the Applicable Zoning Regulations Support the CDO?*

The applicability of Article III, A.9.1 has already been determined; this section does not provide a prohibition against the year-round use of the plaintiff's property. Furthermore, there are no prohibitions in any other sections of the Zoning Regulations applicable to the appeal which prohibit year-round use of residential dwellings. The Zoning Regulations do include definitions of seasonal use, set forth above, without restricting such uses. As the above analysis of *Petruzzi, Seaside* and *Menillo* concludes, the CDO cannot be enforced based on any violation of the Zoning Regulations. Therefore, the Court sustains the plaintiff's appeal from the ZBA's decision on the ground that the ZBA's decision was contrary to law.

It is noted that the above conclusion does not render the Town of Old Lyme helpless to enforce its Zoning Regulations. The current Zoning Regulations, Article I, 8.7 provides:
The following provisions and limitations shall apply to a nonconforming use of land, building or other structure:
8.7.1 Enlargement: No nonconforming use of land shall be enlarged, extended or altered, and no building or other structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity. This prohibition specifically includes the occupancy of a seasonal use beyond the period of April 1 to November 15 and the winterization, refurbishment or remodeling of a seasonal dwelling to accommodate other than seasonal use.

Further, where a valid health, safety or welfare concern exists regarding the occupancy of dwellings year-round, such concerns can be addressed, for example, through the town building and health codes.

Conn.Super.,1993.
French v. Zoning Bd. of Appeals of Town of Old Lyme
Not Reported in A.2d, 1993 WL 284789 (Conn.Super.), 9 Conn. L. Rptr. 452

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.