

E

**Westlaw.**

Not Reported in A.2d  Page 1

Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)
(Cite as: Not Reported in A.2d)

**H**
Mainville v. Zoning Com'n of Meriden
Conn.Super.,2006.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut,Judicial District of New Haven.
Caroline MAINVILLE et al.
v.
ZONING COMMISSION OF MERIDEN.
No. CV980265281S.

March 14, 2006.

Shea & Cook PC, Meriden, for Caroline Mainville et. al.
Meriden Corporation Counsel, Meriden, for Zoning Commission of Meriden.MARK H. TAYLOR, Judge.

## I. BACKGROUND

*1 The plaintiffs in this case appeal from the approval by the city of Meriden's zoning commission (the defendant) of the "Ridgetop Protection Zone Change Petition" (zoning amendment) on October 5, 1998. Each plaintiff is an owner of property allegedly affected by the amendment. In their appeal, filed on November 6, 1998, the plaintiffs claimed that the defendant acted arbitrarily and illegally, and in abuse of its discretion because, in enacting the amendment to its zoning plan, it exceeded its statutory powers, failed to reach its decision within the time limits set by the law, enacted a zoning amendment inconsistent with the comprehensive city plan, and granted the zoning amendment without valid reason. In a memorandum of decision dated November 22, 2004, the court, Tanzer, J., allowed the plaintiffs to amend their appeal to include an additional claim, in paragraph 10, subparagraph (e), alleging that the defendant confiscated their property in violation of the fifth amendment to the United States constitution and article first, § 11 of the constitution of Connecticut.[FN1]

> FN1. The plaintiffs allege the following in paragraph 10, subparagraph (e) of their amended appeal: "The action of the Meriden City Council acting as the Zoning Authority of the City of Meriden violated Amendment V of the Constitution of the United States and article I, section 11 of the constitution of the state of Connecticut."

On August 15, 2005, the defendant filed a motion to dismiss, accompanied by a memorandum in support, on the grounds that the plaintiffs' additional takings claim is unripe and that the court, thus, lacks subject matter jurisdiction. The plaintiffs filed a memorandum in opposition on September 19, 2005.

## II. DISCUSSION

In its motion to dismiss, the defendant asserts that the plaintiffs' additional claim is unripe because, by not having submitted any plans to the defendant to develop any of their property affected by the amendment, the plaintiffs have failed to establish that the defendant "has made a final decision that disallows any reasonable use of the property." In their memorandum in opposition to the defendant's motion, the plaintiffs initially contend that the court should deny the motion because the defendant did not file the motion within thirty days of the filing of an appearance pursuant to Practice Book Section 10-30. The plaintiffs further argue that, having previously allowed the plaintiffs to amend their appeal by adding subparagraph (e) to paragraph 10, the court ought to be bound by the law of the case. The plaintiffs finally argue that, if the law of the case does not preclude the court's consideration of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                           Page 2

Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)
(Cite as: Not Reported in A.2d)

the ripeness argument in the defendant's motion to dismiss, the question of ripeness should be decided in their favor under the recently decided case of *San Remo Hotel v. San Francisco*, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005), in which the United States Supreme Court affirmed the decision of the Court of Appeals for the Ninth Circuit that, *inter alia*, a facial takings challenge is ripe the instant the agency regulation at issue is enacted.

*1. Motion to Dismiss*

*A. Standard*

"(a) The motion to dismiss shall be used to assert ... lack of jurisdiction over the subject matter" (Internal quotation marks omitted.) *Shay v. Rossi*, 253 Conn. 134, 140, 749 A.2d 1147 (2000), citing Practice Book § 10-31, overruled on other grounds. "If an issue is not yet ripe for adjudication, this court lacks subject matter jurisdiction to afford it consideration." *State v. Campbell*, 84 Conn.App. 648, 650, 854 A.2d 813, cert. denied, 271 Conn. 940, 861 A.2d 515 (2004). See *Esposito v. Specyalski*, 268 Conn. 336, 347, 844 A.2d 211 (2004).

