

**Westlaw.**

Not Reported in A.2d                                                                                                          Page 1
Not Reported in A.2d, 2004 WL 335191 (Conn.Super.), 36 Conn. L. Rptr. 523
(Cite as: Not Reported in A.2d)

H
Giuliano v. State Dept. of Transp.
Conn.Super.,2004.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut,Judicial District of Hartford.
Peter GIULIANO et al.
v.
STATE of Connecticut DEPARTMENT OF TRANSPORTATION.
No. CV010810635S.

Feb. 4, 2004.

Community Law Practice LLC, Hartford, for Peter Giuliano and Joy Giuliano.
AAG Paul Pernerewski, Hartford, for Connecticut Department of Transportation.
Kenneth Walton, Boston, for HNTB Corporation.
Morrison Mahoney & Miller, Hartford, for Harris Miller Miller & Hanson Inc.
Christian G. Samito, Donovan Hatem LLP, Boston, pro se.
Neil Hartzell, Donovan Hatem LLP, Boston, pro se.
WAGNER, JTR.

*1 This is an action brought by several property owners in East Granby, near Bradley International Airport, against the Connecticut Department of Transportation ("ConnDot") and its consultants seeking to recover monetary damages allegedly sustained to their properties resulting from proposed modifications of airport runway plans, the implementation of which they seek to enjoin.

The amended complaint contains three counts, the first two directed to ConnDot claiming inverse condemnation and violations of the Connecticut Environmental Protection Act; the third count against the consultants sounds in professional negligence.

On June 23, 2003 ConnDot moved to dismiss Count II for lack of subject matter jurisdiction based on its sovereign immunity.

One June 6 and June 9, 2003, the consultants Harris Miller, Miller and Hassan ("HMMH") and HNTB Corp. ("HNTB") made virtually identical motions to strike the third count directed to them, each claiming no duty of care existed or was owed to these plaintiffs.

I

In the fall of 2000, the Connecticut Department of Transportation (ConnDot) requested the Federal Aviation Administration (FAA) to modify departure procedures for Runway 24 at Bradley International Airport. Runway 24 is one of the primary runways at Bradley, and ConnDot requested the modification to reduce the aircraft noise impacts on nearby towns. Before the FAA can act upon this request, it is required by 42 U.S.C. § 4321 et seq., to prepare an environmental assessment. Similarly, the Connecticut Environmental Protection Act, codified at General Statutes, §§ 22a-16 through 22a-20, requires state agencies that are responsible for recommending actions that significantly affect the environment to make a similar report before approving the changes. The state agency, under § 22a-1f(a), is allowed to adopt the report of the FAA as long as there is a review and comment session under §§ 22a-1d and 1e. These standards prohibit federal action unless the assessment results in either a finding of no significant impact, or a finding that the action necessitates a more rigorous impact statement. These processes take some time, and the FAA advised ConnDot that hiring third-party consultants to conduct the environmental assessments would expedite the matter. Subsequently ConnDot hired HNTB, who hired HMMH, (the consultants) to prepare the environmental assessments.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2004 WL 335191 (Conn.Super.), 36 Conn. L. Rptr. 523
(Cite as: Not Reported in A.2d)

Page 2

The consultants prepared the environmental assessment and suggested five alternative air traffic procedure modifications for Runway 24. Of the five alternatives, two were given the detailed consideration required by both state and federal regulations. The first option was a "no action" alternative and would have left runway procedure as it was. The second option was an "early right turn" option and was considered superior to the first option because, according to the study done by the consultants, it exposed 1,425 fewer people to Peak Sound Exposure Level, and 60 fewer people being exposed to the Day-Night Average Sound Level. The assessment also reported that this second option had "no significant noise impact associated with it."

*2 Relying on the findings of the consultants in the environmental assessment, the FAA issued a finding of no significant impact and approved the proposed modification. The recommendations of the second option were then implemented at Bradley in October 2000.

