$K$



Not Reported in A.2d                                                                                          Page 1

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

▷
Ward v. Town of New Canaan
Conn.Super.,1998.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Connecticut.
Richard WARD et al.
v.
TOWN OF NEW CANAAN et al.
No. CV 960155374S.

Feb. 19, 1998.

Memorandum of Decision
DANDREA, J.
**\*1** The plaintiffs here are owners of residential
property adjacent to the West Elementary School in
New Canaan. In 1995, in furtherance of a plan to
expand the school building and the adjacent play
field, the defendant Town of New Canaan (the "
Town") applied to the defendant Environmental
Commission of the Town of New Canaan ("
Commission") for a permit to enable the Town to
perform the expansion of the field. On June 19,
1995, the Commission granted the request, issuing a
license containing certain standard and special
conditions. No public hearing was held by the
Commission, and no notice of the pendency of the
application was given to the plaintiffs or other
adjacent property owners.

The school sits on 47 acres of land, the easterly
portion of which contains wetlands and
watercourses, as does the property of the plaintiff
Schmitz adjoining on the east. The required survey
submitted with the application shows only one of
the two wetland areas situated on school property.
The application for the license received into
evidence did not contain other information,
substantial in nature, required to be included.

In about March 1996 the Town commenced work

on the field in accordance with the approved plans
by beginning the removal of trees on the easterly
end of the existing field. By the time of this
hearing the work on the field was substantially
completed.

The plaintiffs commenced this action in November
1996 against the defendant Town of New Canaan
and the defendant Environmental Commission
claiming that they have violated the provisions of
the state Environmental Protection Act, the state
Inland Wetlands and Watercourses Act, ("IWWA"
), and the Town of New Canaan's own Inland
Wetlands and Watercourse Regulations ("IWWR").
[FN1] The plaintiffs claim that these violations have
resulted in substantial, permanent and continuing
damage to the wetlands both on the town's property
as well as that of Richard Schmitz. They further
contend that the defendant Town, by illegally
excavating within 50 feet of the property line of the
plaintiff Richard S. Ward, has increased the flow of
water on his property, causing ponding, erosion and
channels. In addition to their claims of statutory
and regulatory violations, the plaintiffs include in
their complaint counts alleging trespass, negligence
or intentional conduct, and private nuisance.

> FN1. Other named defendants are: A.
> Briggs Geddis, the administrative agent of
> the Commission, Fletcher/Thompson, Inc.,
> the project's architects and Ashforth
> Properties Construction, Inc., d/b/a A.P.
> Construction Co. During the course of
> this hearing, the plaintiffs withdrew their
> claim for a temporary injunction against
> Fletcher/Thompson and A.P. Construction.

From the evidence presented at the hearing, the
court can reasonably find the following facts. In
the construction of the new field, the Town cut a
swath of trees some 80-100 feet wide, elevated the
field by 1 to 5 feet, and created a slope significantly
steeper than the former slope of the land into the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
(Cite as: Not Reported in A.2d)

area of the existing wetlands. In elevating the field the Town performed excavation within 50 feet of the adjacent property line of the plaintiff Ward. Some 1,000 cubic yards of top soil was excavated from the site and replaced with compacted fill.

The Town property contains two wetlands, the larger of which is situated easterly of a smaller one. The plaintiff Schmitz' property also contains wetland areas.

**\*2** The plaintiff's expert, Ken Stevens, a certified soil scientist, testified that the toe of the new slope is no more than 25 feet from the wetlands.[FN2] He found substantial fresh sedimentation and erosion in both wetland areas, and in the area of the stone wall dividing the Schmitz property to the east from the Town land. He testified to the existence of channels and the widening of existing watercourses. Mr. Stevens stated his opinion that this erosion damage to the wetlands areas was caused by the work on the Town's field. He was joined in this view by another expert witness called by the plaintiffs, Joseph Risoli, a hydrological engineer, who testified that the elevating of the field, the cutting of trees, removal of top soil and replacement with compacted field, and increasing the grade of the slope, all resulted in such an increase in the velocity of the flow of water from the field into the wetlands to the east as to cause severe and permanent impairment of the wetlands. There was also evidence of a concavity in the wetland areas, further exacerbating the damage. Mr. Risoli also testified that the excavation near the Ward property was causing increased ponding and new channels and erosion on that plaintiff's property adjacent to the Town's field to the north.

