

Westlaw.

Not Reported in A.2d                                                                                           Page 1

Not Reported in A.2d, 1990 WL 269483 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

MacKenzie v. O'Neill
Conn.Super.,1990.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut, Judicial District of Hartford-New Britain, at Hartford.
Roderick J. MACKENZIE et al.
v.
William A. O'NEILL et al.
No. 367439.

June 13, 1990.

*MEMORANDUM OF DECISION RE MOTION TO DISMISS*

*1 Plaintiff brings this action in two counts for a declaratory judgment

"declaring that the State's plans to construct the Jail (i.e., the WCCCC) without an adequate sedimentation and erosion control plan, to create new stormwater discharges, to construct stormwater detention basins, drainage outlet structures and portions of the loop road within or adjacent to wetlands, to upgrade the proposed construction road from Nunnawauk Road to the Jail site and to conduct any other regulated activity without having applied for or received the necessary permit and/or permits for these activities from the DEP is in violation of the Inland Wetlands and Watercourses Act, Conn.Gen.Stat. § 22a-36 through 22a-45 and the regulations promulgated thereunder;

2. A judgment declaring that the siting and construction of the Jail by defendants is in violation of § 22a-1b(b) of the Connecticut Environmental Policy Act, Conn.Gen.Stat. § 22a-1b(b) and Conn.Agencies Regs. § 22a-1a-1 through 22a-1a-12;"

The plaintiffs also seek the following injunctive relief:

"3. A temporary and permanent injunction barring the State from constructing the Jail without an adequate sedimentation and erosion control plan, from creating new stormwater discharges, from constructing stormwater detention basins and drainage outlet structures and portions of the proposed loop road within or adjacent to wetlands, from upgrading the proposed construction road from Nunnawauk Road to the Jail site and from conducting any other regulated activity or contemplated regulated activity until such time as it applies for an receives the necessary permit and/or permits from the DEP to perform such work;

4. A temporary and permanent injunction barring the construction of the Jail until such time as plaintiffs [sic] prepare an EIE which (a) was conducted prior to making a decision on the proposed action, (b) analyzes alternatives adequately, (c) addresses substantive and significant issues raised during the scoping process, (d) responds to the loss of open space by the development of the site and (e) collects sufficient base data to independently and adequately analyze direct and indirect effects on the Pootatuck Aquifer, wastewater treatment facilities, flooding, erosion and sedimentation, air quality, human health and safety, and traffic and energy conservation;"

Defendants move to dismiss "due to lack of jurisdiction over the subject matter."

*I. Procedural History*

This action was commenced in the Judicial District of Danbury on or about August 7, 1989. A motion to dismiss was filed in that district on August 18, 1989 claiming that the court lacked subject matter jurisdiction for the following reasons: (a) the state may not be sued because of the doctrine of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sovereign immunity; (b) that there are available alternative remedies to the requested declaratory judgment; (c) plaintiffs have failed to exhaust their administrative remedies; and (d) plaintiffs have failed to give notice to "all interested parties." That motion was dismissed (Mottolese, J.) without prejudice on September 12, 1989.

*2 On September 12, 1989 this action was transferred to this Judicial District for Hartford-New Britain.

On September 15, 1989 a second motion to dismiss was filed claiming simply "lack of jurisdiction over the subject matter." The motion to dismiss was argued November 28, 1989.

II. *Facts*

A. *Found*

The defendants in this action are William A. O'Neill, Governor of the State of Connecticut; the State of Connecticut; Leonard G. Barbieri, Deputy Commissioner of the Connecticut Department of Correction (DOC); Anthony V. Milano, Secretary of the Connecticut Office of Policy and Management (OPM); William H. Carbone, Undersecretary of the Connecticut Office of Policy and Management, and Donald Cassin, Commissioner of the Connecticut Department of Public Works (DPW). All the individuals are sued in their official capacities as officers of the State of Connecticut.

The state of Connecticut needs to build secure facilities to hold prisoners. It seeks to build one (the Jail) in the town of Newtown on a 65-acre tract to house some 400 prisoners.

B. *Alleged*

On or about February 1987, the defendants, their agencies, staffs, and consultants purportedly initiated a siting process for the purpose of locating two new correctional facilities.

