D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------X
SOUTH LYME PROPERTY OWNERS        :
ASSOCIATION, INC., CHARLES AND    :
VICTORIA PARSONS AND JOAN BYER,   :
    Plaintiffs    :
                :
VS                 : 3:00CV97(EBB)
                :
TOWN OF OLD LYME, TOWN OF OLD     :
LYME ZONING COMMISSION,           :
ERIC FRIES, GEORGE JAMES,         :
JANE MARSH, THOMAS RISOM,         :
WALTER SEIFERT, SHARON COLVIN AND :
MARILYN OZOLS,                    :
    Defendants    :
------------------X

Deposition of MARILYN OZOLS taken at the
offices of Halloran & Sage, 225 Asylum
Street, Hartford, Connecticut, before
Audra Quinn, RPR, Licensed Shorthand Reporter
#106, and Notary Public, in and for the State
of Connecticut on September 30, 2003, at
10:10 a.m.

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE          100 PEARL ST., 14th FL.
MADISON, CT 06443        HARTFORD, CT 06103-4506

Page 1

25

1	issue after he's had an opportunity to review

2	this after the close of this session of the

3	deposition and, if necessary, we would

4	reconvene to deal with that issue.

5	    Does that accurately describe our

6	agreement?

7	    MR. RADSHAW: That's fine.

8 BY MR. SLATER:

9   Q   Ms. Ozols, I'll show you another document

10 that's described as document 2245. It says, "Seasonal

11 Use Only relevant data." Are you familiar with that

12 document?

13   A   (Witness reviewed.)

14	    No.

15   Q   Can you identify the handwriting?

16   A   No.

17   Q   It's true that there was a period of time

18 prior to the issuance of an injunction in this case

19 that you were instructed by the Zoning Commission to

20 accept only document evidence to demonstrate whether a

21 property was actually used during off-season months

22 prior to the 1992 date employed by the Old Lyme zoning

23 regulations. Is that true?

24   A   With a broad interpretation of the word

26

1   Q   Can you clarify what you mean? What do you
2   mean by broad interpretation of the word document?
3   A   I mean the document could have been something
4   as -- unlike what might be considered a document as a
5   picture of the family celebrating Christmas in the
6   building.
7   Q   Let me clarify. It's a policy that would
8   only accept tangible evidence as opposed to testimony
9   to demonstrate that properties were used during
10  off-season months. Does that clarify?
11  A   For the most part, yes.
12  Q   And what part does it not clarify?
13  A   There were probably some instances where -- I
14  don't know. What are you calling testimony?
15  Q   A statement by an individual, either under
16  oath or could be an affidavit form, but a statement
17  that property was used during winter months prior to
18  the target date 1992.
19  A   Yes.
20  Q   And by that answer, just to make sure I
21  understand, that there was a period of time prior to
22  the injunction in which you were instructed not to
23  accept that kind of evidence for the purpose of making
24  a determination of whether a property was seasonal. Is

Marilyn Ozols - 09-30-03                    Page 26

33

1  BY MR. SLATER:

2    Q   Can you identify this document, which is

3  shown as document 2250.

4    A   (Witness reviewed.)

5        It's a copy of an interoffice memo form to

6  the sanitarian to advise him that a property had been

7  determined to be year-round under zoning.

8    Q   Are there any other officials of the town of

9  Old Lyme that you would send a memo if you reached a

10 determination that a particular property is a

11 year-round property?

12   A   No.

13       MR. SLATER:  Let's identify that as

14       MO-9.

15   (THEREUPON, PLAINTIFF'S EXHIBIT NO. MO-9,

16         INTEROFFICE MEMO,

17       WAS MARKED FOR IDENTIFICATION.)

18   Q   As I understand it, there would be three

19 circumstances in which you would reach a seasonal

20 determination under the regulations adopted in 1995.

21 One would be in an instance in which a property owner

22 specifically requests you to make a determination.

23       A second would be if a property owner has

24 filed for either a building permit or some kind of a

1  seasonal determination.

2       And a third would be the street-by-street

3  so-called systematic determinations that your office

4  was undertaking.

5       Is that a fair categorization of the

6  instances in which you would reach a determination

7  regarding seasonal use?

8       MR. RADSHAW: I just want to clarify,

9       this is existing when, because the policies

10      changed in the conduct of this litigation. I

11      want to make sure that your question is

12      properly oriented in time.

13      MR. SLATER: Fair.

14 BY MR. SLATER:

15   Q   And this is prior to -- following the

16 adoption of the 1995 regulations and prior to the

17 issuance of an injunction in the present litigation.

18   A   No.

19   Q   Are there other categories that I've missed?

20   A   No. You didn't have those three right.

21   Q   Could you clarify how my description was

22 incorrect?

23   A   Your second one inferred that there was a

24 determination made for every building or zoning permit

35

1   Q   I didn't mean to imply that. I just meant to
2   imply that within that category, that is the three ways
3   in which a seasonal determination could come before
4   you.
5       Strike that.
6       You'd agree, then, that those three
7   categories are correct. It's just that there are
8   certain instances in which there would be no need for a
9   seasonal determination when someone seeks a building
10  permit or a zoning permit. Is that correct?
11  A   That's correct.
12  Q   Do you have a general sense, I'm sure you
13  haven't added them up, but do you have a general sense
14  of how many instances a property owner actually asked,
15  under the first category I've described, you to make a
16  seasonal determination with respect to their property
17  during that time frame, that is after the adoption of
18  the '95 regulations and prior to the imposition of an
19  injunction?
20  A   No, I really don't.
21  Q   Do you have a sense if more than ten?
22  A   It was certainly more than ten, but it was a
23  long time ago.
24  Q   Could it have been more than 50?

44

1    A    She started it before I started working for

2    Old Lyme. She finished it at home after that, but I

3    believe for the most part it was done before the 1995

4    regulation.

5    Q    Do you know whether some or all of it was

6    completed before amendments were made in the

7    regulations during 1992 that referred to seasonal use

8    as a nonconforming use?

9    A    I don't know when she started it.

10   Q    Did you ever discuss with her or any other --

11   I'll start with her. Did you ever discuss with her the

12   seasonal use issue in general?

13   A    Perhaps very generally.

14   Q    When you were hired, were you made aware that

15   the town of Old Lyme had been undertaking efforts at

16   least as early as the late eighties to restrict

17   off-season use of residential properties that it deemed

18   were seasonal?

19   A    When I was hired I was only aware from what I

20   had read in the newspaper.

21   Q    I know it goes back a number of years, but do

22   you have a general recollection of what you had been

23   reading in the newspaper?

24   A    I believe it was at the time when they had

45

1 were covered in the newspaper.

2   Q   And I'm sorry, I've forgotten and I'm sure

3 you answered it when you went through your history, but

4 when did you first become employed with the town of Old

5 Lyme?

6   A   October, '94.

7   Q   Was there a point in time after you were

8 hired in which any official of the town of Old Lyme or

9 former official outlined for you the enforcement

10 efforts that had gone on prior to the 1995 regulations

11 pertaining to off-season use of properties that had

12 been deemed seasonal by the town?

13   A   I became aware of it from a number of

14 different sources. Nothing that I could specifically

15 identify.

16   Q   You can't identify any persons that brought

17 this to your attention?

18   A   Not as a specific recollection, no.

19   Q   Is it fair to say that the files of the town

20 of Old Lyme zoning enforcement officer included files

21 or records regarding enforcement efforts taken by the

22 town of Old Lyme with respect to off-season use of

23 properties that are deemed seasonal?

24   A   Yes.