6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - - -X
SOUTH LYME PROPERTY OWNERS       :
ASSOCIATION, INC., CHARLES AND   :
VICTORIA PARSONS AND JOAN BYER,  :
       Plaintiffs     :
                  :
VS                   : 3:00CV97(EBB)
                  :
TOWN OF OLD LYME, TOWN OF OLD    :
LYME ZONING COMMISSION,          :
ERIC FRIES, GEORGE JAMES,        :
JANE MARSH, THOMAS RISOM,        :
WALTER SEIFERT, SHARON COLVIN AND  :
MARILYN OZOLS,                   :
       Defendants      :
- - - - - - - - - - - - - - - - - -X



VOLUME II



    Deposition of GEORGE JAMES taken at the
    offices of Halloran & Sage, 225 Asylum
    Street, Hartford, Connecticut, before
    Audra Quinn, RPR, Licensed Shorthand Reporter
    #106, and Notary Public, in and for the State
    of Connecticut on August 15, 2003, at
    1:16 p.m.



DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE          100 PEARL ST., 14th FL
MADISON, CT 06443        HARTFORD, CT 06103-4506 5/03                    **Page 1**

30

1    amendments, the zoning regulations imposed literally no

2    restriction on the duration of a use of a residential

3    home in the town of Old Lyme?

4      A    I can't do that.  As I say, the issue that

5    was -- the legal issue that was brought up was the

6    definition of "use" and that seasonal use needed to be

7    defined and, therefore, there was an active part of our

8    legal adviser to help us make that clear.

9      Q    Were the 1995 amendments adopted for the

10   purpose of environmental protection?

11     A    I would say in an ancillary role, yes.

12     Q    And what existing environmental problem

13   pertained to the use of residential properties in the

14   months of November, December, January and February?

15     A    You had heat.  You had the question of

16   electrical, sound electrical wiring.  You had the

17   question of other building code requirements.  You had

18   to have a foundation.  You had to have a septic system

19   that was working, and you had to have potable water.

20   And if you met those requirements, you were in

21   business.

22     Q    How did any of those issues relate to

23   environmental protection?

24     A    Water, you had to have water, potable water.

**George James testimony - 08/15/03**                    **Page 30**

31

1  functioning. They had to work. Those were the two

2  things that were uppermost in the minds of our

3  sanitarian and health officer, Frank Kneen.

4      Q    Turning back to the uses allowed -- I'll show

5  you a document that's been labeled TR-36 which are

6  excerpts of the zoning regulations, and just by way of

7  background, this document was created by the attorneys

8  for both sides in this case at part of the preliminary

9  injunction hearing and the attachment Tab A refers to

10  the regulations that were in effect prior to January 1,

11  1992. Attachment B is those regulations that were

12  effective on January 1, 1992, and then Attachment C

13  would be regulations in effect on September 15, 1997,

14  i.e. after the adoption of the 1995 amendments.

15         Are you familiar with the fact that the

16  zoning regulations established a table of uses that are

17  allowed in the various zones in the town?

18      A    Various uses in different parts of town, is

19  that what you're saying?

20      Q    Yes. In other words, in every zone, the

21  zoning regulations will establish the uses that are

22  authorized in that particular zone?

23      A    I think that's correct.

24      Q    And turning to Tab B which are the

**George James testimony - 08/15/03**                    **Page 31**

54

1  and that the -- we are encouraged to continue that

2  system. And we, by the very people we are responsible

3  to, and we have in court cases at the Supreme Court

4  level of the State of Connecticut, supported the town's

5  restriction of these -- their right to restrict the use

6  of the property as long as there is some use of the

7  property.

8       So I go to -- I mean, I'm not a legal expert

9  in this matter. We repeatedly, when we get into these

10  conflicts, go to the attorneys and legal counsel to

11  support our position. And I don't know how high, much

12  higher you would go than the Supreme Court of the State

13  of Connecticut for support for this.

14    Q   We'll leave what those cases say and don't

15  say to the cases.

16       My question to you is, can you articulate any

17  benefit to public health and safety served by

18  prohibiting a property owner who is under the

19  circumstances I've just outlined from using his

20  property during off-season months?

