UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------X
SOUTH LYME PROPERTY OWNERS       :
ASSOCIATION, INC., CHARLES       :
AND VICTORIA PARSONS             :
AND JOAN BYER,                   :
                                 :
              Plaintiffs,        :
                                 :
         v.                      :     No. 3:00cv97(EBB)
                                 :
TOWN OF OLD LYME, TOWN OF        :
OLD LYME ZONING COMMISSION,      :
ERIC FRIES, GEORGE JAMES,        :
JANE MARSH, THOMAS RISOM,        :
WALTER SEIFERT, SHARON           :
COLVIN AND MARILYN OZOLS,        :
                                 :
              Defendants.        :
-------------------------------X
```

RULING ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS FRIES, JAMES,
MARSH, RISOM, SEIFERT AND COLVIN

The Plaintiffs in this action challenge the adoption and enforcement of certain seasonal use restrictions in the 1995 amendments to the Town of Old Lyme Zoning Regulations. The Plaintiffs claim that the amended regulations violate Connecticut General Statutes §§ 8-2 and 8-2h, Article I, §§ 8 and 10 of the Connecticut Constitution, the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983. The Plaintiffs also claim that the Town has violated the Connecticut Environmental Protection Act ("CEPA"), codified at Conn. Gen. Stat. §§ 22a-16 and 22a-18. The Plaintiffs commenced this action in Connecticut Superior Court in the Judicial District of New London.

1

On January 19, 2000, the Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1443, and 1446, invoking jurisdiction under 28 U.S.C. §§ 1331 and 1343(3).  Defendants Eric Fries, George James, Jane Marsh, Thomas Risom, Walter Seifert, and Sharon Colvin now move for summary judgment on all counts.   For the following reasons, the Defendants' motion (Doc. No. 102) is granted in part and denied in part.

<u>FACTUAL BACKGROUND</u>

    The Court sets forth only those facts deemed necessary for an understanding of the issues raised in, and decision rendered on, this Motion. The following factual summary is based on the Plaintiffs' First Amended Complaint ("Compl." (Doc. No. 24)), the Defendants' Local Rule 56 Statement of Material Facts ("Defs.' Rule 56 Statement" (Doc. No. 104)), and accompanying affidavits, depositions and exhibits, the Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem in Opp." (Doc. No. 103)) and documents cited therein, the Plaintiffs' Local Rule 56 Statement of Material Facts ("Pls.' Rule 56 Statement" (Doc. No. 125)) and accompanying affidavits, depositions and exhibits, the Plaintiffs' Memorandum in Opposition to Certain Defendants' February 20, 2007 Motion for Summary Judgment ("Pls.' Mem. in Opp." (Doc. No. 121)) and documents cited therein, and a hearing that was conducted from April 11 to April 13 of 2000 on Plaintiffs' motion for a preliminary injunction.  ("Tr. 4/11/00," "Tr. 4/12/99" and

"Tr. 4/13/00.")    Consequently, this factual summary does not represent factual findings of the Court.

The Plaintiff South Lyme Property Owners Association, Inc. ("Association") is comprised of approximately 350 property owners in Old Lyme.   The Association was formed for the purpose of invalidating the zoning regulations challenged in this lawsuit. (Compl. ¶¶ 6-7.)   Plaintiffs Charles and Victoria Parsons are or have been the owners of 11 Brookside Avenue, Old Lyme, Connecticut and are members of the Association.  (Compl. ¶ 8.)  Plaintiff Joan Byer is the owner of 61 Breen Avenue, Old Lyme, Connecticut and is a member of the Association. (Compl. ¶ 9.)

Defendants Eric Fries, George James, Jane Marsh, Thomas Risom, Walter Seifert, and Sharon Colvin (collectively the "Defendants") are or were members of the Old Lyme Zoning Commission ("Commission") at all times relevant to this action.  (Compl. ¶ 4.) The Town of Old Lyme ("Town"), the Commission and Old Lyme Zoning Enforcement Officer ("ZEO") Marilyn Ozols are also defendants in this action and have moved for summary judgment separately.  (Doc. No. 106.)  Each of the individual Defendants is sued both in his or her individual and official capacities.  (Compl. ¶ 48.)

<u>The Challenged Regulations</u>

The properties at issue in this case are located in the "R-10" residential zoning district in Old Lyme.  (Compl. ¶¶ 3, 13, 24, 25.) Prior to 1992, the Old Lyme Zoning Regulations ("Pre-1992

Regulations") did not contain any provision restricting the use of an R-10 single-family dwelling, or any other use in a residential district, to a particular time of year or season. (See Pre-1992 Regulations, Art. II, § A.1.). The Pre-1992 Regulations defined a "seasonal dwelling" as a building "designed, used, or intended for seasonal use." (Id. Art. I, § C.57.) The Pre-1992 Regulations also defined "seasonal use" as use of a lot between April 1 and November 15. (Id. Art. I, § C.58). However, the Pre-1992 Regulations did not apply these definitions to the regulations governing prohibited and nonconforming[1] uses and buildings,[2] and, therefore, the Pre-1992 Regulations did not restrict seasonal or year-round use in any particular zone. (See Article I, § E.1.)