*2 "A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court ... A motion to dismiss tests, *inter alia*, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Kozlowski v. Commissioner of Transportation*, 274 Conn. 497, 501, 876 A.2d 1148 (2005). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it ... [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction ..." (Internal quotation marks omitted.) *Lewis v. Planning & Zoning Commission*, 275 Conn. 383, 390, 880 A.2d 865 (2005).

"An issue regarding justiciability, which must be resolved as a threshold matter because it implicates this court's subject matter jurisdiction ... raises a question ... [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case." (Citations omitted; internal quotation marks omitted.) *Esposito v. Specyalski, supra*, 268 Conn. at 347-48.

"When a ... court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light ... [A] court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Filippi v. Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005); see also *Fort Trumbull Conservancy, LLC v. New London*, 265 Conn. 423, 432-33, 829 A.2d 801 (2003); *Dyous v. Psychiatric Security Review Board*, 264 Conn. 766, 773, 826 A.2d 138 (2003).

*B. Timing*

In their memorandum in opposition to the defendant's motion to dismiss, the plaintiffs argue that the court should deny the motion because the defendant has failed to file the motion within thirty days of the filing of an appearance. "Although the filing of an appearance on behalf of a party, in and of itself, does not waive that party's personal jurisdiction claims, '[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance.' Practice Book § 10-30." *Connor v. Statewide Grievance Committee*, 260 Conn. 435, 445, 797 A.2d 1081 (2002). Nevertheless, "a challenge to the jurisdiction of a court to render a judgment may be raised at any time, because the lack of subject matter jurisdiction cannot be waived." (Internal quotation marks omitted.) *DiBerardino v. DiBerardino*, 213 Conn. 373, 377, 568 A.2d 431 (1990). Therefore, the plaintiffs' contention that the defendant raised its challenge to the court's subject matter jurisdiction too late is without merit.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 3
Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)
(Cite as: Not Reported in A.2d)

### C. Law of the Case

*3 The plaintiffs also claim that the law of the case binds the court in considering the motion to dismiss. "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked .... [I]t expresses the practice of judges generally to refuse to reopen *what has been decided* and is not a limitation on their power .... Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Emphasis in original; internal quotation marks omitted.) *Miller v. Kirshner*, 225 Conn. 185, 191, 621 A.2d 1326 (1993).

The law of the case doctrine follows the general concept of finality. Permitting a party to repeatedly revisit the same or similar issues would result in undue delay of litigation. In its motion to dismiss, the defendant argues that the additional claim in the plaintiffs' amended appeal is unripe for judicial review and, therefore, the court lacks subject matter jurisdiction over the matter. The court notes that the issues of ripeness and justiciability have not previously been argued before or considered by the court in this case. "[W]e agree ... that ripeness is a sine qua non of justiciability ..." *Esposito v. Specyalski, supra*, 268 Conn. at 347. "An issue regarding justiciability ... must be resolved as a threshold matter because it implicates this court's subject matter jurisdiction ..." (Citation omitted; internal quotation marks omitted.) *Id.* Therefore, whenever the jurisdiction of the court is first called into question, it is a matter to be decided before considering the merits of a case. *Id.*

### D. Ripeness

#### 1) As-Applied Takings Claim

The plaintiffs appear to argue in their memorandum that the holding of *San Remo Hotel v. San Francisco, supra*, 125 S.Ct. 2491, regarding a facial takings claim, should enable this court to adjudicate the plaintiffs' takings claim presented in paragraph 10(e) of their amended appeal.[FN2] Therefore, the plaintiffs contend, in essence, that their allegations in paragraph 10(e) of their amended appeal constitute a facial challenge to the amendment and that the claim therein is ripe for judicial review. Nevertheless, the plaintiffs assert that the court should "determine whether the prohibitive language of [the amendment] *as-applied to the plaintiffs' property* constitutes a taking of their property without compensation" and that the court should also "determine *if the plaintiffs' property will have an economic value* if the use of said property is limited to" the provisions set forth in the amendment. (Emphasis added.)