The plaintiffs are property owners in East Granby and live in an area affected by the runway changes. The complaint alleges the improper procedure in creating and implementing the assessment, along with the use of outdated technology and faulty testing procedures to evaluate the potential harm caused by the runway change, have resulted in an unreasonable increase of air traffic noise amounting to a wrongful taking of their property, a diminished property value, and adverse health problems. Specifically, the plaintiffs allege that the review and comment requirements of §§ 22a-1d and 1e were not followed. Sections 22a-1d and 1e require public inspection and comment on environmental assessments that are created by state agencies responsible for recommending actions that affect the environment.

II

ConnDot seeks to dismiss this action claiming sovereign immunity, lack of standing by the plaintiffs and federal preemption. The plaintiffs claim standing under General Statutes § 22a-16, which provides that any person may sue the state for declarative and injunctive relief to protect the public trust in natural resources of the state.

The court is aware of the recent Connecticut Supreme Court decision in *Connecticut Coalition v. Millstone v. Rocque*, 267 Conn. 116 (2003), which held that the plaintiffs in that case have no standing under § 22a-16 to raise licensing claims when an administrative agency or state commissioner has exclusive jurisdiction to consider the environmental issues raised. In *Connecticut Coalition*, and the line of cases it relies on, actions were brought under § 22a-16 alleging that unreasonable environmental harm resulted from an agency's issuance of improper, invalid, or otherwise impermissible permits to third-party polluters. The determination that the plaintiffs in those cases did not have standing under § 22a-16 results from the court's reasoning that the agency action was only indirectly related to the claimed pollution, and the agency had exclusive jurisdiction over the matter under the licensing statutes. "Where the alleged conduct involves a permitting claim ... there is no standing pursuant to § 22a-16 to bring the claim directly in the Superior Court and the claim must be resolved under the provisions of the appropriate licensing statutes." *Connecticut Coalition Against Millstone v. Rocque, supra*, 267 Conn. at 148.

The facts in this case are quite distinguishable. The plaintiffs here allege that unreasonable environmental harm resulted when ConnDot failed to follow review and comment procedures. The plaintiffs, unlike those in *Connecticut Coalition,* are alleging that ConnDot's actions, and not the actions of a third-party polluter, have *directly* caused the unreasonable harm to the environment. In this case, the prior agency action does not involve a licensing procedure. Paragraph 39 of the First Count of the Amended Complaint specifically alleges "pollution, impairment or destruction of the public trust in the air and other natural resources of the state." The plaintiffs allege that ConnDot created the pollution while acting under its authority to regulate and change take-off procedures at Bradley. This allegation goes directly to ConnDot's involvement in the alleged pollution and does not involve an indirect action like that of an agency issuing a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                Page 3

Not Reported in A.2d, 2004 WL 335191 (Conn.Super.), 36 Conn. L. Rptr. 523
(Cite as: Not Reported in A.2d)

permit to a third-party polluter or otherwise exercising an exclusive jurisdiction.

*3 Our legislature has provided the plaintiffs with standing to bring action against state agencies under § 22a-16, and thereby created an exception to sovereign immunity. See *White v. Burns*, 213 Conn. 307 (1990), *Animal Rights v. Rocque*, 1998 Ct.Sup. 4102 (1999). We do not read *Connecticut Coalition* as limiting this broad exception with respect to this action.

### III

Furthermore, we find no merit in ConnDot's claim of federal preemption. "The regulation of excessive aircraft noise has traditionally been a cooperative enterprise, in which both federal authority and local airport proprietors play an important part." *British Airways v. Port Authority of New York*, 558 F.2d 75 (2nd Cir.1977). "Since the operator controls the location of the facility, acquires the property and air easements and is often able to assure compatible land use, he is liable for compensable takings by low-flying aircraft .... The right of the proprietor to limit his liability by restricting the use of his airport has been thought a corollary of this principle. It is perhaps more important, however, that the inherently local aspect of noise control can be most effectively left to the operator, as the unitary local authority who controls airport access." *Id.* Under this reasoning it is clear that noise control, as a proprietary function of ConnDot, is a shared enterprise between state agencies and the FAA. Because it is a shared enterprise, this court cannot conclude that the actions involved are preempted by the federal government.