> FN2. There is evidence that the slope was in fact placed directly on top of the smaller wetland area. This theory is supported by the dimensions shown on the sketch of Marc Beroz, the defendants' soil scientist. In any event, it is clear that this wetland is within a 25-foot buffer of regulated activity. The defendants claim that the toe of the slope is some 80 feet from this wetland.

As to the Schmitz property, there is substantial evidence, uncontroverted, that erosion damage had occurred and continues to occur in the wetland areas. Mr. Stevens testified that the fact that the erosion was recent could be discerned from the soil color and vertical slopes. Channels had appeared on the Schmitz property which were nonexistent prior to the work on the Town property. The Town argues that heavy rains in October 1996, can account for the increased water flows and any temporary damages. Both plaintiffs testified, however, that they observed the sedimentation and erosion prior to October 1996 and shortly after commencement of construction on the field. Mr. Schmitz, a 22-year resident of the premises, and a frequent observer of his own wooded areas, had never noticed the channels and erosion which appeared after the changes to the school property.

The court is led to the inescapable conclusion, by substantial and the more credible evidence, that the wetlands on the Town property and on that of plaintiff Schmitz have been recently and severely damaged, continue to be impaired, and that this damage will continue into the future unless abated.

The court also finds that water damage has occurred on the Ward property. The court finds further from the credible evidence in the case, including the testimony of the plaintiff's witnesses, that the cause of this damage, accelerated velocity and accelerated erosion, is the construction performed by the Town on its property upland to the wetlands involved.[FN3] Contributing factors are the cutting of trees and removal of substantial forest land, the elevating of the field by from 0 to 5 feet, the placing of compacted fill in place of large amounts of top soil, making steeper the slope of the land directly into the wetland area, failure to take effective sedimentation and erosion protection measures, all resulting in a significant increase in the velocity of the water runoff from the field easterly into the remaining wooded areas.[FN4]

> FN3. The court found unconvincing the Town's claims that any damage done was caused by heavy October rains in 1996; that once stabilized with grass, the field would cease to present an environmental

Not Reported in A.2d

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
(Cite as: Not Reported in A.2d)

Page 3

problem; that the nearest wetland is at least 80 feet from the toe of the new slope, and that the nature of the vegetation found in certain areas of the wooden land suggests that the extent of the wetlands is not as claimed by the plaintiff.

FN4. The siltation fence installed by the defendants at the toe of the slope was ineffective. There was also no evidence that the proper installation of such fence would have substantially reduced the damage.

*3 There was no evidence contradicting the opinion of the plaintiff's expert, Mr. Risoli, that there was an increase in velocity of the water, and that increases in velocity caused increased erosion in the low lying areas. Finally, even had the direct evidence not been overwhelming, which it was, logic and reason compel one to conclude that the only substantial event being the reconfiguration and construction of the upland field, such event is inescapably the cause of the erosion, sedimentation and intensification of channels never observed prior thereto. The court is required by the evidence and by reason to find that the Town has caused and is causing damage to the existing wetlands on its own property and on that of its neighbors.

The State of Connecticut has clearly and emphatically stated its policy with respect to the preservation and protection of the State's natural resources, including its water resources. See C.G.S. § 22a-14 et seq., the Environmental Protection Act, and C.G.S. § 22a-36 et seq., the Inland Wetlands and Watercourses Act. By this legislation, private citizens are granted the right to bring actions to halt activity made illegal by the Acts, including injunctive relief against another person or municipality, C.G.S. § 22a-16; C.G.S. § 22a-44(b).