On or about June 8, 1987 DPW announced it had identified six potential sites for the construction of the Jail. One of those is a 65-acre tract of land on Nunnawauk Road in Newtown, which includes part of the grounds of Fairfield Hills Hospital owned by the Connecticut Department of Mental Health (DMH).

The DPW had previously entered into a contract on or about November 4, 1986 with Antinozzi Associates, P.C. (Antinozzi), an architectural firm, to evaluate the six sites and choose one for the construction of the Jail. On or about July 27, 1987, Antinozzi submitted its final report to DPW. The report selected Newtown as the site for the Jail and on or about July 30, 1987, Cassin publicly announced that the State had selected that site.

On or about April 25, 1988, the DPW entered into a contract with Antinozzi for architectural services in connection with the Jail.

During the summer of 1988, and prior to the preparation of an Environmental Impact Evaluation (EIE), the DMH transferred a parcel of the Fairfield Hills Hospital property in Newtown, including approximately 114 acres, to the DOC.

Approximately 15 acres of the site consist of regulated wetlands.

In October 1988, a draft EIE for the Jail was prepared at the direction of the DOC. Said draft does not comply with the Connecticut Environmental Policy Act (CEPA), General Statutes 22a-1-22a-1h and Connecticut Agencies Regulations 22a-1a-1-22a-1a-12. The EIE listed several permits required for the construction and operation of the proposed Jail.

On or about November 8, 1988, the DPW entered into a contract with Turner Construction Company, Inc. (Turner) of Norwalk, Connecticut for construction management services in connection with the Jail.

In or about January 1989, the DOC released a Record of Decision (ROD), EIE. In February 1989, defendants Barbieri and Carbone, together

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 3
Not Reported in A.2d, 1990 WL 269483 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

with contractors and legal counsel, met with plaintiff Roderick J. MacKenzie (MacKenzie) to address concerns raised by plaintiff Town of Newtown regarding the inadequacies of the EIE.

*3 As a result of the February 1989 meeting, the DOC released a purported revised ROD in April 1989.

On or about May 17, 1989, purportedly in compliance with the CEPA statutes and regulations, the Connecticut Office of Policy and Management made a written determination that the EIE and ROD satisfied the requirements of CEPA.

The drawings for the site grading and utilities for the proposed Jail had been completed in April 1989, well prior to the approval of the EIE and the decision that the environmental impacts were reasonably acceptable.

On or about May 31, 1989, the DPW released the first of five bid packages for the construction of the Jail.

The remaining bid packages are in various stages of preparation and will be released in accordance with a "fast-track" bidding schedule established by the construction manager.

Under the Inland Wetlands and Watercourses Act, General Statutes 22a-36 through 22a-45, a permit is required from the Department of Environmental Protection (the DEP) for any proposed regulated activity conducted by any department, agency or instrumentality of the State, defined as any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution of such wetlands or watercourses.

The site grading and utilities plans and specifications included in the first bid package and made available to Newtown on or about June 6, 1989 demonstrate that the State will be conducting a number of regulated activities within the wetlands boundary. Those site grading and utilities plans and specifications show that the State proposes to create six new stormwater discharges; construct segments of a proposed loop road, a detention basin and several drainage outlet structures within or adjacent to wetlands; and install inadequate soil erosion and sedimentation controls on the site. All of these actions are regulated wetlands activities.

The State plans to construct a proposed primary access road from Nunnawauk Road to the Jail, across an unnamed stream and associated wetlands corridor by bridge.

Until the bridge is constructed, the State plans to use the existing access road from Nunnawauk Road to the Jail site. On or about June 27, 1989, the State announced at a public meeting of the State Traffic Commission (STC) that it will upgrade the wetlands crossing on the proposed construction road to support the weight of construction vehicles and equipment.

The defendants have failed to make application for and/or obtain a DEP permit for the above-described and other regulated activities in violation of the Inland Wetlands and Watercourses Act, 22a-36 through 22a-45 of the General Statutes.

CEPA provides, in part, that:

"Each state department .... responsible for the recommendation or initiation of actions which may significantly affect the environment shall make a detailed written evaluation of its environmental impact .... setting forth:

(a) a description of the proposed action;

*4 (b) the environmental consequences of the proposed action, including direct and indirect effects;

(c) unavoidable adverse environmental effects and irreversible and irretrievable commitments of resources;

(d) proposed mitigation measures;

(e) short and long term economic, social and environmental costs and benefits; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(f) the proposal's effect on the use and conservation of energy resources."