21    A   I believe I have just --

22    Q   So whatever those benefits are, it's the ones

23  that you've already outlined?

24    A   I believe so. And then there may be others

**George James testimony - 08/15/03**          **Page 54**

55

1   communities.  We can't walk on them.  We are not

2   allowed in there, to park in there at all.  And, as you

3   know, they may have a fire, and if you had a large

4   number of these people living there, the opportunity to

5   get in and service those during a fire in the winter,

6   particularly, when the snow is on the ground is a real

7   concern.

8         We go to public health and safety.  It's not

9   an arbitrary, one-sided view of the situation.  And

10  when you're supported time and again by the people who

11  are giving you orders from the state level, it seems to

12  me that it's not our business to question those

13  people.

14    Q   Other than the letter that you referenced

15  that came out of the meeting with the Water Pollution

16  Control Authority was so dead set against Point of

17  Woods going forward with a structural solution, what

18  other evidence do you have that the Department of

19  Environmental Protection or any other state authority

20  is supportive of a restriction against private property

21  rights of usage of property during the off-season

22  months in Old Lyme?

23         MR. RADSHAW:  Object to the form of the

24         question.

**George James testimony - 08/15/03**                    **Page 55**

68

1  air in this subject area.

2      When you have a group of more than a thousand

3  dwellings, granted they were purchased as seasonal use

4  and they still are seasonal use, when it works and

5  prevents pollution, then there is some justification

6  for continuing that and that's what we hear from the

7  state, the DEP, the top officials. Jane Stahl is

8  certainly number two up there at the headquarters.

9   Q   Why do you suggest these properties were

10  purchased 30 years ago as seasonal dwellings?

11   A   Why? I haven't got a clue. I wouldn't know

12  why they were purchased.

13   Q   Isn't it true that the zoning regulations

14  which is the basis in which a property owner would

15  understand what use his property is allowed, if

16  adopting the seasonal limitation first occurred in

17  1995, what is the basis for your suggestion that 30

18  years ago property owners understood that they were

19  buying, quote/unquote, seasonal properties?

20      MR. RADSHAW: Object to the form of the

21      question.

22      You can answer, Mr. James.

23   A   I have repeatedly said that the system seems

24  to work, that the people who came to our town, and I

**George James testimony - 08/15/03**                    **Page 68**

69

1  and 1970, you had 30 units were purchased and built as

2  summer cottages.  And that represented more than

3  half -- almost half of all the dwellings that were

4  built in the town, and the number of these houses that

5  have -- cottages that have come to us through the

6  years, certainly the people when they bought them were

7  well aware that that's what they were for, summer use

8  only.

9     Q   How would they be well aware of that when the

10  zoning regulations never said that until 1995?

11         MR. RADSHAW:  Object to the form of the

12         question.

13         You can answer, Mr. James.

14     A   1966, the Old Lyme building ordinance

15  specifically talked about seasonal use and the specific

16  requirements for conversion to year-round use.  Now,

17  that's 1966.  So I don't know where you're getting your

18  1995 date.

19  BY MR. SLATER:

20     Q   So your whole premise on this policy of the

21  Zoning Commission relates back to the housing ordinance

22  that was adopted in 1966?

23     A   No.  What I'm saying is that the people who

24  ran the town of Old Lyme from 1966 until the zoning

**George James testimony - 08/15/03**                    **Page 69**

70

1  confronted with. We didn't sell those people lots,

2  houses, cottages on lots that are 50 by 20 or 40 or

3  whatever they are. So you're forced to obey two

4  masters. One is the Public Health Code and the other

5  is the DEP supposedly supporting our environment.

6  You're required to serve both those masters. Not maybe

7  successfully in the sense that every person who lives

8  in the town is going to be happy with the regulations,

9  but that it has worked.

10    Q   Anything in the '66 housing code prohibit a

11  property owner from using their property in December if

12  they have a code-complying septic system?

13       MR. RADSHAW: Object to the form of the

14       question.

15       You can answer, Mr. James.

16    A   There's plenty in there. It's not the only

17  requirement. Certainly they list, as I think we

18  mentioned before, you had a foundation, you had

19  adequate heat and you had to have electrical inspection

20  and that the building was sound. I think you had to

21  have all those things.