---

[1]A "nonconforming" lot, use, or structure is one that is prohibited by a zoning regulation or amendment but which existed lawfully on the date the regulation prohibiting the lot, use or structure became effective, and, therefore, may lawfully be continued. (See Ruling on Plaintiffs Motion for Preliminary Injunction (Doc. No. 21) at 3-4.) See also Conn. Gen. Stat. § 8-2(a); 1992 Regulations, Art. I, § 8.11.9.

[2]Three Connecticut Superior Court cases interpreted these Pre-1992 Regulations in zoning enforcement actions brought against property owners to prevent the use of residential dwellings between November 15 and April 1. In each case, in the context of determining whether the year-round use of a seasonal property constituted an extension or expansion of a pre-existing nonconforming use, the court found that there were no prohibitions in the zoning regulations against the year-round use of seasonal dwellings because, although the regulations include definitions of seasonal use, they do so without restricting that use. See Arcata v. Zoning Board of Appeals, 1993 WL 394500, at *6 (Conn. Super. Ct. Sept. 21, 1993); Habicht v. Zoning Board of Appeals, 1993 WL 284791, at *7 (Conn. Super. Ct. July 22, 1993); French v. Zoning Board of Appeals, 1993 WL 284789, at *7 (Conn. Super. Ct. July 22, 1993).

In 1992, the Commission adopted new zoning regulations ("1992
Regulations") amending the sections governing nonconforming uses
and nonconforming buildings on nonconforming lots to prohibit
winter occupancy and winterization of "seasonal uses" on
nonconforming lots.[3]  (Art. I, §§ 8.7, 8.8.)  The 1992 Regulations
continued to define "seasonal use" and "seasonal dwelling" in the
definitions section, but these definitions did not cross-reference

_____

[3] The 1992 Regulations provided, in relevant part, as
follows:

8.7  <u>Nonconformity - Use:</u> The following provisions and
limitations shall apply to a nonconforming use of land, building
or other structure:

8.7.1    <u>Enlargement</u>:   No nonconforming use of land shall
be enlarged, extended or altered, and no building or other
structure or part thereof devoted to a nonconforming use shall be
enlarged, extended, reconstructed or structurally altered, except
where the result of such changes is to reduce or eliminate the
nonconformity.  *This prohibition specifically includes the
occupancy of a seasonal use beyond the period of April 1 to
November 15 and the winterization, refurbishment or remodeling of
a seasonal dwelling to accommodate other than seasonal use.*

 [...]

8.8 <u>Nonconformity - Improvements</u>: The following provisions
and limitations shall apply to nonconforming buildings and other
structures and site development:

8.8.1    <u>Enlargement</u>:   . . . No building or other
structure located on a lot which does not conform to the
requirements of these Regulations regarding lot area, shape and
frontage, building bulk and coverage or off-street parking shall
be enlarged or extended.  *These prohibitions specifically include
the occupancy of a seasonal use beyond the period of April 1 to
November 15 and the winterization, refurbishment or remodeling of
a seasonal dwelling to accommodate other than seasonal use.*

 (emphasis added).

5

any particular zones or districts.  Therefore, the 1992 Regulations did not place any seasonal restrictions on the use of property in a residential district.  To the contrary, the 1992 Regulations listed single-family dwellings as a permitted use in residential districts, including R-10, without reference to the time of year. (See Art. II, § 21.1, A-1.)

In 1995, the Commission again amended the Regulations ("1995 Regulations").  Most significantly for this dispute, the Commission amended Schedule A-1 of the Regulations, which governs the permitted uses of properties in residential zones.  Under Schedule A-1 of the 1995 Regulations, year-round use of single-family dwellings in residential zones is permitted subject to the "additional standards" set out in Paragraph 21.2, which regulates the conversion of seasonal use dwellings to year-round use as follows:

> a.  No dwelling located in the Town of Old Lyme which on the effective date hereof is a seasonal use dwelling shall be converted to a year-round use dwelling unless an application for such conversion has been approved by the Zoning Enforcement Officer ... under the application requirements and standards set forth in subparagraph c. hereof.
>
> b.  For the purpose of administration of this section, the Zoning Enforcement Officer ... may designate from time to time those properties on which there has been an affirmative determination that there is located thereon a seasonal use dwelling ... The absence of such designation shall merely mean no determination has been made by the Zoning Enforcement Officer of the Town of Old Lyme, and shall not be deemed to be evidence that a dwelling is a year-round use dwelling.
>
> Nothing in this Regulation shall be deemed to preclude a landowner from contesting such designation by

6

> demonstrating to the Zoning Enforcement Officer that the
> designated seasonal use dwelling was a lawfully pre-
> existing non-conforming use, or prior to January 1, 1992
> was a lawfully existing single detached dwelling for one
> family, located on a lot with not more than one such
> dwelling, and that such dwelling was continuously
> maintained as a year-round use dwelling thereafter...

Subparagraph c then sets out the requirements for an application for conversion of a seasonal use to year-round use. Among other requirements, an application for conversion will only be approved if the lot contains a minimum of 10,000 square feet, if there is no more than one dwelling unit on the lot, if the lot is served by a year-round water supply and on-site sewage disposal system both of which must comply with applicable Connecticut Health Department standards, and if the building's heating and electrical systems and insulation comply with the applicable minimum standards for a year-round dwelling. (Art. II, § 21.2.5 (c)).