> FN2. The plaintiffs state, in relevant part, the following in their memorandum in opposition to the motion to dismiss: "In *San Remo*, the Supreme Court decided that the district trial court could hear whether the language of the local ordinance 'does not substantially advance a legitimate state interest.' In the instant case, this court can determine whether the prohibitive language of Sec. 213-26.6 as applied to the plaintiffs' property constitutes a taking of their property without compensation. The court can determine if the plaintiffs' property will have an economic value if the use of said property is limited to emergency work necessary to protect life or property ..."

In *San Remo Hotel v. San Francisco, supra*, 125 S.Ct. 2497, the United States Supreme Court distinguished between an "as-applied" takings claim and a "facial" takings claim. The court in that case affirmed the Ninth Circuit's holding that a facial takings claim, asserted by petitioner's challenge to a local zoning ordinance on the ground that the ordinance is unconstitutional on its face, was "ripe the instant [the ordinance] was enacted." *Id.*, at 2497, 2503. However, the petitioners' as-applied takings claim was required to ripen in state court by establishing that "the governmental entity has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 4

Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)
(Cite as: Not Reported in A.2d)

reached a final decision on the applicability of the regulation to the [petitioners'] property; and .... the [petitioners are] unable to receive just compensation from the government." *The San Remo Hotel v. San Francisco,* 145 F.3d 1095, 1102 (9th Cir.1998); *San Remo Hotel v. San Francisco, supra,* 125 S.Ct. 2503.

*4 "The United States Supreme Court has noted that to mount a facial challenge to a statute, one must establish that no set of circumstances exists under which the [statute] would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid ...." (Internal quotation marks omitted.) *State v. Ayala,* 222 Conn. 331, 344 n. 12, 610 A.2d 1162 (1992), citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). "A facial challenge, in this context, means a claim that the law is invalid in toto and therefore incapable of any valid application." (Internal quotation marks omitted.) *Packer v. Board of Education,* 246 Conn. 89, 97 n. 14, 717 A.2d 117 (1998), citing *Hoffman Estates v. Flipside, Hoffman Estates, Inc,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

As exemplified by the plaintiffs' choice of words such as "*as-applied to the plaintiffs' property*" and "*if the plaintiffs 'property will have an economic value,*" the contentions by the plaintiffs, regarding paragraph 10(e) of their amended appeal, demonstrate that they, in fact, are presenting an "as-applied" takings claim, not a "facial" takings challenge to the amendment. It is undisputed that the plaintiffs have not submitted any applications to the defendant for the development of the plaintiffs' property. Hence, the plaintiffs' claims in paragraph 10(e) of the amended appeal are not ripe because the plaintiffs' as-applied takings allegation depends on "the extent to which [the plaintiffs] are deprived of the economic use of their particular pieces of property;" *Yee v. Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); and is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Planning Commission v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The United States Supreme Court "consistently has indicated that among the factors of particular significance in the [as-applied takings] inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations .... Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." (Citations omitted.) *Id.,* at 191.

The court, therefore, finds that the plaintiffs' as-applied takings claims, contained in paragraph 10(e) of their amended appeal, are not ripe, and that the court is without subject matter jurisdiction as to those claims. Accordingly, to the extent that the plaintiffs' appeal depends on the allegations contained in paragraph 10(e) of their amended appeal, the defendant's motion to dismiss is granted.