For the foregoing reasons, ConnDot's motion to dismiss count two of the complaint is denied.

### IV

In count three, the plaintiffs allege professional negligence, and the consultants bring two identical motions to strike it. The consultants state that as third-party consultants of the state, they owe no duty to the plaintiffs. The plaintiffs argue that the consultants acted as agents of the state and are therefore liable for the alleged damage to the plaintiffs and their property.

While a contractual agreement can create a duty to a third party, it can only do so if the harm to that third party is foreseeable. "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Coburn v. Lenox Homes, Inc.*, 186 Conn. 370, 375 (1982). "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendants position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 572 (1998).

*4 The plaintiffs allege that the contractors owed them a duty when creating the environmental assessment for ConnDot, and as residents of the affected area, the potential harm to them is foreseeable. A motion to strike looks at the sufficiency of the allegations in the complaint not the probability of proving the allegations. The plaintiffs have alleged that it is foreseeable that when contractors are hired to create an environmental assessment pursuant to state and federal environmental regulations, their negligent performance of that task could lead to harm to the environment in general, and the residents of the affected area in particular. We conclude that for the purposes of this motion to strike, the plaintiffs have sufficiently alleged that harm to them was foreseeable.

The motion to strike is denied.

Conn.Super.,2004.
Giuliano v. State Dept. of Transp.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d     Page 4

Not Reported in A.2d, 2004 WL 335191 (Conn.Super.), 36 Conn. L. Rptr. 523
**(Cite as: Not Reported in A.2d)**

Not Reported in A.2d, 2004 WL 335191 (Conn.Super.), 36 Conn. L. Rptr. 523

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

Not Reported in A.2d                                                                                                                                   Page 1

Not Reported in A.2d, 1998 WL 203403 (Conn.Super.), 22 Conn. L. Rptr. 26
(Cite as: Not Reported in A.2d)

H
Front v. Rocque
Conn.Super.,1998.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut.
ANIMAL RIGHTS FRONT
v.
Arthur ROCQUE, Commissioner, Department of Environmental Protection
No. PJR CV 97-0575920S.

April 16, 1998.

MEMORANDUM OF DECISION, RE: MOTION TO DISMISS

ONEILL.

*1 Plaintiff brings this action seeking a temporary injunction to restrain defendant from "causing, permitting, participating in or sanctioning actions which ... are likely to result in the killing of fawn deer." Defendant moves to dismiss because the court lacks subject matter jurisdiction for a variety of reasons. This action was commenced by service of process on December 12, 1997.

Facts Alleged

The plaintiff is a Connecticut non-profit organization dedicated to public education and animal protection. Some of its members are Connecticut residents.

The defendant is Commissioner of the Department of Environmental Protection and is the administrative head of the State Department of Environmental Protection (Department) which has jurisdiction over all matters relating to the preservation and protection of the air, water, and other natural resources of the state, pursuant to Conn. Gen. State. Sec. 29a-2(a).

The plaintiff has standing to bring suit for declaratory and equitable relief against defendant pursuant to C.G.S. § 22a-16.

On January 2, 1996, the Department pursuant to Conn. State Reg. Sec. 26-86a-11 and Special Regulations Sec. 23-4-4, implemented a controlled hunt (Hunt # 1) at Bluff Point Coastal Reserve in Groton, Connecticut.

Hunt # 1 involved hunters licensed by the Department, chosen by a lottery system conducted by it and conducted under its supervision. It lasted 8.5 days.

In that hunt, 53 fawn deer were killed by said hunters with full knowledge of the Department staff. Immediately after the hunt, on January 12, 1996, the Department staff killed 1 additional fawn deer. These killings resulted in the complete destruction of the fawn deer population in that area.