The State has also placed upon the municipalities the obligation to regulate and enforce the provisions of these legislative pronouncements by enacting its own ordinances and procedures to achieve the purpose of the stated policies. In furtherance thereof, the Town has adopted its own Inland

Wetlands and Watercourse Regulations ("IWWR"). Code of the Town of New Canaan, § 61 et seq.[FN5] ] Section 61-5.2 of the Regulations obligates the Commission to regulate "... any operation or use which removes, deposits, or relocates material within a wetland or watercourse; or obstructs, constructs, alters, or pollutes a wetland or watercourse; ... or disturbs the natural and indigenous character of a wetland or watercourse." Wetlands and watercourses are included in " regulated areas"; § 61-5.3 IWWR; regulated areas also include areas where any part of a regulated activity is within 25 feet of a designated wetland or watercourse. The area of the Town's property to the east of the newly constructed field contains wetlands by definition. See § 61-6.1 IWWR.

FN5. Section 61-1.2 of the Regulations reads as follows:
The purpose of these Wetlands Regulations is to invoke and make effective in and for the Town of New Canaan the provisions of "The Inland Wetlands and Watercourses Act", §§ 22a-36 through 22a-45, inclusive, chapter 440 of the Connecticut General Statutes, as now or hereafter amended.

The Regulations require that no regulated activity be conducted without a permit granted by the Commission, and any application for such a permit must be submitted by the persons wishing to carry out the regulated activity. § 61-8.1 IWWR. This application requires extensive information to be submitted by the applicant, including the names and addresses of adjacent property owners. Section 61-8.3(f)IWWR. This section also mandates "[t]he applicant shall, by certified mail, return receipt requested, advise adjacent property owners of the proposed activity; and submit copies of said letters and return receipts with the application." It is undisputed that in this case no such notice was given to the adjacent owners.

*4 The court concludes that this failure to follow the notification procedures set forth by the regulations represents a fatal flaw in the license process herein. The delegation by the State to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

municipalities of the obligation to regulate wetlands and watercourses includes the establishment of regulations "... necessary to protect the wetlands and watercourses within its territorial limits." C.G.S. 22a-42(c). The court finds the notification to property owners requirement of § 61-8.3(f) IWWR to be authorized by the IWWA and to be appropriate to further the environmental policies of the state.[FN6]

> FN6. The defendants have not disputed the Commission's authority to promulgate § 61-8.3(f) of its regulations.

The purpose of notice requirements "... is to advise all affected parties of the opportunity to be heard and to be apprised of the relief sought." *Wright v. Zoning Board of Appeals,* 174 Conn. 488, 491, 391 A.2d 146 (1978); when such notice is required by a municipal ordinance duly adopted, compliance with that ordinance is required. *Id.* 491, 391 A.2d 146. The notice in question here is personal notice, as distinguished from constructive notice by publication. In the latter, failure to follow the requirements of the regulation leaves the agency without jurisdiction and its actions void. See *Maher v. Town and Planning and Zoning Commission,* 154 Conn. 420, 226 A.2d 397 (1967). On the other hand, "[f]ailure to give personal notice to a specific individual is not a jurisdictional defect ... and ... lack of personal notice may be waived by the party entitled to it." *Lauer v. Zoning Commission,* 220 Conn. 455, 462, 600 A.2d 310 (1992). "Personal notice provisions can only be raised by persons entitled to receive notice and if notice is not given the action is voidable and does not affect subject matter jurisdiction." R. Fuller, 9 Conn. Practice, Land Use Law and Practice, sec. 46.1, p. 744 (1993). Neither plaintiff in this case, by conduct or otherwise, waived the notice, but rather by this action seek to void the permit issued. The court thus finds the action of the Commission voidable, the permit void, and the activities of the Town pursuant thereto to be illegal. 61-5.1; 61-5.6, IWWR.

Beyond the failure to comply with IWWR notice provisions, the application suffers from at least one

other material infirmity. The Regulations require a survey be submitted with the application, showing all wetlands. 61-83(g) IWWR. It is undisputed that a wetland existed which was not in fact shown on the survey. Apparently the Town's soil scientist located this wetland and showed it on his sketch, but for whatever reason, the survey which the Commission had before it did not contain this wetland. This is an omission of major significance because the missing wetland is, although smaller than the other, closer to the disturbed areas.[FN7] The Commission issued a permit to the Town, apparently believing that the nearest wetland to the toe of the new slope of the field was some 200 feet away. Had it been aware that there was another area within 25 feet or closer to the construction activity, it may well have felt the need for a public hearing.[FN8] In any event, the Commission acted upon an application which violated the provisions of the IWWR [FN9] and the Town performed construction work affecting a regulated area upon a flawed application and pursuant to an invalid permit violating the provisions of the IWWA, C.G.S. §§ 22a-36 to 22a-45, as well as regulations adopted by the town of New Canaan. The damage done must be addressed by the court.