DEP has promulgated regulations implementing CEPA, (Regs. 22a-1a-1-22a-1a-12), and they provide in part that an EIE:

"a. shall provide a full and fair discussion of environmental impacts, inform the public of reasonable alternatives and compare the impacts of the alternatives on the environment;

b. shall not be used to rationalize or justify decisions already made;

c. shall provide for a scoping process to identify significant issues to be analyzed in detail and;

d. shall present an independent evaluation of the proposed action."

Pursuant to CEPA regulations, an EIE is to be prepared in accordance with certain steps as follows:

"a. The sponsoring agency must conduct an early and open scoping process to identify significant issues, 22a-1a-7(c), Conn.Agencies Regs.;

b. Notice of the availability of an EIE must be published, the EIE must be distributed and a time period provided for comment, 22a-1a-8, Conn.Agencies Regs.;

c. A public Record of Decision must be prepared, considering all findings of the EIE and all comments received, 22a-1a-9(b), Conn.Agencies Regs.;

d. The Office of Policy and Management must determine the adequacy of the EIE in accordance with CEPA, 22a-1a-9-(d), Conn.Agencies Regs."

The defendants' approval of the EIE violates CEPA, General Statutes 22a-1 *et seq.*, and the regulations promulgated thereunder, Connecticut Agencies Regulations 22a-1a-1 *et seq.*, in that, *inter alia*:

a. the draft EIE and ROD were prepared and circulated after the decision had been made to site the Jail in Newtown, after the ownership of the Newtown property had been transferred to the DOC, and after the DPW had entered into contracts for architectural and construction management services, and are an *ex post facto* rationalization of the decision;

b. although the defendants held a scoping meeting and a public hearing in Newtown, the draft EIE and ROD failed to analyze a number of significant issues raised during those meetings, including but not limited to: the Route 25 Bypass and integration of the Jail EIE with the Rt. 25 EIE, Jail emergency response plan, future expansion plans for the Jail and long term impacts of DOC use of the site, aesthetic impacts of fencing and lighting, demand upon local services from visitors, change in local demographics and effects on community cohesion, soils engineering analysis, inmate labor and work release programs, safety of the elderly and high school populations, and spread of drug use and communicable diseases;

c. the ROD failed to consider adequately, or at all, significant direct, indirect, short-term, long-term and/or cumulative effects of the Jail proposal related to impacts on air quality, water quality, noise, water supply, flooding, sedimentation and erosion, wetlands, wastewater treatment, human health and safety, land values and traffic, as attested to in the affidavit of Michael J. Toohill, [Attached to the complaint];

*5 d. the draft EIE and ROD failed to independently evaluate the proposed action through the collection of field data or field analysis;

e. the draft EIE and ROD failed to consider adequately, or at all, reasonable alternatives to the Jail proposal and the environmental consequences, including, but not limited to: i) alternative locations, including several parcels in Waterbury identified by the Office of Policy and Management in the spring of 1987 which would have satisfied Executive Order 20 and ii) non-structural alternatives, including bail commission, halfway house beds, supervised home release, probation and electronic surveillance;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 5
Not Reported in A.2d, 1990 WL 269483 (Conn.Super.)
(Cite as: Not Reported in A.2d)

f. the draft EIE and ROD did not fully and adequately consider the economic, social and environmental impacts of the Jail proposal;

g. the Office of Policy and Management both conducted and/or supervised the initial purported site selection process and approved the EIE and ROD, despite conflict of interest.

Defendants' approval of the Jail proposal will create irreparable harm to the plaintiffs in that it:

a. adversely affects the quality of the existing environment within the Town;

b. adversely affects property values;

c. adversely affects the quality and quantity of existing and/or future town and residential water supplies;

d. adversely affects the quality of air, water and noise in the Town;

e. adversely affects flooding, sedimentation and erosion.

Due to the inadequacies in the EIE, the defendants' approval of the Jail is unauthorized by law, illegal, in excess of statutory authority and violative of CEPA, General Statutes 22a-1 *et seq.*

Plaintiffs and the environment will suffer immediate and irreparable harm if defendants are permitted to proceed with the construction of the Jail.