22  BY MR. SLATER:

23    Q   You have all of those things. Anything in

24  the housing ordinance of 1966 prohibit you from using

**George James testimony - 08/15/03**                    **Page 70**

71

1          MR. RADSHAW:  Object to the form of the

2      question.

3          You can answer, Mr. James.

4    A    That became an issue, I think, in the court.

5  That was the issue in the court.  So the answer is I

6  don't know what those Superior Court decisions were in

7  each case, but I know that was an issue.  That was the

8  issue, and if it's the issue, in other words, the use,

9  then I think it was the intent and hope that the

10  regulations could assist those who wanted to make

11  year-round houses that qualified, and for those who did

12  not qualify, again, using our battery of requirements

13  and regulations and recommendations from the state,

14  tried to be fair and still make the system work.

15  BY MR. SLATER:

16    Q    What was the basis for establishing a policy

17  in 1966 against converting seasonal cottages to year

18  round?

19          MR. RADSHAW:  Object to the form of the

20      question.

21    A    Again, what it says is this ordinance was

22  established to specify how you become a year-round user

23  of a seasonal dwelling that normally would have been a

24  summer cottage.  It tells you how to do it.

**George James testimony – 08/15/03**                    **Page 71**

72

1  limitations --

2    A    This is -- I'm sorry, are you asking another

3  question?

4    Q    Yes, I am.  Prior to the adoption of the 1966

5  ordinance, there was nothing in the town of Old Lyme's

6  regulations that would prevent a property owner who has

7  a residential home from using their property at any

8  time of the year.  Isn't that correct?

9        MR. RADSHAW:  Object to the form of the

10       question.

11          You can answer, Mr. James.

12    A    In 1960, there were 1,728 summer cottages

13  designated summer use only.

14  BY MR. SLATER:

15    Q    By whom?

16    A    I don't know, but they were on the cards.

17    Q    Do you know what --

18    A    I haven't got a clue.  I wasn't in town at

19  that time.

20    Q    Have you ever seen any evidence that there

21  was -- any evidence of what the basis for the

22  designations made in 1960 were?

23    A    I have no idea, no.  And this date is out of,

24  I believe out of the 1960 Plan of Development, the

**George James testimony - 08/15/03**                **Page 72**

73

1  fact came from.

2      Q    And you keep talking about the program that

3  works. Is the commencement of this program that has

4  worked that 1960 designation of seasonal properties?

5      A    I don't know. I wasn't here.

6      Q    Well, what do you mean when you're referring

7  to the program has worked. What program?

8          MR. RADSHAW: Object to the form of the

9      question.

10         You can answer, Mr. James.

11     A    Well, the seasonal use dwelling designation

12  based on septic system and those items enumerated in

13  1966 housing ordinance -- I'm sorry, could you read the

14  question again. I'm getting a little groggy.

15  BY MR. SLATER:

16     Q    I can ask the question again.

17         In answering a number of questions you

18  suggested that the program regarding limitations

19  towards seasonal use has worked for 30 years, I believe

20  you said, and I just want to make sure I understand

21  which program you're talking about.

22     A    The word is not program. That's a poor

23  choice of word. The existing designation of seasonal

24  use only is a system that has been in place for about

**George James testimony - 08/15/03**                    **Page 73**

74

1    far as our records can show that is present today.

2       Q    And going back that 35 years, does it go back

3    to the designations you're aware of all the way to

4    1960?

5       A    No.

6       Q    Or 1966?

7       A    I'm just saying that those in 1960, 1,728

8    summer cottages, you wanted to know numbers before.

9    That's a fairly accurate number, I guess, that were

10   designated summer use only.

11      Q    But you have no idea how or why they were

12   designated that way?

13      A    I have no idea, but that's what we were

14   given. You say it's our fault for doing regulations

15   that you dislike or think are incorrect, but you're

16   given -- you inherit a situation and it's not just some

17   arbitrary designation, but it's the fact that you have

18   a lake that was divided up into summer cottages where

19   they were practically next door to each other. They're

20   small lots.

21        And the same was true at the beach. And

22   we're having to live with that situation. Our purpose

23   time and time again is public health and safety, and

24   some property rights obviously have suffered as a

**George James testimony - 08/15/03**                    **Page 74**