The 1995 Regulations prohibit conversion to year-round use of these properties despite the fact that the sewage disposal and water systems on the properties may be in compliance with the Connecticut minimum standards for year-round residence and the fact that the properties are fully accessible by roads which serve the year-round use properties in the area. (Compl. ¶ 10; Pls.' Mem. in Opp. at 2.) The limitations on conversion from seasonal to year-round use are the basis of the Plaintiffs' challenge to the 1995 Regulations. In particular, the Plaintiffs complain that the 1995 Regulations prevent conversion to year-round use of some owners' property solely because their lots are smaller than 10,000 square feet. (Compl. ¶ 28.)

The parties offer different versions of how the challenged regulations came to be adopted. The Defendants claim that the minimum size requirement was adopted in response to concerns about public health, safety and welfare. (Defs.' Mem. in Supp. at 15; Defs.' Rule 56 Statement ¶ 7.) Defendant Jane Marsh testified at the hearing on the motion for a preliminary injunction that the 10,000 square foot requirement was adopted out of concern that on-site septic systems in the community near the shoreline had been constructed at too high a density. (Tr. 4/12/00 at 56-58.) Some of the Defendants have testified that the Town and Commission members adopted the seasonal use restrictions because they thought that the restrictions would reduce contamination of wells and pollution of Long Island Sound. (E.g., id.; see also Pls.' Rule 56 Statement Ex. B at 18 (Deposition of Jane Marsh) (stating that it is "obvious" that resting septic systems in the winter will reduce pollution).)

The Plaintiffs, however, contest the notion that the Town and Commission were motivated by environmental concerns when they limited conversion to year-round use in the beach areas. The Plaintiffs claim that the 1995 Regulations are part of a long-term effort to prevent the establishment of year-round residency in the beach communities of Old Lyme by residents who have traditionally spent only the summer months in the area. (Pls.' Mem. in Opp. at 2; see also Tr. 4/12/00 at 61 (Testimony of Jane Marsh) (implying that the term "beach people" is used in Old Lyme to refer to residents who do not use their property on a year-round basis).) The Plaintiffs claim that as early as the 1970s and 1980s, before

8

any concerns about pollution from septic tanks arose, the Town had attempted to restrict year-round use of smaller lots in the beach areas. (Id.; Compl. ¶¶ 13, 17, 29, 30, 31.) According to the Plaintiffs, the 1995 Regulations are part of a continuous attempt to control the character of the town and to resist the establishment of winter residency in the beach areas by "persons in a lower socioeconomic status." (Pls.' Mem in Opp. at 8; Pls.' Rule 56 Statement at 3, ¶ 2; see also id. Ex. B at 12-14, 23-30 (Deposition of Jane Marsh) (describing the "different feeling" and changes in "quality of life" that would result from increased year-round use in a community); id. Ex. L at 74-75 (Deposition of Eric Fries) (explaining that the Commission's rationale in passing the 1995 Regulations was that "there's a lot of character issues that we have considered relative to what's acceptable for a cottage versus what's acceptable for a year-round residence").)

The Plaintiffs further claim that seasonal use restrictions in the 1995 Regulations do not address environmental problems caused by on-site septic systems. They argue that the Town and Commission have taken an inconsistent position in choosing to permit crowded beach communities to exist without public sewage treatment services during the summer months while simultaneously claiming that restrictions on winter use are an effective way of eliminating the risk of pollution from densely constructed on-site septic systems. (Pls.' Mem. in Supp. at 11; Pls.' Rule 56 Statement at 4, ¶ 4.) The Plaintiffs claim that the Commission did not consider any environmental reports or studies prior to adopting the 1995 Regulations. (Pls.' Rule 56 Statement at 3, ¶ 1; see also id. Ex.

9

F at 56 (Deposition of George James) (explaining that "[i]t's a supposition" that restricting winter use will reduce pollution and admitting that the Commission has "no scientific evidence one side or another").)  They also claim, based on a report commissioned by the Plaintiff Association, that there is no evidence of any environmental benefit from seasonal use restrictions. (Id., Ex H.) The Plaintiffs further allege that the Town has willfully neglected to resolve pressing environmental problems in the beach areas by pursuing zoning restrictions instead of implementing the necessary sewer system.  (Compl. ¶¶ 53-62.)