*2) Facial Takings Claims*

*5 Construing the plaintiffs' amended appeal in the light most favorable to the plaintiffs, the court now considers whether the plaintiffs have alleged any grounds for facial invalidity of the amendment. In paragraph 10(a) and (b) of their amended appeal, the plaintiffs allege that, in approving the amendment, the defendant "exceeded its statutory powers" and "failed to reach its decision within the time limits set by state and local laws, ordinances and regulations," respectively. In paragraph 10(c) and (d), it is respectively alleged that the amendment "is not in accordance with the comprehensive plan of the city" and "was granted without valid reason." Through these allegations, the plaintiffs have brought facial challenges to the amendment since they do not depend on any particular set of circumstances under which the amendment would be invalid. See *State v. Ayala, supra,* 222 Conn. at 345 n. 12 (to mount facial challenge, one must establish that the enactment would be invalid under all circumstances).

Similar to the plaintiffs in the present case, the

Not Reported in A.2d                                                                                                                Page 5
Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

plaintiff property owners in *Queach Corp. v. Inland Wetlands Commission,* 258 Conn. 178, 188, 779 A.2d 134 (2001), who were affected by amended zoning regulations, alleged that the defendant commission either "exceeded its statutory authority" or exceeded its jurisdiction in enacting the amended regulations. Since the plaintiffs "had never submitted an application subject to the amended regulations ... the trial court declined to determine whether the amendments were valid as applied." *Id.,* at 187. The Supreme Court, in *Queach Corp.,* concluded that "the trial court properly limited its decision to a *facial review* " of the regulations. (Emphasis added.) *Id.,* at 189.

The court, therefore, concludes that the plaintiffs have properly alleged facial challenges to the amendment in paragraph 10(a) through (d) of their amended appeal. Under the rationale set forth in *San Remo Hotel,* the plaintiffs were never required to ripen their allegations that the amendment is invalid on its face and those claims became "ripe the instant" the defendant approved the amendment. *San Remo Hotel v. San Francisco, supra,* 125 S.Ct. 2497. The court, therefore, has subject matter jurisdiction over the allegations set forth in paragraph 10(a) through (d) of the plaintiffs' amended appeal. Accordingly, the court denies the defendant's motion to dismiss as to those claims.

### 2. Motion to File Additional Evidence

With regard to the plaintiffs' motion to file additional evidence, the court notes that the plaintiffs' purpose in filing the motion is that they intend to offer expert testimony to show that the plaintiffs' property is "prohibited from any economic development" and that "such prohibition is a practical confiscation of their land without compensation." This evidence, if offered, would relate only to the plaintiffs' as-applied takings claim, alleged in paragraph 10(e) of their amended appeal. The court has already determined that that claim is unripe and that the court, thus, lacks subject matter jurisdiction over the claim. Accordingly, the court denies the plaintiffs' motion to file additional evidence.

Conn.Super.,2006.
Mainville v. Zoning Com'n of Meriden
Not Reported in A.2d, 2006 WL 829536 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in A.2d      Page 1

Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
**(Cite as: Not Reported in A.2d)**

Thetreault v. Wolford
Conn.Super.,2003.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut,Judicial District of Windham.
Joseph THETREAULT et al.
v.
Donald WOLFORD et al.
No. CV020068301.

Dec. 1, 2003.

Robinson & Cole LLP, Hartford, for Joseph Thetreault and Rosalie Thetreault.
John E. Nimlo PC, Willimantic, for Donald Wolford.
Richard S. Cody PC, Mystic, for Town of Canterbury.
FOLEY, J.
*1 The plaintiffs, Joseph and Rosie Thetreault, filed a five-count complaint on June 25, 2002, alleging that the acts of the defendants, Donald Wolford and the town of Canterbury, are impairing the natural resources of the state. The plaintiffs allege that Wolford's zoning violations and the town's failure, or refusal, to enforce the zoning regulations irreparably harms them because these actions (1) damage the value of their property, (2) adversely impact the environmental status of their property, and (3) pollute, destroy, or impair the public trust in the natural resources of the state. On January 7, 2003, pursuant to Practice Book § 10-39, the town of Canterbury filed a motion to strike count five of the plaintiffs' complaint. As required by Practice Book § 10-42, the defendant filed a memorandum in support of the motion to strike, and the plaintiffs timely filed a memorandum in opposition.