The Department claims the authority to implement future deer reduction measures at Bluff Point Coastal Reserve during any year, by any legal method, to remove as many deer as the Commissioner deems necessary.

On September 18, 1996, the Department began a controlled archery hunt (Hunt # 2) in the Groton Long Point Community Wildlife Refuge.

Hunt # 2 involved hunters licensed by the Department, chosen by a lottery system conducted by it and conducted under its supervision. Hunt # 2 lasted through December 7, 1996.

During the period of Hunt # 2, 3 fawn deer were killed by hunters with full knowledge on the part of the Department. This killing resulted in the complete destruction of the fawn deer population in that area.

The DEP engaged in another controlled archery

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 2

Not Reported in A.2d, 1998 WL 203403 (Conn.Super.), 22 Conn. L. Rptr. 26
**(Cite as: Not Reported in A.2d)**

hunt (Hunt # 3) in the Groton Long Point Community Wildlife Refuge. This hunt was scheduled to continue until December 21, 1997.

The responsibility for enforcing compliance with state environmental laws, statutes and regulations pertaining to wildlife rests with the defendant, Department, under Conn. Gen. Statutes. Sec. 22a-2, 22a-5, 22a-5a and Conn. Regs. Secs. 22a-1-1, 22a-1a-3, 23-4-1, 23-4-4, 26-86a-11.

In causing, permitting, or otherwise participating in the killing of fawn deer by the implementation of controlled hunts at Bluff Point Coastal Reserve and Groton Long Point the defendant has violated, is violating and unless restrained by this court will continue to violate the provisions of Conn. Gen.Stat. 22a-16 in one or more of the following ways:

*2 a. The defendant's conduct is reasonably likely to unreasonably impair or destroy the public trust in wildlife, a natural resource of the state.

b. The defendant's conduct is reasonably likely to unreasonably impair or destroy the public trust in wildlife, a natural resource of the state. in that the killing of fawn deer is a violation of Conn. Gen.Stat. Sec. 26-86f.

The plaintiff is threatened with immediate and irreparable injury if the defendant is permitted to continue the controlled archery hunt at Groton Long Point Wildlife Refuge or commence another hunt or engage in the killing of deer at Bluff Point Coastal Reserve and the plaintiff has no adequate remedy at law.

In addition the court has read the affidavit submitted by plaintiff and the two submitted by defendant. The court also held a hearing in regard to the present motion.

The defendant contests many of these factual allegations.

It is a criminal offense to kill fawn deer. C.G.S. § 26-86f. The penalty is set out in C.G.S. § 26-90.

LAW

I. Justifiable Controversy

No hunts are now taking place; none are scheduled and none are planned to take place at any specific time in the future. Because of that situation defendant claims that there is now no justifiable controversy and thus the question is moot. As a result defendant says plaintiff has no standing.

There is an exception to this rule. Even if there are now no hunts ongoing, scheduled or planned for a specific time, it is clear that the hunts plaintiff seeks to enjoin are not only capable of repetition but the Department's regulations establish future hunts as a policy. Thus, hunts are capable of repetition and almost certainly will recur.

From the record, including the Dot Hayes affidavit, the hunts could easily avoid review.

In addition, for an issue to be justifiable it must lead to some practical relief to the plaintiff. *Hallas v. Windsor,* 212 Conn. 338, 347, 562 A.2d 499. The present issue is not academic and an injunction is capable of leading to practical relief to plaintiff to prevent the injury to some of our natural resources.

II. Statutory Right of Action

The plaintiff claims standing under C.G.S. § 22a-16. That section provides that any person may sue the state for declarative and injunctive relief to protect the public trust in the natural resources of the state. This it has alleged and so has standing. *Manchester Environmental Coalition v. Stockton,* 184 Conn. 51, 56-57, 441 A.2d 68.