> FN7. See footnote 2.

> FN8. One can also infer that had the plaintiffs been properly notified of the pendency of this application, they might have prevailed upon the Commission to hold a public hearing on an application which was more significant that the Commission was led to believe.

> FN9. There are other defects in the Town's application to the Commission, such as the omission of a statement as to the volume of materials to be deposited or removed from the site, although testimony revealed that some 1,000 cubic yards of top soil was removed and replaced with compacted fill. See IWWR § 61-8.3(j) There was no evidence on the record that the Commission considered any alternatives to the proposal as required by statute. See

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 5

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
(Cite as: Not Reported in A.2d)

C.G.S. §§ 22a-41(2); 22a-42(e); 22a-19(b). Certain conditions of even the invalid license were not complied with; for example, the contractor's compliance certificate was never obtained, the required sedimentation control measures installed were ineffective, and excavation was performed within 50 feet of a property line. See New Canaan Code, § 60-20.3(C); 60-20.3(A).

*5 The plaintiffs ask the court to issue a temporary injunction against the defendants to ensure that the damage done will be corrected and further damage stopped.

The Superior Court is empowered to issue an injunction in a case such as this restraining a continuing violation, as well as to issue orders "... directing that the violation be corrected or removed and to assess civil penalties ..." C.G.S. § 22a-44(b). The plaintiffs seek to have the court grant mandatory relief in the form of an order that the defendants take restorative or corrective action to halt the continuing damage and to restore the premises to their former condition. It has been held in Connecticut that a court may grant a mandatory temporary injunction. "The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitive in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what would inflict irreparable injury upon [the] complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits." *Stamford v. Kovac,* 228 Conn. 95, 101, 634 A.2d 897 (1993). The status quo, for these purposes, has been defined as "the last actual, peaceable, non-contested condition which preceded the pending controversy." *Id.* 102, 634 A.2d 897. Status quo in this case is the condition of the school's field prior to the commencement of its expansion. The court concludes that a temporary mandatory injunction is an appropriate remedy.

Further, "[t]his case is to be considered differently

from a common law action for injunctive relief where allegations and proof of irreparable harm and lack of an adequate remedy at law are required. The rationale underlying [the] rule that the complainant is relieved of his burden of proving irreparable harm and no adequate remedy at law is that the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted." *Conservation Commission v. Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984). (Citations omitted; internal quotation marks omitted.)

The defendants contend that the court ought to deny injunctive relief because the balance of the equities favor the defendants. In such a case, an injunction may be denied. See *Hartford Electric Light Co. v. Levitz,* 173 Conn. 15, 21, 376 A.2d 381 (1977). The defendants claim that the expansion of West Elementary School represents a major public benefit, and outweighs any benefit accruing to the plaintiffs in protecting the wetlands. There is no evidence, however, that the expanded school could not be operated without the existence of the soccer field with its new dimensions and location.[FN10] On the other hand, the failure to halt the damage being done to the wetlands and watercourses continues to violate state policies embraced in the Inland Wetlands and Watercourses Act and the Environmental Protection Act. The court concludes that the balance of the equities here are tipped in favor of the plaintiffs.

FN10. The defendants also failed to show that measures could not have been taken during the course of construction which would have eliminated or at least

*6 The court further finds that the plaintiffs have a clear legal right, under the facts of this case and the environmental law and regulations that apply, to injunctive relief at this time. It should be noted that hearings on this matter consumed more than 25 trial days from February 1997 until July 1997, included testimony from a number of expert witnesses called by both sides, and 137 exhibits

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

were admitted into evidence. Notwithstanding the temporary nature of this proceeding, the court has no doubt that it has received sufficient evidence to warrant the granting of an injunction.