Plaintiffs have no adequate remedy at law.

III. *Law*

A. *Sovereign Immunity*

Plaintiffs bring this action under C.G.S. § 22a-1 through 13 (the Policy Act). This proposed project-the building of the Jail-will involve regulated activities within a wetlands boundary conducted by instrumentalities of the state. Those activities will arguably damage the environment, and thus all the required statutory steps must be taken. C.G.S. § 22a-1 through 13. It is alleged they have not been taken. The plaintiffs follow those allegations by complaining that the defendants have acted in excess of their statutory authority by failing to fulfill those requirements. The doctrine of sovereign immunity does not protect against such conduct. *Doe v. Heintz,* 204 Conn. 17, 31.

B. *Venue*

The issue of venue is moot as the case was transferred to the Hartford-New Britain judicial district. C.G.S. 22a-16.

C. *Procedure Required*

The first two claims for relief seek "A judgment declaring that ...". The third and fourth claims seek injunctive relief.

The court reads those first two claims for relief as requesting a declaratory judgment.

Under C.G.S. § 52-29(a) this court "may declare rights and other legal relationships on request for such a declaration, whether or not further relief is or could be claimed."

*6 In the first claim for relief plaintiffs seek a declaratory judgment "that the State's plans to construct the Jail [with certain alleged deficits] is [sic] in violation of ... Conn.Gen.Stat. § 22a-36 through 22a-45 and the regulations promulgated thereunder;". Under C.G.S. § 4-176(a) "[a]ny person may petition an agency ... for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstance of a provision of the general statutes, [or] a regulation ... on a matter within the jurisdiction of the agency." § § 22a-36 through 22a-45 of the C.G.S. are within the jurisdiction of the DEP. As to whether or not the State's plans are in violation of those sections under the specified circumstances is a question that DEP may be asked to answer by rendering a declaratory ruling. Plaintiffs have not done that.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 6
Not Reported in A.2d, 1990 WL 269483 (Conn.Super.)
(Cite as: Not Reported in A.2d)

After plaintiffs have done that and DEP "does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176" or it will not issue a ruling, then plaintiff "may seek in the superior court a declaratory judgment." C.G.S. § 4-175(a).

At least some cases indicate that this court may have subject matter jurisdiction over an action even if the plaintiffs have failed to exhaust their administrative remedies. *England v Coventry,* 183 Conn. 362, 364; *Connecticut Life & Health Ins. Guaranty Assn. v. Jackson,* 173 Conn. 352.

This court does not have jurisdiction of the subject matter of an action where the plaintiffs have failed to exhaust their administrative remedies, and those remedies are adequate. *Connecticut Mobile Home Assn, Inc. v. Jensen,* 178 Conn. 586, 588-589. C.G.S. § 4-175. This court believes that the plaintiffs' remedies before DEP are adequate.[FN1]

Regardless of that adequacy, under our Practice Book § 390(e) this court "will not render [a] declaratory [judgment] ... where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure." This court unequivocally is of the opinion that plaintiffs should pursue a ruling from DEP before coming to this court.

D. P.B. § 390(d)

Our practice book § 390(d) requires that "all persons having an interest in the subject matter of the complaint" be made parties to an action for a declaratory judgment or at least have reasonable notice of the action. From this defendants argue that the Commissioner of Correction, all the other towns where a jail might be built and certain other persons should be joined in or given notice of this action. In spite of plaintiffs' second claim for relief this is not a "siting" case but an environmental one. (See *Westport v. State,* 204 Conn. 212). Those other towns do not have "an interest" in this particular environmental question.[FN2]

The Commissioner of Correction has had reasonable notice of this action. P.B. § 390(d).

Motion to dismiss is granted.

FN1. cf *England v. Coventry,* 183 Conn. 363, 365-366 where the court found the remedy available was not "a speedy remedy as effective, convenient, appropriate and complete" as the action for a declaratory judgment.