<u>Enforcement of the Challenged Regulations</u>

The 1995 Regulations essentially establish a permit system whereby any property designated for seasonal use must obtain a permit for conversion from seasonal to year-round use.  In order to implement the permit system for conversion the Town must first establish which existing properties are seasonal use and which are year-round use.  Article II, § 21.2.5, of the 1995 Regulations authorizes the ZEO to issue these seasonal determinations but does not set out standards or procedures for the ZEO to follow in making this determination.  As enforced, the Regulations allow a property owner to challenge a seasonal use designation by demonstrating that he or she used the property on a year-round basis prior to 1992, and, therefore, that he or she has a lawful nonconforming use.[4]

---

[4]The Defendants claim that § 8.8.1 of the 1992 Regulations originally prohibited the enlargement or conversion of seasonal properties to year-round properties on non-conforming lots, and, therefore, that 1992 is the relevant benchmark for determining whether a nonconforming year-round use existed and should be

Sometime after the Regulations were adopted, the Commission and ZEO Marilyn Ozols implemented a procedure to evaluate the status of existing properties on a systematic basis, starting with the properties in the beach communities. (Tr. 4/12/00 at 149-51.) She began by making a preliminary determination of seasonal or year-round use based on a review of a given lot's zoning file and other available town records, which include assessor's cards, health department determinations, and building permit applications. (Id. at 150-54.) None of these documents necessarily contain information that accurately reflects whether or not the owner actually used the property in the winter during the relevant years. (Ruling on Pls.' Mot. for Prelim. Inj. at 22-24 (Doc. 21).) Based on this review, the ZEO made a preliminary determination and sent a notice to the property owner informing the owner that he or she had sixty days to provide additional information to contest the ZEO's finding. (Tr. 4/12/00 at 150-51; Tr. 4/13/00 at 72-75.) The additional information accepted by ZEO Ozols was generally limited to independent documentation showing year-round use prior to 1992. For example, she accepted electric bills, oil delivery statements, mail carrier records, rental leases, and school report cards (Tr. 4/13/00 at 80-81.) Acting under instructions from the Commission, ZEO Ozols refused to consider testimonial evidence, such as statements of property owners regarding their actual use of the property before 1992, and corroborating affidavits from neighbors or others with knowledge of the owner's use of the property. (Id.

---

grandfathered.

11

at 107-9.)

DISCUSSION

A.   STANDARD OF REVIEW

The standard for summary judgment is well established.  A moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Konikoff v. Prudential Ins. Co. of America, 234 F.3d 92, 97 (2d Cir. 2000). Upon motion, and following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." Fed R. Civ. P. 56(c).  The evidence of the non-moving party is to be believed, Anderson, 477 U.S. at 255, and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the non-movant may not rest upon the mere allegations or denials of its pleading, see Fed R. Civ. P. 56(e), and "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the non-moving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

B.   STATUTE OF LIMITATIONS

The Defendants argue that the Plaintiffs' claims under 42 U.S.C. § 1983 are barred by the statute of limitations. (Defs.' Mem. In Supp. at 6-8.)  In a suit brought under § 1983 the Court must borrow the "most appropriate or most analogous" state statute of limitations. Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994) (citing Johnson v. Railway Express Agency, 421 U.S. 454, 462 (1975)); see also Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). The parties agree that the appropriate Connecticut statute to borrow in determining the timeliness of the Plaintiffs' § 1983 claims is Conn. Gen. Stat. § 52-577, which provides for a three-year period within which an action must be commenced. (Pls.' Mem. in Opp. at 6; Defs.' Mem. in Supp. at 7.)  See also Lounsbury, 25 F.3d at 134 (holding that § 52-577 applies to claims brought under § 1983). The statutory period applies to claims for both monetary

13

and equitable relief.  Williams v. Walsh, 558 F.2d 667, 671 (2d
Cir. 1977) ("[W]hen ... a suit in aid of a federally-created right
is brought seeking both legal and equitable relief, 'equity will
withhold its remedy if the legal right is barred by the local
statute of limitations'") (quoting Russell v. Todd, 309 U.S. 280,
289 (1940)).  This suit was commenced in state court on December
29, 1999. (Notice of Removal, Doc. 1, ¶ 1.)  The Defendants argue
that the § 1983 claims are accordingly barred because the suit was
initiated more than three years after the June 5, 1995 enactment of
the challenged regulations.  However, the Court finds that the
Plaintiffs' § 1983 claims are not time-barred for two reasons.

    First, under Federal Rule of Civil Procedure 8(c), the statute
of limitations, like other affirmative defenses, "must be asserted
in a party's responsive pleading 'at the earliest possible moment'
and is a personal defense that is waived if not promptly pleaded."
Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) (quoting Santos v.
District Council, 619 F.2d 963, 967 n.5 (2d Cir. 1980))  The
Defendants did not raise the statute of limitations defense in
their responsive pleadings. (See Ans. and Affirmative Defenses to
Pls.' First Am. Compl. (Doc. No. 25); see also Ans. and Affirmative
Defenses (Doc. No. 8).)  The Defendants first raised this
affirmative defense on February 9, 2007, when they filed the motion
presently before the Court.  Having waited until almost five and
one-half years after filing their Answer and Affirmative Defenses

14

to the Plaintiffs' First Amended Complaint, the Defendants certainly did not assert this defense "at the earliest possible moment."

In some cases, the Court may consider an untimely affirmative defense. The Second Circuit has "recognized that 'waiver [of an unpleaded defense] may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party.'" Rose v. AmSouth Bank of Florida, 391 F.3d 63, 65 (2d Cir. 2004) (quoting Am. Fed. Group, Ltd. v. Rothenberg, 136 F.3d 897, 910 (2d Cir. 1998)). "In such circumstances, the district court may construe the motion for summary judgment as a motion to amend the defendant's answer." Saks v. Franklin Covey Co., 316 F.3d 337, 350-51 (2d Cir. 2003). Leave to amend is granted "freely ... when justice so requires." Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). However, the Court "has discretion to deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." Rosenstock, 228 F.3d at 53-54 (quoting Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)). The Defendants have offered no explanation for their inordinate, over five-year delay in raising this affirmative defense. To allow the Defendants to raise an affirmative defense at this point would unduly prejudice the Plaintiffs. By preparing

for trial, engaging in discovery, and litigating a motion for a preliminary injunction, the Plaintiffs have, over the past five and one-half years, committed significant resources to litigating their § 1983 claims.  See Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995) (affirming district court's denial of motion for leave to amend filed two and one-half years after suit was commenced); Evans v. Syracuse City School District, 704 F.2d 44, 46-47 (2d Cir. 1983) ("[T]he longer the delay, the more likely it will result in some prejudice to the nonmoving party in terms of a showing of prejudice.")  The Plaintiffs may also have made strategic choices based on the Defendants' failure to raise this affirmative defense at the appropriate time and would be prejudiced if the Defendants were allowed to take advantage of these decisions by amending their complaint at this point.[5]

Furthermore, the Court has discretion to deny leave to amend in a case such as this where amendment would be "futile." Rosenstock, 228 F.3d at 53 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ellis v. Chao, 336 F.3d 114, 127 (2d Cir.