I.

*FACTS*

"Over the last several years, the defendant, Wolford, utilized his property as storage for approximately 150 to 200 lawn mowers and lawn tractors, 15 to 20 motorcycles, several automobiles, tractor trailers, approximately 100 tires, and various oil tanks, 55-gallon drums and spent auto lead acid-batteries." During the time that Wolford has been stockpiling these items, the town has issued, " on at least four occasions," cease and desist orders against him for violating the zoning regulations. The plaintiffs allege that this activity specifically violates §§ 4.1, 4.9, 4.13.4, 4.13.6, and 5 [FN1] of the zoning regulations of the town of Canterbury, and that Wolford continues to use his property in this manner. The plaintiffs moreover allege that the town has failed to judicially enforce the cease and desist order against Wolford.

FN1. Zoning Regulations of the Town of Canterbury:
Section 4.1. Compliance with Regulations. No land, building, or part thereof shall hereafter be used, and no building or part thereof or other structure shall be constructed, reconstructed, extended, enlarged, moved or altered except in conformity with these Regulations ....
Section 4.9. Storage of Waste Material. No waste or scrap material, debris, abandoned machinery, junk or similar unsightly material shall be stored or allowed to accumulate in any open space not screened from public view by either a fence, wall or evergreen hedge, or outside a completely enclosed building on any lot within the Town of Canterbury ....
Section 4.13. Prohibited Uses. The following uses are expressly prohibited within the Town of Canterbury ....
4.13.4 Junk yard, refuse disposal area,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 2

Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
**(Cite as: Not Reported in A.2d)**

other than the official town refuse disposal facility.
4.13.6 Any activity which produces unreasonable noise, odors, vibrations, fumes, electrical interference, or other noxious effects considered objectionable to the residents of the area.
Section 5. Rural District.
5.2 Permitted Uses.
The following uses are permitted by right in this district:
5.2.1 One-family detached dwelling.
5.2.2 Two-family dwelling.
5.2.3 Agricultural and forestry activities.
5.2.4 Home occupations as defined in Section 2.2 and in compliance with the conditions enumerated in Section 4.8 of these Regulations.
5.2.5 Religious or governmental uses.
5.2.6 Temporary stands for the display and sale of fruits, vegetables, flowers, honey or other agriculture products ....
5.2.7 Temporary religious or entertainment gatherings .....
5.2.8 Accessory apartments ...

Prior to bringing this suit, the plaintiffs obtained an appraisal of their property, which surrounds Wolford's property, and also commissioned an environmental analysis of the impact that Wolford's property use has on the surrounding areas. The plaintiffs allege that the appraisal of property values demonstrates that Wolford's property could reduce the value of adjacent property by as much as 30 percent. The environmental analysis alleges that Wolford's activities release oil/chemical compounds into the soil and this has the "potential of impacting soil and ground water."

Specific to count five of the plaintiffs' complaint, the plaintiffs allege that the town "is acting in concert with Wolford to unreasonably pollute, impair and/or destroy the public trust in the natural resources of the state of Connecticut." The plaintiffs bring their cause of action against the town based on the Connecticut Enviromnental Protection Act (CEPA), specifically General Statutes §§ 22a-16 [FN2] and 22a-18(a).[FN3] It is alleged that Wolford's activities will unreasonably pollute, impair and/or destroy the public trust in the state's natural resources since these activities will "increase the risk and intensity of area ground and surface water contamination." The plaintiffs allege that the first selectman has "refused to authorize enforcement of orders of the Zoning Enforcement Officer against Mr. Wolford and others and has knowingly permitted continued violations of the Zoning Regulations by Mr. Wolford." Thereby, the plaintiffs allege, the town is acting in concert with Wolford to pollute, impair and/or destroy the public trust in the state's natural resources.