III. Sovereign Immunity

The legislature has given standing to the plaintiff under C.G.S. § 22a-16 and this is an exception to the imposition of the doctrine of sovereign immunity. *White v. Burns,* 213 Conn. 307, 312, 567 A.2d 1195. It is true that this statute is in derogation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 3

Not Reported in A.2d, 1998 WL 203403 (Conn.Super.), 22 Conn. L. Rptr. 26
(Cite as: Not Reported in A.2d)

of the state's immunity from suit and must be strictly construed. *DeFonce Construction Corporation v. State,* 198 Conn. 185, 188, 501 A.2d 745.

### IV. Enforcement of C.G.S. § 26-86f

*3 No one is allowed to kill fawn deer in Connecticut. C.G.S. § 26-86f.

The exceptions to the general rule of sovereign immunity are 1) clear waiver by the state; 2) suits for declaratory judgment alleging unconstitutional action by state officials; *Anselmo v. Cox,* 135 Conn. 78, 81-82; , 60 A.2d 767 3) claims for violation of article first § 11 of the Connecticut Constitution; *Horton v. Meskill,* 172 Conn. 615, 376 A.2d 359; *Senter v. Board of Trustees,* 184 Conn. 339, 343; , 439 A.2d 1033 4) willful or wanton actions by state officials.

This plaintiff seeks a declaratory judgment. That request for relief does not seek to control the activities of the state and is thus permitted. *Textron, Inc v. Wood,* 167 Conn. 334, 340-42, 355 A.2d 307.

Plaintiff also seeks a permanent injunction to prevent defendant from "participating in the killing of deer under one year of age," [FN1] and "costs and attorneys fees under C.G.S. § 22a-18."

> FN1. A fawn is a deer less than one year old. *Webster's New World Dictionary 1979.*

To prevent the state from killing all deer is beyond the power of this court. But killing fawn deer by anyone is prohibited by statute.

As the defendant states in his memorandum of February 3, 1998, "Conn. Gen.Stat. § 22a-16 provides standing for a plaintiff to seek declaratory and equitable relief against the state for *conduct* which is likely to ... impair or destroy the public trust in ... other natural resources of the state" at 8 (underlining in original).

Our C.G.S. § 22a-17 refers to "the conduct of the defendant, acting alone or in combination with others, has or is reasonably likely unreasonably to ... destroy the public trust in ... other natural resources ..." The conduct of defendant alleged here is in combination with others and is reasonably likely to unreasonably destroy the public trust in our natural resource of deer. Thus the plaintiff has standing to bring this action under C.G.S. § 22a-16 under the most strict construction.[FN2]

> FN2. "Statutes such as the EPA are remedial in nature and should be liberally construed." *Manchester Environmental Coalition v. Stockton,* 184 Conn. 51, 57, 441 A.2d 68 (a suit against the state).

As the defendant states in footnote 2 of his memorandum. *supra* p. 9, referring to the act in question. Representative Francis Collins said. "It may well prod those [state] agencies into more thorough and responsive carrying out of legislative programs." Certainly the prohibition against killing fawn deer is a "legislative program." C.G.S. § 26-86f. The defendant has violated that statute and is reasonably likely to do so again. Of course, the plaintiff has not asked for the enforcement of that statute here.

### V. Other Parties

This action is brought only against the defendant. No order against him will have any legal affect on any other parties.

Finally, if the police now were to arrest any of the hunters could they hide behind their hunting licenses and the permission and participation of the department to say we are allowed to kill fawn deer? I think not.

*4 Motion to dismiss is denied.

O'NEILL. J.
Conn.Super.,1998.
Animal Rights Front v. Rocque
Not Reported in A.2d, 1998 WL 203403 (Conn.Super.), 22 Conn. L. Rptr. 26

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 4

Not Reported in A.2d, 1998 WL 203403 (Conn.Super.), 22 Conn. L. Rptr. 26
**(Cite as: Not Reported in A.2d)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.