The defendants raise the defense that the plaintiffs failed to exhaust their administrative remedies, as well as the defense of governmental immunity. The court will not address again in any detail the provisions of C.G.S. § 22a-36, et seq., and § 22a-14 , et seq., which set out the important interest the state has in protecting our natural resources, including wetlands and watercourses, nor will it repeat the language of the statutes granting any person the right to seek redress in the superior court. C.G.S. § 22a-16; § 22a-44. The court adopts the reasoning and the conclusions of Lewis, J. in his memorandum of decision in this case dated January 7, 1997, regarding the defendants' motion to dismiss, that the clear language and obvious intent of the statutes are to allow a direct right of action to the superior court, and finds that the principles of exhaustion of administrative remedies and municipal immunity "are not applicable to the present case." Memorandum of decision, January 7, 1997, p. 11, (Lewis, J.)

The defendants further defend on the ground that the town of New Canaan acted in good faith with regard to the construction of the playing field and in obtaining the appropriate license from the Environmental Commission. The defendants fail, however, to cite any authority which would permit a violation of the state statutes and local regulations to escape the consequences of these edicts, because of the good faith of the violator. It is true that the good faith of the defendants may be considered as the court weighs whether or not a mandatory injunction should issue in a particular case. See *Bauby v Krasow,* 107 Conn. 109, 139 A. 508 (1927). I have indeed weighed this element and find that there is no sufficient basis to deny the injunctive relief in this case.

The defendants raise the claim that there was no feasible and prudent alternative to the defendants' conduct. In point of fact, the defendants have not carried their burden of proving the lack of such alternative, or even that the Commission itself

considered any.

Finally, the defendants claim the plaintiffs have limited their recovery to the requests set forth in the proposed Temporary Injunction filed with their complaint. However, it is the plaintiffs' claims for relief contained in their third amended complaint which the court looks to in formulating its relief. The orders that follow are therefore proper and appropriate.

*7 The court concludes that the defendants have violated the provisions of the state Inland Wetlands and Watercourses Act and the Environmental Protection Act as well as the Inland Wetlands and Watercourses Regulations of the Town of New Canaan, and therefore, pursuant to C.G.S. §§ 22a-16 and 22a-44(b), issues the following temporary orders:

(1) The defendant Town of New Canaan is enjoined from using that part of the playing field which lies to the east of the former tree line.

(2) The defendant Town of New Canaan is enjoined from performing any further work upon the field which causes or may cause increased runoff onto or which causes or may cause erosion on its own property and on the properties of the plaintiffs.

(3) The defendant Town of New Canaan shall take such corrective or restorative measures on the property as will eliminate or substantially reduce and limit the damage done or to be done to the wetlands and watercourses presently and in the future.

(4) The defendants are further ordered to prepare a plan of correction/restoration setting forth specifically and in detail proposed measures, including estimated costs, to eliminate or substantially reduce the impairment of the wetlands and watercourses on the school property and on that of the plaintiffs. The plan or plans shall be submitted to the court, and simultaneously to the plaintiffs, within forty-five days of the date of this decision. The plaintiffs may submit counterproposals to the defendants, and to the court, within thirty days of the defendant's submission to the court.

The court, retaining jurisdiction for this purpose, shall hold an evidentiary hearing on the viability of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 7

Not Reported in A.2d, 1998 WL 83161 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

the plans, and reserves the right to issue further
orders at that time. The foregoing orders shall
remain in effect until further order of the court.

The court further reserves consideration of the
imposition of civil penalties, costs, fees, expenses
and reasonable attorneys fees, pursuant to C.G.S. §
22a-44(b).

No bond is required of the plaintiffs.

Because of the court's findings and conclusions
regarding the statutory violations as set forth herein,
it need not address the plaintiffs' claim of
intentional or negligent conduct, trespass, and
nuisance.

So Ordered.

Conn.Super.,1998.
Ward v. Town of New Canaan
Not Reported in A.2d, 1998 WL 83161
(Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.