FN2. Of course, "any person ... may maintain an action in the superior court ... for declaratory and equitable relief against the state ... for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction." C.G.S. § 22a-16 (the Protection Act), *Connecticut Water Co. v. Beausoleil,* 204 Conn. 38, 44-45. But this action is brought for violations of the Wetlands Act, C.G.S. §§ 22a-36 through 22a-45, and the Policy Act, C.G.S. §§ 22a-1b(b). The court reads page 7 of the complaint as claiming violations of the Inland Wetlands and Watercourses Act. C.G.S. §§ 22a-36 through 22a-45. In spite of defendants memorandum of September 15, 1989 the court does not see on that page a claim "in violation of the Protection Act", which is found in C.G.S. §§ 22a-14 through 22a-20. As plaintiffs say in their memorandum of September 6, 1989 they claim in the first count under the Wetlands Act and in the second count under the Policy Act.

Conn.Super.,1990.
MacKenzie v. O'Neill
Not Reported in A.2d, 1990 WL 269483 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M

Westlaw.

Not Reported in A.2d                                                                                                      Page 1
Not Reported in A.2d, 1994 WL 112203 (Conn.Super.)
(Cite as: Not Reported in A.2d)

Iovino v. City of Norwich
Conn.,1994.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Connecticut, Judicial District of New London, at Norwich.
Charles R. IOVINO
v.
CITY OF NORWICH, et al.
No. 096913.

March 25, 1994.

MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CITY OF NORWICH
TELLER, Judge.

I

*1 On January 9, 1991, the plaintiff, Charles R. Iovino, filed a three-count amended complaint against the defendants, City of Norwich (hereinafter "Norwich"), and Thomas J. Kirker, Sr. (hereinafter "Kirker"), for damages sustained arising from Kirker's alleged violation of Norwich's zoning regulations. The following facts are alleged against Norwich in count one.

The plaintiff is the owner of the premises located at 6 Royal Oaks Drive in Norwich, Connecticut. Norwich is a municipal corporation, and Kirker is the owner of the premises located at 10 Royal Oak Drive in Norwich, Connecticut, which abuts the plaintiff's premises. The properties owned by the plaintiff and Kirker are located in an area zoned for residential purposes. The operation of Kirker's commercial construction business on said premises is in violation of Norwich's zoning regulations.

Although the plaintiff has requested Norwich to enforce its zoning regulations, Norwich has not taken proper action to abate Kirker's operation. Because of the heavy traffic, constant noise, and dust associated with Kirker's commercial operation, Kirker has interfered with the plaintiff's peaceful and quiet enjoyment of his premises. The plaintiff alleges that these conditions constitute a nuisance.

On March 26, 1993, Norwich filed a motion for summary judgment with a supporting memorandum of law, as to count one of the plaintiff's amended complaint. Norwich filed a supporting affidavit by Henri Lambert, its zoning enforcement officer (hereinafter "ZEO"). Norwich argues that summary judgment should be granted because count one is barred by General Statutes §§ 52-557n(b)(7) and 52-557n(b)(8) and because it is immune from suit pursuant to the doctrine of governmental immunity.[FN1] No opposing memorandum of law or affidavits were then filed.

FN1. It is significant to note, however, that even if General Statutes §§ 52-557n(b)(7) and 52-557n(b)(8) bar the plaintiff's claim for damages, injunctive relief may nevertheless be available, which the plaintiff seeks here. See General Statutes § 52-557n(b) (a municipality "shall not be liable for *damages* to person or property ...") (Emphasis added.)

On April 19, 1993, Norwich's motion for summary judgment was granted without a memorandum of decision. On May 18, 1993, the plaintiff's motion to open the judgment and motion for an extension of time in which to reply to Norwich's motion for summary judgment were granted by the court.

On May 3, 1993, the plaintiff filed his affidavit in opposition to Norwich's motion for summary judgment. In his affidavit, the plaintiff states that Kirker's conduct violates Norwich's zoning regulations and violates the deed restrictions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

common to all properties situated on the subdivision map of Royal Oak Estates. The plaintiff further states that although the ZEO issued a cease and desist order to Kirker on July 6, 1988, the alleged conduct continues.

## II

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citations omitted.) *Wilson v. New Haven,* 213 Conn. 277, 279 (1989). Governmental immunity may be asserted as a ground for a motion for summary judgment. See *Arnette v. Spinola,* 4 CSCR 834, 834-35 (November 3, 1989, Lewis, J.). "Practice Book § 384 provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " (Citations omitted.) *Johnson v. Meehan,* 225 Conn. 528, 534-35 (1993). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citations omitted.) *Connecticut Bank & Trust Co. v. Carriage Lane Associates,* 219 Conn. 772, 781 (1991).