---

[5]For example, the Plaintiffs have chosen to characterize their constitutional takings claims as facial challenges. (Pls.' Mem. in Opp. to Certain Defs. Feb. 20, 2007 Mot. for Summ. J. (Doc. No. 122) at 24.)  As discussed below, under some courts' analyses of the accrual date of takings claims, a facial takings claim accrues on the date a challenged regulation is enacted. Even though the courts in this circuit do not seem to have adopted this analysis, had the Defendants timely raised a statute of limitations defense, the Plaintiffs might not have chosen to commit themselves to characterizing their takings claims as facial challenges at the summary judgment stage.

2003).  Even assuming *arguendo* that the Defendants had timely raised their statute of limitations defense, the Plaintiffs' § 1983 claims would not be time-barred because claims accrued within the three-year statute of limitations period.  While Connecticut state law determines the applicable period of limitations, federal law determines when the Plaintiffs' § 1983 cause of action accrues. Wallace, 127 S. Ct. at 1095; see also Leonhard v. United States, 633 F.2d 599, 613 (2d Cir. 1980) (citing Kaiser v. Cahn, 510 F.2d 282, 285 (2d Cir. 1974)).  The "standard rule" is that a claim accrues "when the plaintiff has 'a complete and present cause of action,'" that is "when 'the plaintiff can file suit and obtain relief.'"  Wallace, 127 S. Ct. at 1095 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp, 522 U.S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941))).  Thus, a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." Ormiston v. Nelson, 117 F.3d 69, 70 (2d Cir. 1997) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920 (1981)).

Plaintiffs' Charles and Victoria Parsons first received notice of the ZEO's preliminary determination that their property was designated for seasonal use in the fall of 1997[6] and received a

---

[6]The "Notice of Designation of Seasonal Use Dwelling" relating to 11 Brookside Avenue, which is the Parsons' property, is dated the "28th day of Oct., 199_."  (Hearing on Mot. for

final determination in August, 1998. (Hearing on Mot. for Prelim. Inj., 4/13/00, Defs.' Ex. W.)  Plaintiff Joan Byer received notice of the ZEO's determination regarding her property in April 1999 and received a notice of a final determination in December 1999. (Id., Defs.' Ex. U; see also Rule 56 Statement in Supp. of Mot. for Summ. J. by Defs.' Town of Old Lyme, Old Lyme Zoning Commission and Marilyn Ozols (Doc. No. 108), Ex. E at 67 (Deposition of Joan Byer).)  The Plaintiffs' due process challenges to the allegedly arbitrary and unfair procedures employed by the Commission and the ZEO certainly did not accrue any earlier than the Plaintiffs' receipt of notice of the ZEO's seasonal use determination.  The Plaintiffs' procedural due process claim was not "a complete and present cause of action" until the procedures they challenge had been applied to their properties.  Therefore, the Plaintiffs' due process claims challenging the ZEO's seasonal use determinations are not barred by the statute of limitations.

The Plaintiffs' also challenge the enactment of the 1995 Regulations under the Equal Protection and Takings Clauses of the federal Constitution.  The challenged Regulations became effective on June 5, 1995.  However, the deadline for filing these claims

---

Prelim. Inj., 4/13/00, Defs.' Ex. W.)  Charles Parsons testified at his deposition that he first learned from ZEO Ozols that 11 Brookside Drive was designated for seasonal use in August or September of 1997.  (Rule 56 Statement in Supp. of Mot. for Summ. J. by Defs. Town of Old Lyme, Old Lyme Zoning Commission and Marlyn Ozols (Doc. No. 108), Ex. D1 at 58.)

should not be calculated from that date because these claims fall under the so-called "continuing violations" exception, which applies "[w]hen a plaintiff experiences a 'continuous practice and policy of discrimination..., the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Cornwell v. Robinson, 23 F.3d 694, 703-4 (2d Cir. 1994) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir.1992) (quoting Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 25 (2d Cir.), cert. denied, 474 U.S. 851 (1985))). A "continuing violation exists where there is a relationship between a series of discriminatory actions and an invalid, underlying policy." Connecticut Light & Power Co. v. Sec'y of Dept. of Labor, 5 F.3d 89, 96 (2d Cir. 1996). To establish a continuing violation, a plaintiff must prove: 1) "an underlying discriminatory policy or practice" and 2) "an action taken pursuant to that policy during the statutory period preceding the filing of the complaint." Id.