FN2. "Section 22a-16. Action for declaratory and equitable relief against unreasonable pollution. The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

FN3. "Section 22a-18. Powers of the court. (a) The court may grant temporary and permanent equitable relief or may impose such conditions on the defendant as are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 3
Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
**(Cite as: Not Reported in A.2d)**

required to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

## II.

### LAW

*2 "The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted ... A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC v. Alves,* 262 Conn. 480, 498, 815 A.2d 1188 (2003). The motion is "properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Id.* "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) *Gazo v. Stamford,* 255 Conn. 245, 260, 765 A.2d 505 (2001). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.,* 240 Conn. 576, 580, 693 A.2d 293 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Bhinder v. Sun Co.,* 263 Conn. 358, 366, 819 A.2d 822 (2003).

The town of Canterbury moves to strike count five of the plaintiffs' complaint on the grounds that (1) the plaintiffs have an adequate remedy at law without implicating the town and furthermore the plaintiffs seek an improper form of relief; (2) the town is protected by the doctrine of governmental immunity; and (3) § 22a-16 requires there be an affirmative act by the party violating the statute and the complaint lacks an allegation that the town undertook an affirmative act to pollute, impair and/or destroy the natural resources of Connecticut.

### A.

### *Adequate Remedy*

In its first argument, the town makes two assertions in support of its motion to strike: (1) the remedy sought solely from Wolford will provide the plaintiffs with an adequate remedy at law and (2) the remedy sought by the plaintiffs is a writ of mandamus, not an injunction. Both arguments lack merit; the plaintiffs have sufficiently alleged the facts necessary for the requested equitable relief. For the reasons set forth below, the town's motion to strike count five on these grounds is denied.

Generally, "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) *Pequonnock Yacht Club, Inc. v. Bridgeport,* 259 Conn. 592, 598, 790 A.2d 1178 (2002). There are however instances where the court will grant an injunction even though there are neither allegations nor proof of an irreparable harm and the lack of an adequate remedy at law. Relevant to the present case is the situation where there is a claimed violation of a statute or state regulation. Such cases "[are] to be considered differently from a common law action for injunctive relief where allegations and proof of irreparable harm and lack of an adequate remedy at law are required ... The rationale underlying [the] rule that the complainant is relieved of his burden of proving irreparable harm and no adequate remedy at law is that the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted." (Citation omitted; internal quotation marks omitted.) *Conservation Commission v. Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984). Additionally, "[i]t is the court's duty to carry out the intention of the legislature as expressed in the statute it has enacted and to make the remedy it has provided an effective and efficient means of dealing with violations of the act and regulations properly promulgated under its authority." *Id.,* 430. Section 22a-16 expressly provides for "declaratory and equitable relief." General Statutes § 22a-16. The

Not Reported in A.2d                                                                                                                                  Page 4
Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
(Cite as: Not Reported in A.2d)

court finds that the legislature intended declaratory and equitable relief to be an effective and efficient means of addressing violations of § 22a-16; the plaintiffs are not required to allege irreparable harm and lack of adequate remedy at law in order to obtain the proposed injunction under § 22a-16.

*3 Moreover, § 22a-16 specifically permits "any person ... [to] maintain ... an action for declaratory or equitable relief against the state, any political subdivision thereof, any person ... or other legal entity, acting alone, *or in combination with others* ...." (Emphasis added.) General Statutes § 22a-16. The plaintiffs, in their own right, chose to bring a lawsuit again at both Wolford and the town of Canterbury alleging that these *two defendants worked in combination* to violate the public trust in the natural resources of the state. Therefore, the plaintiffs do not have an adequate remedy at law for the alleged *combined violation* of CEPA without also involving the town.