*2 The "party seeking summary judgment has the burden of showing the nonexistence of any material fact...." (Citation omitted.) Id. "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted.) *Connell v. Colwell,* 214 Conn. 242, 246 (1990).

"It is well established that a town may be held liable for injury resulting from a nuisance created and maintained by it." (Citations omitted; internal quotation marks omitted.) *Kostyal v. Cass,* 163 Conn. 92, 98 (1972). Norwich argues that count one is barred as a matter of law by General Statutes §§ 52-557n(b)(7) and 52-557n(b)(8) which provide in relevant part:
Notwithstanding the provisions of subsection (a) of this section,[FN2] a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: ... (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property ... to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances....

FN2. General Statutes § 52-557n(a)(1) provides in relevant part:
a political subdivision of the state may be liable for damages to person or property caused by ... (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; ... (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance....

Thus, although a municipality may not be liable for discretionary actions, liability may be imposed when such actions constitute the creation or participation in the creation of a nuisance or a reckless disregard for health or safety. The plaintiff alleges that Norwich's failure to enforce its zoning regulations permitted the maintenance of a nuisance which interfered with his sleep and quiet enjoyment of his premises. It is also evident that there exists a genuine issue of material fact as to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether Norwich's failure to enforce its zoning regulations constitutes the creation or participation in the creation of a nuisance or a reckless disregard for the plaintiff's health or safety.

### III

Norwich further argues that count one is barred on the ground of governmental immunity but Norwich failed to plead the defense of governmental immunity as a special defense. Ordinarily, a defense of governmental immunity must be pleaded as a special defense. See *Gauvin v. New Haven,* 187 Conn. 180, 184-85 (1982), citing Practice Book § 164 (governmental immunity need not be pleaded as a special defense when governmental immunity is fully litigated at trial). But where "it is apparent from the face of the complaint that the municipality [is] engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant [is] not required to plead governmental immunity as a special defense...." *Brown v. Branford,* 12 Conn.App. 106, 111 n. 3 (1987).

*3 The plaintiff alleges the following in count one: Norwich is a municipal corporation exercising authority under the provisions of General Statutes § 7-148; Norwich has adopted various zoning regulations and its officials have a duty to enforce these zoning regulations. The court may, therefore, find that it is apparent from the face of the plaintiff's amended complaint that Norwich was engaging in a governmental function while in the non performance of its duties complained of by the plaintiff. Therefore, the failure to plead governmental immunity as a special defense does not preclude Norwich from raising it on its present motion for summary judgment.

Norwich argues that count one is barred by governmental immunity because its ZEO performs a discretionary governmental duty. A municipality enjoys limited immunity where the municipality, through its agent or employee, acts in the performance of a governmental or discretionary duty. *Ryszkiewicz v. New Britain,* 193 Conn. 589, 593, (1984); *Gauvin v. New Haven,* supra, 184.

See also *Burns v. Board of Education,* 228 Conn. 640 (1994). Although liability does not ordinarily attach for a negligently performed governmental or discretionary duty; *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 167-68 (1988); determining whether an act is governmental or discretionary "is a factual question which depends upon the nature of the acts complained of." *Gauvin v. New Haven,* supra, 186. Determining whether Norwich's conduct is discretionary is a question of fact. As this is so, there exists a genuine issue of material fact as to whether Norwich is immune from liability because it was performing a discretionary duty. Furthermore, it must be kept in mind that the plaintiff also seeks relief enjoining Norwich to enforce its zoning regulations. Norwich has not cited any case supporting the proposition that such immunity bars an action for injunctive relief such as the plaintiff's and the cases cited by Norwich involve only claims for damages.

In viewing the evidence in the light most favorable to the nonmoving party, Norwich has not met its burden of showing the nonexistence of a material fact. Therefore, Norwich's motion for summary judgment on count one of the plaintiff's amended complaint is denied.

Conn.,1994.
Iovino v. City of Norwich
Not Reported in A.2d, 1994 WL 112203 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.