The Plaintiffs present a facial challenge to a zoning ordinance which interferes with their use of their property for five and one-half months of each year. If the 1995 Regulations are constitutionally invalid, as alleged by the Plaintiffs, then the Regulations "would constitute the equivalent of a continuing invasion of plaintiffs' property rights akin to a continuing trespass-a situation in which a new cause of action arises in

19

plaintiff's favor against the [the defendant] each day." See Greene v. Town of Blooming Grove, No. 87 Civ. 69, 1988 WL 126877 at *4 (S.D.N.Y. Nov. 21, 1988); aff'd in part and rev'd in part on other grounds, 879 F.2d 1061 (2d Cir. 1989); see also Deepwells Estates Inc. v. Inc. Vill. of Head of Harbor, 973 F. Supp. 338, 347 (E.D.N.Y. 1997) (citing the Greene court's analysis of the continuing violations doctrine); Town of Southold v. Town of East Hampton, 406 F. Supp. 2d 227, 238 (E.D.N.Y. 2005) (holding that a challenge to a law that prevented the plaintiff from establishing a ferry service constituted a continuing violation even though the period of limitations had expired since the date the law was enacted), aff'd in part and vacated in part on other grounds, 477 F.3d 38 (2d Cir. 2007). Admittedly, other courts have analyzed the issue differently. In particular, the Ninth Circuit has held that a facial takings challenge to a regulation accrues on the date on which the challenged regulation was enacted. See, e.g., Equity Lifestyle Properties, Inc. v. County of San Luis Obispo, 505 F.3d 860, 869 (9th Cir. 2007). However, as indicated by the decisions just cited, courts in this circuit have not adopted this reasoning.

Furthermore, the Plaintiffs claim that the 1995 Regulations and their enforcement are part of a discriminatory policy on the part of the Defendants to illegally restrict property rights in the beach areas of Old Lyme. The Plaintiffs claim that the allegedly arbitrary procedures used to enforce the 1995 Regulations were

implemented pursuant to the Defendants' underlying unlawful policy and, therefore, constitute continuing violations.  (Pls.' Mem. in Opp. at 6-7.)    In alleging the existence of an overarching discriminatory policy that motivated both the enactment of the regulations and their unlawful enforcement, the Plaintiffs have alleged both "an underlying discriminatory policy or practice" and "an action[s] taken pursuant to that policy during the statutory period preceding the filing of the complaint."  See also <u>Reidy v. Runyon</u>, 971 F. Supp. 760 (E.D.N.Y. 1997) (holding that evidence of "consistent denial of overtime shifts ... result[ing from] a single unlawful discriminatory animus ..., if established, is sufficient to demonstrate the existence of an overarching discriminatory policy and warrant application of the continuous violation theory").

Therefore, because the Defendants' statute of limitations defense was not timely raised, and because that defense would be futile, the Plaintiffs' § 1983 claims are not time-barred.

C.   <u>LEGISLATIVE IMMUNITY</u>

Municipal legislators are entitled to absolute legislative immunity for claims brought under § 1983.  <u>Bogan v. Scott-Harris</u>, 523 U.S. 44 (1998).  "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" <u>Id.</u> at 54 (quoting <u>Tenney v. Brandhove</u>, 341 U.S. 367, 376 (1951)). Legislative immunity bars suits for damages, injunctions and

declaratory relief against legislators. State Employees Bargaining
Agent Coalition v. Rowland, 494 F.3d 71, 81-88 (2d Cir. 2007); see
also Supreme Court of Virginia v. Consumers Union, 446 U.S. 719,
732 (1980).   However, legislative immunity bars suits against
municipal officials only when those officials are sued in their
personal capacity; the doctrine does not apply to official-capacity
suits.   Goldberg v. Town of Rocky Hill, 973 F.2d 70, 73 (2d Cir.
1992); see also State Employees, 494 F.3d at 86-87 (holding that
absolute legislative immunity may bar official-capacity suits for
injunctive relief against *state* officials, but distinguishing
Goldberg on the ground that the officials sued in Goldberg were
*municipal* officials sued in their official capacity and, therefore,
legislative immunity was not available to them).

The Plaintiffs do not dispute that legislative immunity
extends to the members of a municipal zoning commission such as the
one on which the Defendants served.   (Pls.' Mem. in Opp. at 7.)
See also Orange Lake Assocs., Inc. v. Kirkpatrick, 21 F.3d 1214,
1224 (2d Cir. 1994) (holding that absolute legislative immunity
extends to the members of town boards in New York State).   The
actions of the Defendants in adopting the challenged Regulations
"were, in form, quintessentially legislative." Bogan, 523 U.S. at
55.   The Defendants held meetings, deliberated, and then voted on
the Regulations.   (Defs.' Rule 35 Statement ¶¶ 2-4.)   In passing
the 1995 Regulations, the Commission "certainly governed 'in a

22

field where legislators traditionally have power to act.'" Bogan
523 U.S. at 56 (quoting Tenney, 341 U.S. at 379). The Defendants
are therefore immune from personal liability under § 1983 for their
actions in adopting the 1995 Regulations.