The town next argues that the plaintiffs' remedy is wrongly characterized as injunctive relief while in actuality the plaintiffs seek a writ of mandamus. While it is debatable if there is a difference between a mandatory injunction and a writ of mandamus, the Supreme Court has said: "There are situations ... where the use of one remedy rather than the other involves a matter of semantics ... If the [plaintiff] is entitled to relief it is not of great importance whether we grant the relief by way of the legal writ of mandamus or the equitable remedy of injunction or by a combination of both." (Citations omitted; internal quotation marks omitted.) *Monroe v. Middlebury Conservation Commission,* 187 Conn. 476, 481, 447 A.2d 1 (1987). Furthermore, the plaintiffs assert their claim against the town under the authority of § 22a-16, which clearly states that a plaintiff may maintain an action "for declaratory and equitable relief against the state, any political subdivision thereof ... any person ... or other legal entity, acting alone, or in combination with others ...." General Statutes § 22a-16. Based on this rationale, the motion to strike is denied.

B.

*Governmental Immunity*

The town argues that it is protected from suit under § 22a-16 by the doctrine of governmental immunity. When "it is apparent from the face of the complaint that the municipality was engaging in a governmental [, discretionary,] function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike." *Doe v. Board of Education,* 76 Conn.App. 296, 299 n. 6, 819 A.2d 289 (2003). "But where it is not apparent from the allegations of the complaint that the municipality was so engaged [in a discretionary function], then the defense of governmental immunity should be pleaded." *Trzaska v. Hartford,* 12 Conn.Sup. 301, 302 (1943). Assuming that it is apparent that the town was performing a discretionary act and is therefore not required to plead governmental immunity as a special defense, then the town's motion has been properly brought before this court as a motion to strike.[FN4]

> FN4. This discussion is not to be construed as a finding that the town was engaged in a discretionary activity. Furthermore, as stated in this court's earlier ruling on the defendant's motion to dismiss, "[g]overnmental immunity must be raised as a special defense in the defendant's pleadings." (Internal quotation marks omitted.) *Thetreault v. Wolford,* Superior Court, judicial district of Windham at Putnam, Docket No. CV 02 0068301 (December 9, 2002, Foley J.).

*4 In *Keeney v. Old Saybrook,* 237 Conn. 135, 676 A.2d 795 (1996), the Supreme Court analyzed the development of the rule of municipal immunity in the context of nuisance claims. In this analysis the court first observed that: "The rule limiting municipal liability for nuisance created through mere nonfeasance has its origins in principles of municipal immunity. Noting that municipalities are not liable, under the common law, for mere

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                   Page 5
Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
**(Cite as: Not Reported in A.2d)**

negligence in the performance of governmental functions and duties, we concluded, in *Hoffman v. Bristol,* 113 Conn. 386, 389, 155 A. 499 (1931), that a municipality may be liable for a nuisance it creates through its negligent misfeasance or nonfeasance even if that misfeasance or nonfeasance also constitutes negligence from which the municipality would be immune." (Internal quotation marks omitted.) *Id.,* 164-65. The court then observed that the cases that have relied on the *Hoffman* decision "arose in the context of claims of municipal liability for nuisance created negligently through the unintentional conduct of the municipality." *Id.,* 165. More importantly, the language of these cases "[speak] expansively of municipal immunity in the absence of some positive act of the municipality. Despite this sweeping language, [the Supreme Court has] never held that a municipality is not liable for an intentional nuisance created through its failure to abate pollution." *Id.* The court in *Keeney* then stated: "Without deciding what the law of municipal liability may be in other contexts, in light of the strong public policy manifested by the environmental protection statutes, we conclude that a municipality may be liable for a public nuisance that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance." *Id.,* 166. Section 22a-16 falls within the rubric of "environmental protection statutes;" therefore, a municipality's immunity is abrogated by § 22a-16 when the municipality has created a nuisance through a deliberate failure to act to alleviate that nuisance.