The Plaintiffs argue, however, that the Defendants are not
entitled to legislative immunity for their actions in enforcing the
Regulations. (Pls.' Mem. in Opp. at 7-8.). These acts, the
Plaintiffs argue, constitute enforcement, not legislation, and
therefore, they argue, the doctrine of legislative immunity is
inapplicable. (Id.) The availability of legislative immunity
depends on the form of the act, not on the office of the actor, and
legislative officials may therefore be liable for their enforcement
and administrative actions. Supreme Court of Virginia, 446 U.S. at
736 (holding that the doctrine of legislative immunity did not bar
prospective injunctive relief against the chief justice of the
Virginia Supreme Court insofar as he was acting to enforce, rather
than legislate, disciplinary rules); see also Bogan, 523 U.S. at 55
("Whether an act is legislative turns on the nature of the act,
rather than on the motive or intent of the official performing
it."); Scott v. Greenville County, 716 F.2d 1409, 1423 (4th Cir.
1983) ("When local zoning officials do more than adopt prospective,
legislative-type rules and take the next step into the area of
enforcement, they can claim only the executive qualified immunity
appropriate to that activity.")

Minutes from meetings of the Zoning Commission in which the Defendants participated indicate that the Commission members had substantial discussions about the procedures that were to be used to implement the seasonal use restrictions. (See, e.g., Defs.' Rule 56 Statement Ex. C2 (Old Lyme Zoning Commission Meeting Minutes, July 10, 1995).) ZEO Ozols testified that the Commission set a formal policy regarding implementation of the seasonal use restrictions. (Tr. 4/12/00 at 150; see also Pls.' Rule 56 Statement Ex. C at 49 (Deposition of Ozols).) She testified that the Commission instructed her to limit the kinds of evidence she would accept when an owner challenged her seasonal use determination. (Tr. 4/13/00 at 108-9; see also Pls.' Rule 56 Statement Ex. D at 25-26 (Deposition of Ozols).) Her testimony tends to establish that the Commission and its individual members were involved in establishing policies for the implementation of the seasonal use restriction. However, there is no evidence that any of the Commission members had any role in the application of the challenged regulations to a particular property. (See also Defs.' Rule 65 Statement Ex. B ¶ 8 (Affidavit of current ZEO Ann Brown stating that the individual members of the Zoning Commission had "no role in any appeal from the application of the challenged regulations to individual properties").) The Defendants' actions in setting policies to implement the 1995 Regulations should therefore be distinguished from enforcement actions. Cf. Scott,

24

716 F.2d at 1423 (holding that members of a zoning commission were not entitled to legislative immunity for actions they took in denying an application for a permit from an individual owner). The Defendants' actions in setting enforcement policies were more like the "kind of broad, prospective policymaking that is characteristic of legislative action." See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003). The enforcement policies may have been flawed, and the Defendant Commissioners may have acted in bad faith, as is alleged by the Plaintiffs, but legislative immunity is absolute and does not depend on these considerations.

Therefore, the six Defendants who have submitted the motion presently before the Court are immune from personal liability for their roles in adopting and enforcing the 1995 Regulations. The Defendants may, nonetheless, be liable in their official capacity for any constitutional violations they have committed, but, insofar, as these Defendants claim immunity from personal liability under § 1983, the Court grants summary judgment in their favor.

D.    QUALIFIED IMMUNITY

The Defendants claim that the Plaintiffs' federal constitutional claims are barred by the doctrine of qualified immunity. (Defs.' Mem. in Supp. at 11-15.) Like legislative immunity, qualified immunity applies only to official-capacity claims. Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("The only

immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.")  Because the Court has already determined that the Defendants are entitled to legislative immunity for their actions in enacting and implementing the 1995 Regulations, it will not consider whether they are also entitled to qualified immunity.

E.  DISMISSAL OF CLAIMS ON WHICH SUMMARY JUDGMENT HAS BEEN
    GRANTED IN FAVOR OF THE TOWN AND COMMISSION

Defendants Town of Old Lyme and the Town of Old Lyme Zoning Commission have moved for summary judgment separately. (Doc. No. 107.)  The Court granted summary judgment in favor of the Town and Commission on the Plaintiffs' claims under the Connecticut Environmental Protection Act, thus dismissing Count III, in which the Plaintiffs sought injunctive relief for the Town's failure to install a sewer system. (See Ruling on Motion for Summary Judgment by Defendants Town of Old Lyme, Old Lyme Zoning Commission and Marilyn Ozols.)  The Court denied summary judgment on all other claims. (Id.)  The Defendants argue in the present motion that the Court should dismiss any claims against them that are "duplicative" of the claims on which it has granted summary judgment in the Town and Commission's Motion. (Mem. in Supp. at 15-16.)  The CEPA claims, which are the only claims to which this argument might apply, relate to alleged wrongdoing by the Town, not the Commission or its individual members.  Nonetheless, insofar as the members of

the Zoning Commission might also be liable under Count III, the
Court grants summary judgment in their favor on all CEPA claims.

F.    SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

      The Defendants argue that if the Court grants their motion for
summary judgment with respect to the federal claims against them,
the Court should then decline to exercise supplemental jurisdiction
over the Plaintiffs' pendant state law claims.  (Defs.' Mem. in
Supp. at 16.)  Because the Court has not dismissed the federal
claims, it does not consider this argument.