The plaintiffs alleged that for the past several years the town has "refused to authorize enforcement of orders of the Zoning Enforcement Officer against Mr. Wolford and others and has knowingly permitted continued violation of the Zoning Regulations by Mr. Wolford." Accordingly, the plaintiffs have alleged sufficient facts to maintain a cause of action against the town of Canterbury; the town's motion to strike based on the argument of governmental immunity is denied.

Alternatively, the motion to strike, based on the argument of governmental immunity, is denied based on the rule of statutory interpretation that states: "statutory provisions should not be read so as to render them meaningless, unnecessary or superfluous." *State v. Russo,* 259 Conn. 436, 455, 790 A.2d 1132 (2002). Section 22a-16 specifically provides "for declaratory and equitable relief against the state, any political subdivision thereof ... or other legal entity ...." General Statutes § 22a-16. The language of § 22a-16 clearly abolishes the town's governmental immunity. Any other construction of the statute would render the express relief available against a municipality meaningless. The town's motion to strike based on governmental immunity is denied.

C.

*General Statutes § 22a-16 "Act"*

*5 The defendant lastly argues that CEPA prohibits affirmative acts of pollution and that the town's conduct, in relation to enforcing its zoning regulations against Wolford, does not amount to an affirmative act.

In *Keeney v. Old Saybrook,* the Supreme Court ruled that "a municipality may violate [General Statutes §§ 22a-427 and 22a-14 et seq.], which incorporate common law nuisance principles, without affirmatively causing pollution if the municipality has intentionally failed to abate a public nuisance." *Keeney v. Old Saybrook, supra,* 237 Conn. 160. In explaining this rule, the *Keeney* court set out the elements of a public nuisance and defined "intentional." The Supreme Court determined that "[a] public nuisance exists if: (1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the condition or conduct complained of interferes with a right common to the general public." *Id.,* 162-63. The *Keeney* court then held: "[A]n interference with the public right, is intentional if the [municipality] ... knows that it is resulting or is substantially certain to result from [its] conduct ... It is the knowledge that the actor has at the time [the actor] acts or fails to act that determines whether the invasion resulting from [its] conduct is intentional

Not Reported in A.2d                                                                                                           Page 6
Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162
**(Cite as: Not Reported in A.2d)**

or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that [its] conduct involves a serious risk or likelihood of causing the invasion. [The actor] must either act for the purpose of causing it or *know that it is resulting or is substantially certain to result from [the actor's] conduct* ... If the invasion results from continuing or recurrent conduct, the first invasion resulting from the actor's conduct may be either intentional or unintentional; but *[if] the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional*" (Citations omitted; internal quotation marks omitted.) *Id.,* 163-64. Furthermore, "in light of the strong public policy manifested by the environmental protection statutes ... a municipality may be liable for a public nuisance that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance." *Id,* 166.

Connecticut recognizes that water pollution is a public nuisance. General Statutes § 22a-422. In the present case, the plaintiffs allege that Wolford and the town are engaged in conduct that will result in ground and surface water contamination-a public nuisance. In count five, the plaintiffs contend that the town, through its alleged prolonged and deliberate failure to abate the public nuisance on Wolford's property, has intentionally violated § 22a-16. Under § 22a-16, the plaintiffs have sufficiently alleged the facts required to support a claim against the town. The town of Canterbury's motion to strike on this ground is denied.

### III.

#### CONCLUSION

*6 The town of Canterbury's motion to strike count five of the plaintiffs' complaint is denied. An injunction is the appropriate remedy under the statute, the town cannot shield itself from liability behind the wall of governmental immunity, and a municipality violates CEPA when it intentionally fails to abate a public nuisance. The plaintiffs have sufficiently alleged the facts required to sustain its

cause of action in count five.

Conn.Super.,2003.
Thetreault v. Wolford
Not Reported in A.2d, 2003 WL 22962157 (Conn.Super.), 36 Conn. L. Rptr. 162

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.