G.    CAUSE OF ACTION UNDER THE CONNECTICUT CONSTITUTION

      The Plaintiffs' state constitutional claims consist of claims
for declaratory relief under Article First, Sections 8 and 10 of
the Connecticut Constitution.  (See Compl., Count I.)  The
Defendants argue that summary judgment should be granted in their
favor on these claims.  (Defs.' Mem. in Supp. at 17-29.)  The
Defendants apparently rely on the proposition that private rights
of action for money damages are limited under the Connecticut
Constitution.  This argument is puzzling because the Plaintiffs do
not seek money damages under the Connecticut Constitution.  None of
the Connecticut cases cited by the Defendants hold that declaratory
relief is unavailable for violations of these sections of the
Connecticut Constitution.  To the contrary, Connecticut courts have
repeatedly held that declaratory relief is available for
constitutional violations.  See, e.g., Bombero v. Planning and

Zoning Comm'n of Town of Trumbull, 669 A.2d 598, 602 (Conn. App. 1996) (holding that plaintiff had standing to bring action seeking declaratory judgment that a land-use ordinance violated Article First, Section 8 of the state constitution and citing cases in which plaintiffs sought declaratory judgments relating to the constitutionality of land-use ordinances).

H.   LEGISLATIVE AND QUALIFIED IMMUNITY FROM STATE LAW
     CONSTITUTIONAL CLAIMS

The Defendants argue that the Plaintiffs' state constitutional claims are barred by the doctrines of absolute legislative immunity and qualified immunity. (Defs.' Mem. in Supp. at 20.)   The Plaintiffs' claims for declaratory relief under the Connecticut Constitution "represent only another way of pleading an action" against the Town and Commission. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978)).  The Plaintiffs do not seek to hold the Defendants personally liable for alleged violations of the Connecticut Constitution, and because legislative and qualified immunity apply only to personal-capacity suits, these doctrines are inapplicable here.  Id. at 167.

I.  GOVERNMENTAL IMMUNITY FROM STATE LAW CLAIMS

In addition to claims under Article First, Sections 8 and 10 of the Connecticut Constitution, the Plaintiffs seek declaratory relief under Conn. Gen. Stat. §§ 8-2 and 8-2h(a), which regulate zoning by a municipal government.   (Compl. Count I.)   The

28

Plaintiffs also previously sought injunctive relief under Conn. Gen. Stat. §§ 22a-16 and 22a-18 (see Compl. Count III), but, in a separate ruling, the Court granted summary judgment in favor of the Defendants Town and Commission, dismissing that count. (See Ruling on Motion for Summary Judgment by Defendants Town of Old Lyme, Old Lyme Zoning Commission and Marilyn Ozols.)  The Defendants argue that the state law doctrine of "governmental" or "municipal" immunity bars all these state law claims against them.

First, the Defendants argue that they are entitled to immunity under Conn. Gen. Stat. § 52-557n(a)(2), which provides that "a political subdivision of the state shall not be liable for damages to person or property" under certain circumstances.  Since the Plaintiffs do not seek damages under any of their state law claims, this statute is plainly inapplicable.

Second, the Defendants argue that they are entitled to immunity under Conn. Gen. Stat. § 52-557n(c), which provides that "[a]ny person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership ... shall not be personally liable for damage or injury" under certain circumstances set forth in the statute. Unlike other sections of the same statute, § 52-557n(c) explicitly refers to personal liability.  Compare Conn. Gen. Stat. § 52-557n(c) (... shall not be *personally* liable for damage or injury ...) (emphasis added), with § 52-557n(b) (a political subdivision

of the state or any employee, officer or agent acting ... *shall not be liable for damages*) (emphasis added). Therefore, by its language, § 52-557n(c) does not apply to official-capacity suits. The Plaintiffs' remaining state law claims against individual members of the Commission are for declaratory relief and "represent only another way of pleading" against the Town, the Commission and the ZEO. The "real party in interest" for all of the remaining state law claims is the Town, the Commission or the ZEO, rather than the individual Defendants. These are official-capacity claims and § 52-557n(c) is inapplicable.

The Defendants also argue that the state law claims are barred by the "common law" doctrine of governmental immunity. (Defs.' Mem. in Supp. at 23-28.) Before governmental immunity was codified at § 52-557n (see Conway v. Town of Wilton, 680 A.2d 242, 252 (Conn. 1996) (quoting Sanzone v. Bd. of Police Comm'rs, 592 A.2d 912 (Conn. 1991)), the common law doctrine of governmental immunity, like § 52-557n(c), provided qualified immunity from personal liability to municipal employees who committed tortious acts in the performance of their governmental duties. See Purzycki v. Town of Fairfield, 708 A.2d 937, 940 (Conn. 1998) (describing "governmental immunity" as an "exception[] to the general rule" that municipal employees were "personally liable for their own tortious conduct") (quoting Mulligan v. Rioux, 643 A.2d 1226 (Conn. 1994)); see also Evon v. Andrews, 559 A.2d 1131 (Conn. 1989)

(describing municipal liability as a doctrine under which municipal employees enjoyed qualified immunity from individual tort liability); <u>see also</u> <u>Gordon v. Bridgeport Hous. Auth.</u>, 544 A.2d 1185, 1188-90 (Conn. 1988) (explaining doctrine of municipal liability in Connecticut). Since the Plaintiffs do not seek to hold the Defendants personally liable under state law, these doctrines of governmental immunity are inapplicable.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Doc. No. 102) is GRANTED in part and DENIED in part.

SO ORDERED.

_____/s/_____
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 1st day of February, 2008.

31